**2:18–cv–07011–JMA–AYS | 2:21–cv–00014–JMA–AYS**

# United States District Court
### *for the*
## Eastern District of New York

JOHN LEPPER and NOELLE LEPPER, individually and as parents and natural guardians of their infant children, **B.J.L. AND B.I.**,

*Plaintiffs*

–v–

VILLAGE OF BABYLON; and ESTATE OF RALPH SCORDINO, Mayor–decedent, KEVIN MULDOWNEY, current/former Deputy Mayor, ROBYN SILVESTRI, current/former Village Trustee, TONY DAVIDA, current/former Village Trustee, MARY ADAMS, current/former Village Trustee and acting Mayor; STEPHEN FELLMAN, Village of Babylon Building Inspector; SUZANNE SCHETTINO, Department of Public Works; GERARD GLASS, Esq., current/former Village of Babylon Attorney; DEBORAH LONGO, Planning Board, Village of Babylon, each individually and in their official capacity, and John and/or Jane Doe, unnamed, unidentified complainants,

*Defendants*

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS OPPOSING DEFENDANTS MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1 AND COUNTER–STATEMENT OF FACTS

### LAW OFFICES OF CORY H. MORRIS
*Attorney for Plaintiffs*
Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR., *of counsel*

# PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT

Pursuant to Local Civil Rule 56.1 (b), Plaintiffs, by their attorneys The Law Office of Cory H. Morris and Victor John Yannacone, jr., *of counsel*, respond to Defendants' Rule 56.1 "Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment" as follows:

1.    John Lepper and Noelle Lepper own and owned for all times mentioned in their first Amended Complaint the house and property located at 59 Cockenoe Road in the Incorporated Village of Babylon in the County of Suffolk, State of New York.  (Exhibit B, Exhibit I)

2.    John Lepper and Noelle Lepper have two minor children who have resided for all times mentioned in the Amended Complaint at 59 Cockenoe Avenue in in the Incorporated Village of Babylon in the County of Suffolk, State of New York.  (Exhibit I, pp. 1–10).

3.    The property at 59 Cockenoe Avenue fronts two public streets, Cockenoe Avenue on one side and Wampum Road on the other.

4.    John Lepper commenced construction of a wooden structure in a tree (for all times hereinafter mentioned as "the treehouse") on the property of 59 Cockenoe Road in or before May 2018.

5.    Before starting the construction of the treehouse John Lepper did not make an application for a permit.  (Exhibit I, Exhibit Q affidavit of Stephen Fellman).

6.    For all times mentioned in the Amended Complaint Stephen Fellman was and is the Village Inspection [*sic*] for the Incorporated Village of Babylon. (Exhibit Q, affidavit of Stephen Fellman)

7.    Stephen Fellman was informed by Anthony Davida that there was a structure being built in a tree at 59 Cockenoe Avenue in

the Village of Babylon.  In his capacity of Village Building Inspector, Stephen Fellman transmitted a letter in May 2018 advising John Lepper may require a permit for a wooden structure in the tree that did not have walls or a roof.  (Exhibit Q, affidavit of Stephen Fellman, Exhibit V, affidavit of Anthony Davida)

In the absence of any reference to a specific paragraph of Defendants' Exhibits Q and V supporting the foregoing statement of alleged undisputed material fact that "Stephen Fellman was informed by Anthony Davida that there was a structure being built in a tree at 59 Cockenoe Avenue," Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact with Ex. 28, Anthony Davida Deposition, 148:2–15 (noting "new timbers" without a "permit in the window.")

8.   John Lepper continued construction of the treehouse after the letter requesting that he talk to Stephen Fellman in May 2018 (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert the reference to Exhibit Q. Plaintiffs' Ex. 2, Letter from Defendant Stephen Fellman dated May 10,2018; (Plaintiffs' Ex. 3, 4, 44 ¶¶ 9–21);

9.   During construction of the treehouse, John Lepper went to Village Hall to obtain a permit for the treehouse on May 21, 2018 (Exhibit I, Exhibit I, [*sic*] Exhibit Q, affidavit of Stephen Fellman).

10.   The permit application filed by John Lepper did not contain signed and sealed plans by a licensed professional engineer or architect.  (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and

controvert the statement to the extent that it assumes "signed and sealed plans by a licensed professional engineer or architect" are required for construction of a treehouse whose floor area is less than 90 ft². Plaintiffs did submit a sealed letter opinion and work papers from a licensed professional engineer, (Plaintiffs' Ex 7, 8) and there is deposition testimony that no certificate of occupancy issued for a structure less than 90 square feet. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 163–164; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 41.

11.    All or part of the treehouse is situated less than ten feet from property line on the Wampum side of the property at 59 Cockenoe Avenue in the Incorporated Village of Babylon. (Exhibit Q, affidavit of Stephen Fellman, Exhibit W, affidavit with report of Joseph Danatzko with photographs).

In the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Plaintiffs' Exhibits 5, 6.

12.    Specifically, the tree house is located 13 feet, 1 inch from the interior edge of the curb along Wampum Road and 4 feet, 6 inches from wood fencing adjacent to Wampum Road, and the centerline of the subject tree was located approximately 9 feet, 10–1/2 inches east and 25 feet north of the single familiar residence on the property. (Exhibit W, affidavit with report of Joseph Danatzko).

13.    The treehouse was constructed from old timber from a boathouse owned by the Lepper family that had been destroyed in Superstorm Sandy (Exhibit W, affidavit with report of Joseph Danatzko, Exhibit I, 58–62)

In the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of

alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Some of the Lepper children's treehouse was not entirely constructed from old timbers as evidenced by sworn testimony (Plaintiffs' Exhibit 38, Deposition of John Lepper 138:10–19, 138–139) for which John Lepper purchased several items from various hardware stores and described that this is where he got some of the wood. See Plaintiffs' Exhibit 38, Deposition of John Lepper 60:3–14, 64:24–65:3.

14.   Except that Mr. Lepper claims that the trees were healthy when they were pruned, no inspection was done on the tree to determine the stability of the tree to support the tree house. (Exhibit I, pp. 58–62).

Plaintiffs' deny the allegations in paragraph 14 to the extent that Mr. Lepper had a professional inspect the trees and the trees were considered healthy, Plaintiffs' Exhibit 38, Deposition of John Lepper 55–58, without qualification. See *Id.* at 58:19–59:7 ("the remainder [of the trees] were healthy" and one was not, so it was removed).

15.   Mr. Lepper built the tree house and was not familiar with the Village zoning or building codes at the time he constructed the tree house. He also had no experience building a treehouse with the exception of building a tree house when he was a boy. (Exhibit I, pp. 24–25, 58–60, 283–293).

Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants, (Plaintiffs' Exhibit 48, Affidavit of John Lepper, ¶ 5) and report that John Lepper's testimony is the most accurate reflection of the statement of fact asserted by Defendants. See, e.g., Plaintiffs' Exhibit 38, Deposition of John Lepper 26:17–22 (responding "no" to whether he "dealt with building codes" as a contractor).

16.    The tree was constructed of wood that is not pressure treated wood. (Exhibit W, affidavit with report of Joseph Danatzko).

17.    The lot area of the platform base of the tree house measures 111.7 square feet. (Exhibit W, affidavit with report of Joseph Danatzko).

18.    The platform base of the tree house is 8 feet, 8 13/16 inches above grade level. (Exhibit W, affidavit with report of Joseph Danatzko).

19.    There is electrical wiring to the tree house which is used in part to provide electricity to an outdoor light on the exterior of the tree house. There was no electrical underwriter's certificate for any electrical components in or on the tree house. (Exhibit W, affidavit with report of Joseph Danatzko).

In the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants as to, among other things, "electric wiring" as evidence in Plaintiffs' Exhibit 44, ¶ 5; Plaintiffs' Exhibit 38, Deposition of John Lepper 54:3–8.

20.    The only means of ingress and egress from the tree house is to go through a window, which Mr. Lepper employs the use of a free–standing ladder. (Exhibit I, pp. 90–93; Exhibit W, affidavit with report of Joseph Danatzko).

In the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. (Plaintiffs' Exhibit 44, Affidavit of John Lepper ¶ 47). Defendants Ordered Plaintiff to stop working on the

treehouse (Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, 304:12–20, see pp. 390–393) for which John Lepper (*id.* 87:7–13) stated under oath that he had "to finish putting the roof on, shutters, secure the windows to make it safe for the kids to play up there and install the hatch in the floor so that the kids can actually access it." *Id,* see also 304:12–20.

21.    On July 31, licensed professional engineer Joseph Danatzko inspected the tree house and found conditions in violation of building codes. He opined that there were unsafe conditions in the tree house.  (Exhibit W, affidavit with report of Joseph Danatzko).

Plaintiffs do not dispute this statement of fact as to the date of inspection by Joseph Danatzko. However, in the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert the opinion that there were unsafe conditions in the tree house as evidenced by another licensed architect and the treehouse builder, see Plaintiffs' Exhibits 7, 8, 24, 25 and 48, especially when compared to other similarly situated treehouses in the Village of Babylon that were not produced in discovery, Plaintiffs' Exhibits 9-13, or subjected to the same inspection (see, e.g., Plaintiffs' Exhibit 1) but were instead subjected to a "spot" load test by Defendant Stephen Fellman. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 165:5–13.

22. Plaintiffs admit the allegations in Paragraph 22 that Tickets were issued by the Village of Babylon to John Lepper in connection with his construction of the treehouse. (Exhibit R, affirmation of Gerard Glass).

23.    John Lepper was told that he would need to obtain a variance for the treehouse and signed and sealed plans were required.  (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert allegations. Plaintiffs' Exhibit 44, Affidavit of John Lepper, ¶¶ 30, 48, 63.). Plaintiff John Lepper provided sworn testimony that (Plaintiffs' Exhibit 38, Deposition of John Lepper 249:20–250:9) there was no discussion of a variance, only a demand for payment without explanation. See *id*. 250:10–18, 248:4–8, see also *id*. 239:23–240:6 (stating the Building Permit Application submitted by John Lepper was accepted).

24.   John Lepper claims that Justice Court Judge Rafter directed John Lepper to stop work on the treehouse and unplug the light to the tree house on September 4, 2018. (Exhibit A, amended complaint, para. 66).

25.   Though he lacked a permit and was told he needed a permit to construct the tree house, John Lepper continued construction on the treehouse. (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact (Plaintiffs' Exhibit 44, Affidavit of John Lepper, ¶¶ 20, 31.) insofar as John Lepper was not told he needed a permit (Plaintiffs' Exhibit 38, Deposition of John Lepper 282:9–18) and that he "never received anything other than the letter stating that a permit may be required. I filed for the permit." *Id*.

26.   No tickets were issued to Noelle Lepper or the Lepper children. (Exhibit R, affirmation of Gerard Glass).

27.   John Lepper did not apply for a variance with the Zoning Board of Appeals of the Village of Babylon. (Exhibit R, affirmation of Gerard Glass, Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibits R and Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert the reference to Exhibit Q because nothing in that Exhibit supports Defendants' statement. See Plaintiffs' Exhibit 44, Affidavit of John Lepper, ¶¶ 30, 48, 63; Plaintiffs' Exhibit 42, Deposition of Noelle Lepper, 271:4–12; Plaintiffs' Exhibit 38, Deposition of John Lepper 249:20–250:18. Defendants never stated that an application for a variance was required until this litigation. *Id*; see also Plaintiffs Exhibits 9, 13 (evidencing other similarly situated treehouses not otherwise provided by the Defendants, built without a permit, not treated as the Lepper Family Treehouse).

28.   John Lepper did not seek any remedy before the Zoning Board of Appeals of the Village of Babylon contesting that a permit was not issued for his treehouse. (Exhibit R, affirmation of Gerard Glass).

In the absence of any reference to a specific paragraph of Defendants' Exhibit R supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact and deny the statement of law in "seek any remedy before the Zoning Board of Appeals" as legal argument presupposing administrative remedies. See Plaintiffs' Exhibit 44, Affidavit of John Lepper, ¶¶ 30, 48, 63; Plaintiffs' Exhibit 42, Deposition of Noelle Lepper, 271:4–12.

29.   Plaintiff objects to the following statement of law as not a statement of fact to be supported by an expert witness

hired by the Village of Babylon; the Village of Babylon Code speaks for itself:

Section 365–26 of the Code of the Incorporated Village of Babylon states:

A.  No building shall hereafter be erected and no existing building shall be structurally altered or added to on any lot, plot or premises and no excavation or work of any nature shall commence in connection therewith, nor shall any use of an existing building be changed until a permit authorizing the same shall have been issued by the Building Inspector. The Building Inspector shall require that the application for a permit and the accompanying plot plan, plans and specifications shall contain all information necessary to enable him to determine whether the proposed building addition or structural alterations or change of use to an existing building comply with the provisions of this chapter and Chapter 171, Flood Damage Prevention, where applicable.

[Amended 10–24–2006 by L.L. No. 8–2006; 7–14–2015 by L.L. No. 5–2015]

B.  No permit shall be required for a storage shed located on the same plot as a one– or two–family dwelling, provided that only one storage shed shall be located on such plot and that such storage shed shall be securely anchored to the ground, shall comply with the structural provisions of the New York State Uniform Fire Prevention and Building Code and shall comply with all other Village laws, rules and regulations. Any storage shed which, in the opinion of the Building Inspector, has become dangerous, unsound, unsafe or hazardous as a result of fire, neglect, disrepair, structural failure, collapse, vandalism or any other means shall be declared a public nuisance. Any such

shed declared to be a public nuisance shall be removed in accordance with the Building Inspector's specifications.

C. Decks/patios; outdoor playgrounds and gyms.

[Added 9–9–1986 by L.L. No. 4–1986; amended 1–11–1994 by L.L. No. 1–1994]

> **(1)** As used in this subsection, the following terms shall have the meanings indicated:
>
> **DECK/PATIO**
>
> A single– or multi–level open flat or roof–enclosed structure composed of wood, metal, masonry or similar material.
>
> **(2)** Decks and patios over 18 inches in height shall conform to minimum setback requirements of the main structure. A building permit shall be required for a deck/patio which is 18 inches or more above the adjacent grade level.
>
> **(3)** A building permit shall be required when an outdoor playground or gym (or any combination) exceeds a lot area of 90 square feet.

(Exhibit W, attested report of Joseph Danatzko)

30.    The Plaintiffs did not serve their notice of claim upon the Village of Babylon thirty–days or more before filing the summons and complaint in this action, Docket Number 2:18–cv– 07011. (Exhibit A, summons and complaint; Exhibit M, first notice of claim). Lepper home before the tree house was built. (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit W supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Declaration of Attorney Cory H. Morris, ¶ 24,

D.E. 20. Defendants submitted a stipulation and waiver under Docket Entry 20 that was the subject of a premotion conference before the Honorable Joseph F. Bianco and Plaintiff respectfully objects to all statements of law made as if a material fact herein.

31.   Plaintiffs did not attend a 50–h hearing pursuant to New York's General Municipal Law before filing the summons and complaint in this action, Docket Number 2:18–cv–07011. (Exhibit A, Exhibit B).

Defendants never noticed such a hearing and Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants. Declaration of Attorney Cory H. Morris, ¶ 24, D.E. 20.

32.   The late Ralph Scordino was Mayor of the Village of Babylon served as mayor from 2020 until his death on October 29, 2020. (Exhibit L, pp. 165–172).

33.   Robyn Silvestre served as Village Trustee from July 28, 2018 and still serves as Village Trustee. (Exhibit AA, affidavit of Robyn Silvestre).

34.   Mary Adams served as Village Trustee from June 15, 2016 until she was inaugurated to the office of Mayor of the Village of Babylon on October 30, 2020. (Exhibit Z, affidavit of Mary Adams).

35.   Kevin Muldowney served as Village Trustee and Deputy Mayor for all times alleged in the complaint until September 1, 2020 (Exhibit T, affidavit of Kevin Muldowney).

36.   Anthony Davida served as Village Trustee from 2002 until December 31, 2020. (Exhibit V, affidavit of Anthony Davida).

37.   Stephen Fellman has been employed by the Village of Babylon as Building Inspector since 1991. (Exhibit Q, affidavit of Stephen Fellman).

38.   Gerard Glass served as Village Attorney from 2018 until April 5, 2021. (Exhibit R, affirmation of Gerard Glass).

39.     Deborah Longo had been employed by the Village of Babylon from 2008 until August 1, 2020. (Exhibit U, affidavit of Deborah Longo).

40.     Suzanne Schettino had been employed by the Village of Babylon from 1997 untilApril 29, 2021. (Exhibit S, affidavit of Suzanne Schettino).

41.     While constructing the tree house, John Lepper was aware that no permit was issued and he continued to build the tree house expecting that a stop work order would be issued because no permit was issued. He understood that the "acceptance" of the permit application by Deborah Longo was not an approval of the permit application, but rather it would be taken for review. (Exhibit I pp. 270–271, 303, Exhibit U, affidavit of Deborah Longo).

In the absence of any reference to a specific paragraph of Defendants' Exhibit U supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Plaintiffs' Exhibits 3, 4; Plaintiffs' Exhibit 44, Affidavit of John Lepper, ¶¶ 9–21, Plaintiffs' Exhibit 36, Deposition of Deborah Longo, 62:3–13, 77:14–19, 87:7–14, 88:19–25, 89:2–6, 97:3–8, 17–21 (this lawsuit is a "blip" to her); 204:3–20 (noting the profound lack of ability to recall the events or conversations so vividly remembered in her subsequent affidavit); 129:14–17 (took paper work and spoke to John Lepper for all of three minutes); see also, Anthony Davida Deposition, pp. 115–117, 117:6–7 ("Q. You just don't remember anything? A. No").

Plaintiff John Lepper testified at length as to phone calls, appointments (Plaintiffs' Exhibit 38, Deposition of John Lepper 242:11–13, 246:2–8, 263:11–23), following instructions of the building department Defendants (*id.* at 269:19–270:2) and that the permit could be issued based on what John Lepper provided to the Village of Babylon Building Department. *Id.* at 270:3–21. Further, John Lepper (Plaintiffs' Exhibit 44, Affidavit, ¶¶ 6-7) testified he

submitted a permit application, *id.*, followed the instructions of the Building Department, *id.* at ¶¶ 10-14, and made phone calls, *id.* at ¶¶ 16-19, for which Defendants wish for this Court to assume the pretextual and legal conclusion of permit validity for which Plaintiffs' contest this issue of material fact.

42.    John Lepper claimed that he defended his case in the Justice Court asserting that the building code did not apply to him because the structure was under 90 square feet. (Exhibit A, plaintiffs' amended complaint, para. 71).

43.    In a video recorded interview on November 2018 with Newsday, John Lepper told the reporter that he and his family used the tree house as a chapel, named the GFY Chapel, the Good For You Chapel. He considered the issue one of religious freedom. (Exhibit I, pp. 160–178).

44.    John Lepper reportedly made the statement to Newsday to protect his rights and he had no attorney at the time he made the statement. (Exhibit I, pg. 174).

45.    John Lepper never had personal discussion about the issues of the treehouse with Mayor Ralph Scordino. (Exhibit I, pp. 307–313).

Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants. Defendants' qualification of personal discussion about the treehouse is misleading at best, see Plaintiffs' Exhibit 38, Deposition of John Lepper 325:2–12, especially in light of the enormous support of the Village of Babylon citizens who "knocked on the mayor's door" and "spoke to him about it." *Id.* at 309:18–24; see also Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 9 (noting John Lepper's efforts to reach out to the appropriate avenue, persons who worked with the Mayor, to comply with whatever rules Defendants sought to place on the Lepper Family Treehouse).

46.   Before Mr. Lepper was told he needed a permit for the treehouse, another family seeking to build a structure in a tree was told that a permit was needed (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact. Declaration of Attorney Cory H. Morris, ¶¶ 9–22, Plaintiffs' Exhibits 9–12. Plaintiffs sought out this information in discovery yet, as evidenced by the latest conference in New York State Court litigation over Freedom of Information Law Requests by the undersigned the Defendants remain steadfast in refusing to produce relevant discovery that would support Defendants' affidavit produced for the purpose of obtaining summary judgment. See Fed. R. Civ. P. 56(d).

47.   The owners of the Baldauf tree house were not granted a permit and were required to apply to the Zoning Board of Appeals and were required to submit signed sealed plans and a survey by a licensed surveyor in order to apply for a variance with the Zoning Board of Appeals. Their application for a variance for the tree house in violation of the setback requirements was denied. (Exhibit X, Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibits X and Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact as sought (Declaration of Attorney Cory H. Morris, ¶¶ 9–22, Plaintiffs' Exhibits 9–12, establishing  material evidence was sought as to other treehouses) and denied by Defendants. See Fed. R. Civ. P. 56(d).

48.   Stephen Fellman had issued permits to the Leppers for work performed on the Lepper home before the tree house was built. (Exhibit Q, affidavit of Stephen Fellman).

49.   Stephen Fellman's purpose for contacting John Lepper regarding the subject tree house was to enforce the Code of the Village of Babylon. (Exhibit Q, affidavit of Stephen Fellman).

In the absence of any reference to a specific paragraph of Defendants' Exhibit Q supporting the foregoing statement of alleged undisputed material fact, Plaintiffs dispute and controvert said foregoing statement of alleged undisputed material fact as self–serving testimony concerning the state of mind of a Defendant.

50.   John Lepper was never told by any of the originally named defendants that they objected to his making complaints about any drugs problems in the Village of Babylon. (Exhibit I, p. 361).

Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 255:7–18, 256:5–13; see also Declaration of Attorney Cory H. Morris, ¶¶ 9–22 (concerning the lack of candor in discovery).

51.   John Lepper handed a copy of the summons and complaint under Docket Number 21–cv–00014 to someone other than the Village Clerk at Village Hall. John Lepper handed a copy of the summons and complaint under Docket Number 21–cv– 00014 to someone in Gerard Glass' office and not to Gerard Glass. No other summons and complaint under Docket Number 21–cv– 00014 was served by John Lepper or on his behalf. (Exhibit R, affirmation of Gerard Glass).

Plaintiffs dispute and controvert the foregoing statement of alleged undisputed material fact by Defendants as drawing for

a legal conclusion and ignoring the Court Ordered Consolidation and This Honorable Court's stay of motion practice in the Consolidated matter together with an objection to the legal conclusions regarding service in a preexisting court action consolidated by Court Order. See Declaration of Attorney Cory H. Morris, ¶¶ 24–30.

52.    John Lepper offered on social media to provide copies of video depositions of the defendants that were taken in the instant action. (Exhibit Y)

# PLAINTIFFS' STATEMENT OF MATERIAL FACTS OPPOSING DEFENDANTS' RULE 56.1 STATEMENT

Plaintiff **John Lepper** and **Noelle Lepper,** individually and as parents and natural guardians of their infant children**,** B.J.L. and B.I., set forth the following material factual assertions in opposition to the purported factual assertions set forth by Defendants in its Rule 56.1 Statement of Facts:

1. It was a joint decision to build the treehouse based on finding a hypodermic needle in the bushes of 59 Cockonoe Avenue, Village of Babylon, County of Suffolk, State of New York (hereinafter "Subject Property"). Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 85:2–20, 89 14–22; Plaintiffs' Exhibit 38, Deposition of John Lepper 421:14–21

2. John Lepper found a hypodermic needle at the Subject Property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 89:23–25; Plaintiffs' Exhibit 38, Deposition of John Lepper 63:22–64:4, 179:16–180:7.

3. The hypodermic needle John Lepper found was on the ground where the Plaintiff children played. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 91:7–15, Plaintiffs' Exhibit 38, Deposition of John Lepper 203:5–205:16, 289:9–20.

4. Plaintiff Noelle Lepper is a Registered Nurse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 52:12–15.

5. Noelle Lepper was able to identify the hypodermic needle because of her training as an "RN," Registered Nurse. (Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 94–95:23–25, 1–2.

6. The discovery of the hypodermic needle was a huge concern for Plaintiffs as their "kids can reach it and get HIV or Hep C

or any other disease." Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 99:5–11; Plaintiffs' Exhibit 38, Deposition of John Lepper 58:7–18.

7. Neighbors of the Lepper Property found similar hypodermic needles on their property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 94:6–11; 103:5–23; Plaintiffs' Exhibit 38, Deposition of John Lepper 179:16–180:7, 181:2–5.

8. Plaintiffs told neighbors about the hypodermic needle found at the Subject Property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 101:20–22; Plaintiffs' Exhibit 38, Deposition of John Lepper 179:16–180:7.

9. Plaintiffs neighbors confirmed with Plaintiffs that drug activity was occurring in the neighborhood. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 103:5–23; Plaintiffs' Exhibit 38, Deposition of John Lepper 212:24–213:6.

10. Plaintiffs' neighbors reported illegal drug activity in the neighborhood. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 110:8–20, see *id.* at pp. 110–112; see, e.g., Plaintiffs' Exhibit 36, Deborah Longo Deposition, 134:11–24 (Mayor's Office receives complaints directly); Plaintiffs' Exhibit 38, Deposition of John Lepper 179:16–180:7.

11. Plaintiffs' neighbors are aware that one set of neighbors has issues with drugs. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 121:5–11; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 13-15.

## John Lepper Builds the Treehouse to Keep the Children Safe

12. Plaintiffs were concerned over their safety relating to the discovery of the hypodermic needle. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 99–100:12–14, 2–5; Plaintiffs'

Exhibit 38, Deposition of John Lepper 289:9–20; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 2-4.

13.     Plaintiffs, specifically John Lepper, built a treehouse ("Lepper Family Treehouse") because of the hypodermic needle found at the Subject Property. Noelle Lepper Deposition, 184:14–24, 256:5–13; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 232:8–19; Plaintiffs' Exhibit 38, Deposition of John Lepper 291:8–14.

14.     Plaintiffs believe the Lepper Family Treehouse complies with the Village of Babylon code. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 261–262:23–25:2–10; Plaintiffs' Exhibit 43, Gerard Glass Deposition, 182:12–22; Plaintiffs' Exhibit 38, Deposition of John Lepper 372:4–15.

15.     Plaintiffs built the treehouse to protect their children. Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, see 421:14–21; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 2-4.

16.     Plaintiffs did not believe that signed sealed plans were required to build a child's treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 268:10–25; Plaintiffs' Exhibit 38, Deposition of John Lepper 372:4–15.

17.     Plaintiffs did not believe that a permit was required to build a child's treehouse. Plaintiffs' Exhibit 38, Deposition of John Lepper 389:4–6.

18.     Measurements were taken by John Lepper and an Architect to comply with the Village of Babylon Code. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 265:3–15; Plaintiffs' Exhibit 43, Gerard Glass Deposition, 182:12–22; Plaintiffs' Exhibit 38, Deposition of John Lepper 372:4–15, cf. 250:10–18.

19.   The Lepper Family Treehouse is not complete. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 59:16–21, 60:5–21; Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, see 87:7–13, 86:23–25.

20.   The Lepper Family Treehouse was not completed because Defendants demanded that John Lepper stop working on the Lepper Family Treehouse. Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, 390–393.

21.   The Plaintiff–children are aware that the Lepper Family Treehouse is not complete. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 213–14:11–25:2–4; Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, pp. 390–393.

22.   The Plaintiff children ask nearly every day when they can utilize the Lepper Family Treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 214:5–11; see also Plaintiffs' Exhibit 38, Deposition of John Lepper 419–420:5–5.

23.   Defendant Anthony Davida made complaints about the Lepper Family Treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 135:22–25, 167:4–11.

24.   Plaintiffs' neighbors Tony Kinnier, called Defendant Mayor Ralph Scordino regarding John Lepper. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 237:16–18; Plaintiffs' Exhibit 38, Deposition of John Lepper 364:4–17.

25.   Defendant Stephen Fellman stated that he did not like the treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 267:14–20.

26.   Decedent–Defendant Mayor Ralph Scordino spoke with residents concerning the Lepper Family Treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 228:3–7; Plaintiffs'

Exhibit 38, Deposition of John Lepper 308:22–11, 309:18–24, 310:10–13.

27.     John Lepper was told to stop working on the Lepper Family by persons working for the Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 219:14–23 (ability to issue a stop work order); Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, pp. 390–393

28.     John Lepper wanted to "build a hatch for the kids to be able to climb up to" the Lepper Family Treehouse." Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 62:7–12; Plaintiffs' Exhibit 38, Deposition of John Lepper 87:7–13.

29.     John Lepper did not complete the windows on the Lepper Family Treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 62:7–12; Plaintiffs' Exhibit 38, Deposition of John Lepper 87:7–13.

30.     Children who utilized the Lepper Family Treehouse were supervised by Noelle Lepper. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 67:2–12.

**The Village of Babylon Officials knew of the Drug Problem and Plaintiffs' outspoken views about the Drug Problem**

31.     Plaintiff John Lepper called the police and notified his neighbors regarding illegal drug use in the neighborhood. Plaintiffs' Exhibit 38, Deposition of John Lepper 208:4–9, pp. 209–211.

32.     Plaintiff John Lepper created a treehouse for the children as an expression of his concern over the opioid crisis and the lack of any attention, concern , or response by the Administration of the Village of Babylon. Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 4.

33.    Village of Babylon officials, inclusive of the named Defendants, were aware of the drug problem surrounding the Subject Property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 256–257, 258:2–17; Plaintiffs' Exhibit 43, Gerard Glass Deposition, 186:10–16; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 133:6–10, 300:22–25, 301:2–5; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 13-15.

34.    Decedent–Defendant Mayor Ralph Scordino acknowledged that there is an opioid epidemic for which he applied for a license to carry a weapon. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 133:15–23.

35.    Decedent–Defendant Mayor Ralph Scordino spoke to many neighbors concerning the drug problem and in support of John Lepper. Plaintiffs' Exhibit 38, Deposition of John Lepper 308–310, 310:10–13 (noting 50 people who signed a petition on John Lepper's behalf).

36.    Decedent–Defendant Mayor Ralph Scordino knew that a house on the next street, a block away on Wyandanch Avenue in the Village of Babylon, was raided for drugs by law enforcement where a gun was recovered. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 300–301:22–25, 8–16, 302:2–3, 316:7–12; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

37.    Defendant Village of Babylon Trustee Anthony Davida lives on 83 Wyandanch Avenue, Village of Babylon, County of Suffolk, State of New York since 1961. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 30:22–24, 31:3–4, 69:12–15.

38.    Defendant Village of Babylon Trustee Anthony Davida swears he has not seen any other treehouse in the Village of Babylon before John Lepper's. Plaintiffs' Exhibit 28, Anthony

Davida Deposition, 62:14–20; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 15.

39.     Defendant Village of Babylon Trustee Anthony Davida swore that he never saw a treehouse in the Village of Babylon other than the Lepper Family Treehouse that is the subject of this litigation. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 65:6–10, 66:8–13; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 14-15.

40.     Defendants knew that Plaintiffs' neighbor's house was raided for drugs, the same house that had a large elevated structure/playhouse adjoining the property line, but claim that they had no idea that such structure had no building permit. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 300, 303:19–25, 304:2–7; Plaintiffs' Exhibit 38, Deposition of John Lepper 346:16, 347:16, pp. 350–351, 364:4–17; see also Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14-15.

41.     Defendant Anthony Davida claims he was shocked when he saw the framework of the Lepper Family Treehouse but claims to not know about his neighbor's elevated structure/playhouse adjoining the property line. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 75:12–20, 80:13–25, 82:4–15; see Plaintiffs' Exhibit 38, Deposition of John Lepper 346:16, 347:16; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 15; Plaintiffs' Exhibit 46.

42.     Defendant Mayor Ralph Scordino testified that the next-door neighbor to a house raided for drugs which had a large, elevated structure/playhouse was the same Anthony Davida who reported timbers in a tree at the Lepper Property. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 316:17–25, 317:10–19; see Plaintiffs' Exhibit 38, Deposition of John Lepper 337:16–20, pp. 338–339.

43.     Defendant Anthony Davida swore he was able to see there was no building permit in the front of Plaintiffs' window upon witnessing timbers in a tree at the Subject Property but did not notice the elevated structure down the block from his home on Wyandanch, Village of Babylon, County of Suffolk, State of New York. (Plaintiffs' Exhibit 28, Anthony Davida Deposition, 148:2–15, 149:17–25; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 14-15.

44.     Although decedent–Defendant Mayor Ralph Scordino told code enforcement about the house raided for drugs which had a large elevated structure/playhouse next door to Defendant Anthony Davida, no summons was issued for the failure to obtain a building permit like the Lepper Family Treehouse. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 317:10–19; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

45.     The decedent–Defendant Mayor Ralph Scordino had recently obtained a permit to carry a weapon because of people that come into the Village of Babylon on drugs or liquor. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 130:5–18.

46.     Noelle Lepper spoke with many people within the Village of Babylon about the drug issues and Lepper Family Treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 252–253:14–25:2–8.

47.     John Lepper spoke with a great many people within the Village of Babylon about the drug issues and Lepper Family Treehouse. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 253–254:9–25:2–5; Plaintiffs' Exhibit 38, Deposition of John Lepper 206:5–14; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 4.

48.     The Defendants Village of Babylon was not happy that John and Noelle Lepper were talking about a drug problem in the Village of Babylon. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 255:7–18, 256:5–13.

49.     The Defendants met prior to issuing the summons against John Lepper. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 199:15–25, 200:2–5.

50.     Plaintiff John Lepper made Defendants aware of the drug problem prior to the issuing of summons against John Lepper. Plaintiffs' Exhibit 38, Deposition of John Lepper 217–218:18–25.

51.     Plaintiff John Lepper had conversations with persons within the Defendant Village of Babylon Building Department about finding a hypodermic needle prior to the Defendants issuing summons against John Lepper. Plaintiffs' Exhibit 38, Deposition of John Lepper pp. 229–230, 235:9–21.

52.     Decedent–Defendant Mayor Ralph Scordino provided sworn testimony that he "made the determination by visually looking at it and passed the information over to the Building Department. You would have to be an idiot not to realize that there is safety issues with that tree house." Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 343–344:25, 1–11; see also Plaintiffs' Exhibit 28, Anthony Davida Deposition, 190:14–22, 191:5–10.

53.     Defendant Stephen Fellman was required to report to the Mayor and the four trustees in the Village of Babylon. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 116:9–22.

54.     Defendants, knew that a school bus stop near Plaintiffs' property had to be moved because of drugs. Plaintiffs' Exhibit 37, Ralph Scordino Deposition,  304–305:18–25, 7–16, 307:12–

19; Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, see 212:24–214:15; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

55.     Defendants, knew that one of the properties near the Subject Property for which there is drug activity has a treehouse. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 313:16–25; Plaintiffs' Exhibit 38, Deposition of John Lepper pp. 350–351, 347:2–16; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

## John Lepper submitted a permit application

56.     John Lepper submitted a permit application as he was told by the Village of Babylon Defendants. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 269:13–24; Plaintiffs' Exhibit 38, Deposition of John Lepper 81–82:22–6, 203:5–16, pp. 243–244 (detailing conversation before submission), 269:19–2, 270:3–21 (noting that it was deemed acceptable by Village of Babylon Building Department); Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 9-23.

57.     Plaintiff John Lepper submitted a building permit with the elevation drawing and survey. Plaintiffs' Exhibit 38, Deposition of John Lepper 93:15–22.

58.     Plaintiff John Lepper's building permit application was reviewed and accepted by the Defendant Village of Babylon Defendants without stating the need for architectural drawings. Plaintiffs' Exhibit 38, Deposition of John Lepper 241:5–19; see *id.* 243–244; see also Plaintiffs' Exhibits 9–13 (other treehouses that submitted substantially the same or less quality drawings for already–completed treehouses).

59.     Defendants knew that the Lepper Family Treehouse was reported to be under 90 square feet and that it would not

require a permit. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 157:14–23, 158:3–11; Plaintiffs' Exhibit 38, Deposition of John Lepper 372:4–15, 81:22–82:20; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 41.

60.     Holly Zappalla was aware of the Hypodermic Needle found the bushes of the Subject Property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 250:9–25, 251:9–19; Plaintiffs' Exhibit 38, Deposition of John Lepper pp. 229–230, 236–240; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

61.     Holly Zappalla stated that she was aware of Plaintiffs' neighbor with a drug problem and that is from where the hypodermic needle found on the Subject Property may have come. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 251–252:20–25:2–5; Plaintiffs' Exhibit 38, Deposition of John Lepper 235:9–21; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

62.     Defendants Deborah Longo and Stephen Fellman were persons inside the building department responsible for speaking to John Lepper and taking paperwork regarding a permit for the Lepper Family Treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 129:14–17; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 199:15–25; Plaintiffs' Exhibit 28, Anthony Davida Deposition, 159:2–25; Plaintiffs' Exhibit 38, Deposition of John Lepper 239:23–240:6.

63.     Prior to submitting a Building Permit Application to the Defendants, John Lepper received instructions from the Village of Babylon Building Department. Plaintiffs' Exhibit 38, Deposition of John Lepper 275:13–20; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 9-13.

64.     The Building Permit Application submitted by John Lepper to Defendants was sufficient and a permit could be issued based on what John Lepper submitted. Plaintiffs' Exhibits 4 and 38, Deposition of John Lepper 269:19–2–270:3–21; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 12, 22.

65.     John Lepper called the Village of Babylon Building Department in June 2018, after submitting the Building Permit Application (see Plaintiffs' Exhibits 3, 4) to Defendants. Plaintiffs' Exhibit 38, Deposition of John Lepper 93–94:23–7; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 16.

66.     John Lepper did not receive a response to the status check of his permit application from the Village of Babylon prior to the issuance of tickets. Plaintiffs' Exhibit 38, Deposition of John Lepper 203:5–205:16; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 17.

67.     John Lepper called the Village of Babylon more than once to check on the status of the permit application prior to the issuance of tickets. Plaintiffs' Exhibit 38, Deposition of John Lepper 283:3–17; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 16-17.

68.     Defendant Deborah Longo determined that John Lepper did not follow through and a notice of violation and summons were sent to John Lepper over the Lepper Family Treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 168:16–23; 168–169 (noting Ms. Longo's troubled memory as to these events), see Plaintiffs' Exhibit 38, Deposition of John Lepper 239:23–240:6.

69.     Defendant Deborah Longo was appointed by and reported to decedent–Defendant Mayor Ralph Scordino.

Plaintiffs' Exhibit 28, Anthony Davida Deposition, 154:4–10, 155:17–19.

## The tickets issued to John Lepper

70.     Defendant Deborah Longo received legal advice from Defendant Gerard Glass regarding the issuance of accusatory instruments to John Lepper over the Lepper Family Treehouse. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 177:16–21; Plaintiffs' Exhibit 36, Deborah Longo Deposition, 228:15–22.

71.     Deborah Longo ran the building department at the Village of Babylon throughout the prosecution(s) of John Lepper. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 165–166:22–25, 2–7; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 199:15–25.

72.     Defendant Gerard Glass had the opportunity to review and prepare accusatory instruments as Attorney for the Defendant Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 111:13–22, 112:14–25.

73.     John Lepper did not receive any violation issued from the Village of Babylon until July 19, 2018. Plaintiffs' Exhibit 38, Deposition of John Lepper 280:3–8.

74.     Defendant Stephen Fellman demanded amounts of money required from Plaintiff John Lepper as to the tickets he issued for Treehouse – without a permit. Plaintiffs' Exhibit 38, Deposition of John Lepper 248:4–8; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 23.

75.     Defendant Stephen Fellman refused to explain the tickets to John Lepper for Treehouse – without a permit aside from admitting that the "mayor's office received a number of complaints." Plaintiffs' Exhibit 38, Deposition of John Lepper

249:7–12; 249:20–250:9; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 25.

76.     Plaintiff John Lepper had thirty to four neighbors in court supporting him when he plead not guilty to the initial violations he received from the Village of Babylon. Plaintiffs' Exhibit 38, Deposition of John Lepper 205:2–16; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 34.

## The Prosecution of John Lepper

77.     John Lepper invited Stephen Fellman to inspect the Lepper Family Treehouse and sought guidance to be in compliance with the purported Village of Babylon Code Violations signed by Stephen Fellman yet Stephen Fellman refused. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 163:25, 164:2–3; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 28.

78.     John Lepper was subject to possible incarceration if convicted by the Village of Babylon for the tickets issued against him. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 276:6–12.

79.     Decedent–Defendant Mayor Ralph Scordino played golf with the Village of Babylon Justice, sees him every Tuesday and ran on the same political platform with him and all Defendants who are elected officials. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 66:21–25, 68:2–17, 165–174, 176:14–19 (communicating with the Judge on a personal level).

80.     Defendants Deborah Longo and Stephen Fellman discussed the Lepper Family Treehouse with members of the Village of Babylon Court, Village of Babylon Mayor, Defendant Gerard Glass, Village of Babylon Trustees as well

as the Village of Babylon Zoning Board. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 144:12–24, 146, 20–25, 147:2–12, 147–149, 150:3–19; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 199:15–25, 201:13–18.

81.    No other prosecutions have occurred under Village of Babylon Code Section 365–25 involving a playhouse or a structure in a tree. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 137:2–14, 137:15–22; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 329:14–18, 330:9–12.

82.    Village of Babylon Code Section 365–25 does not mention drawings or engineers. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 232–233:17–25, 2–14.

83.    Defendants claim that the Lepper Family Treehouse could not utilize handwritten drawings while other treehouses/playhouse structures within the Village of Babylon received permits long after completion based on the same submissions that John Lepper provided the Village of Babylon. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 159–160:2–25, 2–10; Plaintiffs' Exhibits 9–13 (detailing other treehouses found within the Village of Babylon), Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 63.

84.    John Lepper, who was prosecuted by Defendant Gerard Glass, was the only one prosecuted for a Treehouse in the Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 137–138:22–25:2–14, 281–282:23–25, 2–3.

85.    There is no definition of the phrase "outdoor playground" or the word "gym" in the Village of Babylon Code. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 148:19–25.

86.     There is no definition or use of the word "treehouse" in the Village of Babylon Code. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 149:5–11.

## Threats of Daily Fines and Forcible Treehouse Removal

87.     Defendants issued a letter to John Lepper stating that John Lepper could be fined daily. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 202:14–22, 223:14–24; Plaintiffs' Exhibit 38, Deposition of John Lepper 424:6–13, 425:2–18, 426:16–24, 432:12–18.

88.     Defendants issued a letter based requiring removal of the treehouse or facing fines on a daily basis prior to allowing John Lepper to appeal Village of Babylon Justice John Rafter's decision. Plaintiffs' Exhibit 38, Deposition of John Lepper 425:2–18.

89.     Defendants cited safety as the cause to remove the Lepper Family Treehouse without ever inspecting the treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 222–223:17–25:2; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 336–337:20–25, 2–4; Exhibit 28, Anthony Davida Deposition, 190–191:14–22, 5–10; Plaintiffs' Exhibit 38, Deposition of John Lepper 432:12–18, 425:2–18.

90.     Defendant Stephen Fellman said that he never made a determination as to the safety of the treehouse at the time but made a determination afterwards. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 146:3–9, 146–147:16–25, 2–5, 148:20–24; cf. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 190–191:14–22, 5–10.

91.     Defendants admitted in Federal Court that it would seek to fine John Lepper daily for having a treehouse on his

property. Plaintiffs' Exhibit 38, Deposition of John Lepper 427–428:7–9.

92.     Defendants threatened daily fines against Plaintiffs that would consume the value of the property, thus taking the Subject Property. Plaintiffs' Exhibit 38, Deposition of John Lepper 425:2–18, 426:16–24, 432, 20–23 (Plaintiffs' Exhibit 19), 432:12–18.

93.     On September 4, 2019, Defendant Stephen Fellman testified that he believes that the Lepper Family Treehouse is safe. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 148:7–19.

94.     Defendant Stephen Fellman issued violations to John Lepper on the basis of construction without a building permit. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 149:6–21; Plaintiffs' Exhibit 20 (dismissing the accusatory instruments which recited Treehouse – without a permit); Plaintiffs' Exhibit 38, Deposition of John Lepper 99:10–19, see 249:7–12 (noting lack of explanation).

95.      On September 4, 2019, Defendant Stephen Fellman testified that he only knew of the Lepper Family Treehouse and one other. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 158:19–24, 160:9–16, 195:19–25.

96.     Defendant Stephen Fellman jobs duties as Building Inspector were to determine that structures were structurally sound to which Mr. Fellman stated to determine "Safety and the building is not gonna collapse and fall down or blow down in a hurricane." Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 98:24–99:25.

97.     Defendants had threatened people with daily fines within the Village of Babylon. Plaintiffs' Exhibit 37, Ralph

Scordino Deposition, 333:21–24; Plaintiffs' Exhibit 38, Deposition of John Lepper 424:6–13.

98.  Defendant Attorney Gerard Glass was familiar with the appeal process from a Village of Babylon Court conviction yet Defendants sent and received letters threatening daily fines and removal of the treehouse to John Lepper. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 216:5–14, 217, 5–18, 214:8–14, 218:3–25, 242:17–21 (fine amount); see Plaintiffs' Exhibit 20 (appellate court decision), Plaintiffs' Exhibits 18–19.

99.  The Defendant Village of Babylon Building Inspector has the authority to order the removal of a structure within the Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 222:14–20; Plaintiffs' Exhibit 18.

## Treehouses within the Village of Babylon

100.  Defendants appear to not recall other treehouses, receiving a litigation hold notice in this matter or complying with the litigation hold notice received in this lawsuit, some unable to remember whether they deleted electronic mailings in this case. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 62:3–13, 77:14–19, 87:7–14, 88:19–25, 89:2–6, 97:3–8, 17–21 (this lawsuit is a "blip" to her), 162:7–16 (knowing of only two treehouses); Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 177:15–17, 187:16–22, 188–189:23–25, 2–5; Exhibit 28, Anthony Davida Deposition, 123:16–23. see also, e.g., *id.* 8:15–22, 117:6–7. 118:6–21 (witness swears he doesn't remember anything).

101.  Defendant Building Inspector Stephen Fellman claims to have no knowledge of any other treehouses within the Village of Babylon, County of Suffolk, State of New York aside from

the Baldauf Treehouse and the Lepper Family Treehouse. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 166:2–13.

102.     Village of Babylon Defendants are aware of other treehouses within the Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 258:6–12; Plaintiffs' Exhibits 9– 13 (noting other treehouses); Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 63.

103.     Noelle Lepper was able to observe a raised structure on neighboring property from the ground on her own property. Plaintiffs' Exhibit 42, Noelle Lepper Deposition, 229:14–25, 230, 8–24; Plaintiffs' Exhibit 38, Deposition of John Lepper 346:16–347:16; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14.

104.     Defendant Stephen Fellman did a spot load and visual inspection of the only other Treehouse before issuing it a Certificate of Occupancy within the Village of Babylon, County of Suffolk, State of New York. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 165:5–13; see, potentially, Exhibits 9–13 (noting other Village of Babylon Treehouses not produced throughout this litigation).

105.     Defendant Stephen Fellman was prosecuted for Civil Rights violations by the United States government. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 171:4–7, 175:16–22.

## Letter from the Mayor about Treehouses and Other Things

106.     All the Village of Babylon Defendants named herein answered to the Defendant Mayor Ralph Scordino, at all times relevant in the Amended Consolidated Complaint. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 23:6–11; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 234:10–16.

107.    Decedent–Defendant Mayor Ralph Scordino sends a letter to the Village of Babylon residents concerning the Village of Babylon three or four times a year. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 231:3–8; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 146:9–21, 148:15–23; Exhibit 28, Anthony Davida Deposition, 171:16–22, 192:18–24.

108.    Everyone in the Village of Babylon received a letter in the office from the Mayor about the Treehouse among other things during the Christmas holidays of 2018. Exhibit 28, Anthony Davida Deposition, 172:3–18, 173:18–23.

109.    The Defendant Mayor Ralph Scordino distributed a letter about treehouses among other things to Defendants for their approval. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 219:12–22.

110.    The named Defendants agreed with Defendant Mayor Ralph Scordino's letter and the issuance of tickets against Plaintiff John Lepper over the Lepper children's treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 211:20–25; Exhibit 28, Anthony Davida Deposition, 115–116.

111.    Defendant Stephen Fellman did not inspect the Lepper Family Treehouse. Plaintiffs' Exhibit 36, Deborah Longo Deposition, 213:8–20; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 160:23–25.

## Building Permit Application

112.    Defendants only had one permit application for a treehouse in the Village of Babylon. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 161–162:24–25, 2–3.

113.     Defendants were aware of completed treehouses without a permit prior to the prosecution of John Lepper. Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 14, see also *id.* at ¶ 63.

114.     Plaintiff John Lepper submitted a building permit to the Village of Babylon once he received a letter stating that a permit may be required. Plaintiffs' Exhibit 38, Deposition of John Lepper 282:9–18; see Plaintiffs' Exhibits 3, 4.

115.     Defendants claim a physical inspection was required for a Certificate of Occupancy and yet claim only one inspection of a Treehouse ever occurred within the Village of Babylon. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 162–163:19–22, 3–24; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 63.

116.     Defendant Anthony Davida swore during a deposition that the Village of Babylon Building Inspector did a safety inspection on the Lepper Family Treehouse. Exhibit 28, Anthony Davida Deposition, 188–19:19–25, 2–12.

117.     Plaintiff John Lepper swore during a deposition that the Village of Babylon Building Inspector refused to examine the Lepper Family Treehouse or explain the violations. Plaintiffs' Exhibit 38, Deposition of John Lepper 249:20–250:9.

118.     Defendant Stephen Fellman, who answered to Defendant Mayor Scordino during the prosecution(s) of John Lepper, is the person who makes the determination as to whether an application for a building permit is complete within the Village of Babylon. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 199:6–14; Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 224:20–22; Exhibit 28, Anthony Davida Deposition, 159:14–25.

119.    Defendant Gerard Glass was present in the United States District Court when then USDJ Joseph F. Bianco suggested that the Lepper family submit a survey and engineer's report to the Defendant Village of Babylon and Defendants did receive those items. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 237:4–23.

## First Amendment Retaliation

120.    John Lepper spoke out against the illegal drug use in the Village of Babylon. Plaintiffs' Exhibit 38, Deposition of John Lepper 179:16–180:7, 181:2–5, pp. 194–198; 326:5–9; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 4.

121.    John Lepper spoke to his neighbors who spoke to, among others, the decedent–Defendant Mayor Ralph Scordino about the Lepper Family Treehouse and illegal drugs in the Village of Babylon. Plaintiffs' Exhibit 38, Deposition of John Lepper 179:16–180:7, 190:12–23, pp. 196–198, 309:18–310:13; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 34.

122.    John Lepper spoke out against illegal drug use in the Village of Babylon prior to being issued violations by Defendants. Plaintiffs' Exhibit 38, Deposition of John Lepper 217:18–25; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 13-14.

123.    John Lepper spoke out against illegal drug use in the Village of Babylon prior to his first court date. Plaintiffs' Exhibit 38, Deposition of John Lepper 192:24–193:5; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 4, 12-14.

124.    Defendant Gerard Glass told John Lepper to make a case about the illegal drug use he reported to Defendant Glass, as Village of Babylon Attorney, and John Lepper

refused. Plaintiffs' Exhibit 38, Deposition of John Lepper 201:9–16.

125.    John Lepper reported violations of his rights to various news media. Plaintiffs' Exhibit 38, Deposition of John Lepper 160:6–12, pp. 160–163, 162:12–15, 164:2–11.

126.    John Lepper reported what he perceived as unfair treatment to locally elected officials, see Plaintiffs' Exhibit 22, and was subject to retaliation by the Defendants in the form of tickets on Halloween in front of his kids. Plaintiffs' Exhibit 38, Deposition of John Lepper 107:7–17; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 55.

127.    John Lepper reported unfair treatment and a violation of his rights various press outlets after receiving tickets on Halloween in front of his kids. Plaintiffs' Exhibit 38, Deposition of John Lepper 164:2–11, 172:4–10, P.174:3–12.

128.    John Lepper spoke out publicly against the Village of Babylon Defendants. Plaintiffs' Exhibit 38, Deposition of John Lepper 326:5–9, 327:8–16, 355:22–356:2; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶ 34 (neighbors in support of John Lepper coming to Court on his behalf).

129.    The Village of Babylon Judge Rafter did voice his disapproval with John Lepper speaking to the press and Congressman King. Plaintiffs' Exhibit 38, Deposition of John Lepper 112:2–25.

130.    The Village of Babylon Judge Rafter's wife works with the complainant to decedent–Defendant Mayor Ralph Scordino about the Lepper Family Treehouse. Plaintiffs' Exhibit 38, Deposition of John Lepper 373:7–14, P.376:8–16, P.377:3–12.

131.    Defendants sought to harm John Lepper for speaking to the press. See Plaintiffs' Exhibit 20.

132.    John Lepper displayed signage about illegal drug activity, the needle he found in the bushes and the square footage of the Lepper Family Treehouse at the Subject Property. Plaintiffs' Exhibit 38, Deposition of John Lepper 378:8–20.

133.    John Lepper supported candidates who ran against the named Defendants. Plaintiffs' Exhibit 38, Deposition of John Lepper 383:4–22.

134.    John Lepper was outspoken about the Heroin problem, issues of safety and Defendants were aware that John Lepper went on social media and contacted the news media to, among other things, voice his belief that his rights were being violated. Plaintiffs' Exhibit 28, Anthony Davida Deposition, 186:4–25; Plaintiffs' Exhibit 38, Deposition of John Lepper 112:2–25; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 4, 34.

135.    Defendants sought constant updates from Defendant Stephen Fellman and spoke about the Lepper Family Treehouse after its construction. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 212–214:25–17; Exhibit 28, Anthony Davida Deposition, 114:4–24, 115:9–17.

**Animus and Retaliation against John Lepper**

136.    Defendants fought very hard and spent a lot of money in federal court because Defendants felt that a heroin recovery office was not part of the quality of life in the Village of Babylon. Plaintiffs' Exhibit 37, Ralph Scordino Deposition, 339:2–10, 13–20.

137.    Defendant Gerard Glass did render legal advice in connection with the Lepper Family Treehouse to the Village of Babylon Defendants. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 173–174:16–25:2.

138.    Defendant Gerard Glass did render legal advice to Village of Babylon Defendants prior to the issuance of the accusatory instruments to John Lepper. Plaintiffs' Exhibit 43, Gerard Glass Deposition, 177:6–15; Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 217:2–11.

139.    Defendants, with the advice of an attorney, issued John Lepper tickets for Village of Babylon violations, stating Treehouse – without a permit, and never charged variance, safety or any of the new issues raised after the commencement of this federal action. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 220–222:21–23; Plaintiffs' Exhibit 20.

140.    Defendant Gerard Glass did have a financial incentive to continue to prosecute John Lepper. Plaintiffs' Exhibit 45; Plaintiffs' Exhibit 38, Deposition of John Lepper 331:16–332:3.

141.    John Lepper spoke out and publicly protested the monies Defendant Gerard Glass received for legal services related to a Treehouse. Plaintiffs' Exhibit 38, Deposition of John Lepper 329:10–21, 331:16–332:3.

142.    Defendant Anthony Davida did not respond to John Lepper's public inquiries as to why the bus stop was moved or drugs in the Village of Babylon at a public hearing. Plaintiffs' Exhibit 38, Deposition of John Lepper 337:2–20; Plaintiffs' Exhibit 44, John Lepper Affidavit ¶¶ 13-15.

## The Lepper Family Treehouse is safe

143.    Defendant Stephen Fellman is aware of the very large storm that hit the Village of Babylon after the Lepper Family Treehouse was built. Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 98–99:24–25, 9–19.

144.    James Brown, a licensed professional engineer, found that the Lepper Family Treehouse was safe. Plaintiffs' Exhibits 7, 8; see also D.E. 29–2.

145.    After a very large storm brought a lot of trees down in the Village of Babylon, the Lepper Family Treehouse did not come down. Exhibit 28, Anthony Davida Deposition, 120:6–25.

DATED AT   Melville, New York
           July 15, 2021

/S/

_____

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
135 Pinelawn Rd, *suite* 250s
Melville, New York 11747
Phone: (631) 450–2515
FAX: (631) 223–7377
email Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR. (VY6405)
*of counsel*
Phone: (631) 470–0231
Email barrister@yannalaw.com

To : ERIC TOSCA, ESQ.
*Attorney for Defendants*
Kelly Rode & Kelly, Esqs.
330 Old Country Road
Mineola, NY 11580
Phone: 516–739–0400
Fax: 516–739–0434
Email: eptosca@krklaw.com

**2:18-cv-07011–JMA-AYS | 2:21-cv-00014-JMA-AYS**

# United States District Court

### for the

# Eastern District of New York

JOHN LEPPER and NOELLE LEPPER, individually and as parents and natural guardians of their infant children,
B.J.L. AND B.I.,,

*Plaintiffs*

–v–

VILLAGE OF BABYLON; and
ESTATE OF RALPH SCORDINO, Mayor-decedent, KEVIN MULDOWNEY, current/former Deputy Mayor, ROBYN SILVESTRI, current/former Village Trustee, TONY DAVIDA, current/former Village Trustee, MARY ADAMS, current/former Village Trustee and acting Mayor; STEPHEN FELLMAN, Village of Babylon Building Inspector; SUZANNE SCHETTINO, Department of Public Works; GERARD GLASS, Esq., current/former Village of Babylon Attorney; DEBORAH LONGO, Planning Board, Village of Babylon, each individually and in their official capacity, and John and/or Jane Doe, unnamed, unidentified complainants,

*Defendants*

## PLAINTIFFS' ATTORNEY'S DECLARATION OPPOSING DEFENDANTS' REQUEST FOR SUMMARY JUDGMENT

### LAW OFFICE OF CORY H. MORRIS

*Attorney for Plaintiffs*
Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR., *of counsel*
barrister@yannalaw.com

I, Cory Morris, an attorney duly licensed to practice law in the State of New York and admitted to practice in the Eastern District of New York, declare under the penalties of perjury pursuant to 28 U.S.C. §1746, that the following statements are true and correct, to the best of my knowledge:

1.     I am the counsel of record for Plaintiffs, John and Noelle Lepper as well as their infant children.

2.     I represented and still represent John Lepper in the Village of Babylon Justice Court and the Appellate Term where Mr. Lepper has become the focus of successive prosecutions because he erected a treehouse for his children over three years ago.

### PRELIMINARY STATEMENT

3.     The Defendants seem to have lost sight of the fact that on their Motion for Summary Judgment, they have the burden of establishing by substantial credible admissible evidence that there are no triable issues of fact which would prevent entry of summary judgment against the plaintiffs.

4.     According to Local Rule 56.1 and the Individual Practice Rules of USDJ Azrack, Defendants are supposed to present a statement of uncontroverted facts supported by references to substantial credible admissible evidence identified with particularity.

5.     The Defendants as the moving party on this Motion for Summary Judgment have failed to support their allegations of allegedly undisputed facts with references to admissible evidence.

6.     Defendants referred to general affidavits without any reference to specific paragraphs in those affidavits to support facts which are controverted by the Plaintiffs and, worse, seem to reference items (i.e. other treehouse) not produced in

2

discovery, see *infra* ¶¶ 39-43, or for which Defendants previously controvert during their depositions.

7.   Along with withholding evidence, Defendants raise almost insurmountable barriers to a proper response by the Plaintiffs since there are very few specific references to allegedly admissible evidence supporting the statements alleged in defendants' Rule 56.1 Statement as undisputed facts.

8.   Nevertheless, Plaintiffs address the issues raised by those alleged uncontroverted statements of fact and establish clearly through affidavits by individuals with personal knowledge of the facts and uncontroverted documentary evidence that triable issues of fact exist sufficient to preclude any possible grant of summary judgment in favor of the Defendants.

## DEFENDANTS HAVE NOT COMPLIED WITH RELEVANT AND MATERIAL DISCOVERY REQUESTS

9.   Summary Judgment should not be granted to the Defendants in this action because Defendants have willfully chosen to deny discovery materials which are "germane to the defense, and that it is neither cumulative nor speculative…," *Alphonse Hotel Corp.* v. *Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners* v. *Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)), including but not limited to Defendants' communications and other Village of Babylon treehouses.

10.  In this case, Defendants refuse to even produce a copy of the Defendant Mayor's Death Certificate nonetheless the myriad of other treehouses for which Defendants provided sworn testimony of living in the Village of Babylon for decades yet knowing absolutely nothing about.

11.  In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons,

3

it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

12. John Lepper served a Litigation Hold Notice upon all parties involved in this litigation. See *infra,* Plaintiffs' Exhibit 30.

13. Defendants have totally ignored the Litigation Hold Notice and failed to identify, much less produce, a substantial body of communications which certain Defendants have admitted during their depositions does exist. See *infra*, ¶¶ 39-43, Plaintiffs' Exhibit 36, Deborah Longo Deposition, 62:3–13, 77:14–19, 87:7–14, 88:19–25, 89:2–6, 97:3–8, 17–21 (this lawsuit is a "blip" to her), 162:7–16 (knowing of only two treehouses); Plaintiffs' Exhibit 41, Stephen Fellman Deposition, 177:15–17, 187:16–22, 188–189:23–25, 2–5; Exhibit 28, Anthony Davida Deposition, 123:16–23; see also, e.g., *id.* 8:15–22, 117:6–7. 118:6–21 (witness swears he does not remember anything).

14. Plaintiff's claim that those emails contain material substantial credible admissible evidence clearly establishing plaintiffs' claims of First Amendment retaliation; the threat of excessive fines in violation of the Eighth Amendment; denial of equal protection and conspiracy to deny equal protection under the Fifth and 14th Amendments; substantive due process; attempts to take private property without due process of law in violation of the Fifth Amendment; and most important evidence which will establish the existence of a conspiracy to deprive the Plaintiffs of their constitutional rights in violation of 42 USC §1983.

15. Further, Defendants sought to intimidate John Lepper, literally seeking to have arrested (see *infra* Plaintiffs' Exhibit 35, Affidavit of Charlie Lepper) and harm his employment with The Fire Department of New York City. See *infra,* Plaintiffs' Exhibit 38, ¶¶ 55–60.

16. Defendants' retaliation against John Lepper, which did not mean that the Plaintiffs in this action withdrew their lawsuit or will not suffer damages if their treehouse is destroyed, resulted in a second filing that this Honorable Court Ordered Consolidated.

17. Defendants refused to timely (or at all) provide communications or produced witnesses for deposition who had no recollection of relevant and material communications they should have identified and had available subject to the Litigation Hold Notice. For example the testimony of Mayor Ralph Scordino,

> Q. Mayor, [did you] ever communicate with over e-mail regarding the tree house?
> A. I would have to refresh [my] memory and look at e-mails.
>
> Q. How?
> A. I would have to look at e-mails.
>
> Q. Do you have the e-mails with you?
> A. Of course not.
>
> Q. Do you have access to your electronic mail through your phone?
> A. No.

Plaintiffs' Exhibit 37, Ralph Scordino Deposition, pp. 40–45, 49:4–13, 57:5–19 (sudden recollection of using a "bluefin1" e-mail address after equivocating for nearly twenty pages of testimony);

> Q. Ms. Longo, any other notes like that that haven't been produced?
> A. No. I didn't know I had to, it's a marble notebook.

> Q. Because nobody told you, right?
>   A. No.
>
> Q. No lawyer told you to preserve it, right?
>     MR. TOSCA: Objection. Don't answer the question. [referring to Counsel for Plaintiffs] You can stare all day if you want, but why are you staring?

Plaintiffs' Exhibit 36, Deborah Longo Deposition, 120:13–24 (external quotation marks omitted).110:25–25, 111:2–10 (emphasis added and external quotation marks omitted); see also *id.* at pp 110–113, generally, *id.* at 152:5–16, 153:3–16

18. Counsel for Defendants often instructed witnesses at depositions not to answer questions, for example:

> Q. Has anyone told you to say you that you don't recall?
>   MR. TOSCA: Objection. Don't answer the question." *Id.* at 130:2–5.

19. Hours into the deposition of Defendant Deborah Longo after she stated over and over again that she did not remember anything, she suddenly recalled that she spoke to persons, like her family, about the treehouse and the "fireman break[ing] balls" *Id.* 194:9–25, 232:17–23.

20. Without any recollection, or production of the electronic mailings, it was particularly troublesome for the witnesses offered by the Defendants in an effort to delay the deposition of the Defendant Mayor to then admit she communicates with Defendant Building Inspector Stephen Fellman by electronic mail. *Id.* 130:6–23.

21. Defendants have refused to provide discovery necessary for a dispositive motion. *Villante* v. *Dept. of Corrections of City of New York*, 786 F.2d 516 (2d Cir. 1986).

22. Indeed, "Where the plaintiff's claim could only succeed upon a showing of actual or constructive knowledge on the part of

6

supervisory personnel and where facts solely in the defendants' control were therefore at the heart of the necessary proof, the district court's failure to order compliance with the plaintiff's request for deposition discovery was an especially crippling blow." *Id.* (citing *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985)).

23.   Accordingly, Defendants' dispositive motions should be denied and this matter should proceed to a jury trial together with all other relief this court deems just and proper.

## DEFENDANTS' ALLEGED LACK OF NOTICE, DENIAL OF THE ABILITY TO NAME THE ESTATE OF RALPH SCORDINO, CLAIMS OF REQUIRING ADDITIONAL DISCOVERY AND SANCTIONS SHOULD BE DENIED

24.   Defendants decry several procedural hurdles without mentioning Defendants' stipulation (D.E. 20) and waivers to allow for their late answer including the Defendants' failure to properly notice in the first instance or engage in a proper Gen. Mun. Law § 50-H hearing in a contentious litigaiton for which Defendants sought the deposition of a five and seven year old child, the undersigned attorney and had the opportunity to question Plaintiff John and Noelle Lepper in excess of seven (7) hours each in the initial action.

25.   Prior to Your Honor's consolidation of this matter, USDJ Brian M. Cogan sough to have a hearing under the filing docketed under 2:21-cv-00014 for which John Lepper and the undersigned provided notice to the Defendants who now seek dismissal based upon service of the consolidated matter as alleged in Defendants' boilerplate affidavits.

26.   On January 14, 2021, This Honorable Court Ordered that "Defendants are directed to file an answer to the complaint filed in 2:21-cv-00014 by January 25, 2021. The Court stays

any motion practice regarding the complaint until the Court directs otherwise" for which the undersigned sought to name the Estate of Defendant Ralph Scordino to no avail.

27. On January 27, 2021 The undersigned was required to file a Rule 11 Safe Harbor Letter as defense counsel Eric Tosca simultaneously claimed he did not represent the decedent-Defendant Mayor Ralph Scordino yet objected, refused to provide proof of his death and sought dismissal of the lawsuit against the decedent in this action. See D.E. 99.

28. As Defendants acknowledge receipt, hence notice, of the Court Ordered Consolidation (for which neither party raised objection), the Consolidated Complaint filed as per Court Order, the Defendants cannot be heard now to complain of service of process nevertheless state that the Plaintiffs should be precluded from engaging in motion practice to serve the name Defendants, inclusive of the decedent-Defendant Ralph Scordino's estate.  See Fed. R. Civ. P. 4(m).

29. Plaintiffs have been diligent in naming the Estate of Ralph Scordino (for which Your Honor has stayed motion practice) and serving all parties the initial filing in this consolidated action, the latest of Plaintiffs' efforts being blocked by Patrick McCormick, Esq., who seeks a protective order in order to obtain proof of the decedent's death, a necessary item for starting the estate which will allow, among other things, Plaintiffs to serve this action upon all parties inclusive of the decedent-Defendant Mayor who sought John Lepper's arrest.

30. For the foregoing reasons, not only are Plaintiffs acting in good faith in light of the ongoing retaliation suffered by John Lepper and Defendants' ardent refusal to provide the most basic items required of them in federal litigation but Defendants' claims for additional discovery, sanctions and

8

dismissal on procedural grounds including service of process should be denied.

## EVIDENCE SUBMITTED OPPOSING DEFENDANTS' MOTION

31.   Annexed hereto is a true and accurate copy of records concerning the Baldauf treehouse located at 50 Thompson Avenue, Village of Babylon, New York, designated **Exhibit "1"**.

32.   Annexed hereto is a true and accurate copy of a May 10, 2018 letter from Defendant Stephen Fellman stating that "It has come to my attention that you are building a structure, in the rear/front yard of the above referenced premises, that may require a building permit," designated **Exhibit "2"**.

33.   Annexed hereto is a true and accurate copy of a building permit application submitted by John Lepper on May, 2018, and marked received by Village of Babylon Defendants, designated **Exhibit "3"**.

34.   Annexed hereto is a true and accurate copy of a building permit application submitted by John Lepper marked received May 21, 2018 by Village of Babylon Defendants, complete with survey and drawing plans, designated **Exhibit "4"**.

35.   Annexed hereto is a true and accurate copy of a photograph showing the property line and sidewalk adjoining the Plaintiffs' treehouse  designated **Exhibit "5"**.

36.   Annexed hereto is a true and accurate copy of a photograph showing e property line and sidewalk adjoining the Plaintiffs' treehouse  designated **Exhibit "6"**.

37.   Annexed hereto is a true and accurate copy of a report by James Brown, a New York licensed Professional Engineer dated and sealed on March 1, 2019 designated **Exhibit "7"**

9

referring to a Village of Babylon permit application, survey and architectural drawing stating, *in toto,* that

> Per the request and direction of Judge Bianco I am providing certification as follows: Based on my structural inspection of the treehouse structure in its current form, I find that the treehouse structure supported in the tree is structurally stable and meets code loadings for wind, snow and LL as prescribed by IBC and local requirements. In other words the structure is able to withstand all weather-related events that are in accordance with code-induced loading criteria.

Exhibit "7" (external quotation marks omitted); see also D.E. 36, uploaded in Docket 18-cv-7011.

38. Annexed hereto is a true and accurate copy of notes taken by James Brown Phd, PE, N.Y. Professional Engineer, regarding the Plaintiffs' treehouse, designated **Exhibit "8"**; see also D.E. 29-2 uploaded in Docket 18-cv-7011.

39. Annexed hereto is a true and accurate copy of records received through a Freedom of Information Law ("FOIL") Request detailing a treehouse built decades ago at 250 Fire Island Avenue, Village of Babylon, New York, where Defendant Stephen Fellman issued a Certificate of Occupancy after the homeowner filed an application for a building permit after receiving a letter designated **Exhibit "9"** from Defendant Stephen Fellman on or about May 28, 2020 stating that, "It has come to our attention, that there is a 'play house' structure In your yard that was built without a permit."

40. Annexed hereto is a true and accurate copy of photographs of a treehouse at 250 Fire Island Avenue, Village of Babylon that Mr. Lepper had the opportunity to personally inspect, designated as **Exhibit "10"**.

10

41. Annexed hereto is a true and accurate copy of records received through a FOIL Request detailing an elevated structure at 99 Park Avenue, Village of Babylon, New York, designated **Exhibit "11"**.

42. Annexed hereto is a true and accurate copy of photographs detailing a treehouse at 63 Wyandanch Avenue, Village of Babylon, New York, designated **Exhibit "12"**.

43. Annexed hereto is a true and accurate copy of records designated **Exhibit "13"** received in response to a FOIL Request, including a letter from Defendant Stephen Fellman dated February 20, 2020 stating, "It has come to our attention, that there is a 'play house' structure in your yard that was built without a permit." The elevated structure at 63 Wyandanch Avenue is down the block from the Lepper children's treehouse.

44. Annexed hereto is a true and accurate copy of Court Ordered Interrogatories posed to Gerard Glass, answering nearly every question that was previously objected to as privileged, designated **Exhibit "14"**.

45. Annexed hereto is a true and accurate copy of a document called "Notice of Violation," along with notes, from Defendant Stephen Fellman, designated **Exhibit "15"**.

46. Annexed hereto is a true and accurate copy of various Village of Babylon meetings among Defendants concerning the persecution of John Lepper and his family presumably concerning the Lepper Family Treehouses. designated **Exhibit "16"**.

47. Annexed hereto is a true and accurate copy of an August 14, 2018 letter from Defendant Stephen Fellman stating that "Per Section 116 Unsafe Structures of the International Building Code the tree house at the above referenced

11

premises is hereby deemed an unsafe structure and may not be occupied until such time a Certificate of Occupancy Is Issued," designated **Exhibit "17"**.

48.   Annexed hereto is a true and accurate copy designated **Exhibit "18"** of an October 18, 2018 letter from Defendant Gerard Glass, Esq., addressed to Mr. and Mrs. Lepper stating, *in toto,* "As you know this office is counsel to the Village of Babylon. The Court has rendered its decision. Please let me know your intentions. Thank you for your attention and courtesies herein."

49.   Annexed hereto is a true and accurate copy designated **Exhibit "19"** of Defendant Stephen Fellman's October 19, 2018 letter stating,

> "On October 27, 2018 Village Justice John Rafter found you guilty of each offense listed on various summonses you received regarding the construction of a treehouse within your front yard setback. I, as Building Inspector, am ordering the continuation of the stop work order barring any further construction or occupancy of the tree house. You must remove the tree house in its entirety or summonses may be issued on a daily basis."

50.   Annexed hereto is a true and accurate copy designated **Exhibit "20"** of a decision vacating the guilty conviction of John Lepper, cited in designated Exhibits 17–19, by the Supreme Court, Appellate Term, dated December 19, 2019.

51.   Annexed hereto is a true and accurate copy of a letter produced by Defendants designated **Exhibit "21"** titled "A letter from the Mayor about Treehouses and Other Things" ending "Cordially, Mayor Ralph Scordino" and stating in relevant part:

To begin with, this all started with complaints to my office from the homeowner's own neighbors. They complained this was no ordinary treehouse tucked away in someone's backyard. They explained it was nearly 100 square feet. The treehouse had sidewalls, a pitched roof and electric, and that the homeowner built the treehouse nearly on the property line along a residential street.

I referred the neighbors' complaints to our Building Inspector who, by the way, is also a licensed architect. He advised me that pursuant to State law and the Village Code the homeowner would need to obtain a building permit This means he would have to submit plans to assure the treehouse was properly built and show the treehouse complied with local zoning.

The Building Inspector commented to me our laws in the Village are no different than anywhere else. Structures like this treehouse require a building permit to make sure they are safe, not a fire hazard and that they don't unfairly impact the privacy and other rights of the homeowner's neighbors. This seemed reasonable to me…

The homeowner chose to build this treehouse without getting the proper permit. It is now up to him to try to make it right.

Exhibit "21" (external quotation marks omitted).

52. Annexed hereto is a true and accurate copy designated **Exhibit "22"** of a letter dated October 24, 2019, sent by John Lepper to former Congressman Peter King requesting assistance with the oppression, harassment, retaliation and selective prosecution Mr. Lepper received regarding the Lepper children's treehouse.

13

53.   Annexed hereto is a true and accurate copy designated **Exhibit "23**" marked as received by the Village of Babylon Mayor's Office, decedent Mayor Ralph Scordino, dated October 29, 2018.

54.   Annexed hereto is a true and accurate copy of a letter by James Brown, a New York licensed Professional Engineer dated and sealed on March 8, 2019 designated **Exhibit "24**" stating,

> "Based on my structural inspection of the treehouse structure in its current form, I find that the treehouse structure supported in the tree is structurally stable and meets code loadings for wind, snow and LL as prescribed by IBC and local requirements. In other words the structure is able to withstand all weather-related events that are in accordance with code-induced loading criteria."

55.   Annexed hereto is a true and accurate copy of cited pages from the  deposition transcript of James Brown, a New York licensed Professional Engineer, subpoenaed by Defendants and questioned extensively over the Lepper family treehouse and the abovementioned reports provided to Defendants as **Exhibit "25**"

56.   Annexed hereto is a true and accurate copy of the tickets filed against John Lepper as **Exhibit "26**"

57.   Annexed hereto and designated **Exhibit "27"** is a true and accurate copy of the attachments to the original application for a building permit filed by John Lepper.

58.   Annexed hereto is a true and accurate copy of a deposition transcript of Defendant Anthony Davida as **Exhibit "28".**

59.     Annexed hereto and designated **Exhibit "29"** are true and accurate photographs of a treehouse at 171 Peninsula Drive on the waterfront in Babylon Village.

60.     Annexed hereto and designated **Exhibit "30"** is a true and accurate copy of the Litigation Hold Notice served upon the Defendants prior to the commencement of this litigation.

61.     Annexed hereto and designated **Exhibit "31"** is a true and accurate copy of records reporting criminal drug use at 63 Wyandanch Ave. in the Village of Babylon.

62.     Annexed hereto and designated **Exhibit "32"** is a true and accurate copy of the minutes from the Babylon Village Court hearing of August 14, 2018.

63.     Annexed hereto and designated **Exhibit "33"** is a true and accurate copy of the minutes from the Babylon Village Court hearing of September 4, 2018.

64.     Annexed hereto and designated **Exhibit "34"** is a true and accurate copy of the minutes from the New York State Supreme Court hearing of June 30, 2021 before Hon. Joseph C. Pastoressa.

65.     Annexed hereto and designated **Exhibit "35"** is an affidavit from Charlie Lepper.

66.     Annexed hereto is a true and accurate copy of a deposition transcript of Defendant Deborah Longo as **Exhibit "36**"

67.     Annexed hereto is a true and accurate copy of a deposition transcript of deceased Defendant Ralph Scordino as **Exhibit "37**"

68. Annexed hereto and designated **Exhibit "38"** is a copy of the stipulation agreeing to Defendants' waivers and Plaintiff allowing Defendants to submit a late answer.

69. Annexed hereto and designated **Exhibit "39"** are true and accurate photographs of a treehouse at 50 South Carl Avenue in Babylon Village.

70. Annexed hereto is a true and accurate copy of a deposition transcript of Plaintiff John Lepper designated **Exhibit "40**."

71. Annexed hereto is a true and accurate copy of a deposition transcript of Defendant Stephen Fellman as **Exhibit "41**".

72. Annexed hereto is a true and accurate copy of a deposition transcript of Defendant Noelle Lepper as **Exhibit "42"**.

73. Annexed hereto is a true and accurate copy of a deposition transcript of Defendant Gerard Glass as **Exhibit "43**".

74. Annexed hereto and designated **Exhibit "44"** is an affidavit from John Lepper in opposition to Defendants' Motion for Summary Judgment.

75. Annexed hereto and designated **Exhibit "45"** is an affidavit from John Lepper in opposition to Defendants' Motion for Preliminary Relief, showing another treehouse in the Village of Babylon with lesser safety supports on a much less healthy tree than the Lepper Family Treehouse

76. Annexed hereto and designated as **Exhibit "46"** are true and accurate copies of Newsday Articles evidencing John Lepper exercising his First Amendment Speech Rights and containing Defendants' various admissions.

77. Annexed hereto as **Exhibit "47"** are true and accurate pictures of the Treehouse located houses away from Defendant trustee Anthony Davida.

### CONCLUSION

78. Defendants' Motion for Summary Judgment should be denied, among other things, as it comes after a Plaintiff John Lepper discovered a number of other treehouses throughout the Village of Babylon (Plaintiffs' Exhibits 9, 10, 11, 12, 29, 39) which had been constructed without building permits, much less Certificates of Occupancy and after microbursts, torrential rains, and hurricane force winds that decimated the Village of Babylon but left the Lepper children's treehouse intact.

79. Defendants fail to offer sufficient substantial credible admissible evidence to support a grant of summary judgment and what little evidence Defendants do offer only serve to raise triable issues of fact which preclude summary judgment.

80. Plaintiffs respectfully request this Honorable Court to deny Defendants' Motion for Summary Judgment and its application for Preliminary relief in their entirety all together with such other relief that this Honorable Court deems just and proper under the circumstances.

THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK

DATED AT   Melville, New York
            July 16, 2021

                                                /S/

                                    _____

                                    CORY H. MORRIS (CM 5225)
                                    THE LAW OFFICES OF CORY H. MORRIS
                                    *Attorney for the Plaintiffs*
                                    Office & P.O. Address
                                    135 Pinelawn Rd, *suite* 250s
                                    Melville, New York 11747
                                    Phone: (631) 450–2515
                                    FAX: (631) 223–7377
                                    email Cory.H.Morris@protonmail.com
                                    VICTOR JOHN YANNACONE, JR. (VY6405)
                                                              *of counsel*
                                    Phone: (631) 470–0231
                                    Email barrister@yannalaw.com


To:   Eric Tosca, Esq.
      KELLY RODE & KELLY, LLP
      *Attorneys for Defendants*
      218 Griffing Avenue
      Riverhead, NY 11901
      631–727–0110
      eptosca@krklaw.com

18



ZONING BOARD OF APPEALS
Bruce E. Humenik, *Chairman*
John J. Conroy, *Secretary*
Christopher Resch
Rachel A. Scelfo
Frank Seibert
Jeffrey C. Weber

153 West Main Street
Babylon Village
New York 11702
(631) 669-1500

INCORPORATED 1893

November 18, 2016

Mr. Mark Anthony Munisteri
Mark Anthony Architects
1563 Bellmore Avenue
Bellmore, NY 11710

RE:   Baldauf, 50 Thompson Avenue, Babylon, NY

Dear Mr. Munisteri,

After due consideration of the testimony given and evidence submitted, it was voted by the Board to **GRANT** this amended application for permission to maintain a garage requiring a variance to reduce the minimum side yard setback of 15 feet required for the garage to 5.27 feet proposed and to reduce the minimum side yard setback for the accessory building from 15 feet required to 3.67 feet proposed; and to **DENY** the minimum side yard setback of 15 feet required for the tree house to 7.2 feet proposed; the increase of the height limits of the accessory building from 15 feet permitted to 21.1 feet proposed; and the increase of the square feet permitted for the tree house/playground from 90 square feet permitted to 192 square feet proposed. Property located in Residence A-11 District. Suffolk County Real Property Tax Map District 0102, Section 13, Block 2, Lot 6. Application made in accordance with Section 365-13.

The variance relief requested by the Applicant to maintain the tree house and build an accessory building requiring a height variances are in the nature of Area Variances and the standards of Village Law Article 7, Section 712b[3], are applicable. Accordingly, in making its determination, the Zoning Board of Appeals is required to take into consideration the benefit to the Applicant, if the Variances are granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant. In short, the legislature has dictated that a balance test be applied. The statute further requires that in making such determination, the Board shall also consider the following:

1.    Whether an undesirable change will be produced in the character of the neighborhood, or a detriment to nearby properties will be created by the granting of the Area Variances.

NOV 21 2016

2.    Whether the benefits sought by the Applicants can be achieved by some method feasible for the applicant to pursue other than Area Variances.

3.    Whether the requested Area Variances are substantial.

4.    Whether the proposed Variances will have an adverse effect or impact on the physical or environmental conditions of the neighborhood or community, and

5.    Whether the alleged difficulty was self-created.

The consideration as to whether or not an alleged difficulty is self-created is by virtue of the statute to be considered as relevant, "but shall not necessarily preclude the granting of an Area Variance."

Pursuant to the Village Code Section 248-32, the Board of Appeals is required to consider prior to granting an approval, the criteria set forth in Section 248-32 B.1[a] through [d] and 2[a] through [l].

The Board feels that the request for the variances for the tree house (height, side yard, and area) the proposed accessory building would not be in keeping with area zoning or with the character of the neighborhood. Furthermore, there are alternative means of gaining the benefits sought under this request without the need for these variances.  In particular the Board finds that:

1.    The variances to reduce the minimum side yard setback of 15 feet required for the tree house to 7.2 feet proposed, the increased height from 15 ft. allowed to 21ft. proposed and to increase the square footage permitted for the tree house/playground from 90 square feet permitted to 192 square feet proposed would all be undesirable changes having an adverse impact. The limitations as to height size and setback for the accessory structure are intended to preserve open space and limit intensity of use, especially within close proximity to adjoining properties. To grant these variances, especially in the aggregate for a single accessory structure is contrary to the purposes of the ordinance.

2.    The benefits can otherwise be achieved by the Applicant. In particular the applicant can reduce the size and height of the accessory structure and relocate same.

3.    The requested variances are each substantial and in the aggregate the variances are even more significant because they all relocate to the same structure.

4.    The variances if granted would adversely affect the aesthetic characteristics having a negative impact on the surrounding properties.

5.    The difficulty is self-created, arising only by reason of the Applicant's desire to construct a tree house and an accessory building which exceeds the height and area limits and to locate the structure closer to the side yard than permitted.

This constitutes the decision of the Board.

Very truly yours,

JOHN J. CONROY, SECRETARY
ZONING BOARD OF APPEALS

JJC/ke

Enclosure

cc:    Ralph A. Scordino, Mayor
       Steve Fellman, Bldg. Inspector
       James Slack, Planning Board Chairman
       Patricia C. Carley, Village Clerk
       David Roth, Esq.

# VILLAGE OF BABYLON

## APPLICATION TO THE ZONING BOARD OF APPEALS

(page 1 of 4)

R E C E I V E D

APR 2 9 2016

VILLAGE CLERK'S OFFICE

COUNTY OF SUFFOLK

STATE OF NEW YORK

SS:

_Mark Anthony Munisteri_ being duly sworn,

deposes and says that he/she (or) they is/are _Agent of Owner_ of the property
described below.

Owner or Agent of owner

That all statements made in this application are true to the best of his (or) her knowledge and
belief, except as to the matters therein stated to be alleged on information and belief and as to
the matters he (or) she believes the same to be true. He (or) she understands the requirements
of this application with regards to the submittal of plot plans, other drawings and the posting of
public notices.

(if owner is applicant, all owners must sign)

ALBERT J ROCCO
Notary Public, State of New York
Registration #01RO6335899
Qualified In Nassau County
Commission Expires Jan. 19, 202__

Sworn before me this

_29_ Day of _April_, 20__16

_Albert Rocco_

Notary Public, Suffolk County

In the Matter of the Application of:

Owner of Property if Other Than Applicant

Applicant's Name: _Mark Anthony Architects_ Name: _Harold Baldauf_

Address: _1563 Bellmore Ave_ Address: _50 Thompson Ave_

_Bellmore NY 11710_ _Babylon, NY 11702_

Telephone No: _516-409-1900_ Alternate Telephone No: ......................

Property Address or Description of Location: _50 Thompson Ave_
_Babylon, NY 11702_

---

FOR VILLAGE CLERK ONLY:

Zoned: _A-11_ Section _13_ Block _2_ Lot _6_

For Plans Examiner Only:

Plans Reviewed _____ No Variance Required ____ Variance Required ____ (see attached
(date) comments)

---

3

(Revised 7/7/2015)
Lepper    105

# VILLAGE OF BABYLON

## APPLICATION TO THE BOARD OF APPEALS
(page 2 of 4)

Description of relief sought, attach separate sheet if necessary:

We are asking for a Minimum Side yard setback of 7.2' for the treehouse, 5.27' for the garage and 3.67' for the shed. We are also requesting a shed height of 21.1' and a treehouse/playground of 192 s.f.

### *** PLEASE NOTE ***

Variances required will be included whether or not listed above, as deemed necessary, and as determined by the Site Plans Examiner and the Zoning Board of Appeals, after review of the plans submitted with this application. The legal notice for this application will be derived based on the plans submitted.

1. Has a building permit been refused by Building Inspector? . No . . . .

2. Is there a school, house of worship, or hospital within 500 ft. of this premises? No .

3. Approximate cost of work this application is made for?$ . $45,000 . . . .

4. Is this premises with 500 feet of (Answer Yes or No):

   . No . . . Boundary of any Village or Town

   . No . . . Boundary of any existing or proposed County, State, or Federal park.

   . . No . . . The right of way of any existing or proposed County or State parkway, thruway, expressway, road or highway.

   . . No . . The existing or proposed right of way of any stream or drainage Channel owned by the County or for which the County has established Channel lines.

   . . . No . . The existing or proposed boundary of any other County, State or Federal owned land.

   . Yes . . The Atlantic Ocean, Long Island Sound, any bay in Suffolk County, Or estuary of any of the foregoing bodies of water.

4

# VILLAGE OF BABYLON

## APPLICATION TO THE ZONING BOARD OF APPEALS

(page 1 of 4)

**RECEIVED**

APR 29 2016

**VILLAGE CLERK'S OFFICE**

COUNTY OF SUFFOLK

SS:

STATE OF NEW YORK

_____ Mark Anthony Munisteri _____ being duly sworn,

deposes and says that he/she (or) they is/are __Agent of Owner__ of the property
described   below.                        Owner or Agent of owner

That all statements made in this application are true to the best of his (or) her knowledge and
belief, except as to the matters therein stated to be alleged on information and belief and as to
the matters he (or) she believes the same to be true. He (or) she understands the requirements
of this application with regards to the submittal of plot plans, other drawings and the posting of
public notices.

ALBERT J ROCCO
Notary Public, State of New York (if owner is applicant, all owners must sign)
Registration #01RO6335899
Qualified In Nassau County
Commission Expires Jan. 19, 202__

Sworn before me this

29 .... Day of April ........., 20...16

_____ Albert Rocco _____
Notary Public, Suffolk County

In the Matter of the Application of:

Owner of Property if Other Than Applicant

Applicant's Name: Mark Anthony Architects  Name: Harold Baldauf

Address: 1563 Bellmore Ave.  Address: 50 Thompson Ave.
Bellmore NY 11710  Babylon, NY 11702

Telephone No: 516-409-1900  Alternate Telephone No: ................

Property Address or Description of Location: 50 Thompson Ave
Babylon, NY 11702

---

FOR VILLAGE CLERK ONLY:

Zoned: A-11  Section 13  Block 2  Lot 6

For Plans Examiner Only:

Plans Reviewed _____ No Variance Required ____ Variance Required ____ (see attached
                   (date)                                                    comments)

3

(Revised 7/7/2015)
Lepper    107

# VILLAGE OF BABYLON

## APPLICATION TO THE ZONING BOARD OF APPEALS

(page 1 of 4)

**RECEIVED**
APR 29 2016
VILLAGE CLERK'S OFFICE

COUNTY OF SUFFOLK
SS:
STATE OF NEW YORK

_____ Mark Anthony Munisteri _____ being duly sworn,

deposes and says that he/she (or) they is/are ___Agent of Owner___ of the property
described below.                              Owner or Agent of owner

That all statements made in this application are true to the best of his (or) her knowledge and
belief, except as to the matters therein stated to be alleged on information and belief and as to
the matters he (or) she believes the same to be true. He (or) she understands the requirements
of this application with regards to the submittal of plot plans, other drawings and the posting of
public notices.

ALBERT J ROCCO
Notary Public, State of New York (if owner is applicant, all owners must sign)
Registration #01RO6335899
Qualified In Nassau County
Commission Expires Jan. 19, 202

Sworn before me this
_29_ . . . . Day of April . . . . . . . . . ,20 . . 16

_Albert Rocco_
Notary Public, Suffolk County

In the Matter of the Application of:

|  | Owner of Property if Other Than Applicant |
|---|---|
| Applicant's Name: Mark Anthony Architects | Name: Harold Baldauf |
| Address: 1563 Bellmore Ave | Address: 50 Thompson Ave |
| Bellmore NY 11710 | Babylon, NY 11702 |

Telephone No: 516-409-1900 . . . . . . Alternate Telephone No: . . . . . . . . . . . . . . . . . . . . . . . . .

Property Address or Description of Location: 50 Thompson Ave
Babylon, NY 11702

FOR VILLAGE CLERK ONLY:

Zoned: _A-11_ Section _13_ Block _2_ Lot _6_

For Plans Examiner Only:

Plans Reviewed _____ No Variance Required ____ Variance Required ____ (see attached
                (date)                                                      comments)

3

(Revised 7/7/2015)
Lepper     109

# VILLAGE OF BABYLON

## APPLICATION TO THE BOARD OF APPEALS
(page 2 of 4)

Description of relief sought, attach separate sheet if necessary:

We are asking for a Minimum Side yard setback of 7.2' for the treehouse, 5.27' for the garage and 3.67' for the shed. We are also requesting a shed height of 21.1' and a treehouse/playground of 192 s.f.

### *** PLEASE NOTE ***

Variances required will be included whether or not listed above, as deemed necessary, and as determined by the Site Plans Examiner and the Zoning Board of Appeals, after review of the plans submitted with this application. The legal notice for this application will be derived based on the plans submitted.

1. Has a building permit been refused by Building Inspector? . No . . . .

2. Is there a school, house of worship, or hospital within 500 ft. of this premises? No .

3. Approximate cost of work this application is made for?$ . $45,000 . . . .

4. Is this premises with 500 feet of (Answer Yes or No):

   . No . . . Boundary of any Village or Town

   . No . . . . Boundary of any existing or proposed County, State, or Federal park.

   . . No . . . . The right of way of any existing or proposed County or State parkway, thruway, expressway, road or highway.

   . . No . . The existing or proposed right of way of any stream or drainage Channel owned by the County or for which the County has established Channel lines.

   . . . No . . The existing or proposed boundary of any other County, State or Federal owned land.

   . Yes . . The Atlantic Ocean, Long Island Sound, any bay in Suffolk County, Or estuary of any of the foregoing bodies of water.

(Revised 7/7/2015)
Lepper 110

# *Office of the Village Clerk*

Date received __11__|__10__|__16__    **REQUIRED RESPONSE DATE** __11/17/16__

DEPARTMENT to compile documents requested and to receive FOIL request:
(circle)

~~Village Clerk~~

~~Joel~~

~~Mayor~~

Treasurer

~~Building~~

~~ZBA~~

~~architechural Review~~

(circle who to get copies) other than Village Clerk and above:

~~Joel~~

~~Mayor~~

Treasurer

~~Building~~

Total pages_____ Fee due @ .25 per page_____

Date documents will be available if not on response date_____

Letter sent_____

11/15/16

- Ms. Parenti called and if decision ltr. is ready after ZBA meeting noticed for FoIL

**APPLIC.**

RECEIVED

ON

NOV 1 0 2016

C RECORDS

VILLAGE CLERK'S OFFICE

11³⁰ am

TO: RECORDS ACCESS OFFICER
    VILLAGE OF BABYLON
    153 W MAIN ST
    BABYLON, NEW YORK 11702

12/6/16
- called to see if she still wanted FOIL-LM

I hereby apply to (check one) _____

Or    ✓

:ord:

① Architectural revie _____ minutes, in regards to 50 Thompson Ave
   march 31, 2016                                        Babylon, NY

Print name___Jeanette Parenti_____

Mailing address___7 Troy Place_____

___Merrick, NY 11566_____

Daytime Phone #___516 510 7134_____

Signature___Jeneettoe_____

Representing___Harold Baldauf_____

② 6-15-16
   Zoning Board Meeting minutes
   in relation to 50 Thompson Ave
                        Babylon, NY

③ 7-20-16
   Zoning Board Meeting minutes
   in relation to 50 Thompson Ave
                        Babylon, NY

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

**APPROVED**_____   OR

**DENIED**_____(FOR THE REASON CHECKED BELOW):

_____CONFIDENTIAL DISCLOSURE_____PART OF INVESTIGATORY FILES
_____UNWARRANTED INVASION OF PERSONAL PRIVACY
_____RECORD OF WHICH THIS AGENCY AS LEGAL CUSTODIAN CANNOT BE FOUND
_____EXEMPTED BY STATUTE OTHER THAN THE FREEDOM OF INFORMATION ACT
_____OTHER_____

**SIGNATURE**_____   **TITLE**_____   **DATE**_____

Notice: You have the right to appeal a denial of this application to the Board of Trustees, Village of Babylon, 153 West Main Street, Babylon, New York 11702, who must fully explain the reasons for such denial in writing seven days after receipt of an appeal.

I hereby appeal:

Signature_____   Date_____



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

INCORPORATED 1893

May 10, 2018

Mr. John Lepper
59 Cockonoe Avenue
Babylon, NY 11702

Re: 59 Cockonoe Avenue, Babylon

Dear Mr. Lepper,

It has come to my attention that you are building a structure, in the rear/front yard of the above referenced premises, that may require a building permit.

Please contact me at the number above to discuss this matter.

Respectfully submitted;

Stephen Fellman
Building Inspector



EXHIBIT
/

**VILLAGE OF BABYLON**
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
**BUILDING PERMIT FORM**

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

Building Permit
☐ Commercial  ☐ Industrial  ☐ Residential
☐ Main Building  ☐ Addition 1–8
☐ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–5, 7, 8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
   4 foot safety fence required 1–5, 7, 8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
   (plus plumbing permit) 1–3, 6, 8
☐ Other - Explain 1–8

---

**FOR OFFICE USE ONLY**

102 – ___ – ___ – ___ Flood Zone _____
   Section   Block   Lot

Estimated Value of Construction $_____ Fee: _____

Permit Number: _A_

Current Zoning _A-7_ Approved By: _____ Date Checked: _____

Permit Application Denied _____ Why? _____

Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes  ☐ No
If yes, what conditions, if any, were set: _____
Board of Appeals Case #: _____
Pre-site inspection made by: _____ Date: _____
Approval for Issuance of Permit: _____ Date: _____
Issued by: _____ Date: _____ Checked by: _____
Certificate of Occupancy # _____

---

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property _____
2. PROPOSED USE _____
3. DESCRIPTION OF PROPOSED WORK _____
_____
_____
4. FLOOR AREA to be constructed or altered: _____ Total Square Feet
5. SIZE of property ( _50_ ) × ( _150_ ) = _____ sq. ft. or _____ Acres
6. HEIGHT of building from average grade to highest point _16_ Feet
7. PROPERTY LOCATION _59 Cockadoe Ave_
   ☐ N  ☐ S  ☐ E  ☐ W  Side of _____ St. / Rd. / Ave. _____ Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # _____
   Certified as: _____ Date: _____

---

ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.

**1. New Building**  No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
**(a)**  No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
**(b)**  The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name _59 Cockadoe Ave_
Address _59 Cockadoe Ave_
_Babylon NY 11702_
Phone # _(631) 766-1181_

_[signature]_
Signature of PROPERTY OWNER

Sworn to before me this _____
day of _____ 19 _____

_____
Notary Public

Name _____
Address _____
_____
_____
Phone # _____

_____
Signature of CONTRACTOR
(if applicable)
County Home
Improvement License # _____

Sworn to before me this _____
day of _____ 19 _____

_____
Notary Public



Total Ht
To Ridge 16'

10:12 to Match
House Roof lines

Aff 8

TREE 2'2"

½" x 12" Gal
4 per Lag bolt

from Grade 8'



RECEIVED

MAY 1 2018

BABYLON
ARTMENT

Lepper 281

## VILLAGE OF BABYLON
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
## BUILDING PERMIT FORM

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

**Building Permit**
☐ Commercial  ☐ Industrial  ☐ Residential
☐ Main Building  ☐ Addition 1–8
☐ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–5, 7, 8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
 4 foot safety fence required 1–5, 7, 8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
 (plus plumbing permit) 1–3, 6, 8
☐ Other - Explain 1–8

---

**FOR OFFICE USE ONLY**

102 ___ – ___ – ___ 100  Flood Zone ___
 Section  Block  Lot
Estimated Value of Construction $___  Fee: ___
Permit Number: ___
Current Zoning ___ A-1 ___ Approved By: ___ Date Checked: ___
Permit Application Denied ___ Why? ___

Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes  ☐ No
If yes, what conditions, if any, were set: ___
Board of Appeals Case #: ___
Pre-site inspection made by: ___ Date: ___
Approval for Issuance of Permit: ___
Issued by: ___ Date: ___ Checked by: ___
Certificate of Occupancy # ___

RECEIVED
MAY 21 2018
THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property ___
2. PROPOSED USE ___
3. DESCRIPTION OF PROPOSED WORK ___

4. FLOOR AREA to be constructed or altered: ___ Total Square Feet
5. SIZE of property ( 50 ) × ( 150 ) = ___ sq. ft. or ___ Acres
6. HEIGHT of building from average grade to highest point ___ 16 ___ Feet
7. PROPERTY LOCATION  59 Cockanoe Ave
☐ N  ☐ S  ☐ E  ☐ W  Side of ___ St. Rd. Ave. ___ Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # ___
 Certified as: ___ Date: ___

---

**ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.**

**1. New Building**  No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
(a)  No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b)  The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name  59 Cockanoe Ave
Address  59 Cockanoe Ave
 Babylon NY 11702
Phone #  (631) 766-1181

_____
Signature of PROPERTY OWNER

Sworn to before me this ___
day of ___ 19___
_____
Notary Public

Name ___
Address ___

Phone # ___

_____
Signature of CONTRACTOR
(if applicable)
County Home
Improvement License # ___

Sworn to before me this ___
day of ___ 19___
_____
Notary Public

Lepper  8



Total. Ht
To Ridge 16'

10:12 to match
House Roof lines

Aff 8

TREE 2'2"

RECEIVED
MAY 21 2018
THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

½" x 12" gal
4 per lag bolt

from Grade



N 84°59'00" E   50.50

VINYL FENCE

150.00

1-STORY
FRAME GARAGE
OF 54.5-RG 68.0

FRAME
GARAGE

WAMPUM ROAD
(33½L WIDE)

CELLAR ENTRY

2½-STORY
WOOD FRAME
RESIDENCE
FF 58.9-RG 82.2
No. 59

WOOD PORCH
FD HIGH

CONCRETE
STEPS

CONCRETE
WALKWAY

N 05°01'00" W          S 05°01'00" E

GATE   VINYL FENCE

S 84°59'00" W   50.50

RECEIVED
MAY 21 2018
THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

COCKENOE AVENUE
(50½L WIDE)

OWNERS:

JOHN LEPPER & NOELLE LEPPER
FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK
FRANKLIN FIRST FINANCIAL

SURVEY OF LOTS 19B & 19C,
IN BLOCK F, AS SHOWN ON MAP OF
SAMPAWAM PARK-ANNEX
FILED: OCTOBER 31, 1921 - MAP No: 758
IN THE INCORPORATED VILLAGE OF BABYLON,
TOWN OF BABYLON,
SUFFOLK COUNTY, NEW YORK
SCTM: 0102-004.00-01.00-100.000

SCALE: 1"=20'
DRAWN BY: R.K.H.
FILE No.: Q088-12
DATE: MARCH 16, 2012

AREA: 7,575.00 Sq.Ft.
0.1739 ACRES
ELEVATIONS ASSUMED DATUM

STATE OF NEW YORK
ELIZABETH G. McQUILKIN
LICENSED LAND SURVEYOR
No. 050223

LISA McQUILKIN
LAND SURVEYING

274 EAST MAIN STREET
EAST ISLIP, N.Y. 11730
TEL: 631-277-3605
FAX: 631-277-3906

59 COCKENOE AVENUE, BABYLON





**John Lepper**
59 Cockenoe Ave
Babylon, New York 11704

Re: Treehouse

Dear John:

Per the request and direction of Judge Bianco I am providing certification
as follows:

Based on my structural inspection of the treehouse structure in its current form, I find that the
treehouse structure supported in the tree is structurally stable and meets code loadings for wind,
snow and LL as prescribed by IBC and local requirements. In other words the structure is able to
withstand all weather-related events that are in accordance with code-induced loading criteria.


James R Brown, PhD, PE
NY Professional Engineer - 063146



Seal/Signature

# VILLAGE OF BABYLON
153 West Main Street
Babylon, New York 11702
(631) 669-1300
**BUILDING DEPARTMENT**
## BUILDING PERMIT FORM

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.)

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

Building Permit
☐ Commercial  ☐ Industrial  ☐ Residential
☐ Main Building  ☐ Addition 1–8
☐ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–5, 7, 8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
4 foot safety fence required 1–5, 7, 8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
(plus plumbing permit) 1–3, 6, 8
☐ Other - Explain 1–8

**FOR OFFICE USE ONLY**

102 – _____ – _____ – _____ – __100__  Flood Zone _____
     Section      Block       Lot

Estimated Value of Construction $_____  Fee: _____

Permit Number: _____
Current Zoning __A–7__  Approved By: _____ Date Checked: _____
Permit Application Denied _____ Why? _____

Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes ☐ No
If yes, what conditions, if any, were set: _____
Board of Appeals Case #: _____
Pre-site inspection made by: _____ Date: _____
Approval for Issuance of Permit: _____
Issued by: _____ Date: _____ Checked by: _____
Certificate of Occupancy # _____

RECEIVED
MAY 2 1 2018
THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property _____
2. PROPOSED USE _____
3. DESCRIPTION OF PROPOSED WORK _____

4. FLOOR AREA to be constructed or altered: _____ Total Square Feet
5. SIZE of property (_60_) × (_150_) = _____ sq. ft. or _____ Acres
6. HEIGHT of building from average grade to highest point _____ _16_ Feet
7. PROPERTY LOCATION _59 Cockenoe Ave_
   ☐ N  ☐ S  ☐ E  ☐ W  Side of _____  St. Rd. Ave.  _____ Feet

8. ORIGINAL CERTIFICATE OF OCCUPANCY # _____
   Certified as: _____ Date: _____

## ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.

**1. New Building**  No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
(a)  No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b)  The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name _59 Cockenoe Ave_            Name _____
Address _59 Cockenoe Ave_         Address _____
        _Babylon Ny 11702_
Phone # _(631) 766-1181_          Phone # _____

_[signature]_                     _____
Signature of PROPERTY OWNER       Signature of CONTRACTOR
                                  (if applicable)
                                  County Home
                                  Improvement License # _____

Sworn to before me this _____    Sworn to before me this _____
day of _____ 19 _____        day of _____ 19 _____

_____             _____
Notary Public                         Notary Public            Lepper   8



Total. Ht
To Ridge 16'

10:12 to match
House Roof lines

Aff 8

TREE 2'2"

RECEIVED

MAY 21 2018

THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

½ x 12" gal
4 per      lag bolt

from GradE

Lepper   9



N 84°59'00" E  50.50

1-STORY
FRAME GARAGE

FRAME
GARAGE

WAMPUM ROAD
(33'± WIDE)

2' To 3"x10"
from property line

2½-STORY
WOOD FRAME
RESIDENCE

N 05°01'00" W          S 05°01'00" E

S 84°59'00" W  50.50

COCKENOE AVENUE
(50'± WIDE)

RECEIVED
MAY 21 2018
THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

OWNERS:

JOHN LEPPER & NOELLE LEPPER
FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK
FRANKLIN FIRST FINANCIAL

SURVEY OF LOTS 19B & 19C,
IN BLOCK F, AS SHOWN ON MAP OF
SAMPAWAM PARK-ANNEX
FILED: OCTOBER 31, 1921 – MAP No: 758
IN THE INCORPORATED VILLAGE OF BABYLON,
TOWN OF BABYLON,
SUFFOLK COUNTY, NEW YORK
SCTM: 0102-004.00-01.00-100.000

SCALE: 1"=20'
DRAWN BY: R.K.H.
FILE No.: Q088-12
DATE: MARCH 16, 2012

AREA: 7,575.00 Sq.Ft.
0.1739 ACRES
ELEVATIONS ASSUMED DATUM

STATE OF NEW YORK
ELIZABETH G. McQUILKIN
LICENSED LAND SURVEYOR
No. 050231

LISA McQUILKIN
LAND SURVEYING

274 EAST MAIN STREET
EAST ISLIP, N.Y. 11730
TEL: 631-277-3605
FAX: 631-277-3906

59 COCKENOE AVENUE, BABYLON

MAP OF PROPERTY LOCATED
59 COCKENOE AVENUE
BABYLON, NY

**N84°59'00"E  50.50'**



**N**



6' VINYL FENCE

15.3'

5.5'

28.3'

18.3'   WOOD FRAME   18.3'
GARAGE

CONCRETE
DRIVE

28.3'

LOT 19B          LOT 19C

"MAP OF SAMPAWAM PARK"
FILED OCTOBER 31, 1921
MAP #758
BLOCK F

PLATFORM

26" TREE

2.2'W

TREE
HOUSE

2.4'W

CONCRETE
PATIO

PLAT.

19.2'

14.9'        14.9'

4.1'                8.5'

1 STORY
WOOD FRAME          15.5'
DWELLING
#2401               7.5'   13.3'

29.3'

13.8'

24.3'

5.6'

ROOF OVER PORCH

24.5'

WALK

6' VINYL FENCE

**N05°01'00"W  150.00'**

3' WOOD FENCE

4' VINYL FENCE

**S05°01'00"E  150.00'**

**WAMPUM ROAD**

4' VINYL FENCE

PREPARED IN THE ACCORDANCE WITH THE MINIMUM
STANDARDS FOR TITLE SURVEYS AS ESTABLISHED BY
THE L.I.A.L.S. AND ADOPTED FOR SUCH USE BY THE
NEW YORK STATE LAND TITLE ASSOCIATION.

THE OFFSETS (OR DIMENSIONS) SHOWN HEREON
FROM THE STRUCTURES TO THE PROPERTY LINES
ARE FOR A SPECIFIC PURPOSE AND USE AND
THEREFORE ARE NOT INTENDED TO GUIDE THE
ERECTION OF FENCES, RETAINING WALLS, POOLS,
PATIONS, PLANTING AREAS, ADDITIONS TO BUILDINGS
AND ANY OTHER TYPE OF CONSTRUCTION.

**S84°59'00"W  50.50'**

# COCKENOE AVE

NOTE:
Unauthorized alterations or additions to this survey
is a violation of section 7209 of the New York
State education law. Copies of this survey map
not bearing the land surveyor's inked seal or
embossed seal shall not be considered to be a
valid true copy. Guarantees or certifications
indicated hereon shall run only to the person
for whom the survey is prepared, and on his
behalf to the title company, governmental
agency and lending institution listed hereon,
and to the assignees of the lending
institution. Guarantees or certification are not
transferable to additional institutions or
subsequent owners.

| DATE | DESCRIPTION |
|------|-------------|
| FEBRUARY 1, 2019 | UPDATED SURVEY |
| | |
| | |
| | |

TOWN .................... BABYLON
LOT ........................ I
BLOCK ................... 100
COUNTY ................. SUFFOLK
DWG BY ................. J.A.
CHKD BY ............... J.A.

SCALE 1"=10'

# EMPIRE STATE
## LAYOUT, INC.



TEL 516-679-7970    1786 BELLMORE AVE    FAX 516-679-7971
MERRICK, NY 11566

VISIT US AT: WWW.EMPIRESTATELAYOUT.COM

**JACOBS**

Project _____ **COLDS STRUCTURE**

Sheet No. **1** of ____

Authored by **JB** Date **2/1/19**   Checked by **JB/BD** Date **2/3/19**

Loads:

    Live Loads:    40 PSF
    Dead Loads:    Structural Wood

    Snow:    25 PSF (Ground Snow)

    Wind:    115 mph, Exposure B

Calculate Weight (DL):

    Roof: $(10'\text{-}3'' \times 8'\text{-}6'') \approx$    87.12

                                   Use 88 S.F.

        DL Roof = $88 \times 10$ PSF  =  880 #
        Dormers = Add 50 # ea.  =  $\underline{100}$
                                          980 #
                             = Say 1000 #

    Walls: $1 \times 6.3 \times [9.3 + 8.3 + 9.3 + 8.3] \times 10$ PSF

                                           = 2217 #

    Floor: $9.3 \times 8.3 \times 10$ PSF      = $\underline{772}$ #
                                            3988.9 #

                               Total Wt = Say 4000 #
                               (This is conservative)

    Gravity Loads to ea. Leg Support = $\underline{1000}$ #

    Wind: $\approx$ Pressure = $\boxed{21 \text{ PSF}}$              ×12
                   Based on 115 mph    DL = 1200 #

**JACOBS**

Subject __Teehouse__    Project __Cacs - Structure__
                        Sheet No. __2__ of
Authored by __JB__ Date __2/1/15__   Checked by __BO__ Date __2/3/15__



LEG SUPPORT :

$\frac{1000^{\#}}{7.3'}$ = 137 plf × 1.2
                    = 165 plf

7.3'

4.0'

4.5'    (4) ½ × 12 LAG BOLTS

(976#)
5.25'
6.05'

5.7'

↓ 274# + (1000#) Total Shear

DIAG: 4×6 (3.5 × 5.5) = 19.25 in²

826#

4×6
6.05'

976# (+74#)

⎡ SEE  5-2 ⎤
⎣  CACCS  ⎦

CHECK  LAG BOLTS:          ½"∅ × 12"

SHEAR CAP. = 624#

(4) × 624# = $\frac{2496}{\sqrt{1,000}}$ = 2.5 SAFETY
                      $\frac{1000}{1000}$    2.4 FACTOR
                                    (Shear)
                         ok 2.5
                         > 1.5 OK
                         1.5 ok

S-1

# Supplemental
## Calcs:

7.3'

4'



$(2)(137) = 274^{\#}$

$R_V = 726$

$\sum F_V = 0$

$R_V = 1000 - 274 = 726^{\#}$



4.5

6.05

$$\frac{4.5}{726} \times \frac{6.05}{x} \quad \therefore \quad x = \frac{(6.05)(726)}{4.5}$$

$$x = 976^{\#}$$

## Horizontal Arm:

w = 137 PLF

$M_1 = 220$

3.3'

4'

$M_2 = 746^{F\#}$



$$M_1 = \frac{w}{8L^2}(l+a)^2(l-a)^2 = \frac{137}{8(4)}(4+3.3)^2(4-3.3)^2 = 220^{F\#}$$

$$M_2 = \frac{wa^2}{2} = \frac{137(3.3)^2}{2} = 746^{F\#}$$

BEAM

S-2

$M = 746^{ft-lb}$

$S = (4 \times 6) = 17.646 in^3$
$1 = 48.52 in^4$
$A = 19.25 in^2$
Use Allow. S.Loss= 975 ($F_b$)  Timbers

$F_b = M/s = \dfrac{746(12)}{17.646} = 507.28 psi < 975$  ok

Simple Span Col:

$L_e = 0.8 L = 0.8 \times 6.05' = 4.84'$

$\dfrac{L_e}{d} = \dfrac{4.84(12)}{3.5} = 16.5 < 50$  ok

$F_{ce} = \dfrac{0.3 E}{(L_e/d)^2} = \dfrac{0.3(1,300,000)}{(16.5)^2} = 1432 ^{\#}/in^2$

$\dfrac{F_{ce}}{F_c} = \dfrac{1432}{1121} = 1.27$

$F_c = 975 \times 1.15 = 1121 ^{\#}/in^2$

$\overline{F_c}^1 = 1121 \left[ \dfrac{1 + 1.27}{2 \times .8}^{1.42} - \sqrt{\left( \dfrac{1 + 1.27}{2 \times .8} \right)^{2} - \dfrac{1.27}{.8}}^{.65} \right]$

$= 857 ^{\#}/in^2$

$P_{Allow} = 857 \times 19.25 = \dfrac{16,510^{\#}}{ok} << 976^{\#}$

**JACOBS**

Subject _____     Project _____
_____     Sheet No. _____ of _____
Authored by _____ Date _____   Checked by _____ Date _____

LAYOUT



Case 2:18-cv-07011-JMB-GRB   Document 29-3   Filed 02/12/18   Page 6 of 7 PageID #: 365

**JACOBS**®

Subject _____   Project _____
_____   Sheet No. _____   of _____
Authored by _____ Date _____   Checked by _____ Date _____



MEASUREMENTS

Floor Plan



$$\frac{4.6 \times 5}{12} = 1.9, 67$$
$$= 23''$$
$$\sim 24''$$

$$1.25 \times 5 = 6.25$$
$$\frac{}{12}$$
$$= .52$$
$$= 6''$$

4 OCEAN. lu

# VILLAGE OF BABYLON
## BABYLON, NEW YORK
## Telephone (631)-669-1300

**Certificate of Occupancy No.** 20-00106                    **Date:**    07/02/20

The Building Inspector of the Village of Babylon hereby certifies, that the following premises and buildings thereon, having reference to Building Permit Application No.  1502
conform to and comply with the provisions of the Building Zone Ordinance of the Village of Babylon.

**PREMISES:** 250 FIRE ISLAND AVE

**Section/Block/Lot:** 016.-03-015

**Description of Work**   MAINTAIN PLAY STRUCTURE 8' X 8'

This certificate is issued to  SULLIVAN, RICHARD J J                    of the aforesaid premises and buildings,
address
        250 FIRE ISLAND AVE
        BABYLON NY 11702

in accordance with the provisions of the Building Zone Ordinance of the Village of Babylon

Stephen R. Fellman
Building Inspector

**Babylon Village**
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

| INVOICE # |
|---|
| 20-00355 |

ACCOUNT ID: P-139154
INVOICE DATE: 07/02/20
DUE DATE: 07/02/20

SULLIVAN, RICHARD J J
SULLIVAN, GAIL

250 FIRE ISLAND AVE
,  11702

PERMIT INFORMATION
PERMIT NO: 20-00106
LOCATION: 250 FIRE ISLAND AVE
OWNER: SULLIVAN, RICHARD J J

| QUANTITY/UNIT | SERVICE ID | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | Permit No: 20-00106 | | |
| 1.0000 | CP-FILIN | CONSTRUCTION PERMIT FILING FEE | 85.000000 | 85.00 |
| | | Permit No: 20-00106 | | |
| 1.0000/COW | CP-RESID | RESIDENTIAL CONSTRUCT PERMIT | 15.000000 | 15.00 |
| | | Permit No: 20-00106 | | |

TOTAL DUE:  $ 100.00

Prn Payment: 07/02/20  CK 1765                   -100.00

BALANCE:  $ 0.00

-------------------------------------------------------------------------------------------------------
*PAYMENT COUPON - PLEASE DETACH AND RETURN THIS PORTION ALONG WITH YOUR PAYMENT*

Babylon Village
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

INVOICE #:  20-00355
DESCRIPTION:  Permit No: 20-00106
ACCOUNT ID:  P-139154
DUE DATE:  07/02/20
TOTAL DUE:  $ 0.00

SULLIVAN, RICHARD J J
SULLIVAN, GAIL

250 FIRE ISLAND AVE
,  11702

# VILLAGE OF BABYLON

Permit #: **20-00106**

Invoice ID: **20-00355**

Date Issued: **07/02/20**

Owner Name: **SULLIVAN, RICHARD J J**

Owner Address:
**250 FIRE ISLAND AVE**
**BABYLON NY 11702**

Granted a type: **_BUILDING PERMIT_**

Property Location: **250 FIRE ISLAND AVE**
**BABYLON, NEW YORK 11702**

In the **_VILLAGE OF BABYLON_**, NY   to expire: **12/29/20**

Section/Block/Lot **016.-03-015**
Pursuant to application, and plans approved by the Building Inspector.
Amount paid by holder of permit as required by Ordinance.

Description of Work: **_MAINTAIN PLAY STRUCTURE 8' X 8'_**

Total Permit Fees:

Stephen R. Fellman

Per

( This Permit may be Suspended or Terminated for any violation of the Ordinances of the VILLAGE OF BABYLON )

This permit must be kept on the premises until full completion of the work authorized.

**VILLAGE OF BABYLON**
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
**BUILDING PERMIT FORM**

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

Building Permit
☐ Commercial  ☐ Industrial  ☒ Residential
☐ Main Building  ☐ Addition 1–8
☒ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–5, 7, 8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
4 foot safety fence required 1–5, 7, 8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
(plus plumbing permit) 1–3, 6, 8
☐ Other - Explain 1–8

102 – 16 – 3 – 15  Flood Zone _____
Section  Block  Lot
Estimated Value of Construction $ _____ Fee: _____
Permit Number: _____
Current Zoning A-9  Approved By: _____ Date Checked: _____
Permit Application Denied  Why? _____
Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes  ☐ No
If yes, what condition, if any, were set? _____
Board of Appeals Case #: _____
Pre-site inspection made by: _____ Date: _____
Approval for issuance of Permit: _____ Date: 6/19/20
issued by: _____ Date: _____ Checked by: _____
Certificate of Occupancy #: _____

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property YARD
2. PROPOSED USE PLAY HOUSE
3. DESCRIPTION OF PROPOSED WORK
SMALL Playhouse For Children / Grand Children
4. FLOOR AREA to be constructed or altered 8 x 8 = 64 Total Square Feet
5. SIZE of property (280 × (100) = 2800 sq. ft. or _____ Acres
6. HEIGHT of building from average grade to highest point 6' (From Floor) Feet
7. PROPERTY LOCATION
☐ N  ☐ S  ☐ E  ☒ W  Side of F I AVE.  St. Rd. 200' Ave. Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # 1982 ?
Certified as: RESIDENCE  Date: _____

ARTICLE X— SECTION 1003 CERTIFICATE OF OCCUPANCY.
1. New Building   No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

2. Change of Occupancy.
(a) No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b) The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name Richard J. Sullivan Jr.
Address 150 FIRE Island Ave
BABYLON, N.Y. 11702
Phone # _____
_____ Signature of PROPERTY OWNER

Name _____
Address N/A
Phone # _____
_____ Signature of CONTRACTOR (if applicable)
County Home Improvement License # _____

Sworn to before me this _____
day of _____ 19 _____
_____ Notary Public

Sworn to before me this _____
day of _____ 19 _____
_____ Notary Public



)TES:
IS SURVEY HAS BEEN PREPARED IN CONJUNCTION
TH A BUILDING DEPARTMENT APPLICATION.

HAS BEEN PREPARED USING THE FOLLOWING
FORMATION:   DEED, FILED MAP, TAX MAP, PRIOR
IRVEYS AND FIELD MEASUREMENTS TAKEN ON
JE SHOWN.
IERS OF THIS SURVEY SHOULD BE AWARE THAT
IRECORDED DOCUMENTS, PAROL AGREEMENTS OR
ELD CONTROL NOT IN EVIDENCE AT TIME OF SURVEY
Y AFFECT ANALYSIS AS SHOWN HEREON.

RTIFICATIONS RUN ONLY TO PARTIES INDICATED.

SURVEY OF PROPERTY
SITUATE AT
INCORPORATED VILLAGE OF BABYLON
SUFFOLK COUNTY, NEW YORK

CERTIFIED ONLY TO:
SULLIVAN









jyantz@villageofbabylonny.gov

| | |
|---|---|
| **From:** | jyantz@villageofbabylonny.gov |
| **Sent:** | Friday, June 19, 2020 11:53 AM |
| **To:** | 'STEVIE RAY' |
| **Subject:** | INSPECTIONS FOR FRIDAY JUNE 19 |

Here are your inspections,

140 Ralph Ave – rough plumb – Joe –

250 Fire Island Ave – measure/pics playhouse

37-45 E. Main St – Plumb (Babylon Mercantile) George –    o.K,

63 Melbury – Footings – Joe .

Complaint re Shed at 86 Araca bad shape – from Laura at 88 Araca –    via LETTER To REPAIR

Also, Gerard sent over Accusatory, etc for you to sign re 83 Sumpwams

Regards,
Jeanette Yantz
Building Department
Village of Babylon
jyantz@villageofbabylonny.gov



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

JUN 17 2020

THE VILLAGE OF BABYLON
BUILDING DEPARTMENT

May 28, 2020

Mr. & Mrs. Sullivan
250 Fire Island Avenue
Babylon, NY 11702

Dear Mr. & Mrs. Sullivan,

It has come to our attention, that there is a "play house" structure in your yard that was built without a permit.

Please be advised that you must make application to the Building Department for said structure within 7 days of receiving this letter.  Failure to do so will result in the issuance of a summons.

Respectfully,

Stephen Fellman
Building Inspector

June 9, 2020

Dear Mr. Fellman,

I send along the form you indicated, together with our survey. Please note I was unable to have my signature notarized due to my isolation due to the present Co-Vid 19 circumstances.

Yours truly,



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

INCORPORATED 1893

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

May 28, 2020

Mr. & Mrs. Sullivan
250 Fire Island Avenue
Babylon, NY  11702

Dear Mr. & Mrs. Sullivan,

It has come to our attention, that there is a "play house" structure in your yard that was built without a permit.

Please be advised that you must make application to the Building Department for said structure within 7 days of receiving this letter.  Failure to do so will result in the issuance of a summons.

Respectfully,

Stephen Fellman
Building Inspector















































OFFICE OF THE
VILLAGE CLERK

Jean Marie Parker

153 West Main Street
Babylon Village
New York 11702
(631) 669-1500

December 1, 2020

Law Offices of Cory H. Morris
135 Pinelawn Road
Suite 250s
Melville, New York 11747

Representing:  John Lepper

Re:  FOIL Letter dated 11/24/2020, received via email on the afternoon of 11/24/2020, and
hand-delivered to Village Hall the afternoon of 12/1/2020, with the following request:

All records, inclusive of the building permit(s), pertaining to, related or created for the
outdoor playground/treehouse structure located at Village of Babylon, 99 Park Avenue,
Babylon, NY 11702.

Dear Mr. Morris,

Enclosed please find all records on file for the outdoor playground/treehouse structure
located at 99 Park Avenue, Babylon, NY 11702.

As per your instructions, this formal written response to your FOIL request has also been
emailed to you at info@coryhmorris.com on 12/1/2020.  If you have any questions or still wish
to inspect the abovementioned records as indicated in #2 of your request please contact the
Village Clerk's Office at 631-669-1500.

Sincerely,

Jean Marie Parker

Jean Marie Parker
Village Clerk

Enclosures (8)

# VILLAGE OF BABYLON

Permit #: **20-00101**

Invoice ID: **20-00350**

Date Issued: **06/30/20**

Owner Name: **BRUCKNER, THOMAS**

Owner Address:
**99 PARK AVE
BABYLON NY 11702**

Granted a type: **BUILDING PERMIT**

Property Location: **99 PARK AVE
BABYLON, NEW YORK 11702**

In the **VILLAGE OF BABYLON**, NY  to  expire : **12/27/20**

Section/Block/Lot **006.-01-012**
Pursuant to application, and plans approved by the Building Inspector.
Amount paid by holder of permit as required by Ordinance.

Description of Work: **ADDITION TO CURRENT PLAY STRUCTURE TOTALING 122.5 SF (MUST ADHERE TO FRONT YARD SET BACK 30')**

Total Permit Fees:

Stephen R. Fellman

Per _____

( This Permit may be Suspended or Terminated for any violation of the Ordinances of the VILLAGE OF BABYLON )

This permit must be kept on the premises until full completion of the work authorized.

**Babylon Village**
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

| INVOICE # |
|---|
| 20-00350 |

ACCOUNT ID: P-137112
INVOICE DATE: 06/30/20
DUE DATE: 06/30/20

BURCKNER, THOMAS
MELISSA MAKAREWICZ

99 PARK AVE
, 11702

PERMIT INFORMATION
PERMIT NO: 20-00101
LOCATION: 99 PARK AVE
OWNER: BRUCKNER, THOMAS

| QUANTITY/UNIT | SERVICE ID | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | Permit No: 20-00101 | | |
| 1.0000 | CP-FILIN | CONSTRUCTION PERMIT FILING FEE | 85.000000 | 85.00 |
| | | Permit No: 20-00101 | | |
| 1.0000/COW | CP-RESID | RESIDENTIAL CONSTRUCT PERMIT | 15.000000 | 15.00 |
| | | Permit No: 20-00101 | | |

TOTAL DUE: $ 100.00

Prn Payment: 06/30/20  CK 236                    -100.00

BALANCE: $ 0.00

-------------------------------------------------------------------------------------
***PAYMENT COUPON - PLEASE DETACH AND RETURN THIS PORTION ALONG WITH YOUR PAYMENT***

Babylon Village
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

INVOICE #:  20-00350
DESCRIPTION:  Permit No: 20-00101
ACCOUNT ID:  P-137112
DUE DATE:  06/30/20
TOTAL DUE:  $ 0.00

BURCKNER, THOMAS
MELISSA MAKAREWICZ

99 PARK AVE
, 11702



**VILLAGE OF BABYLON**
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
**BUILDING PERMIT FORM**

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

**Building Permit**
☐ Commercial  ☐ Industrial  ☐ Residential
☐ Main Building  ☐ Addition 1-8
☐ Accessory Building  ☐ Addition 1-8
☐ Interior Alteration  ☐ Addition 1-8
☐ Two-Family Special Permit 1-3, 7, 8
☐ Change of Use or Occupancy  1-3, 7, 8
☐ Fire Damage Repair 1-4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1-3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
    4 foot safety fence required 1-5, 7, 8
☐ Demolition (Valid only 6 mos.) 1-3, 7, 8
☐ Underground Tank Installation
☑ Other - Explain 1-8
    (plus plumbing permit) 1-3, 6, 8

(stamp: RECEIVED JUN 25 2020 VILLAGE OF BABYLON BUILDING DEPARTMENT)

---

FOR OFFICE USE ONLY

102 - 5488 - 12  Flood Zone ____
    Section    Block    Lot

Estimated Value of Construction $ _____  Fee: _____

Permit Number: _____

Current Zoning A-9  Approved By: ____ Date Checked: ____

Permit Application Denied ____ Why? ____

Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes  ☐ No
If yes, what conditions, if any, were set: ____
Board of Appeals Case # ____
Pre-site inspection made by: ____  Date: ____
Approval for Issuance of Permit: ____  Date: 6/26/20
Issued by: ____ Date: ____  Checked by: ____
Certificate of Occupancy # ____

---

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.

1. PRESENT USE of property  Single Family Home
2. PROPOSED USE  Addition of a playground/swing set
3. DESCRIPTION OF PROPOSED WORK  Add addition to current
   36 sq foot playground
4. FLOOR AREA to be constructed or altered: 36 + now 86.5 = 122.5 Total Square Feet
5. SIZE of property (186) × (131.5) = 24,645 sq. ft. or 0.57 Acres
6. HEIGHT of building from average grade to highest point  12  Feet
7. PROPERTY LOCATION 99 Park Ave Babylon NY 11702
   ☐ N  ☑ S  ☐ E  ☐ W  Side of Park Avenue  ☐ St. ☐ Rd. ☐ Ave.  Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # ____
   Certified as: ____  Date: ____

(stamp: APPROVED ...nt & Subject to the ... Babylon Building Ordinance ...N.Y. State ... D.C.? Bldg. Inspector)

**ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.**

**1. New Building** No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code consistent the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy and use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
(a) No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b) The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name  Thomas C. Bruckner           Dated ____        Name ____
Address  99 Park Ave                                 Address ____
         Babylon NY 11702
Phone # 631-664-4269                                 Phone # ____

Signature of PROPERTY OWNER          Signature of CONTRACTOR
                                      (if applicable)
                                     County Home
                                     Improvement License # ____

Sworn to before me this ____         Sworn to before me this ____
day of ____ 19 ____                  day of ____ 19 ____

Notary Public                        Notary Public



Thomas C. Brucher
99 Park Ave
Babylon, NY

Scale 1ft = 0.5cm

Covered shelter
4×6×5 (2×4×8)

rope + net bridge

existing swings

Ramp
slide
Slide

All posts 3' in ground in concrete

Proposed 86.5 sq ft addition

Preexisting 36 sq ft Playground



SURVEY OF PROPERTY
SITUATED IN
THE INCORPORATED VILLAGE OF BABYLON
TOWN OF BABYLON  SUFFOLK Co.
NEW YORK
SCTM No.: 102-6-1-12

GARAGE RIDGE 14.9' ABOVE GRADE.
HOUSE RIDGE ELEVATION = 39.0'
ALL ELEVATIONS ARE IN NAVD 1988 DATUM.

CERTIFIED TO:
THOMAS C. AND MELISSA BRUCKNER



WILLIAM T. HOLGAN
LICENSED LAND SURVEYOR
41 SMITH STREET
BABYLON, NEW YORK  11702
631-321-4732
SCALE: 1"=20'
DATE: 01/18/2007

A.C. UNITS
ADDED: 04/10/2017
UPDATED: 09/23/2016

JOB No.: 2498-06-S



**SURVEY OF PROPERTY**
SITUATED IN
THE INCORPORATED VILLAGE OF BABYLON
TOWN OF BABYLON   SUFFOLK Co.
NEW YORK
SCTM No.: 102-6-1-12

GARAGE RIDGE 14.9' ABOVE GRADE.
HOUSE RIDGE ELEVATION = 39.0'
ALL ELEVATIONS ARE IN NAVD 1988 DATUM.

CERTIFIED TO:
THOMAS C. AND MELISSA BRUCKNER



WILLIAM T. HOLGAN
LICENSED LAND SURVEYOR
41 SMITH STREET
BABYLON, NEW YORK  11702
631-321-4732
SCALE: 1"=20'
DATE: 01/18/2007

A.C. UNITS
ADDED: 04/10/2017
UPDATED: 09/23/2016

jyantz@villageofbabylonny.gov

*Pls advise*

| | |
|---|---|
| **From:** | jyantz@villageofbabylonny.gov |
| **Sent:** | Friday, August 28, 2020 12:20 PM |
| **To:** | 'STEVIE RAY' |
| **Subject:** | INSPECTIONS FRIDAY, AUGUST 28 |

Can you please call Christine, W&M Fire Protection, question about sprinkler system for single family home – 973-768-2348

Did you tell 184 E. Main Street that you would inspect tank abandonment Saturday morning?  If so I just received permit app, should I process?

Here are your inspections:

59 Araca Road – Framing/Strapping – call Jim Jackson on way 631-872-0268

99 Park Avenue – Play Structure  20 – 00101

83 Lincoln Avenue – Framing – John

N. Railroad and Ralph – Cell Tower – Final – Leo 347-804-3121

73 The Crescent – Final Kitchen – Tom – 516-322-8758

23 Waters Edge Court – Rebar – John – 631-601-7990

36 Waterman Street – Removal of second kitchen – Anthony Bottan – 631-312-1148

Regards,
Jeanette Yantz
Building Department
Village of Babylon
jyantz@villageofbabylonny.gov

1

# VILLAGE OF BABYLON
## Certificate of Completion

Permit #20-00101

Date:  September 9, 2020

Owner Name:  Thomas Bruckner

Owner Address: 99 Park Avenue, Babylon, NY

Property Location: 99 Park Avenue, Babylon, NY

Section____006_____  Block____01_____  Lot____012_____

Description of Work:  ADDITION TO CURRENT PLAY STRUCTURE TOTALING 122.5 SF

Stephen Fellman
Building Inspector



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7020 1810 0000 9192 3416

FROM: Village of Babylon
153 West Main Street
Babylon, New York 11702

TO:

Law Offices of Cory H. Morris
135 Pinelawn Road
Suite 250s
Melville, New York 11747





11747



U.S. POSTAGE PAID
FCM LG ENV
BABYLON, NY
11702
DEC 08, 20
AMOUNT
$4.95
R2304H108796-02
1000

# VILLAGE OF BABYLON

Permit #: **20-00101**

Invoice ID: **20-00350**

Date Issued: **06/30/20**

Owner Name: **BRUCKNER, THOMAS**

Owner Address:

**99 PARK AVE
BABYLON NY 11702**

Granted a type: ***BUILDING PERMIT***

Property Location: **99 PARK AVE
BABYLON, NEW YORK 11702**

In the **VILLAGE OF BABYLON** , NY   to  expire : **12/27/20**

Section/Block/Lot **006.-01-012**
Pursuant to application, and plans approved by the Building Inspector.
Amount paid by holder of permit as required by Ordinance.

Description of Work: **ADDITION TO CURRENT PLAY STRUCTURE TOTALING 122.5 SF (MUST ADHERE TO FRONT YARD SET BACK 30')**

Total Permit Fees:

Stephen R. Fellman

Per

( This Permit may be Suspended or Terminated for any violation of the Ordinances of the VILLAGE OF BABYLON )

This permit must be kept on the premises until full completion of the work authorized.

**Babylon Village**
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

| INVOICE # |
|---|
| 20-00350 |

ACCOUNT ID: P-137112
INVOICE DATE: 06/30/20
DUE DATE: 06/30/20

BURCKNER, THOMAS
MELISSA MAKAREWICZ

99 PARK AVE
,  11702

PERMIT INFORMATION
PERMIT NO: 20-00101
LOCATION: 99 PARK AVE
OWNER: BRUCKNER, THOMAS

| QUANTITY/UNIT | SERVICE ID | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | Permit No: 20-00101 | | |
| 1.0000 | CP-FILIN | CONSTRUCTION PERMIT FILING FEE | 85.000000 | 85.00 |
| | | Permit No: 20-00101 | | |
| 1.0000/COW | CP-RESID | RESIDENTIAL CONSTRUCT PERMIT | 15.000000 | 15.00 |
| | | Permit No: 20-00101 | | |
| | | | TOTAL DUE: | $ 100.00 |
| | | Prn Payment: 06/30/20  CK 236 | | -100.00 |
| | | | BALANCE: | $ 0.00 |

-------------------------------------------------------------------------------

*PAYMENT COUPON - PLEASE DETACH AND RETURN THIS PORTION ALONG WITH YOUR PAYMENT*

Babylon Village
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

INVOICE #:  20-00350
DESCRIPTION:  Permit No: 20-00101
ACCOUNT ID:  P-137112
DUE DATE:  06/30/20
TOTAL DUE:  $ 0.00

BURCKNER, THOMAS
MELISSA MAKAREWICZ

99 PARK AVE
,  11702

**VILLAGE OF BABYLON**
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
**BUILDING PERMIT FORM**

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

102 – 6 – 12  Flood Zone _____
Section   Block   Lot

Estimated Value of Construction $_____ Fee: _____

Permit Number: _____

Current Zoning A-9  Approved By: _____ Date Checked: _____

Permit Application Denied _____ Why? _____

Is this permit a result of a Zoning Board of Appeals approval?   ☐ Yes   ☐ No

If yes, what conditions, if any, were set: _____

Board of Appeals Case #: _____

Pre-site inspection made by: _____ Date: _____

Approval for Issuance of Permit: ✓ Date: 6/26/20

Issued by: _____ Date: _____ Checked by: _____

Certificate of Occupancy # _____

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

**Building Permit**
☐ Commercial  ☐ Industrial  ☐ Residential
☐ Main Building  ☐ Addition 1–8
☐ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
  4 foot safety fence required 1–8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
  (plus plumbing permit) 1–3, 6, 8
☒ Other - Explain 1–8

RECEIVED JUN 25 2020 THE VILLAGE OF BABYLON BUILDING DEPARTMENT

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.

1. PRESENT USE of property _Single Family Home_
2. PROPOSED USE: _Addition of a playground/swing set_
3. DESCRIPTION OF PROPOSED WORK _Add addition to current 1189 sq foot playground_
4. FLOOR AREA to be constructed or altered: _36 + new 86.5 = 122.5_ Total Square Feet
5. SIZE of property (_180_ ) x (_1345_) = _24,645_ sq. ft. or _0.57_ Acres
6. HEIGHT of building from average grade to highest point _12_ Feet
7. PROPERTY LOCATION _99 Park Ave Babylon NY 11702_
   ☐ N  ☒ S  ☐ E  ☐ W  Side of _Park Avenue_ St. Rd. Ave. _____ Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # _____
   Certified as: _____ Date: _____

APPROVED & Subject to the Village of Babylon Building Code Ordinance _____ Blcg. Inspector

**ARTICLE X—SECTION 1003 CERTIFICATE OF OCCUPANCY.**

1. New Building   No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code, attesting the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector, and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

2. Change of Occupancy.
(a) No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b) The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name _Thomas C. Brickner_              Name _____
Address _99 Park Ave_                   Address _____
        _Babylon NY 11702_
Phone # _631-664-4269_                  Phone # _____


Signature of PROPERTY OWNER            Signature of CONTRACTOR
                                        (if applicable)
                                       County Home
                                       Improvement License # _____

Sworn to before me this _____     Sworn to before me this _____

day of _____ 19__                 day of _____ 19__

Notary Public                          Notary Public





SURVEY OF PROPERTY
SITUATED IN
THE INCORPORATED VILLAGE OF BABYLON
TOWN OF BABYLON  SUFFOLK Co.
NEW YORK
SCTM No.: 102-6-1-12

GARAGE RIDGE 14.9' ABOVE GRADE.
HOUSE RIDGE ELEVATION = 39.0'
ALL ELEVATIONS ARE IN NAVD 1988 DATUM.

CERTIFIED TO:
THOMAS C. AND MELISSA BRUCKNER

WILLIAM T. HOLGAN
LICENSED LAND SURVEYOR
41 SMITH STREET
BABYLON, NEW YORK  11702
631-321-4732
SCALE: 1"=20'
DATE: 01/18/2007

A.C. UNITS
ADDED: 04/10/2017
UPDATED: 09/23/2016

JOB No.: 2498-08-S

SURVEY OF PROPERTY
SITUATED IN
THE INCORPORATED VILLAGE OF BABYLON
TOWN OF BABYLON  SUFFOLK Co.
NEW YORK
SCTM No.: 102-6-1-12

GARAGE RIDGE 14.9' ABOVE GRADE.
HOUSE RIDGE ELEVATION = 39.0'
ALL ELEVATIONS ARE IN NAVD 1988 DATUM.

CERTIFIED TO:
THOMAS C. AND MELISSA BRUCKNER

WILLIAM T. HOLGAN
LICENSED LAND SURVEYOR
41 SMITH STREET
BABYLON, NEW YORK  11702
631-321-4732
SCALE: 1"=20'
DATE: 01/18/2007

A.C. UNITS
ADDED: 04/10/2017
UPDATED: 09/23/2016

jyantz@villageofbabylonny.gov

*Pls advise*

| | |
|---|---|
| **From:** | jyantz@villageofbabylonny.gov |
| **Sent:** | Friday, August 28, 2020 12:20 PM |
| **To:** | 'STEVIE RAY' |
| **Subject:** | INSPECTIONS FRIDAY, AUGUST 28 |

Can you please call Christine, W&M Fire Protection, question about sprinkler system for single family home – 973-768-2348

Did you tell 184 E. Main Street that you would inspect tank abandonment Saturday morning?  If so I just received permit app, should I process?

Here are your inspections:

59 Araca Road – Framing/Strapping – call Jim Jackson on way 631-872-0268

99 Park Avenue – Play Structure   20 – 00101

83 Lincoln Avenue – Framing – John

N. Railroad and Ralph – Cell Tower – Final – Leo 347-804-3121

73 The Crescent – Final Kitchen – Tom – 516-322-8758

23 Waters Edge Court – Rebar – John – 631-601-7990

36 Waterman Street – Removal of second kitchen – Anthony Bottan – 631-312-1148

Regards,
Jeanette Yantz
Building Department
Village of Babylon
jyantz@villageofbabylonny.gov

1

# VILLAGE OF BABYLON
# Certificate of Completion

Permit #20-00101                         Date: September 9, 2020

Owner Name:  Thomas Bruckner

Owner Address: 99 Park Avenue, Babylon, NY

*Property Location: 99 Park Avenue, Babylon, NY*

Section____006_____ Block____01_____ Lot____012_____

Description of Work:  **ADDITION TO CURRENT PLAY STRUCTURE TOTALING 122.5 SF**

Stephen Fellman
Building Inspector












OFFICE OF THE
VILLAGE CLERK

Jean Marie Parker

153 West Main Street
Babylon Village
New York 11702
(631) 669-1500

INCORPORATED 1893

December 16, 2020

Law Offices of Cory H. Morris
135 Pinelawn Road
Suite 250s
Melville, New York 11747

Representing: John Lepper

Re:  FOIL Letter dated 12/9/2020, sent to the Village Clerk at 5:30 PM on 12/09/2020, via
e-mail and hand-delivered to Village Hall the afternoon of 12/16/2020, with the following
request:

   All records, inclusive of the building permit(s), pertaining to, related or created for the
   outdoor playground/treehouse/elevated structure located at Village of Babylon,
   63 Wyandanch Avenue, Babylon, NY 11702.

Dear Mr. Morris,

   Enclosed please find all records on file for the outdoor playground/treehouse/elevated
structure located at 63 Wyandanch Avenue, Babylon, NY 11702.

   As per your instructions, this formal written response to your FOIL request has also been
emailed to you at info@coryhmorris.com on 12/16/2020.  If you have any questions or still wish
to inspect the abovementioned records as indicated in #2 of your Request please contact the
Village Clerk's Office at 631-669-1500.

Sincerely,

Jean Marie Parker

Jean Marie Parker
Village Clerk

Enclosures (12)





OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

**Village of Babylon**
INCORPORATED 1893

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

February 20, 2020

Mr. & Mrs. Gary Repetto
63 Wyandanch Avenue
Babylon, NY 11702

Dear Mr. & Mrs. Repetto,

It has come to our attention, that there is a "play house" structure in your yard that was built without a permit.

Please be advised that you must make application to the Building Department for said structure within 7 days of receiving this letter. Failure to do so will result in the issuance of a summons.

Respectfully,

Stephen Fellman
Building Inspector

Mr. Repetto
63 Wyondanch
631-806-3919

SF- Plz call-
4r-1 eV1z
2n F 2nM.

7-1-42.2



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

February 25, 2020

Mr. Gary Repetto
63 Wyandanch Avenue
Babylon, NY 11702

Dear Mr. Repetto,

Per our telephone conversation today, you have agreed that the "play house" structure in your yard will be removed upon your return from your trip.

Kindly contact our office upon removal for inspection.

Regards,

Stephen Fellman
Building Inspector

Leaving on 2/28
for Florida —
will be gone
30 Days.
Code —
365-26.



153 West Main Street
Babylon Village, New York 11702
(631) 669-1300 Fax (631) 669-1236 www.villageofbabylonny.gov
INCORPORATED 1893

## NOTICE OF VIOLATION

Name:  Gary Repetto

Address:  63 Wyandanch Avenue, Babylon, NY

Section   004          Block  01          Lot  042.002

Place of Occurrence:  63 Wyandanch Avenue, Babylon, NY

PLEASE TAKE NOTICE there exists a violation of:

**Babylon Village Code Section 365-26**

N.Y.S. Building Code Section

Multiple Residence Law

at the premises described above in that: Construction without a permit

**Please apply for building permit for the "play house" structure in your yard or remove**

Please be advised that the aforementioned violations must be corrected before the date of June 26, 2020

or an appearance ticket may be issued.

If you have any questions or we can assist you' in any way, please contact us at the above number.

Code Enforcement Officer

Stephen Fellman
Building Inspector
Dated: June 17, 2020

# VILLAGE OF BABYLON
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
**BUILDING DEPARTMENT**
## BUILDING PERMIT FORM

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

**Building Permit**
- ☐ Commercial ☐ Industrial ☒ Residential
- ☐ Main Building ☐ Addition 1–8
- ☒ Accessory Building ☐ Addition 1–8
- ☐ Interior Alteration ☐ Addition 1–8
- ☐ Two-Family Special Permit 1–3, 7, 8
- ☐ Change of Use or Occupancy 1–5, 7, 8
- ☐ Fire Damage Repair 1–4, 8
- ☐ Fireplace 3, 7
- ☐ Board of Appeals 1–3, 7, 8
- ☐ Swim/Pool ☐ In-Ground ☐ Above
  4 foot safety fence required 1–5, 7, 8
- ☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
- ☐ Underground Tank Installation
  (plus plumbing permit) 1–3, 6, 8
- ☐ Other - Explain 1–8

**FOR OFFICE USE ONLY**

Section _____ Block _____ Lot _____

Estimated Value of Construction $ _____ Fee: _____

Permit Number: _____

Current Zoning __A-7__ Approved By: _____ Date Checked: _____

Permit Application Denied _____ Why? _____

Is this permit a result of a Zoning Board of Appeals approval? ☐ Yes ☐ No

If yes, what conditions, if any, were set: _____

Board of Appeals Case #: _____

Pre-site inspection made by: _____ Date: _____

Approval for Issuance of Permit: _____ Date: 6/24/20

Issued by: _____ Date: _____ Checked by: _____

Certificate of Occupancy # _____

*update survey to follow*

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property __Residential__
2. PROPOSED USE _____
3. DESCRIPTION OF PROPOSED WORK __maintain Play Structure__
4. FLOOR AREA to be constructed or altered: _____ Total Square Feet
5. SIZE OF property ( ) × ( ) = _____ sq. ft. or _____ Acres
6. HEIGHT of building from average grade to highest point _____ Feet
7. PROPERTY LOCATION __63 Wyandanch Ave / 63 Wyandanch Ave__
   ☐ N ☐ S ☐ E ☐ W Side of _____ St. / Rd. / Ave. _____ Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # _____
   Certified as: _____ Date: _____
   __B P# 13311__

## ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.

**1. New Building** No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
(a) No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a permit is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
(b) The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is prohibited. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name __Gary P. Repetto__

Address __63 Wyandanch Ave__
__Babylon, NY 11702__

Phone # __631-806-3919__

Signature of PROPERTY OWNER

$100

Sworn to before me this _____
day of _____ 19 ____

Notary Public

Name _____

Address _____

_____

Phone # _____

Signature of CONTRACTOR
(if applicable)

County Home
Improvement License # _____

Sworn to before me this _____
day of _____ 19 ____

Notary Public

# VILLAGE OF BABYLON
153 West Main Street
Babylon, New York 11702
**(631) 669-1300**
BUILDING DEPARTMENT
## BUILDING PERMIT FORM

Application is hereby made to Code Enforcement Official (Building Inspector) of the Village of Babylon, NY, for the approval of plans and specifications to build or install as herein described. The applicant agrees to comply with all the provisions of the code of the Village of Babylon and/or any other applicable Federal, State and Local codes.

NOTE: Survey or site plans must accompany permit application. (For commercial or industrial applications, consult the Village of Babylon Planning Board.

Permit(s) requested (check one or more below)
Numbers refer to questions on right that must be answered.

Building Permit
☐ Commercial  ☐ Industrial  ☑ Residential
☐ Main Building  ☐ Addition 1–8
☑ Accessory Building  ☐ Addition 1–8
☐ Interior Alteration  ☐ Addition 1–8
☐ Two-Family Special Permit 1–3, 7, 8
☐ Change of Use or Occupancy  1–5, 7, 8
☐ Fire Damage Repair 1–4, 8
☐ Fireplace 3, 7
☐ Board of Appeals 1–3, 7, 8
☐ Swim/Pool  ☐ In-Ground  ☐ Above
4 foot safety fence required 1–5, 7, 8
☐ Demolition (Valid only 6 mos.) 1–3, 7, 8
☐ Underground Tank Installation
(plus plumbing permit) 1–3, 6, 8
☐ Other - Explain 1–8

**FOR OFFICE USE ONLY**

Section _____ Block _____ Lot _____
Estimated Value of Construction $ _____ Fee: _____
Permit Number: _____
Current Zoning __A-7__ Approved By: _____ Date Checked: _____
Permit Application Denied _____ Why? _____

Is this permit a result of a Zoning Board of Appeals approval?  ☐ Yes  ☐ No
If yes, what conditions, if any, were set: _____
Board of Appeals Case #: _____
Pre-site inspection made by: _____ Date: _____
Approval for Issuance of Permit: _____ Date: 6/24/20
Issued by: _____ Date: _____ Checked by: _____
Certificate of Occupancy # _____

*update survey to follow*

Answer, in black ink, questions numbered next to type of PERMIT(S) REQUESTED.
1. PRESENT USE of property _Residential_
2. PROPOSED USE _____
3. DESCRIPTION OF PROPOSED WORK _Maintain Play Structure_
_____
4. FLOOR AREA to be constructed or altered: _____ Total Square Feet
5. SIZE of property ( ) × ( ) = _____ sq. ft. or _____ Acres
6. HEIGHT of building from average grade to highest point _____ Feet
7. PROPERTY LOCATION _63 Wyandanch Ave / 63 Wyandanch Ave_
☐ N  ☐ S  ☐ E  ☐ W  Side of _____ St./Rd./Ave. _____ Feet
8. ORIGINAL CERTIFICATE OF OCCUPANCY # _____
Certified as: _____ Date: _____
_BP# 1331_

## ARTICLE X — SECTION 1003 CERTIFICATE OF OCCUPANCY.

**1. New Building**   No Building hereafter erected, enlarged, extended or altered shall be occupied or used, in whole or in part until a certificate of occupancy, certifying that such building conforms to the approved plans and the requirements of this code and stating the purpose for which the building may be used in its several parts, and any special stipulations, shall have been issued by the Building Inspector and signed by him or his authorized assistant. If the occupancy or use of a building is not discontinued during the work of alteration, the occupancy or use of the building shall not continue for more than thirty days after the completion of the alteration unless a certificate shall have been issued.

**2. Change of Occupancy.**
**(a)**   No change or use shall be made in a building hereafter erected or altered that is not consistent with the last issued certificate of occupancy, for such building unless a change is secured. In case of an existing building, no change of occupancy that would bring it under some special provision of this ordinance shall be made unless the Building Inspector, upon inspection, finds out that such building conforms substantially to the provisions of this ordinance with respect to the proposed new occupancy and use, and issues a certificate of occupancy therefor.
**(b)**   The reestablishment in a building, after a change of occupancy has been made, of a prior use that would not have been permitted in a new building of the same type of construction is permitted. The change from a specifically prohibited use to another specifically prohibited use shall not be made.

I swear that this application is a true and complete statement of all proposed work on the described premises.

Name _Gary P. Repetto_                     Name _____
Address _63 Wyandanch Ave_          Address _____
_Babylon, NY 11702_
Phone # _631-806-3919_                   Phone # _____

_____                    _____
Signature of PROPERTY OWNER          Signature of CONTRACTOR
                                                            (if applicable)
                                                    County Home
                                                    Improvement License # _____
Sworn to before me this _11th_            Sworn to before me this _____
day of _December_ 20 2020              day of _____ 19 ___
_____
Notary Public                                    Graceanne Sawczyn
                                                    Notary Public, State of New York
                                                    No. 01SA6225053
                                                    Qualified in Suffolk County
                                                    7/19/22

**Babylon Village**
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

| INVOICE # |
|---|
| 20-00344 |

ACCOUNT ID: P-136577
INVOICE DATE: 06/25/20
DUE DATE: 06/25/20

REPETTO, GARY P
CRISTINA REPETTO

63 WYANDANCH AVE
,  11702

PERMIT INFORMATION
PERMIT NO: 20-00098
LOCATION: 63 WYANDANCH AVE
OWNER: REPETTO, GARY P

| QUANTITY/UNIT | SERVICE ID | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | Permit No: 20-00098 | | |
| 1.0000 | CP-FILIN | CONSTRUCTION PERMIT FILING FEE | 85.000000 | 85.00 |
| | | Permit No: 20-00098 | | |
| 1.0000/COW | CP-RESID | RESIDENTIAL CONSTRUCT PERMIT | 15.000000 | 15.00 |
| | | Permit No: 20-00098 | | |

TOTAL DUE:  $ 100.00

Prn Payment: 06/25/20  CK 8129                                    -100.00

BALANCE:  $ 0.00

----------------------------------------------------------------------------------

***PAYMENT COUPON - PLEASE DETACH AND RETURN THIS PORTION ALONG WITH YOUR PAYMENT***

Babylon Village
VILLAGE OF BABYLON
153 WEST MAIN STREET
BABYLON, NY 11702

INVOICE #:  20-00344
DESCRIPTION:  Permit No: 20-00098
ACCOUNT ID:  P-136577
DUE DATE:  06/25/20
TOTAL DUE:  $ 0.00

REPETTO, GARY P
CRISTINA REPETTO

63 WYANDANCH AVE
,  11702



# *VILLAGE OF BABYLON*

Permit #: **20-00098**                                      Invoice ID: **20-00344**

Date Issued:  **06/25/20**

Owner Name: **REPETTO, GARY P**

Owner Address:

**63 WYANDANCH AVENUE**
**BABYLON NY 11702**

Granted a type: **BUILDING PERMIT**

Property Location:  **63 WYANDANCH AVE**
**BABYLON, NEW YORK 11702**

In the **VILLAGE OF BABYLON** , NY   to  expire : **12/22/20**

Section/Block/Lot **004.-01-042.002**
Pursuant to application, and plans approved by the Building Inspector.
Amount paid by holder of permit as required by Ordinance.

Description of Work:   **MAINTAIN PLAY STRUCTURE IN REAR YARD**

Total Permit Fees:

Stephen R. Fellman

Per _____

( This Permit may be Suspended or Terminated for any violation of the Ordinances of the VILLAGE OF BABYLON )

This permit must be kept on the premises until full completion of the work authorized.

Maintain Play House

No. 20-00098

# BUILDING PERMIT

VILLAGE OF BABYLON

# IMPORTANT

## Tack This Card In A Conspicuous Place

This Card Must Be Returned To BUILDING INSPECTOR On Final Inspection

Building Inspector

jyantz@villageofbabylonny.gov

| | |
|---|---|
| **From:** | jyantz@villageofbabylonny.gov |
| **Sent:** | Wednesday, July 29, 2020 1:16 PM |
| **To:** | 'STEVIE RAY' |
| **Subject:** | INSPECTIONS WEDNESDAY, JULY 29TH |

*P\s advise*

41 Oak Street, Keyway, ███████████ ✓

44 Roosevelt – Final Garage , ███████████ ✓

195 Livingston – Final pool, ███████████ ✓

63 Wyandanch – Play structure (call doorbell doesn't work ███████ ✓ *26-00098*

179 Peninsula – Final inground pool/outdoor kitchen ✓

235 Litchfield Ave – Framing, ███████████ (call ½ hr prior) ✓

4 Argyle Ave – Insulation, ███████████ ✓

15 Edward (per Terry) ✓

155 Araca Rd – Motor home *SUMHOUSE*

145 The Crescent – Construction without a permit?? |

**3 pm meeting with Mayor

Regards,
Jeanette Yantz
Building Department
Village of Babylon
jyantz@villageofbabylonny.gov

1

# VILLAGE OF BABYLON

## BABYLON, NEW YORK
## Telephone (631)-669-1300

**Certificate of Occupancy No.** 20-00098          **Date:** 08/05/20

The Building Inspector of the Village of Babylon hereby certifies, that the following premises and buildings thereon, having reference to Building Permit Application No. 1494 conform to and comply with the provisions of the Building Zone Ordinance of the Village of Babylon.

**PREMISES:** 63 WYANDANCH AVE

**Section/Block/Lot:** 004.-01-042.002

**Description of Work** MAINTAIN PLAY STRUCTURE IN REAR YARD

This certificate is issued to  REPETTO, GARY P                    of the aforesaid premises and buildings,
address

63 WYANDANCH AVENUE
BABYLON NY 11702

in accordance with the provisions of the Building Zone Ordinance of the Village of Babylon

Stephen R. Fellman
Building Inspector



*Cities fee file* . . . .

# Article VI: Enforcement; Permits; Site Plan Review

## § 365-25 Enforcement officer.

[Amended 3-27-2007 by L.L. No. 3-2007]

It shall be the duty of the Building Inspector or any Village of Babylon employee designated by the Building Inspector or the Mayor to enforce the provisions of this chapter.

## § 365-26 Permit required; materials to be submitted.

[Amended 12-11-1984 by L.L. No. 7-1984]

A.  No building shall hereafter be erected and no existing building shall be structurally altered or added to on any lot, plot or premises and no excavation or work of any nature shall commence in connection therewith, nor shall any use of an existing building be changed until a permit authorizing the same shall have been issued by the Building Inspector. The Building Inspector shall require that the application for a permit and the accompanying plot plan, plans and specifications shall contain all information necessary to enable him to determine whether the proposed building addition or structural alterations or change of use to an existing building comply with the provisions of this chapter and Chapter 171, Flood Damage Prevention, where applicable.
[Amended 10-24-2006 by L.L. No. 8-2006; 7-14-2015 by L.L. No. 5-2015]

B.  No permit shall be required for a storage shed located on the same plot as a one- or two-family dwelling, provided that only one storage shed shall be located on such plot and that such storage shed shall be securely anchored to the ground, shall comply with the structural provisions of the New York State Uniform Fire Prevention and Building Code and shall comply with all other Village laws, rules and regulations. Any storage shed which, in the opinion of the Building Inspector, has become dangerous, unsound, unsafe or hazardous as a result of fire, neglect, disrepair, structural failure, collapse, vandalism or any other means shall be declared a public nuisance. Any such shed declared to be a public nuisance shall be removed in accordance with the Building Inspector's specifications.

C.  Decks/patios; outdoor playgrounds and gyms.
[Added 9-9-1986 by L.L. No. 4-1986; amended 1-11-1994 by L.L. No. 1-1994]

   (1)  As used in this subsection, the following terms shall have the meanings indicated:

   **DECK/PATIO**
      A single- or multi-level open flat or roof-enclosed structure composed of wood, metal, masonry or similar material.

   (2)  Decks and patios over 18 inches in height shall conform to minimum setback requirements of the main structure. A building permit shall be required for a deck/patio which is 18 inches or more above the adjacent grade level.

   (3)  A building permit shall be required when an outdoor playground or gym (or any combination) exceeds a lot area of 90 square feet.

D.  In the districts designated in this Code as Marine Commercial District, Retail Business District and Industrial

District, no exterior additions, including but not limited to fences, decks, patios, breezeways, arbors, seating arrangements, freestanding walls and similar structures, shall be constructed, added, erected or placed upon any lot, plot or premises, and no excavation or work of any nature shall commence in connection therewith, until a permit authorizing the same shall have been issued by the Building Inspector. Before issuing such a permit, the Building Inspector shall require that an application for a permit shall be filed with accompanying plot plan, plans and specifications, and the same shall be referred to the Planning Board for recommendation in connection therewith. No building permit shall be issued except in conjunction with plans filed and approved.
[Added 5-10-1988 by L.L. No. 2-1988]

E.   A building permit shall be required for a roofless deck, patio, porch, landing, portico, balcony or sun deck which is more than 18 inches above the adjacent grade level or higher than the first floor grade of the main structure, whichever is lower. No work of any nature shall commence in connection therewith until a permit authorizing the same shall have been issued by the Building Inspector. Before issuing such a permit, the Building Inspector shall require that an application for a permit shall be filed with the occupancy plot plan and specifications, and the same shall be referred to the Planning Board for its review and recommendation. The Planning Board may approve with modifications or disapprove the same as it deems necessary to preserve the health, safety and welfare of the community. No building permit shall be issued except in conjunction with plans filed and approved.
[Added 11-13-1990 by L.L. No. 4-1990; amended 6-23-1992 by L.L. No. 1-1992; 6-22-2004 by L.L. No. 2-2004]

F.   No outside stairway shall be installed to a deck, porch, landing, second or third floor, basement, portico, balcony or sun deck which has access to any part of a building that is higher or lower than the first floor.
[Added 6-23-1992 by L.L. No. 1-1992; amended 11-25-1997 by L.L. No. 5-1997]

G.   Streamlining applications for rooftop solar panels.
[Added 9-27-2011 by L.L. No. 2-2011]

(1)   Legislative purposes. The Village Board of Trustees has concluded that in order to facilitate adoption of solar energy technologies in residential settings, it is incumbent upon municipalities such as the Village of Babylon to remove the complexity and hassle associated with securing approval of installations for solar technology by creating a streamlined application process that is more targeted than the building permit process that is currently utilized. Such a new process will save time, eliminate paperwork and related expenses, protect public safety and speed approvals.

(2)   Definitions. As used in this section, the following terms shall have the meanings indicated:

**APPROVED CONTRACTOR**
   A contractor whose credentials were reviewed and approved by either the Building Inspector or the Long Island Power Authority (LIPA) as evidenced by the list to be maintained and published by LIPA of installers whose credentials have been pre-screened.

**APPROVED EQUIPMENT**
   Solar paneling equipment previously reviewed and approved by the Building Inspector or meeting the requirements for a standard installation and shall include the following:

(a)   Photovoltaic (PV) panels certified by a nationally-recognized testing laboratory as meeting the requirements of the Underwriters Laboratory (UL) Standard 1703;

(b)   Inverters on a list of New York State Public Service Commission type-tested inverters which are tested by UL or other nationally-recognized laboratories to conform with UL standard 1741; and

(c)   Residential solar hot water (RSHW) equipment certified by the Solar Rating and Certification Corporation under its OG-100 standard for solar collectors.

**APPROVED INSPECTOR**

Electrical Underwriters, which are already required to perform the electrical inspection of the system, and who certify that they have been trained to perform the third-party PV inspection or a third-party designated by LIPA on a list of trained PV inspectors maintained by LIPA.

**SOLAR PANEL INSTALLATIONS**

Solar electric panel and solar hot water installations where the installation is to be flush mounted on a residential roof and to be installed by an approved contractor using approved equipment.

**STANDARD INSTALLATION**

A solar energy system with a roof load of no more than five pounds per square foot for photovoltaic (PV) and six pounds per square foot for residential solar hot water (RSHW) that is flush-mounted using a racking system approved by a licensed New York State professional engineer or registered architect on a residential roof with an eighteen-inch-wide clear path at the roof ridge.

(3) Anything to the contrary notwithstanding, the Building Inspector shall expedite the process of permitting standard installations of solar panels by approved contractors using approved equipment. Permits for same may be issued based upon the following criteria:

   (a) A new property survey shall not be required, but if the solar energy system is proposed for an accessory structure on the residential property, the property owner will be required to provide an existing survey showing that the accessory structure is legal.

   (b) The application shall include a certified drawing (hand-drawn or better) of the solar panel location and layout on the roof and other diagrams.

   (c) The application will require a professional engineer or registered architect to certify the load bearing and wind load sufficiency of the subject solar installation.

   (d) The contractor must be an approved contractor.

   (e) The permit shall be limited to approved equipment.

   (f) The Building Inspector may rely upon and accept third-party inspections and/or certifications if provided by approved inspectors, which inspectors are to be paid for by the homeowner.

(4) Requirements for permit submittal. Before approval and issuance of permit(s) for a grid-tied photovoltaic system (PV) or residential solar hot water system (RSHW), the applicant shall submit:

   (a) A completed fast track permit requirements checklist on the Building Inspector's approved form.

   (b) Three sets of plans which include:

      [1] A cover sheet identifying the:

         [a] Project address, map, section, block and lot number of the property;

         [b] Owner's name, address, phone number; and

         [c] Name, address and phone number of the person preparing the plans;

      [2] Sheet index indicating each sheet title and number;



153 West Main Street
Babylon Village, New York 11702
(631) 669-1300  Fax (631) 669-1236
www.villageofbabylonny.gov

# NOTICE OF VIOLATION

Name: _John Lepper_     Lic. Plate No. _____
Address: _59 Cockpuse Ave_
Tel. No. _____ Sec. _4_ Block _1_ Lot(s) _100_
Place of Occurrence: _59 Cockpuse Ave_

PLEASE TAKE NOTICE there exists a violation of

☑ Babylon Village Code Section _365.24_

❏ N.Y.S. Building Code Section _____

❏ Multiple Residence Law _____

❏ Other _____

at the premises described above in that _Building permit required_

Please be advised that the aforementioned violations must be corrected before the date of _5/23_ 20_18_, or an appearance ticket may be issued.

If you have any questions or we can assist you in any way, please contact us at the above number.

Code Enforcement Officer

Date: _5 / 21 / 18_

**Stephen R. Fellman**
Building Inspector
Village of Babylon

Lepper   4

5/21/18

Call from Mr.
Lepper.

Told him probably
need 2BA —
If so — 2BA
won't accept
hand drawings.

6/20/18  LM                    —

Lepper
    59 Cochran—

Need plans per
    SKF &
Bruce Humenik,
        2BA Chair

See attached.

                    Never 7/1/18
                    Pke
                    — Summer

BRUCE WANTS
SEALED PLANS
FROM ENGINEER
FOR TREEHOUSE

\* Notes Redacted

# *Incorporated Village of Babylon*
**153 W Main Street**
**Babylon, NY 11702**

### Board of Trustees Work Session
### August 14, 2018

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried, the meeting opened at 7:15 p.m.

Work Session:

1. Restaurant Moratorium
2. Parking Code
3. Nextel Lease

On the motion of Trustee Adams, seconded by Trustee Muldowney and unanimously carried, the public portion of the meeting adjourned at 7:23 p.m.

On the motion of Trustee Muldowney, seconded by Trustee Davida and unanimously carried, the Board entered into Executive Session at 7:29 p.m. to discuss sensitive properties.

Executive Session:

1. 89 Park Avenue
2. 72 Shore Rd.
3. 56 Yacht Club
4. 30 Tappan Ave.
5. Mayhew Dockings
6. Francesco's
7. 21 Lighthouse
8. 83 Sumpwams
9. Argyle, Bartini, Molto Vino, Barrique
10. 59 Cockonoe
11. 12 Tomkins
12. Bayview
13. 53 Melbury
14. 138 Shore

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried, the meeting adjourned at 8:03 p.m.

# *Incorporated Village of Babylon*
### 153 W Main Street
### Babylon, NY 11702

*\* Redacted notes*

### Board of Trustees Work Session
### September 11, 2018

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried, the meeting opened at 7:05 p.m.

Work Session:

1. Restaurant Moratorium
2. Parking Code
3. Nextel Lease
4. Tres Palms
5.

On the motion of Trustee Silvestri, seconded by Trustee Muldowney and unanimously carried, the Board entered into Executive Session at 7:31 p.m. to discuss sensitive properties.

Executive Session:

1. 89 Park Avenue
2. 72 Shore Rd.
3. 306 Livingston
4. 30 Tappan Ave.
5. Mayhew Dockings
6. Francesco's
7. 21 Lighthouse
8. 83 Sumpwams
9. Middleton
10. 59 Cockonoe
11. 12 Tomkins
12. Rogers
13. 53 Melbury
14. 138 Shore

On the motion of Trustee Muldowney, seconded by Trustee Davida and unanimously carried the Board returned to public session at 8:07 p.m. and the meeting adjourned.

### *Incorporated Village of Babylon*
**153 W Main Street**
**Babylon, NY 11702**


*Redacted notes*

### Board of Trustees Work Session
### October 2, 2018

On the motion of Trustee Silvestri, seconded by Trustee Muldowney and unanimously carried, the meeting opened at 4:12 p.m.

Work Session:

1. Restaurant Moratorium
2. Sexual Harassment Policy
3. Sober House
4. Boat at #53 Melbury Road
5. Communications
6. Standing Water – East Shore Drive
7. American Tower – Cell Tower

Tony: - Pumps (Benson)
- Marble Dusting/ Aqua Staining
- Tree DPA

Kevin: - Computers (2)
- Triangle (BBS)

Mary: - Tom Bruckner
- 94 or 96 or 95

Robyn: - Building Permit for Mulberry
- Building Inspection
- Nelson / Pope
- John O'Farrell
- Bus. District

Meeting with Bruce

Gerard:
- Syntex
- Inspector – Scalvos
- Tree House
- Cell Tower

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried the meeting adjourned at 5:55 p.m.

*Redacted notes*

# *Incorporated Village of Babylon*
### 153 W Main Street
### Babylon, NY  11702

### Board of Trustees Work Session
### October 9, 2018

On the motion of Trustee Muldowney, seconded by Trustee Adams and unanimously carried, the meeting opened at 7:10 p.m.

On the motion of Trustee Muldowney, seconded by Trustee Adams and unanimously carried, the Board entered into Executive Session at 7:15 p.m. to discuss sensitive properties.

Executive Session:

1. 89 Park Avenue
2. 72 Shore Road
3. 306 Livingston
4. 30 Tappan
5. Francesco's
6. 21 Lighthouse
7. 83 Sumpwams
8. 59 Cockenoe
9. 12 Tompkins
10. 53 Melbury

On the motion of Trustee Davida, seconded by Trustee Muldowney and unanimously carried, the Executive Session ended at 7:40 p.m. and the Board returned to the Public session.

Work Session:
1. Restaurant Moratorium
2. Mayhew Dockings
3. Nextel Lease
4. Rogers

On the motion of Trustee Silvestri, seconded by Trustee Adams and unanimously carried, the meeting adjourned at 7:55 p.m.

# *Incorporated Village of Babylon*
### 153 W Main Street
### Babylon, NY 11702

### Board of Trustees Work Session
### October 16, 2018

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried, the meeting opened at 4:43 p.m.

Gerard:
- Tree House
- Francesco's
- Rogers
- Babylon Court Yard

Tony: -   Pumps for Pool
- Sexual Harassment (Program)

Steve F:
- Ketewamoke – 3rd house?
- Wills House – brick/brack
      Talk to Skip (DeSimone)
- Argyle Falls (Savik & Murray)

Kevin: -   Heinz – Shore Rd.
- Luncheon for Golf

Steve F:
- Roy's Property
- Village Cup

Mary:
- LEN Rd. House – not cleaning property
- Sumpwam Place – Skip to do end of Str.
- Trip – Melville to do mums
- Thurs - Playground Cooper Street – Sometime

Robyn:
- Containers – let things sit
- Brunjes lawsuit
- Shore East
- Nextel lease
- lights

On the motion of Trustee Muldowney, seconded by Trustee Adams and unanimously carried the meeting adjourned at 5:55 p.m.



*Redacted notes*

# Incorporated Village of Babylon
### 153 W Main Street
### Babylon, NY 11702

### Board of Trustees Work Session
### October 23, 2018

On the motion of Trustee Muldowney, seconded by Trustee Silvestri and unanimously carried, the meeting opened at 7:06 p.m.

Work Session:
1. Restaurant Moratorium
2. Mayhew Dockings
3. Nextel Lease: Island Towers
4. Rogers
5. Nicolia / Bus Terminal

On the motion of Trustee Muldowney, seconded by Trustee Silvestri and unanimously carried, the Board entered into Executive Session at 7:16 p.m. to discuss sensitive properties.

Executive Session:

1. 89 Park Avenue

2. 72 Shore Road

3. Francesco's

4. 83 Sumpwams

5. 59 Cockenoe

6. 12 Tompkins

7. 53 Melbury

8. Legal Aid Motions

9. 84 Fire Island Avenue

On the motion of Trustee Muldowney, seconded by Trustee Silvestri and unanimously carried, the Executive Session ended at 8:00 p.m.

# *Incorporated Village of Babylon*
### 153 W Main Street
### Babylon, NY 11702

## Board of Trustees Work Session
## November 6, 2018

On the motion of Trustee Davida, seconded by Trustee Muldowney and unanimously carried, the meeting opened at 4:35 p.m.

Gerard:
- What's Hot – What's Not
- 89 Park Ave. – Notification Out
- Tree House – Newsday called

Tony: - Nothing

Kevin:
- Spot Zone – (Railroad Revitalization Distr.)
- New Look for Courtyard
- *Parking ?

Mary:
- Moratorium          Marine District
- Tree Ordinance      Mayhew
- Pumpkins

Robyn:
- Tree House

Mayor:
- Railroad
- Kevin McCaffrey
- Questions for Coffee with the Mayor
- Janet Goltz (24 Paumanake Ave.)
- Von Bourgondien House, Peninsula

On the motion of Trustee Silvestri, seconded by Trustee Adams and unanimously carried the meeting adjourned at 5:55 p.m.

# *Incorporated Village of Babylon*
## 153 W Main Street
## Babylon, NY 11702

## Board of Trustees Work Session
## November 20, 2018

On the motion of Trustee Davida, seconded by Trustee Silvestri and unanimously carried, the meeting opened at 4:33 p.m.

- Church
- Robyn - Lights
- Tree House
- Speed Limit (25 mph) Consultant
- Montauk Highway
- Railroad Station
- Lockwood
- Railroad zone;
  parking & height

---------------------------------------------------------------------------------

- Tree House – in court
- Speed Limit – still discussing
- Montauk Highway – discussed
- Railroad Station – discussion
- Lockwood – Gerard to follow-up
- Railroad Zone – work in progress

On the motion of Trustee Davida, seconded by Trustee Muldowney and unanimously carried the meeting adjourned at 5:50 p.m.

# *Incorporated Village of Babylon*

### 153 W Main Street
### Babylon, NY 11702

### Board of Trustees Work Session
### December 4, 2018

On the motion of Trustee Davida, seconded by Trustee Muldowney and unanimously carried, the meeting opened at 4:37 p.m.

- Tony
- Kevin:
    - No boats in boat slips
    - Barriers too much
    - Golf course closes Sunday
    - Sexual harassment

- Mary:
    - House on Little East Neck Road

- Robyn:
    - Ralph Avenue

- Gerard
    - Sclavos – nothing
    - Scharf – nothing
    - Tree House – in court
    - Legal Aid – filed all depositions (plead out)
    - Restaurant Moratorium – ongoing
    - Land Moratorium – next week
    - Rogers – get project going
    - Docking – January
    - Seqra – resolution
    - Sports Shack – looking into
    - Tree Program – Gerard would look at
    - Sexual Harassment – Andrew
    - Fines BOH – Gerard to look into
- Floating Zone*
- Goltz
- Homestead Tax Option
- Beach House
- Day Care
- Towers
- Cablevision – new cable

On the motion of Trustee Muldowney, seconded by Trustee Adams and unanimously carried the meeting adjourned at 5:40 p.m.

Lepper    97

OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector



153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

INCORPORATED 1893

August 14, 2018

Mr. John Lepper
59 Cockonoe Avenue
Babylon, NY 11702

Re: 59 Cockonoe Avenue, Babylon, NY

Dear Mr. Lepper,

Per Section 116 Unsafe Structures of the International Building Code the treehouse at the above referenced premises is hereby deemed an unsafe structure and may not be occupied until such time a Certificate of Occupancy is issued.

Respectfully,

Stephen Fellman
Building Inspector

*Gerard Glass & Associates P.C.*

ATTORNEYS AT LAW

72 East Main Street, Suite 3
Babylon, NY 11702
Telephone (631) 321-1400
Facsimile (631) 321-1491

SUPPORT STAFF
STACIE A. BALTRUSITIS
sb@gglasslaw.com

GERARD GLASS, ESQ.
gg@gglasslaw.com

MAUREEN IMPAGLIAZZO
mi@gglasslaw.com

October 18, 2018

Mr. John Lepper
59 Cockonoe Avenue
Babylon, New York 11702

RE:    59 Cockonoe

Dear Mr. and Mrs. Lepper:

As you know this office is counsel to the Village of Babylon.

The Court has rendered its decision. Please let me know your intentions.

Thank you for your attention and courtesies herein.

Very truly yours,

*Gerard Glass* (mi)

GERARD GLASS

GG:mi
Enclosures
cc: Suzanne Schettino
    Debbie Longo



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

INCORPORATED 1893

October 19, 2018

Mr. John Lepper
59 Cockonoe Avenue
Babylon, NY 11702

Re:  ORDER OF REMOVAL

Dear Mr. Lepper:

On October 27, 2018 Village Justice John Rafter found you guilty of each offense listed on various summonses you received regarding the construction of a treehouse within your front yard setback.

I, as Building Inspector, am ordering the continuation of the stop work order barring any further construction or occupancy of the tree house.

You must remove the tree house in its entirety or summonses may be issued on a daily basis.

If you have any question please do not hesitate to contact me at 631-987-3065.

Respectfully Submitted;

Stephen Fellman
Building Inspector

Cc:  Mayor Ralph Scordino
      Board of Trustees
      Gerard Glass, Village Attorney

## APPELLATE TERM OF THE SUPREME COURT
## OF THE STATE OF NEW YORK FOR THE 9TH & 10TH JUDICIAL DISTRICTS

Argued - October 10, 2019 Term

THOMAS A. ADAMS, P.J.
BRUCE E. TOLBERT
JERRY GARGUILO, JJ.

------------------------:------------------------------------------------------x

DECISION & ORDER

The People of the State of New York, Respondent, v
John Lepper, Appellant.

Appellate Term Docket No.
2018-2466 S CR

Lower Court # 494213, 494214, 494215, 294222

------------------------------------------------------------------------------x

Law Office of Cory H. Morris (Cory H. Morris of counsel), for appellant.

Gerard Glass and Associates, P. C. (Gerard Glass of counsel), for respondent.

Appeal from four judgments of the Justice Court of the Village of Babylon, Suffolk County (John T. Rafter, J.), rendered October 17, 2018. The four judgments convicted defendant, after a nonjury trial, of four charges of violating Babylon Village Code § 365-26, respectively, and imposed sentences.

ORDERED that the judgments of conviction are reversed, on the law, the informations are dismissed and the fines, if paid, are remitted.

In each of four purported informations, defendant was charged with violating Babylon Village Code (Code) § 365-26. At a nonjury trial, the People presented proof that defendant had constructed a tree house without a permit at a residential premises where he resided. Following the trial, defendant was convicted as charged. On appeal, defendant contends, among other things, that the accusatory instruments are facially insufficient. We agree.

A violation under a zoning ordinance "necessarily presupposes a criminal action" (*see Matter of Shirley v Schulman*, 78 NY2d 915, 916 [1991]), which must be commenced by the filing of a valid and sufficient accusatory instrument in order for the court to obtain jurisdiction (*see* CPL 100.05; *People v Jackson*, 18 NY3d 738, 741 [2012]; *Matter of Shirley v Schulman*, 78 NY2d at 916-917). As the record does not reveal that defendant waived prosecution by information (*see People v Dumay*, 23 NY3d 518, 522 [2014]), the standards of review of the sufficiency of the instruments are those applicable to informations (*see* CPL 100.40 [1]; 170.65 [1], [3]; *People v Jackson*, 18 NY3d at 741; *see also People v Kalin*, 12 NY3d 225, 228 [2009]). An information is sufficient on its face

December 19, 2019                                                                 Page: 1

PEOPLE v LEPPER, JOHN

if it contains nonhearsay factual allegations of an evidentiary nature which establish, if true, every element of the offense charged and the defendant's commission thereof (*see* CPL 100.15 [3]; 100.40 [1]; *People v Henderson*, 92 NY2d 677, 679 [1999]; *People v Alejandro*, 70 NY2d 133, 136-137 [1987]).

Code § 365-26 provides that "[n]o building shall hereafter be erected and no existing building shall be structurally altered or added to on any lot, plot or premises and no excavation or work of any nature shall commence in connection therewith, nor shall any use of an existing building be changed until a permit authorizing the same shall have been issued by the Building Inspector." Section 365-3 of the Code defines a "building" as "[a] structure having a roof supported by columns or walls for the shelter, support or enclosure of persons, animals or chattels." The factual portions of the accusatory instruments—containing only a few words, "WITHOUT A PERMIT – TREEHOUSE"—fail to allege facts establishing that the tree house constituted a "building" within the meaning of the statute, thereby triggering the permit requirement. The accusatory instruments also fail to allege facts of an evidentiary nature establishing the nature of the work that defendant performed on the tree house, namely, that defendant had erected the tree house, structurally altered it or changed the use thereof (*see People v Hernandez*, 64 Misc 3d 145[A], 2019 NY Slip Op 51303[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2019]; *People v James*, 49 Misc 3d 154[A], 2015 NY Slip Op 51791[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). Therefore, the accusatory instruments fail to allege every element of the offense (*see People v Taffet*, 54 Misc 3d 21, 24-25 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]; *People v James*, 49 Misc 3d 154[A], 2015 NY Slip Op 51791[U]; *People v Roslyn Sephardic Ctr.*, 17 Misc 3d 74, 76-77 [App Term, 2d Dept, 9th & 10th Jud Dists 2007]).

In view of the foregoing, we pass upon no other issue raised on appeal.

Accordingly, the judgments of conviction are reversed and the informations are dismissed.

ADAMS, P.J., TOLBERT and GARGUILO, JJ., concur.

ENTER:

Paul Kenny
Chief Clerk

## A Letter from the Mayor about Treehouses and Other Things...

From time to time I have used this page to comment on matters of interest here in the Village. Today, I'm writing about something you may have heard about or read about in the news – a treehouse a Village resident decided to erect in his yard. At first blush this may seem like no big deal. Why should the Village care to interfere with a homeowner's right to build his kids a treehouse in his own yard? Well, that's what I thought at first too.

To begin with, this all started with complaints to my office from the homeowner's own neighbors. They complained this was no ordinary treehouse tucked away in someone's backyard. They explained it was nearly 100 square feet. The treehouse had sidewalls, a pitched roof and electric, and that the homeowner built the treehouse nearly on the property line along a residential street.

I referred the neighbors' complaints to our Building Inspector who, by the way, is also a licensed architect. He advised me that pursuant to State law and the Village Code the homeowner would need to obtain a building permit. This means he would have to submit plans to assure the treehouse was properly built and show the treehouse complied with local zoning.

The Building Inspector commented to me our laws in the Village are no different than anywhere else. Structures like this treehouse require a building permit to make sure they are safe, not a fire hazard and that they don't unfairly impact the privacy and other rights of the homeowner's neighbors. This seemed reasonable to me.

In any event, the problem snowballed because the homeowner refused to comply and go through the process to legalize the structure. Summonses were issued. The homeowner decided rather than apply for a permit he would challenge the summonses in court. He demanded a trial. Well, after having a fair opportunity to be heard, the homeowner lost. The Court told the homeowner he had to follow the same rules as everyone else. Instead, the homeowner went to the media to pressure the Village to change its position. To date, the homeowner has not applied to legalize the treehouse.

I've read that people say this is all about taxes – it's not. Someone could get hurt. Then, you guessed it, the Village could get sued and you, the taxpayers, would pay. I want you to know for the Village reasonable compliance with the law is not an option. We are legally and morally obligated to treat everyone the same.

The homeowner chose to build this treehouse without getting the proper permit. It is now up to him to try to make it right.

Best wishes for the Holiday Season.

Cordially,

Mayor Ralph Scordino



Effective 2/2018

## OFFICE OF CONGRESSMAN PETER T. KING
### PRIVACY RELEASE FORM

Pursuant to the provisions of the Federal Privacy Act, I hereby authorize Congressman Peter T. King to contact (federal agency) _Babylon Village_ on my behalf and receive information and/or reports pertaining thereto.

NAME: _John Lepper_                    Date of Birth: _10/24/2018_

Current Mailing Address (no P.O. Boxes):   _59 Cockanoe Ave_
_Babylon NY 11702_

Email: _JLep73@gmail.com_

Telephone Numbers: (Home) _(631) 539-9713_   (Other) _631) 766-1681_
                                              Cell

List any identifying numbers that might apply to your situation:
Social Security Number / Service Number / Immigration "A" Number: _____

Briefly describe your problem:

Dear Congressman King,
   I appoligize for asking for your help during your Campaign for relection; however this is a very important Matter for myself and my family. I feel as though we were Not treated fairly by the elected officals of Babylon Village. I built a treehouse for my kids back in May and was Met with a lot of resistance. I've done everything that was asked of me by the bldg inspector. Then we recieved three violations for three seperate days in the same envolope

Desired outcome: Not allowing us any time to respond to any of the violations that were being accused of, "Bldg Code" 365-26

---

I hereby declare that I am currently a resident of the Second Congressional District. I certify, under penalty of perjury, that 1) I provided or authorized all of the information in this privacy release and any document submitted with it; 2) I reviewed and

Effective 2/2018

## OFFICE OF CONGRESSMAN PETER T. KING
### PRIVACY RELEASE FORM

Pursuant to the provisions of the Federal Privacy Act, I hereby authorize Congressman Peter T. King to contact (federal agency) _____ on my behalf and receive information and/or reports pertaining thereto.

NAME: _____     Date of Birth: ___/___/_____

Current Mailing Address (no P.O. Boxes): _____

_____

_____

Email: _____

Telephone Numbers: (Home) _____     (Other) _____

List any identifying numbers that might apply to your situation:
Social Security Number / Service Number / Immigration "A" Number: _____

Briefly describe your problem:

Desired outcome: Possibly speak to Mayor Scordino to see if he might be willing to overturn the decision to dismantle our treehouse. As we are clearly not in violation of bldg code 365-26. "A bldg permit shall be required when an outdoor playground or gym (or any combination) exceeds a lot area of 90 square feet."

I hereby declare that I am currently a resident of the Second Congressional District. I certify, under penalty of perjury, that 1) I provided or authorized all of the information in this privacy release and any document submitted with it; 2) I reviewed and

Cockatoo  Treehouse  86 sq ft

Lepper 44

understand all of the information contained in my privacy release and submitted with it; and 3) all of this information is complete, true, and correct. I, (print your name) ____John L_epper____, authorize (federal agency)_____ to release information contained in nly (federal agency)_____ records as relevant to checking my case status, and to the extent permitted by law, to Representative Peter T. King and his staff.

Signature: _____     Date: 10/24/2018

**Return to**
Congressman Peter King
1003 Park Boulevard
Massapequa Park, NY 11762
FAX: (516) 541-6602

P.S. Would just like to add that, I spent my first 30yrs of life in N, Massapequa. I'M a Veteran, a Member of the FD.N.Y and have been a professional contractor for over 20yrs. I would also like to add that you have had and always will have the support of the Lepper family.

Sincerely,

**BABYLON VILLAGE COURT**
153 W. MAIN ST., BABYLON, N. Y. 11702
Phone: (631) 669-1771

APPEARANCE TICKET
494213

TO ENTER A PLEA BY MAIL USE REVERSE SIDE.
Pay online @www.babylonparking.com or call 1 (855) 831-4968
THE PEOPLE OF THE STATE OF NEW YORK (Village of Babylon vs.)

NAME: JOHN LEPPER          D.O.B.
ADDRESS: 59 COCKENOE AVE
VIN #: BABYLON N.Y.        ☐ PHOTO  ☐ ON COMPLAINT

PLATE STATE: ☐ N.Y. ☐ FL. ☐ PA. ☐ N.J. ☐ Other
PLATE TYPE: ☐ Pass. ☐ Boat ☐ Comm. ☐ Trail ☐ Other (Specify Type)
BODY TYPE: ☐ SEDAN ☐ VAN ☐ PICKUP ☐ CONV ☐ SUBN ☐ Other   COLOR   YEAR
MAKE: ☐ CHEV ☐ FORD ☐ HYUN ☐ DODG ☐ JEEP ☐ MAZDA ☐ HONDA ☐ NISSAN ☐ TOYT ☐ Other   REG. EXPIRE

THE ABOVE DEFENDANT IS CHARGED AS FOLLOWS

Date of Offense: 7/11/18      Time: 3 00   ☐ AM ☒ PM
Place of Occurrence: 59 COCKENOE AVE          Babylon, New York
SPECIFIC SECTION: _____   ☐ VILLAGE CODE  ☐ V&T LAWS OF N.Y.S.

_____

| Violation | Original Fine | Fine After 30 days | Fine After 60 days | Fine After 90 days |
|---|---|---|---|---|
| ☐ | $25.00 | $50.00 | $100.00 | $250.00 |
| ☐ | $35.00 | $70.00 | $140.00 | $250.00 |
| ☐ | $50.00 | $100.00 | $250.00 | $500.00 |
| ☐ | $75.00 | $150.00 | $250.00 | $500.00 |
| ☐ | $100.00 | $200.00 | $300.00 | $500.00 |
| ☐ | $125.00 | $250.00 | $300.00 | $500.00 |
| ☐ | $150.00 | $300.00 | $400.00 | $500.00 |
| ☐ | CONTACT COURT | | | |

YOU ARE HEREBY NOTIFIED TO ANSWER THIS TICKET IN PERSON OR BY MAIL TO THE VILLAGE JUSTICE COURT BY THE FOLLOWING APPEARANCE DATE.

APPEARANCE DATE → 8/14/18          ☒ 2 PM ☐ 7 PM
NOTICE
I PERSONALLY OBSERVED THE COMMISSION OF THE OFFENSE CHARGED ABOVE. FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW AFFIRMED UNDER PENALTY OF PERJURY THIS ___ DAY OF JULY 20 18    BLKY
COMPLAINANT'S SIGNATURE: STEPHEN FELLMAN  SH# INSP

---

**BABYLON VILLAGE COURT**
153 W. MAIN ST., BABYLON, N. Y. 11702
Phone: (631) 669-1771

APPEARANCE TICKET
494214

TO ENTER A PLEA BY MAIL USE REVERSE SIDE.
Pay online @www.babylonparking.com or call 1 (855) 831-4968
THE PEOPLE OF THE STATE OF NEW YORK (Village of Babylon vs.)

NAME: JOHN LEPPER          D.O.B.
ADDRESS: 59 COCKENOE AVE
VIN #: BABYLON N.Y.        ☐ PHOTO  ☐ ON COMPLAINT

PLATE STATE: ☐ N.Y. ☐ FL. ☐ PA. ☐ N.J. ☐ Other
PLATE TYPE: ☐ Pass. ☐ Boat ☐ Comm. ☐ Trail ☐ Other (Specify Type)
BODY TYPE: ☐ SEDAN ☐ VAN ☐ PICKUP ☐ CONV ☐ SUBN ☐ Other   COLOR   YEAR
MAKE: ☐ CHEV ☐ FORD ☐ HYUN ☐ DODG ☐ JEEP ☐ MAZDA ☐ HONDA ☐ NISSAN ☐ TOYT ☐ Other   REG. EXPIRE

THE ABOVE DEFENDANT IS CHARGED AS FOLLOWS

Date of Offense: 7/12/18      Time: 3 00   ☐ AM ☒ PM
Place of Occurrence: 59 COCKENOE AVE          Babylon, New York
SPECIFIC SECTION: 365-26 - CONSTRUCTION   ☒ VILLAGE CODE  ☐ V&T LAWS OF N.Y.S.
WITHOUT A PERMIT - TREE HOUSE

| Violation | Original Fine | Fine After 30 days | Fine After 60 days | Fine After 90 days |
|---|---|---|---|---|
| ☐ | $25.00 | $50.00 | $100.00 | $250.00 |
| ☐ | $35.00 | $70.00 | $140.00 | $250.00 |
| ☐ | $50.00 | $100.00 | $250.00 | $500.00 |
| ☐ | $75.00 | $150.00 | $250.00 | $500.00 |
| ☐ | $100.00 | $200.00 | $300.00 | $500.00 |
| ☐ | $125.00 | $250.00 | $300.00 | $500.00 |
| ☐ | $150.00 | $300.00 | $400.00 | $500.00 |
| ☐ | CONTACT COURT | | | |

YOU ARE HEREBY NOTIFIED TO ANSWER THIS TICKET IN PERSON OR BY MAIL TO THE VILLAGE JUSTICE COURT BY THE FOLLOWING APPEARANCE DATE.

APPEARANCE DATE → 8/14/18          ☒ 2 PM ☐ 7 PM
NOTICE
I PERSONALLY OBSERVED THE COMMISSION OF THE OFFENSE CHARGED ABOVE. FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW AFFIRMED UNDER PENALTY OF PERJURY THIS ___ DAY OF JULY 20 18    BLKY
COMPLAINANT'S SIGNATURE: STEPHEN FELLMAN  SH# INSP

**BAB** ON VILLAGE COURT
153 W.. .' MAIN ST., BABYLON, N. Y. 11702
Phone: (631) 669-1771

APPEARAL   TICKET

494215

## TO ENTER A PLEA BY MAIL USE REVERSE SIDE.

Pay online @www.babylonparking.com or call 1 (855) 831-4968

THE PEOPLE OF THE STATE OF NEW YORK (Village of Babylon vs.)

| NAME | D.O.B. |
|------|--------|
| JOHN LEPPER | |

ADDRESS
59 COCKENOE AVE

VIL # BABYLON N.Y.

☐ PHOTO
☐ ON COMPLAINT

PLATE # [ ][ ][ ][ ][ ][ ][ ]

| PLATE STATE | N.Y. ☐ | FL. ☐ | PA. ☐ | N.J. ☐ | Other | PLATE TYPE | Pass. ☐ | Boat ☐ | Comm. ☐ | Trail ☐ | Other (Specify Type) ☐ |

| BODY TYPE | SEDAN ☐ | VAN ☐ | PICKUP ☐ | CONV ☐ | SUBN ☐ | Other | COLOR | YEAR |

| MAKE | CHEV ☐ | FORD ☐ | HYUN ☐ | DODG ☐ | JEEP ☐ | MAZDA ☐ | HONDA ☐ | NISSAR ☐ | TOYT ☐ | Other | REG. EXPIRE |

THE ABOVE DEFENDANT IS CHARGED AS FOLLOWS

| Date of Offense 7/13/18 | Time 3⁰⁰ | ☐ AM ☒ PM |

Place of Occurrence
59 COCKENOE AE                    Babylon, New York

SPECIFIC SECTION: 265 do· CONSTRUCTION    ☐ VILLAGE CODE ☒ V&T LAWS OF N.Y.S.

WITHOUT A PERMIT - TENT HOUSE

| Violation | Original Fine | Fine After 30 days | Fine After 60 days | Fine After 90 days |
|-----------|---------------|--------------------|--------------------|--------------------|
| ☐ | $25.00 | $50.00 | $100.00 | $250.00 |
| ☐ | $35.00 | $70.00 | $140.00 | $250.00 |
| ☐ | $50.00 | $100.00 | $250.00 | $500.00 |
| ☐ | $75.00 | $150.00 | $250.00 | $500.00 |
| ☐ | $100.00 | $200.00 | $300.00 | $500.00 |
| ☐ | $125.00 | $250.00 | $300.00 | $500.00 |
| ☐ | $150.00 | $300.00 | $400.00 | $500.00 |
| ☐ | CONTACT COURT | | | |

**YOU ARE HEREBY NOTIFIED TO ANSWER THIS TICKET IN PERSON OR BY MAIL TO THE VILLAGE JUSTICE COURT BY THE FOLLOWING APPEARANCE DATE.**

APPEARANCE DATE → 8/14/18          ☒ PM ☐ 7 PM

NOTICE
I PERSONALLY OBSERVED THE COMMISSION OF THE OFFENSE CHARGED ABOVE. FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW AFFIRMED UNDER PENALTY OF PERJURY THIS 18 DAY OF JULY . 20 10  BLA

COMPLAINANT'S SIGNATURE STEPHEN FELLMAN    SH # INSP

**PETER T. KING**
Member of Congress
Second District, New York

339 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–3202
(202) 225–7896

1003 PARK BOULEVARD
MASSAPEQUA PARK, NY 11762
(516) 541–4225
(631) 541–4225

pete.king@mail.house.gov
www.peteking.house.gov
Twitter: @RepPeteKing



Congress of the United States
House of Representatives
Washington, DC 20515–3202

October 24, 2018

COMMITTEE ON HOMELAND SECURITY

CHAIRMAN, SUBCOMMITTEE ON
COUNTERTERRORISM AND INTELLIGENCE

PERMANENT SELECT COMMITTEE
ON INTELLIGENCE

CHAIRMAN, SUBCOMMITTEE ON EMERGING THREATS

FINANCIAL SERVICES COMMITTEE

SUBCOMMITTEE ON
CAPITAL MARKETS, SECURITIES & INVESTMENTS

SUBCOMMITTEE ON OVERSIGHT & INVESTIGATIONS

Mayor Ralph Scordino
Village of Babylon
153 West Main Street
Babylon, New York 11702



**RE: John Lepper Tree House Permit Issue.**

Dear Mayor Scordino,

The attached communication is sent for your consideration. Please investigate the statements contained therein and respond to me with the necessary information for reply, returning the enclosed correspondence with your answer.

**Send all correspondence to my Massapequa Park District Office at 1003 Park Blvd., Massapequa Park, New York 11762.**

Thank you for your prompt attention to this matter.

Sincerely,

PETER T. KING
Member of Congress

PTK/kd

PRINTED ON RECYCLED PAPER

Lepper     42

**John Lepper**
59 Cockenoe Ave
Babylon, New York 11704

**EXHIBIT**

DFT'S A 03/22/21 EGM

exhibitsticker.com

**RECEIVED**

MAR 1 2 2021

**KELLY, RODE & KELLY, LLP**

Re: Treehouse

Dear John:

Per the request and direction of Judge Bianco I am providing certification
as follows:

Based on my structural inspection of the treehouse structure in its current form, I find that the
treehouse structure supported in the tree is structurally stable and meets code loadings for
wind, snow and LL as prescribed by IBC and local requirements. In other words the structure is
able to withstand all weather-related events that are in accordance with code-induced loading
criteria.

James R Brown, PE
NY Professional Engineer - 063146



Seal/Signature

Title Block Line 1
You can change this area
using the "Settings" menu item
and then using the "Printing &
Title Block" selection.

Title Block Line 6

*Flooring*

**Project Title:** Sample Project Title
**Engineer:**
**Project ID:**  X1A
**Project Descr:** Sample Project Description

Printed: 9 MAR 2021, 12:05PM

## Wood Beam

File: RACK.ec6
Software copyright ENERCALC, INC. 1983-2020, Build:12.20.8.24

Lic. # : KW-06013309

Brown and Associates

**DESCRIPTION:**   TREEHOUSE FLOOR

### CODE REFERENCES

Calculations per NDS 2012, IBC 2012, CBC 2013, ASCE 7-10
Load Combination Set : IBC 2012

#### Material Properties

| | | | |
|---|---|---|---|
| Analysis Method : Load Resistance Factor D | | Fb + | 2,400.0 psi |
| Load Combination IBC 2012 | | Fb - | 1,850.0 psi |
| | | Fc - Prll | 1,650.0 psi |
| Wood Species : DF/DF | | Fc - Perp | 650.0 psi |
| Wood Grade : 24F - V4 | | Fv | 265.0 psi |
| | | Ft | 1,100.0 psi |

E : Modulus of Elasticity
Ebend- xx         1,800.0 ksi
Eminbend - xx       930.0 ksi
Ebend- yy         1,600.0 ksi
Eminbend - yy       830.0 ksi
Density          31.20 pcf
Repetitive Member Stress Increase

**Beam Bracing** : Beam bracing is defined as a set spacing over all spans

#### Unbraced Lengths

First Brace starts at 2.0 ft from Left-Most support
Regular spacing of lateral supports on length of beam = 2.0 ft



D(0.240) Lr(0.240) S(0.360)
L(0.04)

6.0 X 2.50

Span = 3.50 ft

### Applied Loads

Service loads entered. Load Factors will be applied for calculations.

Beam self weight calculated and added to loads
Loads on all spans...
Uniform Load on ALL spans : D = 0.020, Lr = 0.020, S = 0.030 ksf, Tributary Width = 12.0 ft
Uniform Load : L = 0.040 , Tributary Width = 1.0 ft

### DESIGN SUMMARY

**Design OK**

| | | | | | |
|---|---|---|---|---|---|
| Maximum Bending Stress Ratio | = | 0.630 : 1 | Maximum Shear Stress Ratio | = | 0.300 : 1 |
| Section used for this span | | 6.0 X 2.50 | Section used for this span | | 6.0 X 2.50 |
| fb: Actual | = | 2,610.43 psi | fv: Actual | = | 137.24 psi |
| Fb: Allowable | = | 4,145.28 psi | Fv: Allowable | = | 457.92 psi |
| Load Combination | | +1.20D+0.50L+1.60S | Load Combination | | +1.20D+0.50L+1.60S |
| Location of maximum on span | = | 1.750ft | Location of maximum on span | = | 3.296 ft |
| Span # where maximum occurs | = | Span # 1 | Span # where maximum occurs | = | Span # 1 |

Maximum Deflection
Max Downward Transient Deflection        0.087 in  Ratio =   483 >=360
Max Upward Transient Deflection          0.000 in  Ratio =     0 <360
Max Downward Total Deflection            0.146 in  Ratio =   288 >=240
Max Upward Total Deflection              0.000 in  Ratio =     0 <240

### Maximum Forces & Stresses for Load Combinations

| Load Combination | | Max Stress Ratios | | | | | | | | | | Moment Values | | | Shear Values | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Segment Length | Span # | M | V | λ | $C_{FN}$ | $C_i$ | $C_r$ | $C_m$ | $C_t$ | $C_L$ | Mu | fb | Fb | Vu | fv | Fv |
| +1.40D | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.322 | 0.153 | 0.60 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.52 | 1,001.22 | 3108.96 | 0.53 | 52.64 | 343.44 |
| Length = 1.507 ft | 1 | 0.316 | 0.153 | 0.60 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.51 | 981.96 | 3108.96 | 0.53 | 52.64 | 343.44 |
| +1.20D+0.50Lr+1.60L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.338 | 0.161 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.73 | 1,399.15 | 4145.28 | 0.74 | 73.56 | 457.92 |
| Length = 1.507 ft | 1 | 0.331 | 0.161 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.71 | 1,372.24 | 4145.28 | 0.74 | 73.56 | 457.92 |
| +1.20D+1.60L+0.50S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.380 | 0.181 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.82 | 1,575.55 | 4145.28 | 0.83 | 82.83 | 457.92 |

Lepper-Brown Depo 2

Title Block Line 1
You can change this area
using the "Settings" menu item
and then using the "Printing &
Title Block" selection.
Title Block Line 6

Project Title: Sample Project Title
Engineer:
Project ID: X1A
Project Descr: Sample Project Description

Printed: 9 MAR 2021, 12:05PM

## Wood Beam

File: RACK.ec6
Software copyright ENERCALC, INC. 1983-2020, Build:12.20.8.24

Lic. # : KW-06013309

Brown and Associates

**DESCRIPTION:** TREEHOUSE FLOOR

| Load Combination | | Max Stress Ratios | | | | | | | | | | Moment Values | | | Shear Values | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Segment Length | Span # | M | V | λ | $C_{FN}$ | $C_i$ | $C_r$ | $C_m$ | $C_t$ | $C_L$ | Mu | fb | Fb | Vu | fv | Fv |
| Length = 1.507 ft | 1 | 0.373 | 0.181 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.80 | 1,545.24 | 4145.28 | 0.83 | 82.83 | 457.92 |
| +1.20D+1.60Lr+0.50L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.494 | 0.235 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.07 | 2,045.95 | 4145.28 | 1.08 | 107.56 | 457.92 |
| Length = 1.507 ft | 1 | 0.484 | 0.235 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.05 | 2,006.59 | 4145.28 | 1.08 | 107.56 | 457.92 |
| +1.20D+1.60Lr | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.479 | 0.228 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.03 | 1,987.15 | 4145.28 | 1.04 | 104.47 | 457.92 |
| Length = 1.507 ft | 1 | 0.470 | 0.228 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.02 | 1,948.93 | 4145.28 | 1.04 | 104.47 | 457.92 |
| +1.20D+0.50L+1.60S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.630 | 0.300 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.93 | 1.36 | 2,610.43 | 4145.28 | 1.37 | 137.24 | 457.92 |
| Length = 1.507 ft | 1 | 0.618 | 0.300 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.93 | 1.33 | 2,560.22 | 4145.28 | 1.37 | 137.24 | 457.92 |
| +1.20D+1.60S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.616 | 0.293 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.33 | 2,551.63 | 4145.28 | 1.34 | 134.14 | 457.92 |
| Length = 1.507 ft | 1 | 0.604 | 0.293 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.30 | 2,502.55 | 4145.28 | 1.34 | 134.14 | 457.92 |
| +1.20D+0.50Lr+0.50L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.245 | 0.117 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.66 | 1,269.79 | 5181.60 | 0.67 | 66.76 | 572.40 |
| Length = 1.507 ft | 1 | 0.240 | 0.117 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.65 | 1,245.36 | 5181.60 | 0.67 | 66.76 | 572.40 |
| +1.20D+0.50L+0.50S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.279 | 0.133 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.75 | 1,446.19 | 5181.60 | 0.76 | 76.03 | 572.40 |
| Length = 1.507 ft | 1 | 0.274 | 0.133 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.74 | 1,418.37 | 5181.60 | 0.76 | 76.03 | 572.40 |
| +1.20D+0.50L+0.70S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.320 | 0.152 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.86 | 1,657.87 | 5181.60 | 0.87 | 87.16 | 572.40 |
| Length = 1.507 ft | 1 | 0.314 | 0.152 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.85 | 1,625.98 | 5181.60 | 0.87 | 87.16 | 572.40 |
| +0.90D | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.124 | 0.059 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.34 | 643.64 | 5181.60 | 0.34 | 33.84 | 572.40 |
| Length = 1.507 ft | 1 | 0.122 | 0.059 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.33 | 631.26 | 5181.60 | 0.34 | 33.84 | 572.40 |

## Overall Maximum Deflections

| Load Combination | Span | Max. "-" Defl | Location in Span | Load Combination | Max. "+" Defl | Location in Span |
|---|---|---|---|---|---|---|
| +D+S | 1 | 0.1457 | 1.763 | | 0.0000 | 0.000 |

## Vertical Reactions

Support notation : Far left is #1                 Values in KIPS

| Load Combination | Support 1 | Support 2 |
|---|---|---|
| Overall MAXimum | 1.056 | 1.056 |
| Overall MINimum | 0.630 | 0.630 |
| D Only | 0.426 | 0.426 |
| +D+L | 0.496 | 0.496 |
| +D+Lr | 0.846 | 0.846 |
| +D+S | 1.056 | 1.056 |
| +D+0.750Lr+0.750L | 0.793 | 0.793 |
| +D+0.750L+0.750S | 0.951 | 0.951 |
| +0.60D | 0.255 | 0.255 |
| Lr Only | 0.420 | 0.420 |
| L Only | 0.070 | 0.070 |
| S Only | 0.630 | 0.630 |

**Lepper-Brown Depo 3**

Title Block Line 1
You can change this area
using the "Settings" menu item
and then using the "Printing &
Title Block" selection.
Title Block Line 6

**Project Title:**  Sample Project Title
**Engineer:**
**Project ID:**  X1A
**Project Descr:** Sample Project Description

Printed: 9 MAR 2021, 12.05PM
File: RACK.ec6
Software copyright ENERCALC, INC. 1983-2020, Build:12.20.8.24

## Wood Beam

Lic. # : KW-06013309                                                    Brown and Associates

**DESCRIPTION:**  TREEHOUSE FLOOR

### CODE REFERENCES

Calculations per NDS 2012, IBC 2012, CBC 2013, ASCE 7-10
Load Combination Set : IBC 2012

#### Material Properties

| | | | |
|---|---|---|---|
| Analysis Method : Load Resistance Factor D | Fb + | 2,400.0 psi | E : Modulus of Elasticity |
| Load Combination IBC 2012 | Fb - | 1,850.0 psi | Ebend- xx       1,800.0 ksi |
| | Fc - Prll | 1,650.0 psi | Eminbend - xx   930.0 ksi |
| Wood Species  : DF/DF | Fc - Perp | 650.0 psi | Ebend- yy       1,600.0 ksi |
| Wood Grade   : 24F - V4 | Fv | 265.0 psi | Eminbend - yy   830.0 ksi |
| | Ft | 1,100.0 psi | Density          31.20 pcf |
| Beam Bracing  : Beam bracing is defined as a set spacing over all spans | | | Repetitive Member Stress Increase |

#### Unbraced Lengths

First Brace starts at 2.0 ft from Left-Most support
Regular spacing of lateral supports on length of beam = 2.0 ft



D(0.240) Lr(0.240) S(0.360)
L(0.04)

6.0 X 2.50

Span = 3.50 ft

### Applied Loads

Service loads entered. Load Factors will be applied for calculations.

Beam self weight calculated and added to loads
Loads on all spans...
   Uniform Load on ALL spans :  D = 0.020,  Lr = 0.020,  S = 0.030 ksf,  Tributary Width = 12.0 ft
   Uniform Load :  L = 0.040 ,  Tributary Width = 1.0 ft

### DESIGN SUMMARY

Design OK

| | | | | | |
|---|---|---|---|---|---|
| **Maximum Bending Stress Ratio** | = | **0.630: 1** | **Maximum Shear Stress Ratio** | = | **0.300 : 1** |
| Section used for this span | | **6.0 X 2.50** | Section used for this span | | **6.0 X 2.50** |
| fb: Actual | = | **2,610.43** psi | fv: Actual | = | **137.24** psi |
| Fb: Allowable | = | **4,145.28** psi | Fv: Allowable | = | **457.92** psi |
| Load Combination | | +1.20D+0.50L+1.60S | Load Combination | | +1.20D+0.50L+1.60S |
| Location of maximum on span | = | 1.750 ft | Location of maximum on span | = | 3.296 ft |
| Span # where maximum occurs | = | Span # 1 | Span # where maximum occurs | = | Span # 1 |

**Maximum Deflection**

| | | | |
|---|---|---|---|
| Max Downward Transient Deflection | 0.087 in | Ratio = | 483 >=360 |
| Max Upward Transient Deflection | 0.000 in | Ratio = | 0 <360 |
| Max Downward Total Deflection | 0.146 in | Ratio = | 288 >=240 |
| Max Upward Total Deflection | 0.000 in | Ratio = | 0 <240 |

### Maximum Forces & Stresses for Load Combinations

| Load Combination | | Max Stress Ratios | | | | | | | | | Moment Values | | | Shear Values | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Segment Length | Span # | M | V | $\lambda$ | $C_{FN}$ | $C_i$ | $C_r$ | $C_m$ | $C_t$ | $C_L$ | Mu | fb | Fb | Vu | fv | Fv |
| +1.40D | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.322 | 0.153 | 0.60 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.52 | 1,001.22 | 3108.96 | 0.53 | 52.64 | 343.44 |
| Length = 1.507 ft | 1 | 0.316 | 0.153 | 0.60 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.51 | 981.96 | 3108.96 | 0.53 | 52.64 | 343.44 |
| +1.20D+0.50Lr+1.60L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.338 | 0.161 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.73 | 1,399.15 | 4145.28 | 0.74 | 73.56 | 457.92 |
| Length = 1.507 ft | 1 | 0.331 | 0.161 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.71 | 1,372.24 | 4145.28 | 0.74 | 73.56 | 457.92 |
| +1.20D+1.60L+0.50S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.380 | 0.181 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.82 | 1,575.55 | 4145.28 | 0.83 | 82.83 | 457.92 |

**Lepper-Brown Depo 4**

Title Block Line 1
You can change this area
using the "Settings" menu item
and then using the "Printing &
Title Block" selection.
Title Block Line 6

Project Title: Sample Project Title
Engineer:
Project ID: X1A
Project Descr: Sample Project Description

Printed:  9 MAR 2021, 12:05PM

## Wood Beam

File: RACK.ec6
Software copyright ENERCALC, INC. 1983-2020, Build:12.20.8.24

Lic. # : KW-06013309

Brown and Associates

**DESCRIPTION:**  TREEHOUSE FLOOR

| Load Combination | | Max Stress Ratios | | | | | | | | | | Moment Values | | | Shear Values | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Segment Length | Span # | M | V | λ | $C_{FV}$ | $C_i$ | $C_r$ | $C_m$ | $C_t$ | $C_L$ | Mu | fb | Fb | Vu | fv | Fv |
| Length = 1.507 ft | 1 | 0.373 | 0.181 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.80 | 1,545.24 | 4145.28 | 0.83 | 82.83 | 457.92 |
| +1.20D+1.60Lr+0.50L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.494 | 0.235 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.07 | 2,045.95 | 4145.28 | 1.08 | 107.56 | 457.92 |
| Length = 1.507 ft | 1 | 0.484 | 0.235 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.05 | 2,006.59 | 4145.28 | 1.08 | 107.56 | 457.92 |
| +1.20D+1.60Lr | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.479 | 0.228 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.03 | 1,987.15 | 4145.28 | 1.04 | 104.47 | 457.92 |
| Length = 1.507 ft | 1 | 0.470 | 0.228 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.02 | 1,948.93 | 4145.28 | 1.04 | 104.47 | 457.92 |
| +1.20D+0.50L+1.60S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.630 | 0.300 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.36 | 2,610.43 | 4145.28 | 1.37 | 137.24 | 457.92 |
| Length = 1.507 ft | 1 | 0.618 | 0.300 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.33 | 2,560.22 | 4145.28 | 1.37 | 137.24 | 457.92 |
| +1.20D+1.60S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.616 | 0.293 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.33 | 2,551.63 | 4145.28 | 1.34 | 134.14 | 457.92 |
| Length = 1.507 ft | 1 | 0.604 | 0.293 | 0.80 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.30 | 2,502.55 | 4145.28 | 1.34 | 134.14 | 457.92 |
| +1.20D+0.50Lr+0.50L | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.245 | 0.117 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.66 | 1,269.79 | 5181.60 | 0.67 | 66.76 | 572.40 |
| Length = 1.507 ft | 1 | 0.240 | 0.117 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.65 | 1,245.36 | 5181.60 | 0.67 | 66.76 | 572.40 |
| +1.20D+0.50L+0.50S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.279 | 0.133 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.75 | 1,446.19 | 5181.60 | 0.76 | 76.03 | 572.40 |
| Length = 1.507 ft | 1 | 0.274 | 0.133 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.74 | 1,418.37 | 5181.60 | 0.76 | 76.03 | 572.40 |
| +1.20D+0.50L+0.70S | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.320 | 0.152 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.86 | 1,657.87 | 5181.60 | 0.87 | 87.16 | 572.40 |
| Length = 1.507 ft | 1 | 0.314 | 0.152 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.85 | 1,625.98 | 5181.60 | 0.87 | 87.16 | 572.40 |
| +0.90D | | | | | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Length = 1.993 ft | 1 | 0.124 | 0.059 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.34 | 643.64 | 5181.60 | 0.34 | 33.84 | 572.40 |
| Length = 1.507 ft | 1 | 0.122 | 0.059 | 1.00 | 1.000 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.33 | 631.26 | 5181.60 | 0.34 | 33.84 | 572.40 |

### Overall Maximum Deflections

| Load Combination | Span | Max. "-" Defl | Location in Span | Load Combination | Max. "+" Defl | Location in Span |
|---|---|---|---|---|---|---|
| +D+S | 1 | 0.1457 | 1.763 | | 0.0000 | 0.000 |

### Vertical Reactions

Support notation : Far left is #1        Values in KIPS

| Load Combination | Support 1 | Support 2 |
|---|---|---|
| Overall MAXimum | 1.056 | 1.056 |
| Overall MINimum | 0.630 | 0.630 |
| D Only | 0.426 | 0.426 |
| +D+L | 0.496 | 0.496 |
| +D+Lr | 0.846 | 0.846 |
| +D+S | 1.056 | 1.056 |
| +D+0.750Lr+0.750L | 0.793 | 0.793 |
| +D+0.750L+0.750S | 0.951 | 0.951 |
| +0.60D | 0.255 | 0.255 |
| Lr Only | 0.420 | 0.420 |
| L Only | 0.070 | 0.070 |
| S Only | 0.630 | 0.630 |

**Lepper-Brown Depo 5**



ROOF PLAN
SCALE: 1/2"=1'-0"

FLOOR PLAN
SCALE: 1/2"=1'-0"

SPAN DIRECTION OF 2x6
WOOD PLANKS

ELEVATION VIEW

SECTION 1-1
SCALE: 1/2"=1'-0"

SUPPORT ARM DETAIL
SCALE: 1/2"=1'-0"

JAMES R. BROWN, P.E.

TREE HOUSE
89 DUBB
BABYLON, NEW YORK 11702

T-100.00

Lepper-Brown Depo 6



$$\frac{4.6 \times 5}{12} = 1.9167$$
$$= 23''$$
$$\sim 24''$$

$$1.25 \times 5 = 6.25$$
$$\overline{12}$$
$$= .52$$
$$= 6''$$

**Lepper-Brown Depo 7**

**JACOBS**

| Subject | _____ | Project | _____ |
|---|---|---|---|
| | | Sheet No. _____ of _____ |
| Authored by _____ Date _____ | | Checked by _____ Date _____ |

MEASUREMENTS

N

Door

Windows

33

30

33

48

34

8'-1½

4'x3'

9'-7½

20

2'x2'

34

½

34

3½

PE

Floor Plan

Door

2'-8"

2'11½

3'4"x6'

**JACOBS**®

| Subject _____ | Project _____ |
| | Sheet No. _____ of _____ |
| Authored by _____ Date _____ | Checked by _____ Date _____ |

LAYOUT



BEAM

S-2

$M = 746^{\text{ft-\#}}$

$S = (4 \times 6) = 17.646 \, in^3$

$I = 48.52 \, in^4$

$A = 19.25 \, in^2$

Use Allow. S Loss $= 975 \; (F_b)$ Timbers

$F_b = M/s = \dfrac{746(12)}{17.646} = 507.28 \, psi < 975 \; \underline{ok}$

Simple Span Col:

$L_e = 0.8 L = 0.8 \times 6.05' = 4.84'$

$\dfrac{L_e}{d} = \dfrac{4.84 \, (12)}{3.5} = 16.5 < 50 \; ok$

$F_{ce} = \dfrac{0.3 \, E}{(L_e/d)^2} = \dfrac{0.3 \, (1,300,000)}{(16.5)^2} = 1432 \; ^{\#}/in^2$

$\dfrac{F_{ce}}{F_c} = \dfrac{1432}{1121} = 1.27$

$F_c = 975 \times 1.15 = 1121 \; ^{\#}/in^2$

$\overline{F}_c' = 1121 \left[ \dfrac{1 + 1.27}{2 \times .8} \overset{1.42}{} - \sqrt{\left(\dfrac{1 + 1.27}{2 \times .8}\right)^2 \overset{.65}{} - \dfrac{1.27}{.8}} \right]$

$= 857 \; ^{\#}/in^2$

$976 < 16,510$

$\underset{\text{Allow}}{P} = 857 \times 19.25 = \dfrac{16,510 \; ^{\#}}{ok} \ll$

Lepper-Brown Depo 18



**ROOF PLAN**
SCALE: 1/2"=1'-0"



SPAN DIRECTION OF 2x6
WOOD PLANKS

**FLOOR PLAN**
SCALE: 1/2"=1'-0"   2x6





**ELEVATION VIEW**



**SECTION 1-1**
SCALE: 1/2"=1'-0"



**SUPPORT ARM DETAIL**
SCALE: 1/2"=1'-0"

COPYRIGHTS

JAMES R. BROWN, P.E.
2 Francis Lane
Chester, NJ 07930
Ph. (908) 879-9660   Fax. (908) 879-9661
email: brownjr1953@gmail.com

SEAL & SIGNATURE

**TREE HOUSE**
*as-built*
59 COCKNOE AVE.
BABYLON, NEW YORK 11702

**T-100.00**

**JACOBS**

Subject ~~TREEHOUSE~~   Project COLCS- STRUCTURE

Sheet No. _1_ of _____

Authored by JB   Date 2/1/19   Checked by JB/BD   Date 2/3/19

LOADS:

Live LOAD:   40  PSF
Dead LOAD:   STRUCTURAL WOOD

SNOW:   25  PSF  (GROUND SNOW)

WIND:   115  MPh, EXPOSURE B


CALCULATE Weight (DL):

Roof:  (10'-3" × 8'-6") ≈   87.12
                                    USE 88 S.F.

   DL Roof = 88 × 10 PSF    =    880 #
   Dormers = ADD 50# EA.    =    100
                                 ——————
                                    980 #
                              = SAY 1000 #

WALLS: ⑤ × 6.3' × [9.3 + 8.3 + 9.3 + 8.3] × 10 PSF

                                    = 2217 #

Floor:  9.3' × 8.3' × 10 PSF        =   772 #
                                        ——————
                                        3988.9 #

                     TOTAL WT = ~~SAY~~ ~~4000#~~
                     (THIS is Conservative)

GRAVITY LOADS TO EA. Leg Support =  1000 #


WIND: ≈ Pressure = 21 PSF   115 MPh   ~~× 2~~
                  BASED ON              ~~DL = 1200 #~~

**JACOBS**



LEG SUPPORT :

$\frac{1000^{\#}}{7.3'}$ = 137 PLF x 1.2
= 165 PLF

7.3'

4.0'

(4) ½ x 12
LAG BOLTS

4.5'

(976#)
5.25
6.05'

5.7'

↓ 274# + (1000#) Total Shear

DIAG: 4x6 (3.5 x 5.5) = 19.25 in²

976#

4x6
6.05'

976# (+7#)

[ SEE 5-7 CALCS ]

CHECK LAG BOLTS:    ½" ⌀ x 12"

SHEAR CAP. = 624#

(4) x 624# = 2496 = 2.5 ∝ 2.5 SAFETY
                $\frac{V_{1000}}{1400}$   2.5   2X FACTOR
                                        > (SHEAR)
                                        1.5 OK

S - 1

Supplemental
    Calcs:



7.3'
4'

$(2)(137) = 274^{\#}$

$R_U = 726$

$\sum F_V = 0$

$R_L = 1000 - 274 = 726^{\#}$



4.5    6.05

$\dfrac{4.5}{726} \times \dfrac{6.05}{x}$  $\therefore$  $x = \dfrac{(6.05)(726)}{4.5}$

$x = 976^{\#}$

Horizontal Arm:



$w = 137$ PLF

$M_1 = 220$

3.3'    4'

$M_2 = 746$ F·#

$M_1 = \dfrac{w}{8\ell^2}(1+a)^2(1-a)^2 = \dfrac{137}{8(4)^2}(4+3.3)^2(4-3.3)^2 = 220^{F\cdot\#}$

$M_2 = \dfrac{wa^2}{2} = \dfrac{137(3.3)^2}{2} = 746^{F\cdot\#}$

**Lepper-Brown Depo 14**

**JACOBS**

| Subject _____ | Project _____ |
|---|---|
| _____ | Sheet No. _____ of _____ |
| Authored by _____ Date _____ | Checked by _____ Date _____ |

LAYOUT



Beam

S-2

$M = 746^{n \cdot \#}$

$S = (4 \times 6) = 17.646 \, in^3$

$I = 48.52 \, in^4$

$A = 19.25 \, in^2$

Use Allow. Stress = 975 $(F_b)$  Timbers

$F_b = M/s = \dfrac{746(12)}{17.646} = 507.28 \, psi < 975 \; \underline{ok}$

Simple Sawn Col:

$L_e = 0.8 L = 0.8 \times 6.05' = 4.84'$

$\dfrac{L_e}{d} = \dfrac{4.84 (12)}{3.5} = 16.5 < 50 \; ok$

$F_{ce} = \dfrac{0.3 \, E}{(L_e/d)^2} = \dfrac{0.3 (1,300,000)}{(16.5)^2} = 1432 \; ^{\#}/_{in^2}$

$\dfrac{F_{ce}}{F_c} = \dfrac{1432}{1121} = 1.27$

$F_c = 975 \times 1.15 = 1121 \; ^{\#}/_{in^2}$

$\bar{F_c}' = 1121 \left[ \dfrac{1 + 1.27}{2 \times .8}^{\,1.42} - \sqrt{\left(\dfrac{1 + 27}{2 \times .8}\right)^2}^{\,.65} - \dfrac{1.27}{.8} \right]$

$= 857 \; ^{\#}/_{in^2}$

$P_{Allow} = 857 \times 19.25 = 16,510 \; ^{\#} << \dfrac{}{976}$

$\underline{ok}$

**JACOBS**

| Subject | | Project | |
|---|---|---|---|
| | | Sheet No. ____ of ____ | |
| Authored by ____ Date ____ | | Checked by ____ Date ____ | |

MEASUREMENTS

Floor Plan



**RECEIVED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

APR 2 0 2021

------------------------------------------------X

JOHN LEPPER and NOELLE LEPPER, individually, and KELLY, RODE & KELLY LLP
as parents and natural guardians of their infant
children, B.J.L. and B.I.,

                                        Claimant,

            -against-

VILLAGE OF BABYLON and RALPH SCORDINO, Mayor
KEVIN MULDOWNEY, Deputy Mayor, ROBYN SILVESTRI,
Village Trustee, TONY DAVIDA, Village Trustee,
MARY ADAMS, Mayor, STEPHEN FELLMAN, Village of
Babylon Building Inspector, SUZANNE SCHETTINO,
Department of Public Works, GERARD GLASS, Esq.,
Village of Babylon Attorney, DEBORAH LONGO,
Planning Board, Village of Babylon, each
individually and in their official capacity,
and John and/or Jane Doe, unnamed, unidentified
complainants,

                                        Respondents.

Index No.: 2:18-CV-07011

------------------------------------------------X

                    Lexitas-LegalView
                    Videoconference

                    March 22, 2021
                    10:10 a.m.

```
1
2
3                   EXAMINATION BEFORE TRIAL of
4    JAMES R. BROWN, the Non-Party Witness herein, held
5    via videoconference at the above-mentioned time,
6    taken before a Certified Stenotype Reporter and
7    Notary Public of the State of New York, pursuant
8    to subpoena.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2    A P P E A R A N C E S:
 3
 4        THE LAW OFFICES OF COREY H. MORRIS
 5                Attorneys for Plaintiff
 6                135 Pinelawn Road, Suite 250S
 7                Melville, New York 11747
 8        BY:     COREY H. MORRIS, ESQ.
 9                (VIA VIDEOCONFERENCE)
10        EMAIL:  Cory.H.Morris@protonmail.com
11
12        BY:     VICTOR JOHN YANNACONE, JR., ESQ.
13                OF COUNSEL
14                (VIA VIDEOCONFERENCE)
15
16
17        KELLY, RODE & KELLY, LLP
18                Attorneys for Defendants
19                330 Old Country Road, Suite 305
20                Mineola, New York 11501
21        BY:     ERIC P. TOSCA, ESQ.
22                (VIA VIDEOCONFERENCE)
23        EMAIL:  Eptosca@krklaw.com
24        FILE NO.: PDG/EPT/CMG 148530-752
25
```

```
 1
 2   C O N T I N U E D   A P P E A R A N C E S:
 3
 4        LAW OFFICE OF DAVID A. ADHAMI
 5                 Attorney For the Non-Party Witness
 6                 JAMES R. BROWN
 7                 233 East Shore Road, Suite 210
 8                 Great Neck, New York 11023
 9
10        BY:      DAVID A. ADHAMI, ESQ.
11                 (VIA VIDEOCONFERENCE)
12        EMAIL:   David@adhamilaw.com
13
14
15
16
17   A L S O   P R E S E N T:
18        Shannon Fillmore, Esq.
19        Kelly, Rode & Kelly
20
21
22
23
24
25
```

```
1
2    J A M E S   R.   B R O W N, the Non-Party Witness
3    herein, having been duly sworn by the Notary
4    Public, was  examined and testified as follows:
5                      (Defendant's Exhibit A,
6                   certification documents, were hereby
7                   marked for identification, as of this
8                   date.)
9                      (Plaintiff's 1 - 7, Multiple
10                  documents, were marked as of this
11                  date.)
12                  THE COURT REPORTER:  State your
13                  name for the record, please.
14                  THE WITNESS:  James R. Brown.
15                  THE COURT REPORTER:  State your
16                  address for the record, please.
17                  THE WITNESS:  2 Francis Lane,
18                  Chester, New Jersey 07930.
19                  MR. ADHAMI:  Counsel, I'd like
20                  to reserve my clients's right to
21                  review the transcript prior to it
22                  being finalized.  And, also, I don't
23                  know if there are any stipulations
24                  stated on the record?
25                  MR. TOSCA:  It's a non-party
```

```
 1                    J. R. BROWN
 2   been completed?
 3        A.      Yes.  Correct.
 4        Q.      And that any reasonable person would
 5   finish the job and complete it before they would
 6   call it finished, wouldn't they?
 7        A.      Yes --
 8                MR. TOSCA:  Objection.
 9        Q.      You can answer the question.
10        A.      In my estimation that is correct.
11        Q.      All right.  Did you see the children
12   have any difficulty even using the temporary
13   ladder getting in and out of the tree house?
14        A.      Of course they had the assistance of
15   their father who was there, but I didn't see any
16   problem with them.
17        Q.      And are you aware of whether or not
18   that eventually there would be a more permanent
19   kind of means of ingress and egress to the
20   platform and the tree house?
21                MR. TOSCA:  Objection.
22        Q.      Answer it anyway.
23        A.      Only as stated by Mr. Lepper, upon
24   completion that there would be adequate stairs
25   going into and out of the tree house.
```

1               J. R. BROWN

2        Q.     In the course of your regular

3   professional activities as a structural engineer,

4   have you had occasion to examine and evaluate

5   wooden structures?

6        A.     Yes, I have.

7               MR. TOSCA:  Objection.

8        Q.     Are you familiar enough with timbers

9   to estimate size visually?

10       A.     Rough size, yes.

11       Q.     You can tell the difference between a

12   4 by 6 and a 2 by 4, can't you?

13       A.     Yes, I can.

14       Q.     And you can do that without measuring

15   it?

16              MR. TOSCA:  Objection.

17       A.     Yes.  In most cases I can do it.

18       Q.     Now, there was a question that's been

19   gone over and over in the course of the direct

20   examination with reference to these diagonal

21   members.

22              These diagonal members performed some

23   kind of purpose, do they not, in this kind of

24   construction?

25       A.     Yes, they do.

```
1                    J. R. BROWN
2       Q.      What's the purpose?
3       A.      Supporting the platform floor of the
4  tree.
5       Q.      And are they different in length
6  sometimes was because of the fact that they are
7  anchored to the tree trunk?
8       A.      That's correct.
9       Q.      Is the tree trunk roughly vertical as
10 it passes through the tree house?
11      A.      It's roughly plumb.
12      Q.      That means perpendicular to the
13 floor?
14      A.      Correct.
15              MR. MORRIS:  For the purpose of
16          the record, P-L-U-M-B.
17              THE WITNESS:  Correct.
18      Q.      All right.  Now, you said that the
19 timber material was Douglas Fir, and then you
20 indicated that the owner, Mr. Lepper told you that
21 it was Doug Fir.
22              Are you familiar enough with Douglas
23 Fir in construction materials to believe that that
24 was a reasonable description of the building
25 material?
```

```
1                      J. R. BROWN
2       A.      Yes.
3       Q.      Have you ever worked with and used
4  Doug Fir as a building material in any work you've
5  supervised or worked on?
6       A.      Yes, I have.
7       Q.      Are you familiar with the
8  characteristics of Doug Fir?
9       A.      Yes, I am.
10      Q.      As the building material for this
11 tree house, was it an appropriate building
12 material?
13              MR. TOSCA:  Objection.  Any
14              questions with regard to his opinions
15              as an expert I'm going to object
16              to --
17              MR. YANNACONE:  Counsel, for the
18              record, you opened the door.  You
19              asked him not once but three times
20              using the word opinion.  So, we'll
21              take that --
22              MR. TOSCA:  His opinion as a
23              layperson.
24              MR. YANNACONE:  No, he's not a
25              layperson.  He happens to be a
```

```
 1                    J. R. BROWN
 2           layperson who has a license as a
 3           professional engineer.
 4               MR. TOSCA:  And I don't disagree
 5           with that --
 6               MR. YANNACONE:  Madam Reporter,
 7           would you be kind enough to read back
 8           the question for the witness?
 9               MR. TOSCA:  Just note for the
10           record, you are starting to ask
11           expert opinion testimony and he is
12           not presented here for that reason.
13           We've identified him as a fact
14           witness.  I'll object to anything --
15               MR. MORRIS:  Counsel, you have
16           your objection limited to just that.
17           If there is an issue let's call the
18           court.
19               MR. YANNACONE:  Well, let's
20           get --
21               MR. TOSCA:  If you want to call
22           the court, call the court.  I don't
23           care.
24               MR. YANNACONE:  Let's proceed.
25               Just answer the question.
```

```
1                        J. R. BROWN
2                   We'll take it up with the judge
3              later.
4                   Madam Reporter, will you read
5              back the question for the witness?
6                   (The requested portion of the
7              record was read by the reporter.)
8         A.    Yes.
9         Q.    As someone who has constructed the
10   tree house, without any reference to your
11   qualifications as a professional engineer, was
12   Douglas Fir an appropriate building material for a
13   tree house?
14        A.    I think Douglas Fir is an appropriate
15   material for tree houses, yes.
16        Q.    Now, in the course of your life and
17   living in New Jersey, have you had occasion to
18   observe the weather on the east coast?
19        A.    Yes, I have.
20        Q.    Are you familiar with the fact that
21   since you first examined this tree house there
22   have been a number of severe storms which have
23   affected the entire east coast, particularly Long
24   Island?
25                   MR. TOSCA:  Objection to the
```

```
 1                    J. R. BROWN
 2              description of the storms.
 3              MR. YANNACONE:  Okay.
 4      Q.      Are you aware of the fact that storms
 5  have been recorded and reported with respect to
 6  Long Island and the east coast over the last
 7  two years?
 8      A.      Yes, I am.
 9      Q.      And are you aware that some of those
10  storms caused extensive property damage?
11      A.      Yes, I am.
12      Q.      And are you familiar with pictures
13  that have appeared in the press and on television
14  of trees uprooted and severe damage associated
15  with those storms?
16      A.      Yes, I am.
17      Q.      And if the tree house, incomplete as
18  it is, is still standing without any damage, after
19  two years of those storms, would it be your
20  opinion as a layman and a father that this was a
21  safe and appropriate structure?
22              MR. TOSCA:  Objection.  You're
23              calling for expert testimony again.
24              This is not expert testimony.
25              MR. YANNACONE:  Only as a
```

```
 1                    J. R. BROWN
 2            father.  I'll qualify him.
 3                   (Simultaneous speaking.)
 4      Q.      In your lifetime, have you fathered
 5   children?
 6      A.      Yes, I have.
 7      Q.      As a result of that, are you
 8   generally referred to by other people as a father?
 9      A.      Yes, I am.
10      Q.      Do you have to be an expert to
11   determine whether the parent, the male parent of a
12   child, is a father or not?
13                   MR. TOSCA:  Objection to
14                   relevance.
15                   MR. YANNACONE:  We'll take that
16                   up later.
17                   MR. TOSCA:  I understand.  I'm
18                   objecting to it.
19                   MR. MORRIS:  Counselor, keep
20                   your objections to just that,
21                   objection.
22      Q.      Answer the question, Mr. Brown.
23      A.      I feel that I've -- since I've raised
24   three children and five grandchildren that I am an
25   expert.
```

```
1                       J. R. BROWN
2        Q.      All right.  Now, as a layman, as a
3   father, is that tree house appropriate for the use
4   intended?
5                    MR. TOSCA:  Objection.
6        Q.      You can answer.
7                    MR. TOSCA:  Objection.
8        Q.      As a father.
9        A.      In my opinion, it's an adequate area
10  for children to play in.
11       Q.      Are you familiar with the fact that
12  the east cost has been the site of considerable
13  property damage associated with wind, rain,
14  hurricanes and other storms with high winds?  Are
15  you not?
16       A.      I am.
17       Q.      And as a layman, referring only to
18  television and other means of mass media
19  information, did those storms represent enough
20  energy to cause significant structural damage to
21  poorly constructed buildings?
22                   MR. TOSCA:  Objection.
23       A.      In my opinion, yes.
24       Q.      And if this tree house incomplete as
25  it is withstood all those storms, would you
```

```
 1                      J. R. BROWN
 2    believe, as a layman, that it might survive future
 3    storms?
 4                    MR. TOSCA:   Objection.
 5         A.      I would base my opinion based on what
 6    the storms that it has safely endured, that it's
 7    built safely, strong enough to enter those kind of
 8    environmental pressures.
 9         Q.      Now, in Exhibits 2 to 5, Pages 2 to
10    5, Exhibit A, there are a number of calculations
11    dealing with structural matters that you prepared,
12    and you prepared them in the course of your
13    professional activities as a professional
14    engineer, did you not?
15         A.      Yes.
16         Q.      And they represent your work product
17    as a professional engineer, do they not?
18         A.      Yes.
19         Q.      And you indicated in response to
20    counsel's question that you were familiar with a
21    document referred to as the International Building
22    Code; is that correct?
23         A.      That's correct.
24         Q.      And you indicated that you were also
25    familiar with the American Society of Civil
```

```
 1                    J. R. BROWN
 2   Engineering Codes, are you not?
 3        A.    I am.
 4        Q.    And you indicated that the State of
 5   New York refers to both of those documents and
 6   incorporates them by reference, does it not?
 7        A.    That is correct.
 8        Q.    And you know that because you are a
 9   licensed professional engineer in the State of New
10   York, are you not?
11        A.    That's correct.
12        Q.    Now, is there anything in either of
13   those documents that specifically deals with the
14   construction of tree houses?
15        A.    Not so much.
16        Q.    When you say "not so much," tree
17   houses are treated like any other structure in
18   those codes, are they not?
19        A.    That's correct, but you can't occupy
20   them.  You cannot live in them.
21        Q.    Correct.  All right.
22              Now, is there any indication to you
23   when you examined the tree house that there was
24   any intention for anyone to live there?
25        A.    No.
```

```
 1                         J. R. BROWN
 2                   MR. TOSCA:  Objection.
 3        Q.      What was the answer?
 4        A.      No.
 5        Q.      Was there a toilet in there?
 6        A.      No.
 7        Q.      Did you see any plumbing fixtures?
 8        A.      No.
 9        Q.      Did you see any plumbing studs or
10   preparation?
11        A.      I did not, no.
12        Q.      Did you see any kitchen appliances?
13        A.      No.
14        Q.      Did you see anything that might pass
15   for a bed such as a loft?
16        A.      No.
17        Q.      Was there any indication to you as a
18   professional engineer, but more as an ordinary
19   layman, that anybody ever intended to live in that
20   tree house?
21                   MR. TOSCA:  Objection.
22        A.      No.
23        Q.      Now, do the codes, the International
24   Building Code and the regulations of the American
25   Society of Civil Engineers deal with structures
```

```
1                         J. R. BROWN
2   which are not intended for habitation?
3                   MR. TOSCA:  Objection.  Again,
4           you're asking for an expert opinion.
5                   MR. YANNACONE:  You asked him
6           the question, Counselor.
7   Q.      But go ahead, answer it.
8                   MR. TOSCA:  We didn't go into
9           that.
10                  MR. MORRIS:  I believe you did
11          open the door, you asked --
12                  MR. TOSCA:  Certainly did not.
13  Q.      Okay, just answer the question.
14  A.      Do you want me to answer the
15  question?
16  Q.      Yes, please.
17  A.      The code refers to risk category
18  structures.  And this case would fall into a risk
19  Category A, which is by way of the lowest --
20  lowest of the requirements for building
21  structures.
22  Q.      And based on your physical
23  examination of that structure, and the
24  calculations you made as a result of that physical
25  examination, do you believe that the structure --
```

```
 1                        J. R. BROWN

 2   withdrawn.

 3                  Based on your physical examination,

 4   does the structure you examined meet the

 5   requirements of the International Building Code?

 6                        MR. TOSCA:  Objection.

 7       Q.      With respect to structure A?

 8                        MR. TOSCA:  Objection.  Again

 9               going into expert opinion.

10       Q.      Answer the question, please.

11       A.      My opinion it's a safe structure.

12                        MR. MORRIS:  Before we continue.

13               Counselor, object and that's it and

14               then we move on.  Right?  There's no

15               confusion to this process, right?

16                        MR. TOSCA:  I'm objecting, Mr.

17               Morris --

18                        MR. MORRIS:  Of course, and --

19                        MR. TOSCA:  I'm allowed to

20               object.

21                        MR. MORRIS:  And, again, just

22               don't speak after you object.  Right?

23               That's known as a speaking objection.

24               Can we agree that you're not going to

25               do that?  You're going to stop that?
```

```
 1                      J. R. BROWN
 2    leave a patent there or something?
 3         A.      No.
 4                      MR. MORRIS:  It's been asked and
 5              answered.
 6                      MR. TOSCA:  No further
 7              questions.  Thank you, Mr. Brown.
 8                      (Whereupon, the proceedings were
 9              concluded at 1:29 p.m.)
10
11
12              _____
13                      JAMES R. BROWN
14
15    Subscribed and sworn to
16    before me this _____
17    day of _____, 2021.
18
19    _____
              NOTARY PUBLIC
20
21
22
23
24
25
```

```
 1
 2                          I N D E X
 3
 4    WITNESS                EXAMINATION BY           PAGE
 5    James R. Brown         Mr. Tosca                6, 111
                                                      132
 6
 7                           Mr. Yannacone            114
 8
 9
                             REQUESTS
10
      Photographs                                     19
11
      Video                                           25
12
      Emails                                          26
13
      Letters                                         28
14
15
                             INSERT
16
                           - NONE-
17
18
                             RULINGS
19
                           - NONE-
20
21
22
23
24
25
```

```
 1
 2                              EXHIBITS
 3
          Plaintiff's  DESCRIPTION                     PAGE
 4
 5        1            Village of Babylon
                       Building Permit Form
 6                     Five pages                       6
 7        2            Letter from Village of
                       Babylon
 8                     Twelve pages                     6
 9        3            Expert Disclosure
                       Mr. Danatzko, P.E.
10                     Seventy four pages               6
11        4            Laser color photographs
                       Six pages.
12
          5            Letter from James R. Brown
13                     To John Lepper
                       One page                         6
14
15        6            Document - Empire State
                       Layout, Inc.
16                     One page                         6
17
          7            Handwritten diagrams             6
18                     Seven pages
19
          DEFENDANT'S
20
          A            Certification documents          6
21                     Nineteen pages
22
23
24
25
```

1
2                          CERTIFICATION
3    STATE OF NEW YORK    )
4    COUNTY OF NASSAU     )
5
6                    I, Emily Gallagher-Merro, a
7    stenotype reporter and Notary Public within and
8    for the State of New York, do hereby certify that:
9
10                        JAMES R. BROWN
11
12                    The witness whose Examination
13   Before Trial is hereinbefore set forth, was first
14   duly sworn by me, and that such Examination Before
15   Trial is a true and accurate record of the
16   testimony given by said witness; and I further
17   certify that I am not related to any of the
18   parties of this action by blood or marriage and
19   that I am in no way interested in the outcome of
20   this matter.
21                    IN WITNESS WHEREOF, I have
22   hereunto set my hand this 22nd day of March, 2021.
23
                         Emily Gallagher-Merro
24                       EMILY GALLAGHER-MERRO
25

| A | 22:6,10,22,23 | answer (19) | 110:5 126:9 | 61:2,5 73:7 |
|---|---|---|---|---|
| **a.m (1)** | 26:14,18 | 22:7,9,21 | **arm (17)** | 86:8 |
| 1:20 | 28:22 31:21 | 32:20 40:24 | 51:9,10 52:10 | **assumed (2)** |
| **able (6)** | 32:18 33:2 | 74:22 82:8 | 52:20,21,23 | 69:10 79:25 |
| 24:11 34:10 | 35:13 40:19 | 116:12 | 53:11 56:18 | **assumption (1)** |
| 41:4,18 51:6 | 42:12 46:4,12 | 117:19 118:9 | 59:4 60:4,6,7 | 78:11 |
| 112:14 | **adjustment (1)** | 118:22 | 60:9 88:6,14 | **attached (1)** |
| **above-menti...** | 97:12 | 122:25 | 88:16 89:9 | 111:20 |
| 2:5 | **admit (1)** | 125:22 126:6 | **arms (5)** | **attorney (4)** |
| **Absolutely (3)** | 31:19 | 129:3 130:7 | 16:7,7 51:15 | 1:12 4:5 28:16 |
| 28:21 132:7,8 | **admitted (1)** | 130:13,14 | 51:19 57:6 | 30:2 |
| **access (2)** | 31:17 | 131:10 | **arrived (1)** | **attorneys (3)** |
| 11:24 12:7 | **adult (2)** | **answered (5)** | 35:5 | 3:5,18 27:25 |
| **accessible (3)** | 32:12,21 | 25:3 32:18 | **article (1)** | **AutoCAD (4)** |
| 70:12 71:3,5 | **afterward (1)** | 113:22 | 23:8 | 90:22 115:9,10 |
| **accurate (5)** | 21:7 | 116:11 133:5 | **ASCE (1)** | 115:12 |
| 98:24 107:13 | **against- (1)** | **anybody (4)** | 36:21 | **available (1)** |
| 107:14 | 1:8 | 19:11 45:17 | **aside (1)** | 114:14 |
| 116:21 | **ago (10)** | 49:9 129:19 | 9:14 | **Avenue (4)** |
| 136:15 | 8:12,12,14,19 | **anyway (1)** | **asked (13)** | 10:12 21:11 |
| **accurately (1)** | 10:4,22 29:6 | 118:22 | 24:25 25:22 | 35:9 40:13 |
| 74:22 | 40:4 43:17 | **appear (1)** | 32:18 67:25 | **aware (6)** |
| **action (1)** | 44:21 | 51:25 | 82:7 102:4 | 108:13,15,18 |
| 136:18 | **agree (1)** | **appeared (1)** | 113:22 | 118:17 124:4 |
| **active (4)** | 131:24 | 124:13 | 116:11 | 124:9 |
| 7:15,18,20,21 | **ahead (4)** | **appears (1)** | 117:21 | |
| **activities (2)** | 57:24 102:9 | 107:14 | 121:19 130:5 | **B** |
| 119:3 127:13 | 130:7 132:12 | **appliances (1)** | 130:11 133:4 | **B (2)** |
| **actual (10)** | **allowed (1)** | 129:12 | **asking (8)** | 5:2 20:9 |
| 44:24 70:11,18 | 131:19 | **apply (1)** | 32:22 33:6 | **B.I (1)** |
| 81:3 87:12 | **allowing (1)** | 36:19 | 35:18 46:12 | 1:5 |
| 88:25 90:7 | 22:8 | **appreciate (2)** | 81:25 82:3 | **B.J.L (1)** |
| 92:21 97:14 | **American (7)** | 25:4 74:9 | 88:25 130:4 | 1:5 |
| 97:24 | 36:15 37:3,5,6 | **appropriate (...** | **assist (2)** | **Babylon (12)** |
| **ADAMS (1)** | 37:12 127:25 | 121:11 123:12 | 34:7 115:5 | 1:9,11,12,12 |
| 1:10 | 129:24 | 123:14 | **assistance (1)** | 10:12 27:4,5 |
| **address (3)** | **analysis (7)** | 124:21 126:3 | 118:14 | 27:8 36:3,6 |
| 5:16 50:19,19 | 88:23 90:13 | **approximate ...** | **assistant (1)** | 135:5,7 |
| **adequate (3)** | 97:13,17,22 | 8:13 13:6 | 34:15 | **Bachelor (1)** |
| 90:3 118:24 | 98:7,17 | **architect (2)** | **associate (1)** | 9:23 |
| 126:9 | **anchored (1)** | 23:20 24:5 | 102:18 | **back (15)** |
| **Adhami (24)** | 120:7 | **area (13)** | **associated (2)** | 28:13 46:19 |
| 4:4,10 5:19 6:3 | **and/or (2)** | 14:17,18,19,20 | 124:14 126:13 | 55:3,4 56:25 |
| 6:6 10:10 | 1:13 72:18 | 15:12,13 16:4 | **Association (3)** | 57:2,25 59:15 |
| 13:15 19:7,16 | **angle (3)** | 79:21 83:8 | 37:4,7,13 | 62:24 84:17 |
| | 87:2,4,7 | 104:21 110:2 | **assume (4)** | 87:9 107:4 |

| | | | | |
|---|---|---|---|---|
| 111:13 122:7 | 7:25 8:17 | **blood (1)** | 23:1 24:1 | 106:1 107:1 |
| 123:5 | 17:23 21:17 | 136:18 | 25:1,5 26:1 | 107:11 108:1 |
| **backyard (1)** | 28:4,7,10,15 | **BO (4)** | 26:12 27:1 | 109:1 110:1 |
| 11:4 | 50:2 53:5,16 | 94:15,19,23,24 | 28:1 29:1 | 111:1,13 |
| **base (4)** | 60:13 64:3,5 | **Board (1)** | 30:1 31:1 | 112:1 113:1 |
| 87:23 96:2 | 64:9,10,10,21 | 1:12 | 32:1 33:1,2 | 114:1,8 115:1 |
| 104:24 127:5 | 67:11,21 68:4 | **bolt (2)** | 34:1 35:1 | 116:1 117:1 |
| **based (16)** | 68:5,8 73:15 | 112:3,6 | 36:1 37:1 | 118:1 119:1 |
| 25:23 29:15 | 74:15 75:22 | **bolts (13)** | 38:1 39:1 | 120:1 121:1 |
| 46:25 52:8 | 77:16 78:14 | 18:14 111:16 | 40:1 41:1,9 | 122:1 123:1 |
| 56:11 61:18 | 78:18 79:12 | 111:18,19,24 | 41:18 42:1,3 | 124:1 125:1 |
| 90:7,13 91:9 | 83:8 84:13,13 | 112:9,19,25 | 42:14,23 43:1 | 125:22 126:1 |
| 92:10,11,13 | 84:14,15,16 | 113:7,8,12,14 | 44:1,13 45:1 | 127:1 128:1 |
| 92:23 127:5 | 84:24 85:11 | 113:16 | 45:7 46:1,9 | 129:1 130:1 |
| 130:22 131:3 | 85:22 86:25 | **bottom (23)** | 46:20 47:1,11 | 131:1 132:1 |
| **basic (1)** | 87:8,19,22 | 43:4,6 50:4 | 48:1 49:1,20 | 132:19 133:1 |
| 31:10 | 88:7,19 89:21 | 51:12 53:13 | 50:1,15 51:1 | 133:7,13 |
| **basically (2)** | 89:21 90:13 | 57:2,6 59:9 | 52:1 53:1 | 134:5 135:12 |
| 52:5 69:15 | 90:21,21 91:4 | 59:18 62:25 | 54:1 55:1 | 136:10 |
| **basis (2)** | 91:7,16 92:20 | 63:18 66:14 | 56:1 57:1,5 | **building (19)** |
| 23:24 109:22 | 93:7,15 95:24 | 66:25 67:14 | 58:1 59:1 | 1:11 9:10 |
| **bates (30)** | 96:7 97:9 | 69:4 74:9 | 60:1,4 61:1 | 36:10,12,14 |
| 42:20,20 43:6 | 98:15 100:24 | 82:17 85:17 | 61:11 62:1 | 37:9 97:2 |
| 43:20 44:24 | 101:6 102:14 | 100:22 | 63:1 64:1 | 109:12,23 |
| 45:5 46:6,8,9 | 103:17 | 102:24 | 65:1 66:1 | 120:24 121:4 |
| 46:10,11,18 | 105:10,16,16 | 105:13 108:2 | 67:1 68:1 | 121:10,11 |
| 47:8 48:4 | 105:18 106:8 | 112:18 | 69:1 70:1 | 123:12 |
| 49:21 53:14 | 106:8 113:21 | **box (3)** | 71:1 72:1 | 127:21 |
| 58:2 59:20 | 120:23 127:2 | 17:24 18:9 | 73:1 74:1,10 | 129:24 |
| 61:8,9,14,24 | 130:10,25 | 50:5 | 75:1 76:1 | 130:20 131:5 |
| 64:25 65:3 | **better (1)** | **boxes (2)** | 77:1 78:1 | 135:5 |
| 66:19 67:15 | 50:6 | 17:22 18:5 | 79:1 80:1 | **buildings (1)** |
| 84:21 104:18 | **beyond (9)** | **bringing (2)** | 81:1 82:1,8 | 126:21 |
| 106:25 | 15:20 64:23 | 108:13,16 | 82:19 83:1 | **built (4)** |
| 111:14 | 65:11,14,25 | **broke (1)** | 84:1 85:1 | 12:3 40:5 |
| **BD (1)** | 65:25,25 | 39:10 | 86:1 87:1 | 112:17 127:7 |
| 94:23 | 73:16 88:2 | **Brown (168)** | 88:1 89:1 | **business (1)** |
| **beam (3)** | **big (1)** | 2:4 4:6 5:14 | 90:1 91:1 | 23:22 |
| 47:18,21 48:15 | 40:8 | 6:1,11,16 7:1 | 92:1 93:1 | |
| **beams (1)** | **birth (1)** | 8:1 9:1 10:1 | 94:1 95:1 | **C** |
| 86:5 | 10:6 | 11:1 12:1 | 96:1 97:1 | **C (4)** |
| **bear (1)** | **bit (3)** | 13:1 14:1 | 98:1 99:1,22 | 3:2 4:2,2 20:9 |
| 99:21 | 49:19 76:16 | 15:1 16:1 | 100:1 101:1 | **C-A-L-C-S (1)** |
| **bed (1)** | 90:4 | 17:1 18:1 | 102:1 103:1 | 95:12 |
| 129:15 | **block (2)** | 19:1 20:1 | 103:13,23 | **CALCS (1)** |
| **believe (75)** | 50:18 73:25 | 21:1 22:1,10 | 104:1 105:1 | 95:12 |

| calculated (2) | catch (1) | 125:12 | codes (9) | completion (1) |
|---|---|---|---|---|
| 75:3 101:17 | 28:14 | children (20) | 35:25 36:10,12 | 118:24 |
| calculation (8) | category (3) | 1:5 16:21 17:2 | 36:18,19,20 | compliant (1) |
| 38:10 45:23 | 37:21 130:17 | 32:5,9,15,24 | 128:2,18 | 14:11 |
| 48:19 76:11 | 130:19 | 33:7,13,16 | 129:23 | component (3) |
| 90:6 91:18,22 | cause (1) | 109:16,18,20 | color (1) | 16:3 19:14,17 |
| 96:4 | 126:20 | 110:13 | 135:11 | computer (9) |
| calculations (... | caused (1) | 118:11 125:5 | com (1) | 48:21,23 49:6 |
| 29:24 35:23 | 124:10 | 125:24 | 108:4 | 51:3,5 61:23 |
| 38:7 40:16 | Cell (1) | 126:10 | come (7) | 62:9 115:5 |
| 45:8,9 46:21 | 25:12 | 132:23,24 | 22:24 25:23 | 116:9 |
| 47:15 48:6,10 | center (4) | City (2) | 45:8 56:20 | concluded (1) |
| 48:14,24 49:3 | 58:25 72:24 | 7:13 9:4 | 64:12,14 | 133:9 |
| 52:7 69:9 | 74:16 79:10 | Civil (4) | 115:12 | conclusion (1) |
| 88:20,23 89:7 | certain (3) | 6:18 36:15 | comes (2) | 78:6 |
| 90:18,19,23 | 31:20 38:11 | 127:25 | 20:21 23:3 | condition (1) |
| 91:8,10,23 | 45:24 | 129:25 | comfortable ... | 79:8 |
| 92:3,9,17,23 | Certainly (1) | Claimant (1) | 31:25 32:4,8 | configuratio... |
| 95:5,13,14 | 130:12 | 1:6 | 32:14,21,23 | 31:23 106:9 |
| 115:25 | certification ... | clarify (2) | 33:7,12 | confusion (3) |
| 127:10 | 5:6 9:20 | 82:15 83:23 | coming (2) | 81:20 102:16 |
| 130:24 | 135:20 136:2 | clean (1) | 101:19 113:6 | 131:15 |
| call (5) | certified (3) | 63:6 | commerciall... | consecutive (2) |
| 50:6 118:6 | 2:6 9:17,17 | clear (4) | 114:14 | 20:6,8 |
| 122:17,21,22 | certify (2) | 53:13 82:4 | communicate... | conservative ... |
| called (3) | 136:8,17 | 103:3 104:13 | 25:19 27:24 | 98:19,20 |
| 25:22 46:2 | chance (3) | clients's (1) | 28:3,5 29:3 | considerable ... |
| 115:9 | 68:24 82:18 | 5:20 | communicate... | 126:12 |
| calling (2) | 93:14 | climb (5) | 27:7 | construct (1) |
| 6:11 124:23 | change (1) | 12:11 33:16 | communicati... | 79:5 |
| capacity (3) | 98:14 | 109:16,19,21 | 27:16 | constructed (3) |
| 1:13 22:12 | Channel (5) | climbing (2) | company (1) | 14:6 123:9 |
| 113:2 | 21:17,21,23 | 32:2,12 | 46:3 | 126:21 |
| capture (1) | 25:17,21 | close (1) | complainant... | construction ... |
| 50:2 | characteristi... | 51:20 | 1:14 | 111:22 117:16 |
| care (1) | 121:8 | coast (3) | complaints (2) | 119:24 |
| 122:23 | charge (1) | 123:18,23 | 109:8 110:4 | 120:23 |
| Carolina (5) | 24:15 | 124:6 | complete (3) | 128:14 |
| 7:15,17 8:9,10 | check (3) | Cockenoe (4) | 31:7,17 118:5 | constructive ... |
| 40:3 | 112:19,24 | 10:12 21:11 | completed (7) | 18:11 |
| case (5) | 113:4 | 35:9 40:13 | 30:24 31:14 | contact (1) |
| 83:16 98:4 | checking (2) | code (8) | 33:4 94:13 | 21:19 |
| 103:19 108:9 | 25:2 113:2 | 36:4,7,14 37:9 | 117:17,23 | contained (2) |
| 130:18 | Chester (1) | 127:22 | 118:2 | 50:16 115:6 |
| cases (1) | 5:18 | 129:24 | completely (2) | contemporan... |
| 119:17 | child (1) | 130:17 131:5 | 17:15 75:9 | 115:22 |

| | | | | |
|---|---|---|---|---|
| continuation ... | 55:16 57:21 | 28:8,9,16 | 73:23 108:6 | 129:25 |
| 48:9,14 | 61:20 62:12 | corresponde... | cross-out (1) | dealing (1) |
| continue (1) | 62:23,23 66:9 | 28:6 | 108:6 | 127:11 |
| 131:12 | 66:10,13 67:3 | Cory.H.Mor... | crossed (3) | deals (1) |
| CONTINUE... | 67:20,22,23 | 3:10 | 67:5 73:23 | 128:13 |
| 111:11 132:17 | 68:2,7 69:12 | cost (1) | 97:11 | DEBORAH (... |
| conversation ... | 69:23 70:11 | 126:12 | current (1) | 1:12 |
| 26:3 38:17 | 71:13,18,19 | counsel (22) | 31:18 | December (1) |
| 41:14 42:17 | 76:20 80:12 | 3:13 5:19 | currently (1) | 11:17 |
| 46:15 50:13 | 81:4,6 84:10 | 19:23 25:7 | 8:20 | decimal (3) |
| 99:15 111:6 | 85:7,8,16,20 | 26:13,17 | cut (2) | 72:2,14,18 |
| conversation... | 86:5,6,16 | 27:25 28:24 | 26:14 40:19 | deep (1) |
| 108:24 | 87:14 88:4 | 41:10 44:7 | | 86:13 |
| conversion (1) | 89:18,19 90:7 | 54:6 57:24 | **D** | Defendant's ... |
| 74:18 | 90:8,16 93:23 | 59:16 64:4 | D (3) | 5:5 41:16 |
| copies (3) | 95:6 96:11 | 67:13 81:18 | 4:2 20:9 134:2 | 104:13 |
| 26:8 28:17,19 | 97:21 98:2 | 88:11,13 | damage (5) | 135:19 |
| copy (5) | 99:25 100:14 | 102:15 111:2 | 124:10,14,18 | Defendants (1) |
| 25:17 29:3 | 100:17,21,21 | 121:17 | 126:13,20 | 3:18 |
| 41:23 43:22 | 103:5,16 | 122:15 | Danatzko (3) | degree (3) |
| 43:23 | 104:11,22 | counsel's (1) | 38:2,4 135:9 | 87:4,5,6 |
| copyright (1) | 105:4,15 | 127:20 | dash (2) | degrees (1) |
| 50:19 | 106:2,7 108:8 | Counselor (4) | 71:8,10 | 87:6 |
| COREY (2) | 108:10,11 | 107:2 125:19 | date (15) | Department ... |
| 3:4,8 | 111:22,23 | 130:6 131:13 | 5:8,11 7:5 10:6 | 1:11 |
| corner (14) | 112:2,9,20 | Country (1) | 41:17 43:10 | depending (1) |
| 50:5 57:15 | 113:9,10,20 | 3:19 | 43:13,14,14 | 116:15 |
| 80:6 81:11,13 | 114:11 | COUNTY (1) | 44:4,22,23 | depict (1) |
| 81:14 101:20 | 115:23,24 | 136:4 | 45:10 94:2,3 | 18:4 |
| 102:6 103:18 | 116:5 118:3 | couple (1) | dates (1) | depicted (1) |
| 103:19 | 118:10 120:8 | 21:12 | 8:8 | 71:6 |
| 104:25 105:4 | 120:14,17 | course (7) | David (3) | depiction (1) |
| 106:11,13 | 127:22,23 | 60:7 118:14 | 4:4,10 40:25 | 89:6 |
| corners (1) | 128:7,11,19 | 119:2,19 | David@adha... | Depo (2) |
| 80:4 | 128:21 | 123:16 | 4:12 | 103:3 104:14 |
| correct (109) | correction (2) | 127:12 | DAVIDA (1) | deponent (1) |
| 6:13,14 7:2 | 60:13 90:12 | 131:18 | 1:10 | 111:3 |
| 13:23 15:25 | correlate (6) | court (7) | day (6) | deposition (8) |
| 16:2 24:24 | 52:11 58:20 | 1:2 5:12,15 | 35:17 44:14 | 6:2 20:3,13,18 |
| 26:3,4 30:18 | 59:9 60:4 | 41:16 122:18 | 69:21 85:6 | 20:24 27:23 |
| 30:21,22 | 61:22 75:21 | 122:22,22 | 133:17 | 49:16 108:22 |
| 43:12,18 44:5 | correlates (1) | coverage (1) | 136:22 | Deputy (1) |
| 44:24,25 | 60:8 | 23:16 | days (3) | 1:9 |
| 47:17 48:3,11 | correspond (1) | created (1) | 94:11,12 | derived (1) |
| 48:16 52:6,9 | 116:16 | 12:24 | 115:11 | 116:2 |
| 52:9 54:22 | corresponde... | cross (2) | deal (1) | describe (1) |

| | | | | |
|---|---|---|---|---|
| 12:16 | 106:10,13 | 80:22 81:14 | 100:2 102:21 | 65:20 |
| **described (1)** | 119:20,22 | 83:4,9,11,20 | 103:22 | **Dot (1)** |
| 116:10 | **diagonals (1)** | 83:21 96:7 | 127:21 | 108:4 |
| **description (6)** | 99:2 | 97:23 101:18 | 135:15 | **dotted (3)** |
| 48:8 50:17 | **diagram (34)** | 102:7,8 105:6 | **documenting...** | 70:15,17,19 |
| 65:15 120:24 | 52:19 57:2,6,8 | 105:10 112:3 | 35:24 | **Doug (4)** |
| 124:2 135:3 | 58:2,3,8,11 | **dimensions (...** | **documents (2...** | 77:16 120:21 |
| **descriptions ...** | 59:9,12 69:4 | 13:6,6 15:8 | 5:6,10 19:5 | 121:4,8 |
| 51:6 | 69:6,13,25 | 19:13 51:21 | 30:2 36:23 | **Douglas (11)** |
| **designation (2)** | 71:7,12 77:8 | 52:22 53:18 | 37:23,25 | 77:16,18,19 |
| 41:12 94:17 | 77:13 79:9 | 58:14 60:8,19 | 38:11,13,19 | 78:3,8,18 |
| **desire (3)** | 80:13,18,19 | 70:21 74:16 | 38:25 39:3 | 81:8 120:19 |
| 22:3 23:18 | 81:7 85:18 | 80:6 81:9 | 42:2,5 45:15 | 120:22 |
| 45:22 | 88:17,18 | 85:23 97:4 | 45:18,21 | 123:12,14 |
| **detail (18)** | 89:16 102:24 | 106:19 | 99:12 128:5 | **Dr (1)** |
| 51:9,10 52:10 | 104:20 | 111:25 | 128:13 | 6:11 |
| 52:23 53:11 | 105:13 | 112:14 | 135:20 | **drafting (2)** |
| 57:19 60:5,6 | 106:17,21 | **direct (1)** | **Doe (1)** | 115:6,7 |
| 60:7 84:14 | 107:25 | 119:19 | 1:13 | **draw (3)** |
| 88:6,14,16,20 | 111:15 | **disagree (1)** | **doggie (2)** | 51:6 78:6 |
| 88:21,22 | **diagrams (3)** | 122:4 | 65:17,18 | 79:22 |
| 89:10 99:24 | 56:5 92:18 | **Disclosure (1)** | **doing (1)** | **drawing (18)** |
| **determinatio...** | 135:17 | 135:9 | 17:3 | 50:20 52:11,12 |
| 36:9 | **diameter (4)** | **discrepancie...** | **donate (1)** | 56:10 57:10 |
| **determine (3)** | 37:17 79:16 | 116:6,15 | 63:5 | 63:17 67:2,14 |
| 79:20 88:23 | 112:5 113:7 | **discrepancy (...** | **donating (1)** | 79:22 83:9 |
| 125:11 | **differ (1)** | 89:20 101:3,16 | 63:6 | 85:6 89:8,22 |
| **develop (1)** | 101:11 | 102:3,4 | **door (6)** | 90:22,22,25 |
| 114:10 | **difference (3)** | **discuss (4)** | 12:24,25 13:3 | 93:8 97:6 |
| **developed (1)** | 23:12 96:14 | 49:15 108:24 | 13:4 121:18 | **drawings (8)** |
| 116:8 | 119:11 | 109:3,6 | 130:11 | 50:22,24 51:2 |
| **diagonal (39)** | **differences (1)** | **discussed (1)** | **doors (2)** | 61:23 62:9 |
| 16:7 52:15,17 | 90:22 | 57:5 | 31:8,10 | 101:25 |
| 52:20 53:3,22 | **different (11)** | **discussions (1)** | **dormer (34)** | 108:10 |
| 54:17 55:20 | 44:4,14 71:24 | 108:23 | 65:17,19,23 | 116:20 |
| 60:7 85:19,24 | 78:10 90:18 | **DISTRICT (2)** | 67:15,16,21 | **drawn (2)** |
| 86:15 87:2,11 | 90:19,19,24 | 1:2,2 | 68:2 69:5,6,7 | 89:4 105:14 |
| 87:23 89:17 | 94:6 96:22 | **Divided (1)** | 70:14,14,20 | **drops (1)** |
| 96:3,8 97:7 | 120:5 | 74:17 | 71:3,6,10,10 | 69:3 |
| 97:15,21,25 | **difficulty (1)** | **document (23)** | 71:14 73:17 | **drove (1)** |
| 98:6,11 99:24 | 118:12 | 42:22 43:19,25 | 75:9,23 81:4 | 35:6 |
| 100:3,25 | **dimension (25)** | 44:3,8,12,13 | 81:12 82:21 | **duly (2)** |
| 101:5,8,20 | 53:15 54:4 | 44:19,20,24 | 82:23,25 83:5 | 5:3 136:14 |
| 102:12 103:7 | 55:2,11 58:6 | 46:5 50:7,22 | 83:7,12,14,16 | **duplicate (7)** |
| 103:14 | 59:13 64:13 | 61:14 68:21 | 83:20,25 84:4 | 93:3,11 107:6 |
| 105:12,14 | 70:4,6 73:25 | 99:2,8,9 | **dormers (1)** | 107:8,12,20 |

| 107:25 | 83:11 128:12 | **engineer (16)** | 69:8 77:25 | 45:6 47:9 |
|---|---|---|---|---|
| **duplicated (2)** | **electrical (5)** | 7:13 9:6,8,15 | 118:10 | 48:18 49:21 |
| 93:17 107:16 | 17:17,19,21 | 23:19 24:6 | **evaluate (1)** | 59:20 61:9,15 |
| **duplicates (1)** | 18:4,9 | 74:4 115:15 | 119:4 | 76:5 84:18 |
| 107:5 | **electricity (1)** | 117:24 119:3 | **evaluation (1)** | 91:12,17,17 |
| **duplication (1)** | 18:7 | 122:3 123:11 | 29:16 | 93:21 102:19 |
| 106:20 | **else's (1)** | 127:14,17 | **event (2)** | 102:23 |
| **duties (1)** | 94:6 | 128:9 129:18 | 22:20 104:19 | 104:10,13 |
| 9:7 | **email (12)** | **engineering (5)** | **eventually (1)** | 107:11,12,19 |
| | 3:10,23 4:12 | 6:19 9:10 | 118:18 | 108:5 111:9 |
| **E** | 25:16,17,20 | 76:10 114:18 | **exact (2)** | 111:14 |
| **E (9)** | 26:5,21,24 | 128:2 | 8:8 61:25 | 112:22 |
| 3:2,2 4:2,2,2 | 27:3,10,12 | **engineers (3)** | **exactly (2)** | 114:10 |
| 4:17,17 5:2 | **emailed (1)** | 36:15 114:17 | 67:12 75:8 | 127:10 |
| 134:2 | 21:23 | 129:25 | **examination ...** | **exhibits (7)** |
| **E-N-E-R-C-...** | **emails (4)** | **enlarge (5)** | 2:3 6:9 111:11 | 20:13 41:3 |
| 114:9 | 26:8,11 28:3 | 50:10,12 53:2 | 114:6 119:20 | 115:7,18 |
| **earlier (1)** | 134:12 | 53:9 64:7 | 130:23,25 | 116:21 127:9 |
| 81:10 | **embedded (4)** | **enlarged (1)** | 131:3 132:17 | 135:2 |
| **early (3)** | 30:17 112:10 | 61:11 | 134:4 136:12 | **expected (1)** |
| 8:8 11:17 | 113:16,19 | **enter (1)** | 136:14 | 7:5 |
| 115:13 | **Emily (13)** | 127:7 | **examine (1)** | **expert (10)** |
| **easily (1)** | 41:8 45:4 53:8 | **entire (2)** | 119:4 | 22:16 121:15 |
| 71:4 | 68:23 74:9 | 81:23 123:23 | **examined (6)** | 122:11 |
| **east (6)** | 82:18 93:14 | **envelope (2)** | 5:4 117:15,25 | 124:23,24 |
| 4:7 83:17 | 95:20 99:14 | 69:17,18 | 123:21 | 125:10,25 |
| 123:18,23 | 104:2 107:10 | **environment...** | 128:23 131:4 | 130:4 131:9 |
| 124:6 126:12 | 136:6,24 | 127:8 | **example (1)** | 135:9 |
| **EASTERN (1)** | **Empire (1)** | **Eptosca@kr...** | 101:16 | **exposed (1)** |
| 1:2 | 135:15 | 3:23 | **exception (2)** | 112:13 |
| **eaves (2)** | **employed (4)** | **equate (1)** | 20:12 108:2 | **extend (8)** |
| 14:24 15:2 | 8:20,22 76:10 | 74:20 | **exchange (3)** | 96:2 102:12 |
| **edge (5)** | 76:12 | **equivalent (1)** | 25:8 27:3,12 | 103:7 106:5 |
| 55:14 102:13 | **empty (1)** | 72:13 | **exchanged (4)** | 106:11,11,13 |
| 104:21 106:6 | 17:15 | **Eric (4)** | 20:23 25:11 | 117:11 |
| 106:12 | **enclosed (2)** | 3:21 40:19 | 27:10 38:11 | **extended (1)** |
| **education (1)** | 69:17,18 | 46:4 55:11 | **exchanges (3)** | 103:14 |
| 6:17 | **endured (1)** | **Esq (6)** | 26:5,21,25 | **extending (1)** |
| **effort (1)** | 127:6 | 1:11 3:8,12,21 | **Excuse (1)** | 105:3 |
| 21:19 | **ENERCALC...** | 4:10,18 | 19:22 | **extends (6)** |
| **egress (2)** | 46:2,3 114:9 | **estimate (3)** | **exemplars (2)** | 55:13 57:14 |
| 31:7 118:19 | 114:13,24 | 68:25 79:4 | 113:11,13 | 71:4,14 |
| **eight (2)** | **energy (1)** | 119:9 | **exhibit (33)** | 104:24 105:8 |
| 8:19 105:23 | 126:20 | **estimated (1)** | 5:5 20:6,8 | **extension (1)** |
| **either (5)** | **engine (1)** | 79:6 | 41:12 42:10 | 83:7 |
| 64:11,13 66:3 | 8:25 | **estimation (3)** | 42:20 43:20 | **extensive (1)** |

124:10
**extent (3)**
22:16 60:9
83:12
**exterior (7)**
14:21 55:6
60:8 66:2
96:15 102:5
103:15
**external (1)**
53:18
**extreme (5)**
55:5 96:8,9
99:4 102:6
**eyeballed (1)**
52:4

**F**

**face-to-face (1)**
101:10
**fact (8)**
22:15 23:5
31:5 120:6
122:13
123:20 124:4
126:11
**factors (1)**
90:5
**facts (1)**
22:18
**factually (1)**
35:16
**failure (1)**
30:5
**fair (6)**
66:8 79:7,14
80:9 96:13
116:21
**fairly (2)**
79:8 98:23
**fall (2)**
11:16 130:18
**familiar (14)**
10:11 36:3,6
36:13 65:16
114:20 119:8

120:22 121:7
123:20
124:12
126:11
127:20,25
**familiarity (1)**
36:10
**Family (1)**
37:12
**fastened (1)**
55:3
**father (8)**
33:24 118:15
124:20 125:2
125:8,12
126:3,8
**fathered (1)**
125:4
**favor (1)**
25:6
**feel (8)**
31:25 32:4,8
32:14,21,23
33:7 125:23
**feeling (1)**
75:8
**feelings (4)**
22:4,13,24
23:4
**feet (43)**
12:20 13:7,7,9
13:9 40:9
60:22,22 62:2
63:19,23 64:5
64:10,17,18
66:11,14,23
67:8 68:4,6,9
69:25 71:23
72:2,10,12,12
72:18,20,24
74:13,17
75:16,18 96:5
97:10,18,20
98:13,14 99:5
101:14
**FELLMAN (1)**

1:10
**felt (4)**
32:11,12 33:11
98:23
**field (7)**
61:17 90:24
92:13,14
116:8,22,24
**Fifteen (2)**
63:25 99:20
**figure (2)**
72:21 73:11
**figuring (1)**
101:23
**FILE (1)**
3:24
**filed (1)**
109:4
**Fillmore (1)**
4:18
**finalized (1)**
5:22
**finding (1)**
101:8
**findings (1)**
29:15
**fine (4)**
57:23 74:2,6
84:22
**finish (2)**
94:9 118:5
**finished (3)**
111:3 116:20
118:6
**Fir (15)**
77:16,17,18,19
78:3,8,19
81:8 120:19
120:21,23
121:4,8
123:12,14
**firm (1)**
76:10
**first (7)**
8:16 21:10
64:25 95:4

108:18
123:21
136:13
**five (3)**
11:11 125:24
135:6
**fixtures (1)**
129:7
**floor (31)**
16:8,15 47:16
47:21,23 48:7
48:8,10,15,21
56:19 57:7,10
58:17 59:23
60:3,11,18,20
72:7 82:20,22
82:24 83:2,2
83:4,6 95:25
117:6 120:3
120:13
**flooring (1)**
47:13
**Florida (4)**
7:14,17 8:4,5
**focused (1)**
18:6
**follow (2)**
26:19 28:22
**follows (1)**
5:4
**foot (12)**
53:16,20 59:14
67:12,25 69:2
70:7 71:23
72:13 80:25
101:14,14
**forestry (4)**
37:3,6,14,15
**Forgive (1)**
74:2
**Form (1)**
135:5
**format (2)**
25:9,10
**forth (1)**
136:13

**forward (1)**
41:19
**foundation (2)**
40:17,20
**four (9)**
11:11 15:12,25
16:12 80:5
81:15 113:8,9
135:10
**fraction (1)**
72:15
**frame (1)**
35:2
**framing (9)**
16:14 54:22
55:12 71:2,2
71:4 72:25
104:25
105:19
**Francis (1)**
5:17
**frankly (1)**
58:14
**furnished (1)**
44:20
**further (6)**
41:11 56:14
59:17 132:14
133:6 136:16
**future (2)**
127:2 132:21

**G**

**Gallagher-M...**
136:6,24
**general (1)**
110:2
**generally (1)**
125:8
**generated (2)**
48:24 49:7
**Georgia (5)**
7:14,17 8:6,7
10:3
**GERARD (1)**
1:11

| | | | | |
|---|---|---|---|---|
| getting (5) | 49:20 57:25 | 61:16 73:10 | 59:4 69:2 | 80:11 83:3,6 |
| 18:18 27:18,18 | 58:16 62:22 | 89:6 136:22 | 81:23 82:12 | 85:10,12,15 |
| 99:6 118:13 | 63:5 93:20 | handwriting ... | 84:24 85:19 | 91:25 92:5 |
| give (10) | 101:19 | 47:11 | 85:25,25 | 95:16 96:11 |
| 13:5 27:22 | 111:15 | handwritten ... | 86:18 87:3,24 | 100:7 105:15 |
| 44:9 62:22 | 118:25 | 49:6,8,10 | 101:7 103:15 | 106:19 |
| 89:25 90:2,4 | 121:15 131:9 | 60:10 61:22 | house (141) | 109:12,23 |
| 98:18 107:23 | 131:24,25 | 62:11 88:17 | 11:3,22,25 | 110:13,17 |
| 109:22 | 132:25 | 89:4 135:17 | 12:7,20 13:13 | 111:22 |
| given (2) | good (3) | hang (2) | 13:16,17 14:4 | 115:23 116:3 |
| 38:8 136:16 | 19:9 79:8 | 14:24 15:3 | 14:19,21,22 | 116:23 117:8 |
| giving (1) | 115:11 | happens (1) | 15:5,11,14,21 | 117:12,16 |
| 27:23 | Google (5) | 121:25 | 16:4,8,25 | 118:13,20,25 |
| GLASS (1) | 8:23,24 9:5,10 | hard (1) | 17:3,8,10,18 | 120:10 |
| 1:11 | 92:6 | 29:3 | 17:20 18:2,12 | 121:11 |
| globally (3) | grabbing (1) | heading (1) | 18:19 19:11 | 123:10,13,21 |
| 9:11,12,13 | 107:17 | 95:21 | 19:15 21:11 | 124:17 126:3 |
| go (43) | graduation (1) | height (5) | 21:13 22:5 | 126:24 |
| 8:24 11:21 | 7:6 | 34:2 68:5 | 23:16,18 | 128:23 |
| 35:6 41:11 | grandchildre... | 84:11,14,24 | 24:12,20 | 129:20 |
| 42:19 46:8,17 | 125:24 | held (2) | 25:24 27:20 | 132:20,22 |
| 46:19 48:4,12 | graphics (1) | 2:4 85:25 | 29:19 30:4,6 | houses (7) |
| 48:17 49:18 | 116:8 | help (7) | 30:9,24 31:14 | 39:2,5,13,23 |
| 53:10 56:14 | Great (2) | 21:24,25 22:3 | 31:20 32:2,6 | 123:15 |
| 57:2,24 59:15 | 4:8 6:15 | 23:18,25 24:2 | 32:10,25 33:8 | 128:14,17 |
| 59:17 63:17 | ground (1) | 24:4 | 33:17,19 | hurricanes (1) |
| 64:24 66:14 | 34:3 | helping (2) | 34:14,18,20 | 126:14 |
| 66:18,20 | guardians (1) | 33:22 34:15 | 34:24 35:9,14 | |
| 70:22 76:15 | 1:4 | hereinbefore ... | 35:20,22 | I |
| 82:14,16 | guess (7) | 136:13 | 36:19 37:21 | IBC (3) |
| 84:17 88:5 | 15:4 17:5 63:4 | hereunto (1) | 39:7,16,19,25 | 36:20 37:9,19 |
| 90:10 95:19 | 66:12 71:11 | 136:22 | 40:2,5,8,11 | ID (1) |
| 100:22 102:3 | 82:20 85:14 | high (1) | 40:13,22 | 44:9 |
| 102:9 106:14 | guy (3) | 126:14 | 47:16 48:10 | idea (1) |
| 106:24 107:3 | 22:3 23:25 | highest (1) | 48:15,21 56:2 | 98:22 |
| 107:19 | 91:22 | 6:16 | 57:16 58:15 | identical (2) |
| 108:21 | | hold (4) | 58:24 61:17 | 43:20 44:13 |
| 113:24 130:7 | H | 7:8,12 64:6 | 62:15,19 | identification .. |
| 130:8 132:12 | H (2) | 89:14 | 63:12 64:18 | 5:7 |
| going (29) | 3:4,8 | holding (2) | 65:21 69:16 | identified (2) |
| 6:24 19:3,5,25 | habitation (1) | 18:16 19:20 | 69:19,22,25 | 107:5 122:13 |
| 20:17,22,23 | 130:2 | home (3) | 70:13,25 | identify (2) |
| 22:20 25:8 | hammocks (1) | 35:5 92:7,8 | 71:11 72:21 | 56:15 67:14 |
| 26:10 27:22 | 17:12 | horizontal (18) | 73:2,11 75:11 | images (1) |
| 28:19 31:8 | hand (6) | 54:16,20 55:17 | 76:19 77:7,22 | 59:19 |
| 33:7 35:19 | 47:10 50:4 | 56:17 57:17 | 78:9 79:5 | immediately ... |

| | | | | |
|---|---|---|---|---|
| 116:3 | 128:6 | 15:13 17:7,9 | 63:10 | 62:1 63:1 |
| **inch (7)** | **incorrect (3)** | 34:21,22 | **interrupt (1)** | 64:1 65:1 |
| 72:25 74:20 | 6:12 25:3 68:6 | 58:15,23,25 | 54:7 | 66:1 67:1 |
| 80:21 83:11 | **Index (1)** | 59:2 70:4,6 | **investigation...** | 68:1 69:1 |
| 103:21,22 | 1:16 | 70:12,13,14 | 14:15 | 70:1 71:1 |
| 112:5 | **indicate (5)** | 70:21,24 71:2 | **involved (1)** | 72:1 73:1 |
| **inches (80)** | 20:4 29:17 | 71:18 72:21 | 39:21 | 74:1 75:1 |
| 60:23,24 63:22 | 70:18 98:10 | 72:25 79:20 | **involving (1)** | 76:1 77:1 |
| 63:25 64:5,19 | 109:11 | 80:4 81:10 | 114:17 | 78:1 79:1 |
| 64:19,20 | **indicated (11)** | 83:4,21 85:9 | **Island (2)** | 80:1 81:1 |
| 65:23 66:12 | 45:8 58:11 | 100:7 106:19 | 123:24 124:6 | 82:1 83:1 |
| 66:15,21,21 | 59:10 61:14 | **inspected (5)** | **issue (2)** | 84:1 85:1 |
| 66:23 67:8,11 | 77:7 84:12 | 39:8,12 51:25 | 35:18 122:17 | 86:1 87:1 |
| 68:3,7 69:3 | 115:4 120:20 | 55:22 69:22 | **items (3)** | 88:1 89:1 |
| 70:2,7 72:3 | 127:19,24 | **inspection (4)** | 17:9 31:13 | 90:1 91:1 |
| 72:12 73:9,13 | 128:4 | 34:25 40:14 | 38:6 | 92:1 93:1 |
| 73:21 74:19 | **indicates (1)** | 86:9 112:15 | | 94:1 95:1 |
| 75:4,5,15,19 | 48:7 | **inspections (1)** | **J** | 96:1 97:1 |
| 79:13,24 80:2 | **indication (3)** | 39:4 | **J (129)** | 98:1 99:1 |
| 81:21,22 | 82:10 128:22 | **Inspector (1)** | 5:2 6:1 7:1 8:1 | 100:1 101:1 |
| 83:10,14,18 | 129:17 | 1:11 | 9:1 10:1 11:1 | 102:1 103:1 |
| 84:2,9,23 | **Indiscernible...** | **instance (1)** | 12:1 13:1 | 104:1 105:1 |
| 85:2 86:13,13 | 78:16 | 116:17 | 14:1 15:1 | 106:1 107:1 |
| 86:22 87:3,3 | **individual (2)** | **instant (1)** | 16:1 17:1 | 108:1 109:1 |
| 87:11,13,19 | 47:23 62:4 | 39:22 | 18:1 19:1 | 110:1 111:1 |
| 87:20 88:2 | **individually ...** | **Institute (2)** | 20:1 21:1 | 112:1 113:1 |
| 89:18,18 | 1:4,13 | 6:21 7:4 | 22:1 23:1 | 114:1 115:1 |
| 97:20 98:16 | **infant (1)** | **intend (1)** | 24:1 25:1 | 116:1 117:1 |
| 99:3,4,6,24 | 1:4 | 21:4 | 26:1 27:1 | 118:1 119:1 |
| 100:3,20,23 | **information (...** | **intended (3)** | 28:1 29:1 | 120:1 121:1 |
| 101:3,7,7,12 | 13:24 28:11 | 126:4 129:19 | 30:1 31:1 | 122:1 123:1 |
| 101:13 | 50:15,17 | 130:2 | 32:1 33:1 | 124:1 125:1 |
| 102:17,17,25 | 126:19 | **intention (2)** | 34:1 35:1 | 126:1 127:1 |
| 103:6,10,13 | **informed (1)** | 128:24 132:21 | 36:1 37:1 | 128:1 129:1 |
| 104:19 105:6 | 117:20 | **interested (1)** | 38:1 39:1 | 130:1 131:1 |
| 105:10,13 | **ingress (1)** | 136:19 | 40:1 41:1 | 132:1 133:1 |
| 112:6 | 118:19 | **interior (6)** | 42:1 43:1 | **J.B (1)** |
| **included (1)** | **initial (1)** | 14:23 18:2 | 44:1 45:1 | 93:24 |
| 116:21 | 94:6 | 58:14,23 | 46:1 47:1 | **Jacob (1)** |
| **incomplete (4)** | **initials (3)** | 79:17 80:11 | 48:1 49:1 | 93:22 |
| 31:4 33:10 | 93:24 94:5,22 | **international...** | 50:1 51:1 | **Jacobs (3)** |
| 124:17 | **INSERT (1)** | 36:14 37:9 | 52:1 53:1 | 76:6,8,9 |
| 126:24 | 134:15 | 127:21 | 54:1 55:1 | **James (7)** |
| **Incorporated...** | **inside (32)** | 129:23 131:5 | 56:1 57:1 | 2:4 4:6 5:14 |
| 46:3 | 11:24 12:21 | **Internet (4)** | 58:1 59:1 | 133:13 134:5 |
| **incorporates ...** | 14:19 15:11 | 8:25 50:3 63:5 | 60:1 61:1 | 135:12 |

| | | | | |
|---|---|---|---|---|
| 136:10 | 38:4 41:22 | **larger (1)** | 25:20 26:6,16 | 70:15,17,19 |
| **Jane (1)** | 62:14 63:2 | 105:25 | 26:22,25 | 71:8,10 72:15 |
| 1:13 | 65:18 66:5 | **Laser (1)** | 27:11,12 29:4 | 74:16 83:8 |
| **Jersey (6)** | 67:9,9,18,18 | 135:11 | 29:4 31:12 | **lines (1)** |
| 5:18 6:21 7:4 | 68:11 72:11 | **late (2)** | 44:20 78:12 | 83:10 |
| 7:14 8:2 | 73:22 74:3 | 11:16 115:13 | 85:7 108:13 | **literal (1)** |
| 123:17 | 75:2,4,7 | **LAW (2)** | 108:16,21,24 | 94:25 |
| **job (1)** | 76:24 77:2 | 3:4 4:4 | 112:6,16 | **litigation (3)** |
| 118:5 | 90:3,3 91:6 | **lawsuit (3)** | 113:19 | 35:15 39:22,22 |
| **John (5)** | 98:18,19,23 | 108:13,16,19 | 117:21 | **little (5)** |
| 1:4,13 3:12 | 98:24 102:20 | **lawyers (1)** | 118:23 | 53:9 76:16 |
| 16:19 135:13 | 113:6 128:8 | 28:11 | 120:20 | 89:25 90:4 |
| **Joseph (2)** | **knowledge (2)** | **layman (5)** | 132:20 | 102:7 |
| 38:2,4 | 22:17 29:11 | 124:20 126:2 | 135:13 | **live (3)** |
| **JR (1)** | **known (1)** | 126:17 127:2 | **Lepper's (2)** | 128:20,24 |
| 3:12 | 131:23 | 129:19 | 26:13 27:24 | 129:19 |
| **judge (1)** | | **layout (4)** | **Lepper-Bro...** | **lived (1)** |
| 123:2 | **L** | 85:6 98:25 | 102:23 103:3 | 110:2 |
| **judgment (1)** | **L (1)** | 99:9 135:15 | 104:14 | **living (2)** |
| 33:13 | 4:17 | **layperson (3)** | **let's (10)** | 35:17 123:17 |
| **junction (4)** | **L-E-E-D (1)** | 121:23,25 | 8:10 17:8 | **LLP (1)** |
| 17:22,24 18:5 | 9:17 | 122:2 | 46:17 56:25 | 3:17 |
| 18:9 | **lack (3)** | **learn (2)** | 59:24 66:18 | **located (5)** |
| | 31:20 50:5 | 21:10,14 | 67:13 122:17 | 9:3 11:3 39:25 |
| **K** | 65:17 | **leave (1)** | 122:19,24 | 40:2 86:18 |
| **keep (2)** | **ladder (23)** | 133:2 | **letter (3)** | **location (5)** |
| 89:13 125:19 | 12:3,6,8,10,11 | **LEED (2)** | 29:4 135:7,12 | 10:14 80:4 |
| **Kelly (4)** | 12:15,17,22 | 9:17,19 | **letters (2)** | 110:2 116:18 |
| 3:17,17 4:19 | 18:19 31:6 | **left (11)** | 28:20 134:13 | 116:19 |
| 4:19 | 32:2,5,9,12 | 50:11 52:14 | **level (1)** | **loft (1)** |
| **KEVIN (1)** | 32:15,24 33:9 | 58:24 59:18 | 6:17 | 129:15 |
| 1:9 | 33:12,16,20 | 69:24 71:11 | **Lexitas-Lega...** | **long (9)** |
| **kind (9)** | 33:23 85:14 | 71:21 80:13 | 1:18 | 10:4 30:16 |
| 13:22 14:3 | 118:13 | 81:7 82:23 | **license (3)** | 34:20 45:12 |
| 50:16 107:3 | **lag (14)** | 103:19 | 7:22,24 122:2 | 87:13 95:15 |
| 118:19 | 111:15,18,19 | **leg (2)** | **licensed (1)** | 115:3 123:23 |
| 119:23,23 | 111:24 112:3 | 95:22,24 | 128:9 | 124:6 |
| 122:7 127:7 | 112:6,9,19,24 | **length (10)** | **licenses (4)** | **longer (3)** |
| **kitchen (1)** | 113:7,8,12,14 | 30:20 53:22 | 7:9,11 9:14,16 | 76:12 106:10 |
| 129:12 | 113:16 | 80:5 81:24 | **life (1)** | 106:12 |
| **know (41)** | **Lane (1)** | 97:18,20 | 123:16 | **longhand (1)** |
| 5:23 8:7 20:22 | 5:17 | 100:25 101:8 | **lifetime (1)** | 115:18 |
| 22:12 23:6 | **language (1)** | 104:20 120:5 | 125:4 | **LONGO (1)** |
| 27:21,21 | 65:18 | **Lepper (31)** | **limited (1)** | 1:12 |
| 30:13 31:7,22 | **large (1)** | 1:4,4 12:7 | 122:16 | **look (14)** |
| 32:17 35:20 | 111:19 | 16:19,24 17:5 | **line (8)** | 25:24 30:24 |

| | | | | |
|---|---|---|---|---|
| 40:12 41:9 | **March (3)** | 94:23 112:24 | 46:25 47:3,4 | 96:3 97:7 |
| 46:10 49:21 | 1:19 45:11 | **meaning (2)** | 47:22,25 | 104:23 105:3 |
| 60:3 79:9 | 136:22 | 60:22 74:3 | 51:17 52:18 | 105:7,19 |
| 85:5,17 91:16 | **mark (2)** | **meaningless ...** | 55:19 56:11 | **members (8)** |
| 93:6,21 | 20:21 21:3 | 44:10 | 58:10,12,13 | 16:12,15 56:16 |
| 113:15 | **marked (10)** | **means (8)** | 58:18,20 | 56:18 105:17 |
| **looked (10)** | 5:7,10 20:7,13 | 51:24 83:23 | 61:18,21,22 | 105:21 |
| 30:9 37:13,20 | 20:15,18,24 | 84:9 94:10,19 | 61:23 62:2,3 | 119:21,22 |
| 52:5 61:24 | 21:7 41:17 | 118:19 | 62:10 63:19 | **memory (2)** |
| 79:7 84:15 | 53:14 | 120:12 | 65:16,22 | 62:7,10 |
| 88:18 106:17 | **markings (1)** | 126:18 | 66:21,23 | **mention (4)** |
| 106:21 | 20:20 | **measure (13)** | 67:22 69:20 | 65:8 109:25 |
| **looking (15)** | **marriage (1)** | 11:19,20 14:10 | 70:22 71:17 | 132:21,25 |
| 8:11 42:2 53:6 | 136:18 | 15:7,21 16:4 | 71:20 74:21 | **mentioned (4)** |
| 54:16 62:24 | **MARY (1)** | 34:5 52:4 | 75:23,24 | 38:6 68:15 |
| 63:10 69:13 | 1:10 | 55:23 64:18 | 76:17 79:10 | 104:4 114:8 |
| 88:8,10 89:22 | **mass (1)** | 70:24 73:3 | 79:18,19,21 | **middle (1)** |
| 98:17 99:19 | 126:18 | 74:20 | 79:21 80:8,18 | 80:22 |
| 99:23 100:2 | **Master (1)** | **measured (14)** | 81:2,3,5 | **mind (1)** |
| 101:25 | 6:18 | 14:12,14 15:13 | 85:14 86:7 | 89:14 |
| **looks (7)** | **master's (1)** | 15:14,17 16:6 | 90:20 92:16 | **Mineola (1)** |
| 53:6 68:8 70:7 | 6:22 | 16:10,11 | 92:18 98:10 | 3:20 |
| 72:10 73:23 | **material (13)** | 51:24 81:10 | 98:21,25 | **minutes (1)** |
| 79:11 103:7 | 13:14,18 14:3 | 91:3 96:10 | 100:12 | 34:22 |
| **love (2)** | 115:6,17 | 99:3 100:9 | 102:18 | **moment (1)** |
| 110:19,21 | 116:2 120:19 | **measuremen...** | 116:23 | 88:5 |
| **lower (4)** | 120:25 121:4 | 54:25 55:18,24 | **measurer (1)** | **money (1)** |
| 59:12 89:23 | 121:10,12 | 58:7 59:8 | 14:10 | 63:5 |
| 99:17 103:19 | 123:12,15 | 60:5 61:2,3 | **measures (1)** | **month (2)** |
| **lowest (2)** | **materials (2)** | 63:22 64:2,20 | 83:14 | 11:15 43:17 |
| 130:19,20 | 116:7 120:23 | 67:10 70:10 | **measuring (4)** | **Morris (20)** |
| | **matter (2)** | 72:6 73:7 | 34:13 83:4 | 3:4,8 38:15 |
| **M** | 35:14 136:20 | 74:23 80:10 | 87:11 119:14 | 41:24 53:12 |
| **M (1)** | **matters (1)** | 81:23 86:17 | **media (4)** | 54:6 103:2 |
| 5:2 | 127:11 | 88:3 90:7 | 21:16 24:8,9 | 104:12 111:2 |
| **Madam (3)** | **Mayor (3)** | 91:6 96:5,6 | 126:18 | 113:21 |
| 21:2 122:6 | 1:9,9,10 | 96:14,16,18 | **meet (2)** | 120:15 |
| 123:4 | **mean (18)** | 97:14,25 98:5 | 110:10 131:4 | 122:15 |
| **mail (1)** | 9:18 11:8 | 98:8 103:6 | **Melville (1)** | 125:19 |
| 25:11 | 22:10 23:2 | 112:15 | 3:7 | 130:10 |
| **main (1)** | 27:18 47:15 | **measuremen...** | **member (20)** | 131:12,17,18 |
| 91:2 | 51:23 53:17 | 10:23 11:2,18 | 54:2,4,22 | 131:21 132:7 |
| **making (1)** | 62:17 65:2 | 14:9 16:18 | 55:12,21 | 133:4 |
| 36:9 | 68:18 72:4 | 17:3 30:13 | 57:14,17,20 | **motivated (1)** |
| **male (1)** | 82:25 83:24 | 33:25 34:8,24 | 85:19,19 87:2 | 23:21 |
| 125:11 | 84:6 90:18 | 35:24 46:24 | 87:23,24 90:2 | **move (1)** |

| | | | | |
|---|---|---|---|---|
| 131:14 | news (9) | 64:25 65:4 | 132:9,11 | 6:3,5,15 7:8 |
| MULDOWN... | 21:15,16,21 | 66:14,19 | objections (1) | 9:23 10:20 |
| 1:9 | 23:7,16 24:7 | 72:20 75:14 | 125:20 | 11:5,12 12:15 |
| multiple (3) | 24:9 25:17,21 | 79:11 81:20 | observations ... | 13:5,9,12 |
| 5:9 54:8,11 | nine (1) | 84:21 86:21 | 116:22 | 14:16 15:4,10 |
| | 12:20 | 87:6 89:23 | observe (5) | 18:8 19:3,10 |
| **N** | Nineteen (1) | 97:7 99:10 | 17:7,9 30:8 | 19:19 23:11 |
| N (7) | 135:21 | 102:23 104:7 | 112:8 123:18 | 23:21 25:4,13 |
| 3:2 4:2,2,2,17 | Noelle (2) | 107:23,25 | observed (1) | 26:10,24 |
| 5:2 134:2 | 1:4 26:25 | 111:14 113:6 | 30:24 | 28:12,17 29:7 |
| Nailed (1) | nominal (1) | 123:22 | obtain (3) | 29:10 30:23 |
| 12:4 | 85:23 | 127:10 | 7:22,24 10:2 | 31:19 32:14 |
| nails (5) | non-party (4) | numbers (10) | Obviously (1) | 33:15 39:11 |
| 19:20 30:8,14 | 2:4 4:5 5:2,25 | 52:15,17 71:25 | 74:23 | 40:5 41:7,22 |
| 30:21 111:19 | NONE- (2) | 74:12 75:14 | occasion (2) | 43:16,24 44:3 |
| name (5) | 134:16,19 | 75:17,20 | 119:4 123:17 | 44:6,11,22 |
| 5:13 50:19 | north (2) | 80:14 101:4 | occupy (1) | 45:2,7,12 |
| 59:21 94:6,9 | 83:13 105:8 | 114:10 | 128:19 | 47:4 49:15 |
| names (2) | Notary (4) | | ocean (3) | 50:4,24 51:17 |
| 59:24,25 | 2:7 5:3 133:19 | **O** | 63:3,7 108:3 | 52:17 54:3,24 |
| NASSAU (1) | 136:7 | O (3) | Ocean.com (1) | 55:6,13 56:3 |
| 136:4 | note (2) | 4:2,17 5:2 | 108:7 | 57:22 59:3 |
| natural (1) | 116:17 122:9 | object (10) | off-the-recor... | 60:24 61:13 |
| 1:4 | notes (13) | 20:19,23 23:2 | 38:17 41:14 | 62:8,20 63:11 |
| Neck (1) | 21:3 49:10 | 23:3 121:15 | 42:17 46:15 | 63:16,21 |
| 4:8 | 62:11 68:14 | 122:14 | 50:13 99:15 | 65:12,22 |
| need (3) | 90:24 91:8 | 131:13,20,22 | 111:6 | 66:12,22,25 |
| 21:24 61:10 | 92:13,14,21 | 132:2 | offer (1) | 67:24 68:11 |
| 91:16 | 92:22 98:9 | objecting (2) | 24:14 | 68:18 70:17 |
| needed (10) | 101:22 116:8 | 125:18 131:16 | offered (3) | 71:9,20,24 |
| 23:19 24:2,3,5 | notice (1) | objection (29) | 21:20 38:2 | 72:20 73:19 |
| 27:22 29:10 | 30:5 | 13:15 19:16 | 42:23 | 74:2,6,7,21 |
| 29:14,18 | noticed (1) | 22:6 31:21 | office (7) | 75:2,13,20,25 |
| 31:13 108:21 | 116:7 | 35:13 116:13 | 4:4 26:19 42:6 | 76:12,21 78:3 |
| neighbors (2) | notified (1) | 117:18 118:8 | 92:6,7,8 95:8 | 79:14 82:24 |
| 110:8,10 | 108:21 | 118:21 119:7 | OFFICES (1) | 84:8,20 85:13 |
| new (24) | notifying (1) | 119:16 | 3:4 | 85:17,21 |
| 1:2 2:7 3:7,20 | 27:21 | 121:13 | official (1) | 86:17 87:12 |
| 4:8 5:18 6:21 | November (1) | 122:16 | 1:13 | 87:20 88:16 |
| 7:4,13,14,23 | 11:17 | 123:25 | oh (11) | 88:24 89:9 |
| 7:24 8:2 9:4 | number (33) | 124:22 | 62:20 63:3,8 | 90:17 91:18 |
| 10:12 36:18 | 20:6,8,10 | 125:13,21 | 65:12 66:17 | 94:11 95:14 |
| 36:20 43:8 | 42:21 43:20 | 126:5,7,22 | 74:2 78:17 | 96:10 97:24 |
| 88:23 123:17 | 45:5 48:18 | 127:4 129:2 | 84:8 95:14 | 99:13,23 |
| 128:5,9 136:3 | 49:21 50:20 | 129:21 130:3 | 97:24 106:22 | 100:7 101:9 |
| 136:8 | 53:4 56:6 | 131:6,8,23 | okay (130) | 101:15 |

| 103:20 | 129:18 | pad (1) | panels (1) | people (1) |
|---|---|---|---|---|
| 104:19 107:7 | orientation (2) | 76:11 | 47:23 | 125:8 |
| 107:22 | 77:10 83:15 | page (73) | paper (1) | perform (10) |
| 108:23 | original (1) | 42:11 45:4,8 | 107:17 | 10:23 11:2 |
| 109:20,21 | 45:13 | 47:8 48:12,18 | parallel (2) | 14:3 18:8,11 |
| 110:12,22 | originally (1) | 49:19 52:12 | 117:3,4 | 35:11 40:13 |
| 112:8,18 | 43:15 | 53:14,14 56:5 | parent (2) | 40:16 48:23 |
| 113:8,18 | outcome (1) | 59:20 62:24 | 125:11,11 | 49:3 |
| 124:3 130:13 | 136:19 | 62:25 67:7,15 | parents (1) | performed (5) |
| old (4) | outer (3) | 69:14 73:13 | 1:4 | 38:8 46:21 |
| 3:19 79:2,4 | 104:21,25 | 74:10 76:3,4 | part (19) | 48:20 49:12 |
| 115:11 | 106:6 | 76:5 81:17 | 10:25 14:21 | 119:22 |
| once (4) | outermost (1) | 82:15,17,17 | 15:21,24 | performing (2) |
| 10:17,19,20 | 103:18 | 85:4 88:6,8,9 | 20:17 30:5 | 34:12 35:23 |
| 121:19 | outlets (1) | 88:10,11,11 | 48:24 50:6 | perimeter (1) |
| open (2) | 17:21 | 89:14,14 | 52:20 54:21 | 103:18 |
| 31:9 130:11 | outside (13) | 90:11 91:11 | 55:6 60:14 | period (1) |
| opened (1) | 14:20 15:20,25 | 92:17 93:2,3 | 65:18 75:22 | 15:12 |
| 121:18 | 55:12,12,15 | 93:4,6,11,11 | 78:23 79:17 | permanent (1) |
| opening (22) | 59:14 80:10 | 93:12,21,21 | 89:8 94:22 | 118:18 |
| 12:23,24,25 | 83:19 85:23 | 95:9,16,20,21 | 96:19 | Permit (1) |
| 13:2,2,3,4 | 96:11,18 | 99:10,19,23 | particular (3) | 135:5 |
| 68:2 80:7 | 105:9 | 102:19,20 | 83:12 85:11 | perpendicula... |
| 81:11,12,13 | overall (2) | 104:16,17 | 117:8 | 117:5,7 120:12 |
| 81:13 83:15 | 97:18,20 | 105:8,13 | particularly (... | person (1) |
| 83:19,21,23 | overhang (9) | 106:15,24 | 123:23 | 118:4 |
| 83:24 84:4,11 | 64:12,13,22,24 | 107:9,11,12 | parties (1) | personal (3) |
| 84:12,25 | 65:2,8,9,13 | 107:19,23 | 136:18 | 17:9 23:23,24 |
| openings (1) | 73:15 | 108:5 112:21 | parts (5) | pertinent (1) |
| 80:5 | oversee (1) | 134:4 135:3 | 14:11 16:3 | 14:15 |
| opinion (13) | 9:9 | 135:13,16 | 19:14,17 79:7 | Ph.D (1) |
| 23:7,17 24:10 | owned (1) | pages (11) | pass (1) | 6:24 |
| 121:20,22 | 39:16 | 42:9 46:19,20 | 129:14 | phone (1) |
| 122:11 | owner (1) | 114:11 127:9 | passes (1) | 25:12 |
| 124:20 126:9 | 120:20 | 135:6,8,10,11 | 120:10 | photo (1) |
| 126:23 127:5 | | 135:18,21 | patent (1) | 49:24 |
| 130:4 131:9 | **P** | paid (1) | 133:2 | photograph (3) |
| 131:11 | P (6) | 24:17 | pause (1) | 52:18,19 65:3 |
| opinions (2) | 3:2,2,21 4:2,2 | pan (11) | 42:12 | photographs ... |
| 23:15 121:14 | 4:17 | 50:8,11,12 | PDF (4) | 11:5,7,10 |
| opposed (1) | P-L-U-M-B (1) | 59:11 68:19 | 42:9,9,11 | 17:25 18:21 |
| 98:14 | 120:16 | 68:21,21,23 | 59:20 | 18:24 19:6,7 |
| order (4) | P.E (1) | 99:12,14 | PDG/EPT/C... | 19:11 20:2,7 |
| 20:9 31:16 | 135:9 | 103:25 | 3:24 | 20:20 21:6 |
| 33:4 117:21 | p.m (1) | panel (2) | Pennsylvania... | 38:21 62:22 |
| ordinary (1) | 133:9 | 60:25 61:2 | 7:14 8:15,18 | 101:5 134:10 |

| 135:11 | **Planning (1)** | **points (1)** | 97:16 | 116:9 |
|---|---|---|---|---|
| **photos (2)** | 1:12 | 83:8 | **previously (2)** | **Project (1)** |
| 24:24,25 | **plans (3)** | **poorly (1)** | 78:24 106:17 | 95:10 |
| **physical (3)** | 23:20 24:6 | 126:21 | **printing (2)** | **prompted (2)** |
| 130:22,24 | 109:3 | **portion (10)** | 107:18,18 | 22:2 49:13 |
| 131:3 | **plate (5)** | 16:2 47:10 | **prior (2)** | **property (4)** |
| **physically (2)** | 82:22,24 83:2 | 63:18 65:11 | 5:21 21:12 | 24:12 50:20 |
| 40:18 117:15 | 83:4,6 | 67:4,5 87:25 | **probably (13)** | 124:10 |
| **picture (7)** | **platform (31)** | 98:17 103:15 | 8:8 12:20 | 126:13 |
| 49:22,24 51:11 | 15:5,7,22,24 | 123:6 | 21:12 27:13 | **proved (1)** |
| 88:25 104:8 | 34:2 51:16 | **position (1)** | 72:17 87:10 | 90:2 |
| 105:2 107:24 | 52:16 54:21 | 9:5 | 90:25 93:7 | **provide (8)** |
| **pictures (8)** | 54:23 55:7,14 | **possibly (5)** | 95:17 97:12 | 19:4,6,8 24:6 |
| 62:13,13,16,17 | 70:5 80:10,22 | 26:23 64:22 | 105:7 107:18 | 29:21,25 44:2 |
| 62:18,21 | 80:23 87:25 | 101:10,17,17 | 108:20 | 49:9 |
| 89:23 124:12 | 95:25 96:19 | **pots (1)** | **problem (1)** | **provided (2)** |
| **piece (3)** | 100:13 | 17:12 | 118:16 | 29:5,7 |
| 55:20 96:15,18 | 102:13 | **pounds (1)** | **proceed (2)** | **providing (1)** |
| **Pinelawn (1)** | 104:22,25 | 97:9 | 6:6 122:24 | 45:21 |
| 3:6 | 105:20,22 | **premises (3)** | **proceedings (...** | **proximity (1)** |
| **pitch (8)** | 106:6,9,12 | 10:11,25 35:22 | 133:8 | 51:21 |
| 69:2,6,16 | 117:9,11 | **preparation (...** | **process (1)** | **Public (5)** |
| 80:20,20 | 118:20 120:3 | 49:14 129:10 | 131:15 | 1:11 2:7 5:4 |
| 81:21 82:10 | **play (1)** | **prepare (3)** | **produce (1)** | 133:19 136:7 |
| 82:11 | 126:10 | 36:23 45:17 | 51:3 | **purely (1)** |
| **place (8)** | **please (15)** | 61:13 | **produced (2)** | 23:21 |
| 21:8 38:18 | 5:13,16 10:9 | **prepared (13)** | 26:12,20 | **purpose (6)** |
| 41:15 42:18 | 21:3 26:18 | 27:18 45:12,15 | **product (1)** | 23:22 43:24 |
| 46:16 50:14 | 28:13,22 45:4 | 50:24 62:8 | 127:16 | 45:20 119:23 |
| 99:16 111:7 | 60:2 93:13 | 85:6 91:24 | **products (5)** | 120:2,15 |
| **Plaintiff (1)** | 102:17 | 92:4 95:5,16 | 9:10,20 37:3,6 | **purposes (2)** |
| 3:5 | 103:12 | 116:9 127:11 | 37:13 | 45:13 83:15 |
| **Plaintiff's (2)** | 111:10 | 127:12 | **professional ...** | **pursuant (1)** |
| 5:9 135:3 | 130:16 | **present (1)** | 7:8,13 9:15 | 2:7 |
| **plan (19)** | 131:10 | 31:22 | 22:12 33:11 | **put (7)** |
| 56:8,19 57:7 | **plumb (1)** | **presented (2)** | 114:17 | 12:7,10 20:25 |
| 57:10 58:3,6 | 120:11 | 79:23 122:12 | 115:15 119:3 | 41:2 51:6 |
| 58:17 59:22 | **plumbing (2)** | **press (1)** | 122:3 123:11 | 74:17 94:8 |
| 59:23 60:3,12 | 129:7,9 | 124:13 | 127:13,13,17 | **putting (1)** |
| 65:10,11 81:6 | **point (7)** | **pressures (1)** | 128:9 129:18 | 116:12 |
| 82:20 100:4,6 | 6:12 20:4 21:4 | 127:8 | **program (9)** | |
| 102:2 106:3 | 96:10 100:15 | **presume (2)** | 45:24 46:22 | **Q** |
| **plank (4)** | 101:24 | 63:12 82:2 | 48:21 114:9 | **quadrant (1)** |
| 60:15,16,18,20 | 108:12 | **Pretty (1)** | 114:13,14,16 | 99:18 |
| **planks (1)** | **pointing (1)** | 69:17 | 115:5,7 | **qualification...** |
| 47:20 | 25:5 | **previous (1)** | **programs (1)** | 123:11 |

| | | | | |
|---|---|---|---|---|
| qualify (1) | 52:1 53:1 | raised (1) | 104:16 114:5 | 95:22 104:20 |
| 125:2 | 54:1 55:1 | 125:23 | 116:13 | 104:23 105:7 |
| question (18) | 56:1 57:1 | RALPH (1) | 120:16 | 128:5 130:17 |
| 22:21 23:14 | 58:1 59:1 | 1:9 | 121:18 | reflect (2) |
| 44:16 48:13 | 60:1 61:1 | read (6) | 122:10 123:7 | 51:18 100:23 |
| 56:23 82:7 | 62:1 63:1 | 28:13 94:3 | 136:15 | reflected (1) |
| 93:10 118:9 | 64:1 65:1 | 98:23 122:7 | recorded (1) | 92:18 |
| 119:18 122:8 | 66:1 67:1 | 123:4,7 | 124:5 | reflects (2) |
| 122:25 123:5 | 68:1 69:1 | reads (1) | records (1) | 44:23 102:24 |
| 125:22 | 70:1 71:1 | 53:15 | 72:19 | regard (11) |
| 127:20 130:6 | 72:1 73:1 | ready (1) | reduced (3) | 31:14 34:2,14 |
| 130:13,15 | 74:1 75:1 | 114:2 | 47:5 48:2 89:7 | 34:17 35:25 |
| 131:10 | 76:1 77:1 | really (7) | refer (20) | 40:14 48:10 |
| questioning (1) | 78:1 79:1 | 52:25 58:14 | 36:20 50:21 | 48:20 49:4 |
| 111:3 | 80:1 81:1 | 62:6,13 64:25 | 52:11 53:21 | 51:2 121:14 |
| questions (6) | 82:1 83:1 | 77:12 101:2 | 53:24 59:25 | regarding (7) |
| 111:5 113:25 | 84:1 85:1 | reason (9) | 60:11 67:8 | 19:14 29:18 |
| 114:5 121:14 | 86:1 87:1 | 90:17 93:17 | 70:3 72:23 | 39:23 40:17 |
| 132:14 133:7 | 88:1 89:1 | 94:12 97:2 | 73:14 76:8 | 48:14 91:18 |
| | 90:1 91:1 | 107:15 | 77:18 79:14 | 101:5 |
| **R** | 92:1 93:1 | 109:12,14 | 86:24 87:21 | regular (1) |
| R (140) | 94:1 95:1 | 122:12 132:3 | 92:22 107:4 | 119:2 |
| 2:4 3:2 4:2,6 | 96:1 97:1 | reasonable (2) | 111:13,15 | regularly (2) |
| 4:17 5:2,2,14 | 98:1 99:1 | 118:4 120:24 | reference (10) | 114:16 115:14 |
| 6:1 7:1 8:1 | 100:1 101:1 | reasons (1) | 47:19 56:19 | regulations (1) |
| 9:1 10:1 11:1 | 102:1 103:1 | 132:5 | 57:7 75:24 | 129:24 |
| 12:1 13:1 | 104:1 105:1 | recall (6) | 76:4 81:21 | related (10) |
| 14:1 15:1 | 106:1 107:1 | 27:11 66:7 | 83:3 119:20 | 24:18,20 27:17 |
| 16:1 17:1 | 108:1 109:1 | 68:5 74:24 | 123:10 128:6 | 27:17 34:13 |
| 18:1 19:1 | 110:1 111:1 | 95:18 108:20 | referred (4) | 37:17 38:25 |
| 20:1 21:1 | 112:1 113:1 | receive (2) | 57:13 65:23 | 77:21,24 |
| 22:1 23:1 | 114:1 115:1 | 19:10,13 | 125:8 127:21 | 136:17 |
| 24:1 25:1 | 116:1 117:1 | recess (1) | referring (13) | relation (1) |
| 26:1 27:1 | 118:1 119:1 | 111:8 | 46:6 54:9 | 27:20 |
| 28:1 29:1 | 120:1 121:1 | recognize (1) | 59:18 60:16 | relationship ... |
| 30:1 31:1 | 122:1 123:1 | 42:22 | 65:9 81:6 | 56:15 108:9 |
| 32:1 33:1 | 124:1 125:1 | recollection (2) | 85:21 86:14 | relevance (1) |
| 34:1 35:1 | 126:1 127:1 | 62:14 92:14 | 88:14 91:11 | 125:14 |
| 36:1 37:1 | 128:1 129:1 | recollections ... | 101:22 | remember (1) |
| 38:1 39:1 | 130:1 131:1 | 92:20 | 102:16 | 11:15 |
| 40:1 41:1 | 132:1 133:1 | record (19) | 126:17 | repeating (1) |
| 42:1 43:1 | 133:13 134:5 | 5:13,16,24 | refers (14) | 40:25 |
| 44:1 45:1 | 135:12 | 10:9 20:25 | 52:14 66:15 | replication (1) |
| 46:1 47:1 | 136:10 | 38:16 41:13 | 68:12 74:14 | 89:3 |
| 48:1 49:1 | rain (1) | 42:16 53:12 | 74:15 75:6 | report (5) |
| 50:1 51:1 | 126:13 | 103:2 104:12 | 84:2 87:22 | 29:5,8,11,14 |

| | | | | |
|---|---|---|---|---|
| 29:25 | 36:23 37:2 | 128:21 | 70:20 71:16 | 1:11 |
| reported (1) | 38:7,12,19 | 131:14,15,22 | 72:5,24 74:18 | Science (2) |
| 124:5 | 94:14,14 | rightmost (1) | 74:19,19 | 6:18 9:24 |
| reporter (10) | reviewed (7) | 51:11 | 75:18 80:2 | SCORDINO ... |
| 2:6 5:12,15 | 37:22,25 38:22 | risk (3) | 83:14 86:11 | 1:9 |
| 20:4 21:2 | 38:25 39:3 | 37:21 130:17 | 87:3 97:17 | scratched (1) |
| 41:16 122:6 | 89:6 94:10 | 130:18 | 99:4 101:14 | 73:20 |
| 123:4,7 136:7 | revise (1) | Road (3) | 101:14 | scratching (2) |
| represent (3) | 23:13 | 3:6,19 4:7 | 105:11,23 | 73:24 74:5 |
| 80:9 126:19 | revisit (1) | ROBYN (1) | 117:4,5,7 | screen (5) |
| 127:16 | 45:22 | 1:9 | 120:9,11 | 41:5,19 50:2 |
| representatio... | right (79) | Rode (2) | ruling (1) | 54:11 57:11 |
| 106:16 116:22 | 5:20 14:2 22:4 | 3:17 4:19 | 70:18 | screw (1) |
| request (5) | 23:13 24:22 | roof (38) | RULINGS (1) | 111:20 |
| 19:5 26:11 | 25:19 30:17 | 15:2 16:16 | 134:18 | screws (5) |
| 28:19,23 | 31:25 35:8 | 48:25 56:7,8 | | 18:15 19:20 |
| 45:17 | 42:25 45:2 | 57:25 58:3,5 | S | 30:8,14,21 |
| requested (1) | 47:25 50:4 | 58:6 59:22 | S (5) | scribble (1) |
| 123:6 | 51:8,14 52:3 | 64:13,16,22 | 3:2 4:2,17,17 | 79:12 |
| REQUESTS ... | 52:25 54:9,11 | 65:10,11,13 | 5:2 | scribbled (3) |
| 134:9 | 54:12,14 | 66:9,11 69:2 | safe (3) | 63:2,18 67:4 |
| requirement... | 56:21 57:12 | 69:7,10,16 | 32:12 124:21 | scroll (17) |
| 130:20 131:5 | 58:22 59:19 | 70:5 71:4,15 | 131:11 | 41:8 43:5 45:3 |
| reserve (2) | 61:6,10 62:12 | 72:8 73:16,17 | safely (2) | 47:8 56:4,25 |
| 5:20 132:3 | 62:22 64:19 | 73:18 80:19 | 127:6,7 | 61:7 65:5 |
| reserving (1) | 67:9,24 68:15 | 80:20,21,23 | safety (2) | 74:8 76:2 |
| 132:4 | 72:14 73:10 | 81:3,4 82:10 | 31:20 90:4 | 81:16 84:21 |
| residence (1) | 74:22,24 76:4 | 86:18,18 | saying (1) | 85:4 89:13 |
| 85:7 | 77:11,13 80:8 | roofing (1) | 56:24 | 93:2,13 107:9 |
| resolve (1) | 82:6,9 84:22 | 80:24 | says (36) | se (1) |
| 102:3 | 86:4,21 87:5 | room (1) | 47:13,18 51:9 | 62:6 |
| respect (3) | 89:12 90:6,9 | 12:13 | 53:7,23,23 | seal (2) |
| 116:7 124:5 | 91:13,20 | rough (9) | 56:7,8 59:3,6 | 43:5,7 |
| 131:7 | 92:25 93:20 | 69:15,18,25 | 63:3 72:9 | search (1) |
| Respondents... | 93:22 94:21 | 80:22 84:4,5 | 73:9 75:15 | 8:25 |
| 1:15 | 94:23 96:13 | 84:6 89:5 | 76:6,21 77:3 | searches (1) |
| response (4) | 96:25 97:17 | 119:10 | 77:15,16 81:8 | 116:2 |
| 38:12 42:6 | 100:3,19 | roughly (46) | 82:19,20,22 | second (2) |
| 107:16 | 101:21 103:4 | 8:5,12,14,19 | 87:15 88:11 | 42:13 99:21 |
| 127:19 | 105:6 106:20 | 8:19 10:22 | 89:10 91:20 | section (8) |
| rest (2) | 106:23 108:5 | 11:11,17 13:3 | 95:9,10,12 | 52:13 58:17 |
| 73:7 86:9 | 110:24 | 13:7,11,12 | 100:23 104:7 | 69:15 80:20 |
| result (2) | 115:17 116:4 | 34:22 40:3,9 | 105:9 108:3 | 101:18 102:2 |
| 125:7 130:24 | 117:14 | 44:20 53:2,16 | 111:15 | 105:5 116:16 |
| review (9) | 118:11 | 55:25,25 58:6 | 112:19 | see (60) |
| 5:21 35:25 | 120:18 126:2 | 58:24 62:2 | SCHETTIN... | 8:10 20:15 |

| | | | | |
|---|---|---|---|---|
| 30:20 33:16 | service (1) | 83:12 87:11 | slope (6) | 110:7,12 |
| 33:20 41:4,18 | 21:20 | 96:12,23 | 58:5,7 64:14 | 131:22 |
| 41:21 42:10 | services (3) | 97:13 105:15 | 64:16,16 | speaking (3) |
| 45:10 47:13 | 24:14,18 34:12 | sides (4) | 68:16 | 125:3 131:23 |
| 49:22 50:8 | set (2) | 73:3 80:5 | slowly (1) | 132:6 |
| 51:8 52:25 | 136:13,22 | 81:15 113:9 | 41:8 | species (4) |
| 53:7 54:7 | Seven (1) | significant (1) | small (2) | 13:23 77:19,20 |
| 56:7,8 58:18 | 135:18 | 126:20 | 13:3 16:2 | 78:2 |
| 59:3,6 63:19 | Seventy (1) | signify (1) | smaller (1) | specific (1) |
| 65:3,9,12 | 135:10 | 43:13 | 90:2 | 19:18 |
| 66:22 69:24 | severe (2) | silver (1) | Society (3) | specifically (1) |
| 71:20,21 72:9 | 123:22 124:14 | 109:17 | 36:15 127:25 | 128:13 |
| 72:20 73:9 | Shannon (1) | SILVESTRI ... | 129:25 | specified (1) |
| 74:8,12 76:5 | 4:18 | 1:9 | software (3) | 62:9 |
| 76:21,24 | sheathing (1) | simple (1) | 46:3,13,22 | specify (1) |
| 77:11 82:19 | 16:12 | 11:20 | somebody (2) | 46:5 |
| 85:18 86:21 | sheer (1) | Simultaneou... | 24:2,3 | spoke (2) |
| 87:15 89:9 | 113:2 | 125:3 132:6 | something-st... | 31:12 132:19 |
| 91:8 93:12 | sheets (1) | simultaneous... | 95:10 | Spruce (2) |
| 99:17 101:13 | 115:19 | 46:22 | sorry (39) | 37:18 72:25 |
| 103:24 106:2 | Shore (1) | sir (8) | 6:7 7:16,21 | square (2) |
| 112:11,12 | 4:7 | 7:3 10:6 12:13 | 8:11 14:7,8 | 40:9 79:17 |
| 113:11,18 | short (1) | 16:13 19:21 | 14:12,25 | stability (1) |
| 118:11,15 | 111:8 | 68:20 74:11 | 18:23 26:14 | 29:19 |
| 129:7,9,12,14 | shorter (3) | 110:25 | 27:19 30:20 | stairs (1) |
| seeing (3) | 102:7 105:7,24 | sit (2) | 32:7 37:15 | 118:24 |
| 21:18 23:16 | show (2) | 66:5 91:5 | 38:15 39:10 | stamp (27) |
| 91:13 | 70:19 84:16 | site (4) | 39:11 40:21 | 42:20,21 43:6 |
| seen (2) | showed (2) | 29:15,15 92:14 | 40:24 52:19 | 44:23,24 45:5 |
| 23:18 42:3 | 84:13,15 | 126:12 | 54:6 55:10 | 46:6,7,8,9,10 |
| self (1) | showing (5) | Six (1) | 63:22 66:16 | 46:11,18 47:9 |
| 35:25 | 58:5 69:16 | 135:11 | 66:17 68:20 | 48:5 49:21 |
| send (2) | 80:20,21 | size (7) | 73:10 76:23 | 58:2 61:8,9 |
| 28:9 42:13 | 91:21 | 51:18,19 68:2 | 78:17 93:9 | 61:14,24 |
| senior (2) | shown (6) | 81:14 90:2 | 96:4 98:19 | 64:25 65:4 |
| 9:6,7 | 52:2,15,22 | 119:9,10 | 99:22 100:5 | 66:19 67:15 |
| sent (6) | 57:9 58:13 | sketch (4) | 102:9 106:22 | 106:25 |
| 25:16,20 28:7 | 98:25 | 61:16 69:18 | 108:14 | 111:14 |
| 28:10 41:24 | side (26) | 85:11,22 | 110:20 | stamped (6) |
| 42:5 | 12:2,3,4 55:19 | sketches (1) | 113:13 | 43:15,20 44:4 |
| Seriously (1) | 69:10,11,24 | 89:7 | south (6) | 44:14,23 |
| 23:12 | 71:11,21 | slate (1) | 7:15,17 8:9,10 | 104:18 |
| served (1) | 72:15,16 | 72:7 | 40:3 105:8 | stamping (1) |
| 19:4 | 73:10 77:7,13 | slightly (3) | spacing (2) | 43:24 |
| serves (1) | 80:3,3,13 | 103:25 117:13 | 16:10,11 | stand (2) |
| 86:15 | 81:2,8 83:11 | 117:14 | speak (3) | 94:15 96:25 |

| standard (1) | 126:14,19,25 | substance (1) | sustainable (1) | tall (4) |
|---|---|---|---|---|
| 50:18 | 127:3,6 | 27:15 | 9:20 | 12:18,19 13:8 |
| standing (1) | street (1) | substantiate ... | SUZANNE (1) | 13:9 |
| 124:18 | 77:6 | 45:23 | 1:11 | tape (5) |
| started (2) | strike (4) | substrate (1) | sworn (4) | 11:20,20 14:10 |
| 89:22 114:24 | 12:5,5 27:18 | 111:20 | 5:3 45:23 | 34:5 72:17 |
| starting (3) | 59:5 | Suite (3) | 133:15 | Tech (1) |
| 75:14 79:24 | strong (1) | 3:6,19 4:7 | 136:14 | 10:3 |
| 122:10 | 127:7 | sum (1) | | technical (1) |
| state (15) | structural (9) | 27:15 | **T** | 65:17 |
| 2:7 5:12,15 | 9:6,8,9 34:25 | supervised (1) | T (2) | Technology (2) |
| 8:16 31:18 | 114:17 | 121:5 | 4:2,17 | 6:21 7:4 |
| 36:18,19,20 | 117:24 119:3 | supplementa... | T-100.00 (2) | telephone (1) |
| 43:7 128:4,9 | 126:20 | 45:9 | 50:20,21 | 26:2 |
| 132:10 | 127:11 | support (29) | take (17) | television (2) |
| 135:15 136:3 | structure (24) | 16:8 51:9,10 | 11:5,10,12 | 124:13 126:18 |
| 136:8 | 16:6 18:7 | 51:15,19 | 17:25 18:14 | tell (26) |
| stated (6) | 29:18 31:10 | 52:10,20,21 | 21:19 25:24 | 7:11 29:10,13 |
| 5:24 31:15 | 31:11,17 | 52:22 53:10 | 30:11 33:25 | 30:16 31:3,13 |
| 33:3 81:9 | 48:25 70:6,11 | 60:4,9 86:5 | 55:18 60:25 | 63:21,25 |
| 106:18 | 77:22 78:24 | 86:15 88:6,14 | 70:10,22 87:9 | 66:15 72:11 |
| 118:23 | 80:24,24 96:9 | 88:16 89:9,17 | 121:21 123:2 | 74:13 75:16 |
| statement (4) | 113:5 117:2 | 91:2 95:22,24 | 125:15 | 77:15 78:15 |
| 29:18,21 35:24 | 117:25 | 99:24 102:12 | taken (23) | 78:20,23 79:2 |
| 45:13 | 124:21 | 104:23 105:3 | 2:6 46:25 | 79:18 80:17 |
| STATES (1) | 128:17 | 105:12,14,17 | 47:22 55:22 | 94:7 95:22 |
| 1:2 | 130:23,25 | supported (2) | 58:23 59:2,13 | 97:8,11 99:10 |
| stationery (2) | 131:4,7,11 | 16:6 85:25 | 61:19 69:9 | 112:14 |
| 76:9 93:22 | structures (4) | supporting (7) | 70:21 85:12 | 119:11 |
| stenotype (2) | 119:5 129:25 | 16:14,15 95:25 | 92:21 96:7 | tells (1) |
| 2:6 136:7 | 130:18,21 | 96:9 105:17 | 98:6,10 101:6 | 94:9 |
| Step (1) | studs (2) | 105:21 120:3 | 101:10,18 | temporary (5) |
| 12:17 | 16:11 129:9 | supports (2) | 102:7 111:8 | 12:6,8,10,15 |
| STEPHEN (1) | studying (1) | 91:3 105:19 | 115:21 | 118:12 |
| 1:10 | 7:3 | sure (14) | 116:16,18 | ten (2) |
| stipulations (1) | subject (2) | 6:4 26:18 | talked (1) | 26:23 91:15 |
| 5:23 | 111:4 113:24 | 39:11 42:15 | 44:13 | term (2) |
| stood (!) | submission (1) | 50:9 56:23 | talking (15) | 13:16 65:17 |
| 85:13 | 21:5 | 65:2 67:12 | 12:16 34:21 | terms (6) |
| stop (5) | submitted (3) | 73:20 75:5,9 | 53:3 54:15 | 18:18 34:13 |
| 31:16,16 33:3 | 20:2,17 21:9 | 96:24 101:2 | 56:17 59:22 | 35:22 37:20 |
| 117:20 | subpoena (5) | 108:15 | 71:22 73:22 | 62:24 98:13 |
| 131:25 | 2:8 19:4 38:12 | survive (1) | 83:18 102:19 | test (2) |
| storms (11) | 42:6 107:16 | 127:2 | 102:21,22 | 14:3,8 |
| 123:22 124:2,4 | Subscribed (1) | sustainabilit... | 104:6 107:24 | testified (5) |
| 124:10,15,19 | 133:15 | 9:19 | 112:21 | 5:4 34:17 |

38:22,24
39:13
**testify (2)**
22:11,15
**testifying (4)**
22:17,19 36:22
39:8
**testimony (5)**
36:24 122:11
124:23,24
136:16
**testing (2)**
18:8,12
**Thank (12)**
6:8 10:10 21:9
28:25 41:21
82:13 110:24
113:23 132:9
132:14,15
133:7
**thanked (1)**
25:24
**Thanks (1)**
46:18
**thickness (4)**
15:15,17,18
16:11
**thing (3)**
24:24 72:4,5
**think (36)**
22:23,25 24:3
28:18 35:17
53:2 62:5
64:10,21
74:18 75:5,15
77:9 79:25
80:15 83:9
87:16 88:10
89:5 97:16,16
97:19 98:17
98:22,25
102:4,5 105:9
105:9,19
107:23
111:25
112:19 113:7

116:25
123:14
**thought (2)**
14:14 31:3
**three (3)**
27:14 121:19
125:24
**tickets (1)**
109:6
**tie (1)**
96:3
**ties (1)**
87:23
**timber (37)**
53:7,7,19,23
53:24 54:7,10
54:15,17,19
55:3,4,5,17
59:8 62:9
77:20,25 78:4
78:8 79:4
85:19,24 86:2
86:15,18,18
89:10 91:19
96:21,23
97:21,25 98:6
98:11 103:16
120:19
**timbers (5)**
54:8,11 62:4
96:2 119:8
**time (12)**
2:5 8:3,4 11:14
14:2 30:23
31:9 38:9
39:9 79:6
108:14
117:15
**Timer (1)**
53:25
**times (6)**
10:16 74:13
75:3,14 80:15
121:19
**title (1)**
50:18

**titled (1)**
58:3
**to-date (1)**
26:6
**today (8)**
36:22 38:24
39:8,13 49:14
49:16 66:6
91:5
**today's (1)**
41:17
**toilet (1)**
129:5
**told (2)**
112:6 120:20
**TONY (1)**
1:10
**top (26)**
48:6 56:5 58:2
59:18 66:21
68:22 69:14
70:5,5 71:15
72:7,8 73:13
76:5,22,25
79:24 80:23
80:23 87:17
91:21 94:22
95:9 97:3
101:4 104:20
**Tosca (122)**
3:21 5:25 6:5,8
6:10 10:8
19:9,19,24
20:11,19 22:8
22:14,25 23:6
23:11 25:7
26:10,16
28:12,25
32:19 33:5
35:16 40:21
41:2,7,22
42:8,15,19
43:4 44:11
45:3 46:7,14
46:17 47:7
48:4,12,17

49:18 50:10
53:10 54:14
56:4,21 58:16
59:5 61:7
64:6 65:5
66:18 67:17
68:23 74:7
76:2,15 81:16
81:25 82:6,14
84:20 85:3
88:9,15 89:12
90:10 92:25
93:9,13 95:19
102:22 103:5
103:11,23
104:4,11,15
106:14,24
107:7 110:24
111:4,9,12
113:23 114:3
116:11
117:18 118:8
118:21 119:7
119:16
121:13,22
122:4,9,21
123:25
124:22
125:13,17
126:5,7,22
127:4 129:2
129:21 130:3
130:8,12
131:6,8,16,19
132:2,10,15
132:18 133:6
134:5
**trained (1)**
33:11
**transcript (4)**
5:21 20:5 21:4
44:10
**translated (1)**
100:25
**translation (1)**
95:2

**treated (1)**
128:17
**tree (185)**
11:3,21,25
12:2,4,4,7,20
13:17 14:13
14:19,21,22
15:5,11,14,21
16:4,8,25
17:2,8,9,18
17:20 18:2,12
18:18 19:11
19:14 21:10
21:13 22:5
23:16,18
24:11,20
25:24 27:20
29:19 30:4,5
30:9,18,24
31:14,20 32:2
32:6,10,25
33:8,17,19
34:14,18,20
34:24 36:19
37:18,21
38:25 39:5,7
39:12,16,19
39:23,25 40:2
40:5,8,10,11
40:12,14,22
47:16 48:10
48:15,20 49:4
55:4,12,14,15
55:25 57:15
57:16 58:15
58:23,25 59:2
59:14 60:9
61:17 62:14
62:19 63:11
64:17 65:21
67:10,11
69:16,18,22
69:25 70:13
70:24 71:11
73:2,10 74:16
74:24 75:11

| | | | | |
|---|---|---|---|---|
| 76:18 77:7,22 | 1:10,10 | **underside (4)** | 120:9 | 71:15 72:8 |
| 78:9 79:5,16 | **try (1)** | 80:24 96:20,20 | **Victor (7)** | 73:2,16 80:4 |
| 80:11,21,21 | 98:22 | 97:2 | 3:12 41:23,25 | 83:20,20 |
| 83:2,6 85:9 | **trying (11)** | **understand (8)** | 57:3 67:18 | 96:11,17 |
| 85:12,15 | 64:11,12,13 | 33:5,9 44:15 | 82:7 104:5 | 102:10 105:9 |
| 87:23 88:2 | 67:10 74:20 | 56:24 84:8 | **video (7)** | 105:14,18 |
| 91:24 95:16 | 75:23 79:20 | 88:24 125:17 | 11:12 24:25 | **walls (14)** |
| 96:2,8,11,15 | 80:3 86:25 | 132:4 | 25:2,9,12,13 | 14:20 15:12,20 |
| 96:17 99:3 | 102:2,11 | **unidentified ...** | 134:11 | 15:25 16:5,16 |
| 100:7 101:19 | **turning (1)** | 1:13 | **videoconfere...** | 48:25 55:15 |
| 101:20 102:6 | 42:8 | **UNITED (1)** | 1:18 2:5 3:9,14 | 65:11,14,25 |
| 102:10,12 | **Twelve (1)** | 1:2 | 3:22 4:11 | 66:2 117:2,12 |
| 103:18 | 135:8 | **unnamed (1)** | **Village (15)** | **Wampum (2)** |
| 104:21,24 | **twice (1)** | 1:13 | 1:9,10,10,10 | 76:22,24 |
| 105:8,15 | 107:18 | **unrelated (4)** | 1:12,12 27:4 | **want (10)** |
| 106:19 | **two (16)** | 63:11,14,15,16 | 27:4,8 36:4 | 22:2 24:23 |
| 109:12,23 | 10:22 27:14 | **upper (1)** | 108:25 109:4 | 56:25 82:15 |
| 110:13,17 | 29:5 38:6 | 96:22 | 109:9 135:5,7 | 83:23 84:17 |
| 111:22 | 44:21 55:22 | **uprooted (1)** | **Virginia (4)** | 93:6 107:22 |
| 112:10 113:9 | 65:20 83:10 | 124:14 | 7:15,18 8:15 | 122:21 |
| 113:17 | 90:18,19,19 | **upside (2)** | 8:16 | 130:14 |
| 115:22 116:3 | 94:11,12 | 107:21,24 | **visit (7)** | **wanted (3)** |
| 116:23 | 107:5 124:7 | **use (16)** | 21:13 29:15,15 | 6:4 28:11 |
| 117:12,16 | 124:19 | 8:24 11:19 | 92:15,22 | 35:20 |
| 118:13,20,25 | **type (6)** | 18:19 31:6 | 115:22 116:4 | **wants (1)** |
| 120:4,7,9,10 | 13:2,14,18 | 32:5,9,24 | **visual (9)** | 41:23 |
| 121:11 | 25:10 78:8,12 | 33:20 72:14 | 13:25 30:15 | **wasn't (2)** |
| 123:10,13,15 | **typed (1)** | 83:22 114:8 | 34:25 39:4 | 67:19 90:6 |
| 123:21 | 42:25 | 114:20 115:8 | 40:15 73:6 | **way (14)** |
| 124:17 126:3 | **types (1)** | 115:14 126:3 | 78:7 86:8 | 12:12 22:5 |
| 126:24 | 78:10 | 132:20 | 112:15 | 24:23,23 26:6 |
| 128:14,16,23 | **Typical (1)** | | **visually (8)** | 55:18 81:13 |
| 129:20 | 81:15 | **V** | 51:20,22,23,25 | 82:4 102:13 |
| 132:20,22 | | **value (3)** | 55:21 69:22 | 103:8 105:3 |
| **Treehouse (1)** | **U** | 98:18,19,20 | 74:8 119:9 | 106:5 130:19 |
| 48:8 | **U (1)** | **variation (1)** | | 136:19 |
| **trees (1)** | 4:2 | 98:21 | **W** | **we'll (3)** |
| 124:14 | **unclear (1)** | **vehicle (1)** | **W (1)** | 121:20 123:2 |
| **trial (4)** | 104:16 | 35:6 | 5:2 | 125:15 |
| 2:3 23:3 | **underneath (...** | **versus (1)** | **wait (4)** | **we're (11)** |
| 136:13,15 | 51:16 52:15 | 116:17 | 103:11,11,11 | 19:3,5,25 |
| **true (1)** | 58:3 60:11 | **vertical (11)** | 103:12 | 35:18 69:13 |
| 136:15 | 85:12,14 | 54:18 55:2,3,4 | **wall (20)** | 100:2 102:20 |
| **trunk (2)** | 97:10 100:10 | 56:18 82:11 | 14:23 15:14,17 | 102:22 104:5 |
| 120:7,9 | 100:11,13 | 83:10 87:4 | 15:18 16:10 | 107:23 |
| **Trustee (2)** | 105:20 | 101:7,19 | 59:2 64:23 | 112:21 |

| | | | | |
|---|---|---|---|---|
| **We've (1)** | **withstood (1)** | **Works (1)** | 104:9 107:2 | 69:2 70:7 |
| 122:13 | 126:25 | 1:11 | 114:2,4,7 | 72:13 135:5 |
| **weather (1)** | **witness (31)** | **worst (1)** | 121:17,24 | **1-1 (1)** |
| 123:18 | 2:4 4:5 5:2,14 | 98:18 | 122:6,19,24 | 52:13 |
| **website (1)** | 5:17 22:15,16 | **wouldn't (2)** | 124:3,25 | **1.25 (1)** |
| 63:6 | 40:23 50:11 | 116:14 118:6 | 125:15 130:5 | 75:14 |
| **weeks (4)** | 53:8 54:13 | **write (3)** | 132:13 134:7 | **1.91 (2)** |
| 21:12 27:13,14 | 56:15 57:9,21 | 64:15,15 77:4 | **Yannacone's...** | 72:12 74:19 |
| 95:17 | 59:11,15 64:8 | **writing (5)** | 113:25 | **1/2 (14)** |
| **weight (1)** | 67:20 82:2,9 | 26:19 28:23 | **yeah (18)** | 59:14 71:21,23 |
| 113:5 | 90:12 99:14 | 47:5 48:2 | 13:11 15:13 | 87:3 99:3,4 |
| **went (4)** | 103:24 | 108:2 | 19:24 53:5 | 101:7,12 |
| 10:21 11:14 | 120:17 122:8 | **written (18)** | 63:3 65:24 | 102:5 103:17 |
| 40:12 95:15 | 122:14 123:5 | 28:6 29:24 | 67:6 73:6,24 | 106:3 111:25 |
| **west (1)** | 134:4 136:12 | 47:10 60:14 | 77:2 87:18,19 | 112:5 113:7 |
| 83:17 | 136:16,21 | 62:4 63:4 | 90:21 93:15 | **1:29 (1)** |
| **WHEREOF ...** | **wood (29)** | 69:21 73:20 | 94:13 103:17 | 133:9 |
| 136:21 | 13:19,20,22 | 75:10 76:18 | 107:21 108:4 | **10 (4)** |
| **wide (4)** | 18:16 19:21 | 77:12 90:25 | **year (5)** | 90:11 91:11,14 |
| 13:7,9 84:2 | 30:17 47:18 | 92:19 93:21 | 8:12,12,14 | 92:17 |
| 86:13 | 47:20 48:7,14 | 97:19 101:4 | 10:8 11:14 | **10:10 (1)** |
| **width (2)** | 52:20 53:25 | 108:7 112:9 | **years (9)** | 1:20 |
| 64:18 80:5 | 54:4 60:14,16 | **wrong (1)** | 8:19 10:22 | **11 (6)** |
| **willing (1)** | 77:19 78:10 | 72:10 | 29:6 40:4 | 70:7 72:13 |
| 21:24 | 78:13,20 79:2 | **wrote (3)** | 44:21 91:7 | 93:2,3,11 |
| **wind (1)** | 86:14 87:12 | 62:6 63:9 | 114:22 124:7 | 95:16 |
| 126:13 | 96:14,16,17 | 116:2 | 124:19 | **11023 (1)** |
| **window (7)** | 96:18 97:3,15 | | **York (17)** | 4:8 |
| 12:25 70:23 | 103:15 | **X** | 1:2 2:7 3:7,20 | **111 (1)** |
| 79:25 83:25 | **wooden (1)** | **X (3)** | 4:8 7:14,23 | 134:5 |
| 84:3,7,12 | 119:5 | 1:3,16 134:2 | 7:25 9:4 | **114 (1)** |
| **windows (2)** | **word (6)** | **XX-'53 (1)** | 10:12 36:18 | 134:7 |
| 31:8,10 | 50:6 53:25 | 10:7 | 36:20 43:8 | **11501 (1)** |
| **winds (1)** | 76:24 82:23 | | 128:5,10 | 3:20 |
| 126:14 | 83:22 121:20 | **Y** | 136:3,8 | **11747 (1)** |
| **winter (1)** | **words (3)** | **Yannacone (...** | | 3:7 |
| 11:17 | 55:9 77:12 | 3:12 19:22,25 | **Z** | **12 (16)** |
| **wires (1)** | 113:14 | 20:16 21:2 | | 64:16 68:16,25 |
| 18:9 | **work (11)** | 23:4,9 41:10 | **0** | 69:5 74:13,17 |
| **wiring (4)** | 31:16,16 33:3 | 44:7 56:13 | **07930 (1)** | 75:3 80:15,16 |
| 17:17,19 18:5 | 33:4 35:11 | 57:4,18,22 | 5:18 | 81:22 82:11 |
| 18:7 | 115:15,18 | 59:16 64:4 | | 82:11 93:21 |
| **withdraw (1)** | 117:21,22 | 67:13 81:18 | **1** | 93:21 111:25 |
| 93:9 | 121:4 127:16 | 82:3,13 88:7 | **1 (9)** | 112:6 |
| **withdrawn (1)** | **worked (2)** | 88:13 102:15 | 5:9 42:11 43:6 | **13 (4)** |
| 131:2 | 121:3,5 | 103:9,21 | 43:20 44:24 | 95:21 111:9,14 |

| | | | | |
|---|---|---|---|---|
| 112:21 | 67:8,12,25 | 13:7,9 46:8 | 92:22,23 | **52 (1)** |
| **132 (1)** | 69:25 80:25 | 48:5 53:16,20 | 100:25 108:3 | 75:16 |
| 134:5 | 91:7 114:11 | 71:23 80:24 | 108:7 113:6,7 | **525 (1)** |
| **135 (1)** | 119:12 127:9 | 97:20 135:9 | 116:17,17,17 | 75:18 |
| 3:6 | 127:9 135:7 | **3/4 (2)** | 116:18,18,19 | **54 (2)** |
| **148530-752 (1)** | **2-1-19 (2)** | 60:14 80:15 | 119:12,12 | 87:3 101:7 |
| 3:24 | 94:4 95:4 | **3/8/21 (1)** | 135:11 | **54.5 (1)** |
| **15 (19)** | **2.6 (1)** | 43:11 | **4.6 (7)** | 86:22 |
| 63:19,22 64:17 | 84:23 | **30 (14)** | 72:20,24 73:6 | **55 (1)** |
| 64:17,17,19 | **2:18-CV-070...** | 64:17,18,20 | 74:13,15,23 | 40:4 |
| 64:19 65:23 | 1:16 | 66:11,12 83:9 | 75:3 | **59 (4)** |
| 66:21,21 | **20 (5)** | 83:9,11,14,18 | **4.8 (1)** | 10:12 21:11 |
| 99:23 102:23 | 67:11 72:25 | 84:2,9,9,23 | 87:16 | 35:9 40:13 |
| 103:3 104:3 | 79:12,13 | **30-inches (1)** | **40 (2)** | |
| 104:10,14,16 | 80:21 | 84:25 | 88:2 106:3 | **6** |
| 104:17 | **20-inch (1)** | **305 (1)** | **45 (2)** | **6 (72)** |
| 105:13 | 37:17 | 3:19 | 34:22 40:9 | 46:11,18 49:19 |
| **15-inches (1)** | **2002 (1)** | **31.5 (5)** | **48 (6)** | 49:21 53:2,5 |
| 64:12 | 101:25 | 68:3,3,4,6,8 | 87:2,3,19,20 | 53:14,24 54:3 |
| **17 (4)** | **2004 (1)** | **33 (2)** | 101:7 105:6 | 54:15,19,20 |
| 106:15 107:5,7 | 6:23 | 79:24 80:2 | | 54:20 55:5 |
| 107:11 | **2021 (4)** | **330 (1)** | **5** | 56:6 57:12,14 |
| **18 (3)** | 1:19 45:11 | 3:19 | **5 (34)** | 58:2 59:6,10 |
| 106:24,25 | 133:17 | **34 (1)** | 13:7,9 46:10 | 59:20,21 |
| 107:19 | 136:22 | 85:2 | 46:19,20 | 60:10,14,15 |
| **19 (1)** | **210 (1)** | **34-inches (1)** | 48:18,18 | 60:22 65:4 |
| 134:10 | 4:7 | 84:25 | 61:24 64:16 | 66:15,16,23 |
| **191 (1)** | **22 (1)** | | 68:16,25 69:3 | 67:8,12,25 |
| 72:10 | 1:19 | **4** | 69:5 74:13,24 | 71:23 73:9,13 |
| **1977 (1)** | **22nd (1)** | **4 (61)** | 75:3,14 80:15 | 73:21 75:15 |
| 10:5 | 136:22 | 13:7 46:9 | 80:15 81:21 | 75:19 80:15 |
| **1984 (2)** | **233 (1)** | 48:12 52:24 | 82:11,11 88:8 | 85:21,22 |
| 8:5,17 | 4:7 | 52:24 53:2,5 | 88:8,10 93:4 | 86:12,13 |
| **1986 (1)** | **24 (3)** | 53:6,6,15,15 | 93:6 101:14 | 88:11,11 |
| 7:25 | 74:19 75:2,4 | 53:17,17,23 | 101:14,14 | 89:17,18,24 |
| **1987 (1)** | **25 (2)** | 54:3,15,19 | 114:11 127:9 | 90:14 91:9,19 |
| 114:24 | 75:5 134:11 | 55:5 57:12,14 | 127:10 | 91:20 92:22 |
| | **250S (1)** | 59:6,10,14 | 135:12 | 92:23 93:11 |
| **2** | 3:6 | 63:3 85:21,22 | **5.25 (2)** | 93:12 97:18 |
| **2 (28)** | **26 (1)** | 86:12,13 | 97:10 98:14 | 97:20 100:25 |
| 5:17 45:4,5,8 | 134:12 | 89:10,10,17 | **5/12 (1)** | 116:17,19 |
| 46:7,19,20 | **28 (1)** | 89:18,23,23 | 81:20 | 119:12 134:5 |
| 47:8 53:16,20 | 134:13 | 89:24 90:14 | **50 (1)** | 135:6,8,10,13 |
| 59:14 60:10 | | 90:15,15,25 | 106:3 | 135:15,16,17 |
| 60:15,22 | **3** | 90:25 91:9,19 | **51 (2)** | 135:20 |
| 66:14,16,23 | **3 (10)** | 91:19,19,20 | 105:10 106:3 | **6-3 (2)** |

| | | | | |
|---|---|---|---|---|
| 71:21,21 | 103:22 104:5 | | | |
| **6.05 (1)** | **87 (8)** | | | |
| 98:13 | 99:3,4,6 | | | |
| **6.3 (1)** | 101:12 102:5 | | | |
| 71:23 | 103:17,21 | | | |
| **60s (1)** | 106:3 | | | |
| 115:11 | **87.5 (8)** | | | |
| **63 (17)** | 99:17 100:3,8 | | | |
| 87:4,5,6,11,13 | 100:15 | | | |
| 98:16 99:24 | 101:16 104:5 | | | |
| 100:23,24 | 104:7,19 | | | |
| 101:3,6,13 | | | | |
| 102:17,24 | **9** | | | |
| 103:6,13 | **9 (2)** | | | |
| 105:13 | 85:4 89:15 | | | |
| | **90 (1)** | | | |
| **7** | 100:18 | | | |
| **7 (16)** | **90s (2)** | | | |
| 5:9 21:17,21 | 115:13,13 | | | |
| 21:23 25:17 | **94 (2)** | | | |
| 25:21 36:21 | 100:16 106:3 | | | |
| 61:9,14 62:24 | **976 (1)** | | | |
| 66:19 67:15 | 97:7 | | | |
| 74:10 107:25 | **99 (1)** | | | |
| 108:5 135:17 | 106:3 | | | |
| **7.3 (2)** | | | | |
| 96:5 99:5 | | | | |
| **7/8 (3)** | | | | |
| 70:2,3 80:25 | | | | |
| **70s (1)** | | | | |
| 115:11 | | | | |
| | | | | |
| **8** | | | | |
| **8 (7)** | | | | |
| 69:25 76:3,4 | | | | |
| 82:17 89:14 | | | | |
| 107:9,12 | | | | |
| **80 (1)** | | | | |
| 79:11 | | | | |
| **80s (1)** | | | | |
| 8:8 | | | | |
| **82 (3)** | | | | |
| 100:19,20 | | | | |
| 106:3 | | | | |
| **84 (4)** | | | | |
| 102:17 103:9 | | | | |

# CORRECTION / ERRATA SHEET 

The Letter of the Law. The Spirit of Service.

_____, being duly sworn, deposes and says: I have reviewed the transcript of my deposition / hearing taken on _____. The following changes are necessary to correct my testimony.

## CASE CAPTION:

| Page: | Line: | Should read / Corrected Testimony: | Reason for Change |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Sworn to before me this _____

Day of _____

_____
NOTARY PUBLIC

Testimony Deposition / Hearing Witness:

X _____

Print: _____

**Lexitas** ● **Court Reporting** ● **800-788-0166**
Administrative Offices ● 100 Merrick Road – Suite 320W ● Rockville Centre, NY 11570







59 COCKENOE AVENUE, BABYLON

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------x
JOHN LEPPER and NOELLE LEPPER, individually

and as parents and natural guardians of their

infant children, B.J.L and B.I.,

                          Plaintiffs,

          - against -

VILLAGE OF BABYLON; and, RALPH SCORDINO, Mayor,

KEVIN MULDOWNEY, Deputy Mayor, ROBYN

SILVESTRI, Village Trustee, TONY DAVIDA,

Village Trustee, MARY ADAMS, Village Trustee;

STEPHEN FELLMAN, Village of Babylon Building

Inspector; SUZANNE SCHETTINO, Department of

Public Works; GERARD GLASS, Esq., Village of

Babylon Attorney; DEBORAH LONGO, Planning

Board, Village of Babylon, each individually

and in their official capacity, and John

and/or Jane Doe, unnamed, unidentified

complainants,

                          Defendants.
Index No.:  2:18-cv-07011 JFB-GRB
-------------------------------------------x
                          135 Pinelawn Road
                          Melville, New York
ANTHONY DAVIDA
                          September 18, 2019
                          10:04 a.m.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

30

1                    ANTHONY DAVIDA

2        Q.    So after one year, you went back

3   to --

4        A.    Engineering.

5        Q.    -- engineering.

6              How long did you maintain that

7   engineering job for?

8        A.    To this day.

9        Q.    You said that's a part-time

10  position?

11       A.    Well, now it is.

12             I retired let's see, 2007, I

13  retired.

14       Q.    When you retired in 2007, what,

15  if anything, occurred to your position?

16       A.    I went back two weeks, one day

17  later part time.

18       Q.    Who do you currently answer to in

19  your position?

20       A.    Gentleman is Scott Fish.  He is

21  the regional director of engineering.

22       Q.    Sir, you currently live at

23  83 Wyandanch; is that right?

24       A.    Yes.

25       Q.    That's in the Village of Babylon?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

31

1                    ANTHONY DAVIDA

2         A.     Yes.

3         Q.     How long have you resided there?

4         A.     Since 1961.

5         Q.     Where did you live before that?

6         A.     That, I can answer.  49 Nancy

7    Street.

8         Q.     Is 49 Nancy Street located in the

9    Village of Babylon?

10         A.     No.  I don't know what that is,

11    it's part of the Town of Babylon.  I'm gonna

12    say West Babylon.  It's up near, near the

13    landfill, the dump.  I think it's West

14    Babylon, it's East Farmingdale's Fire

15    District, but I think it's West Babylon.

16         Q.     How do you know it's East

17    Farmingdale's Fire District?

18         A.     I'm a member of the fire

19    department, it's part of the Town of Babylon.

20         Q.     At 83 Wyandanch, do you receive

21    e-mail from the United States Postal Service

22    at that address?

23         A.     Yes.

24         Q.     Do you maintain a landline at

25    that address?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

62

1                    ANTHONY DAVIDA
2          Q.     Who was that?
3          A.     About 40 people.  I don't
4    remember who.  Everyone.
5          Q.     In terms of elected officials?
6          A.      In terms of elected officials,
7    myself, Ralph Scordino, Mary Adams, and Kevin
8    Muldowney, and Robyn Silvestri.
9          Q.     Did any other elected official
10   help you in their campaign?
11         A.     No.
12         Q.     Who else ran on the 2019 ballot?
13         A.      It was myself, Ralph, Robyn
14   Silvestri.
15         Q.     Was that a contested election?
16         A.     Nope.
17         Q.     What was the result?
18         A.      Hold on a second.  It was
19   contested.  You know what it is, in my life, I
20   got more important things to worry about.  You
21   know what I'm saying?  Trying to remember
22   who -- I don't know who -- leave that blank
23   for now and I'll get the names for you.
24         Q.      You have more important things to
25   worry about --

Realtime Reporting Inc.  800-373-7172    realtimereporting.com

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

63

1                    ANTHONY DAVIDA

2         A.      Yep.

3         Q.      -- you weren't worried about the

4    results of the political election?

5                MR. TOSCA:  Objection.

6         A.      Nope.

7         Q.      Why not?

8         A.      Because I do my job.

9                MR. TOSCA:  Objection.

10        A.      Whatever.  I do my job and I do

11   it proficiently.

12        Q.      Was there literature passed

13   around in that 2019 election?

14        A.      Yes.

15        Q.      What was on the literature?

16        A.      Same in the past, photos of us,

17   achievements, and the signing of the petition.

18        Q.      In the course of your election

19   campaigns, have you had occasion to walk the

20   Village of Babylon and talk to residents in

21   their homes?

22        A.      Sure.

23        Q.      When you appeared on the line in

24   your election, what, if anything, appeared

25   next your name?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

64

1                    ANTHONY DAVIDA

2        A.    What do you mean on lines?

3        Q.    When persons went to vote for

4   you --

5        A.    Right.

6        Q.    -- what, if anything, did they

7   see aside from your name?

8        A.    On the ballot?

9        Q.    Um-hum.

10       A.    Just the name.

11       Q.    Was there ever a party nomination

12   convention?

13       A.    No.

14       Q.    Have you ever been appointed to a

15   position of Village government, whether paid

16   or unpaid?

17       A.    No.

18       Q.    The only appointment that you

19   have had was the one by Mayor Scordino; is

20   that right?

21             MR. TOSCA:  Objection.

22       A.    Yes.

23       Q.    At the time which you lived in

24   the Village of Babylon, have you observed any

25   tree houses?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

65

1                     ANTHONY DAVIDA

2          A.      No.

3          Q.      During your last walk of your

4     campaign or Village of Babylon --

5                     Withdrawn.

6                     As you sit here today, you have

7     never seen a tree house in the Village of

8     Babylon?

9          A.      Other than the one we're

10    discussing now.

11         Q.      During the time in which you

12    lived in the Village of Babylon, have you

13    observed any tree houses?

14         A.      I have to say yes if that's what

15    you're looking for, yes.

16         Q.      Which one?

17         A.      The corner house on Wampum and

18    Cockenoe.

19         Q.      You are aware that there are more

20    than just one tree house in the Village of

21    Babylon?

22         A.      I have.

23         Q.      During your last walk of your

24    campaign of the Village of Babylon trustee,

25    did you see any tree houses within the Village

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

66

                    ANTHONY DAVIDA
1
2    of Babylon?
3         A.     Yeah, the one on Cockenoe and
4    Wampum.
5         Q.     Did you see the other tree houses
6    when you walked?
7         A.     No.
8         Q.     When you walked in the past for
9    those many years, did you see any tree houses
10   within the Village of Babylon?
11        A.     The one on Cockenoe and Wampum.
12        Q.     And no others?
13        A.     No.
14        Q.     When was the first time you saw a
15   tree house at the Lepper property, the
16   property which you refer to as --
17        A.     The date, I don't remember.
18        Q.     Do you remember the year?
19        A.     Yeah.  Last year sometime.
20            MR. MORRIS:  It's 11:01, we'll
21        give the court reporter a break.
22            (Whereupon, a recess was taken
23        from 11:01 a.m. through 11:15 a.m.)
24            MR. MORRIS:  Time, 11:15.
25        Q.     Mr. Davida, did you remember

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

67

1                    ANTHONY DAVIDA

2     something that you wanted to --

3          A.     Yeah.  Couple of names.

4                 The fellow I worked with, the

5     regional director at the time, his name was

6     Frank Highland (phonetic), and then this past

7     April, elections we had two other people, one

8     ran for mayor, Hoffman, her name was Hoffman,

9     and another ran for trustee, her name was

10    Kolovich, and they lost.

11         Q.     Mr. Davida, did you discuss your

12    testimony during the break?

13                MR. TOSCA:  Objection.

14                Don't answer that question.

15                MR. MORRIS:  Are you asserting

16         attorney/client privilege?

17                MR. TOSCA:  I am.

18         Q.     Mr. Davida, how did you remember

19    that information from the time we broke to

20    now?

21         A.     Well, I called the Mayor's office

22    to get the two girls that -- I knew they were

23    women, they ran against us, and the other

24    clicked in my head.

25         Q.     When you say you called the

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

68

ANTHONY DAVIDA

1                        ANTHONY DAVIDA

2     Mayor's office, to whom did you speak?

3          A.     Suzanne.

4          Q.     Suzanne who?

5          A.     Schettino.

6          Q.     Who is she?

7          A.     She's the Mayor's secretary.

8          Q.     Do you have her direct line?

9          A.     To the Mayor's office.

10         Q.     Have you communicated with anyone

11    else during the --

12         A.     No.

13                MR. TOSCA:  Let him finish.

14                THE WITNESS:  Sorry.  I

15         apologize.

16         Q.     How did you communicate with

17    Ms. Schettino?

18         A.     Called her.

19         Q.     Which number did you dial?

20         A.     631-669-1212.

21         Q.     What number is that to?

22         A.     Directly to the Mayor's office.

23    She answers the phone.

24         Q.     Was the Mayor present?

25         A.     I don't know.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

69

1                    ANTHONY DAVIDA

2        Q.     Before we broke we were talking

3   about your walking the Village.

4               When you walked the Village for

5   campaigns, where did you walk?

6        A.     South of Montauk, all the south

7   streets south of Montauk.

8        Q.     Did you walk the entire Village?

9        A.     No.

10       Q.     Did you split it up or --

11       A.     Different areas, yeah.

12       Q.     You lived in the Village for over

13  50 years; is that right?

14       A.     I lived in the Village since

15  1961.

16       Q.     Same house that you said your

17  father built?

18       A.     Well, I took the house over in

19  '85, somewhere around there, and when I first

20  got married, I lived in an apartment.

21       Q.     Just to be clear, we went through

22  where you lived.  Aside from Nancy and aside

23  from Wyandanch, have you lived anywhere else,

24  and aside New York City, have you lived

25  anywhere else?

Realtime Reporting Inc.  800-373-7172   realtimereporting.com

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

70

1                    ANTHONY DAVIDA

2        A.     Yeah.  I had two different

3   apartments.

4        Q.     Just to be clear, I'm asking you

5   these questions under oath and I'm seeking to

6   have the answers to these questions.

7               Where were these apartments?

8        A.     One was on Pine Street in the

9   Village, and the other was on Locust Avenue in

10   the Village.

11        Q.     When you say in the Village --

12        A.     Village of Babylon.

13        Q.     When did you live at Pine Street?

14        A.     '76 to '78.

15        Q.     With whom did you live at Pine

16   Street?

17        A.     With who?  My wife.

18        Q.     Anyone else?

19        A.     My daughter.

20        Q.     Why didn't you live at

21   83 Wyandanch?

22        A.     Because my father had the house,

23   he was still alive.

24        Q.     Did there come a time you moved

25   out of Pine Street?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

71

1                    ANTHONY DAVIDA

2          A.     Yeah.

3          Q.     You maintained a landline at Pine

4    Street?

5          A.     Yes.

6          Q.     What was the number at that

7    location?

8          A.     I don't know.

9          Q.     When there came a time that you

10   moved out of Pine Street, where did you go?

11         A.     Wyandanch Avenue, 83.

12         Q.     Have you been living continuously

13   at 83 Wyandanch in the Village of Babylon

14   since 1983?

15         A.     I would say yes.

16         Q.     You said Locust in the Village of

17   Babylon.

18         A.     Locust Avenue.

19         Q.     When did you live on Locust

20   Avenue?

21         A.     From '74 to '76.

22         Q.     With whom, if anyone, did you

23   live on Locust Avenue?

24         A.     My wife and my daughter.

25         Q.     Why did you move from Pine Street

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

72

                        ANTHONY DAVIDA

1

2    the Locust Avenue?

3          A.     We were at Locust first.

4          Q.     Why did you move from Locust to

5    Pine Street?

6          A.     Rent was up and they raised it,

7    the lease was up.

8          Q.     Did you maintain a landline at

9    Locust Avenue, Village of Babylon?

10         A.     Yes.

11         Q.     What was the number?

12         A.     Don't know

13                MR. TOSCA:  Objection.

14         Q.     So you lived in the Village of

15   Babylon for over 50 years continuously; is

16   that right?

17         A.     Yes.

18         Q.     And you've never seen a tree

19   house before John Lepper's, right?

20         A.     Nope.

21                MR. TOSCA:  Objection.

22         Q.     So this was the first time you

23   have ever seen a tree house in your life?

24         A.     No.

25         Q.     When was the other time you've

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

73

1                    ANTHONY DAVIDA
2    ever seen a tree house?
3         A.    I've seen them upstate, I've seen
4    them in different locations.
5         Q.    Where have you seen them?
6         A.    I don't remember.  You know, I
7    travel upstate.
8         Q.    When was the first time you saw
9    the Lepper family tree house?
10        A.    About a year ago, year and a half
11   ago when it first started.
12        Q.    When you say it first started, to
13   what are you referring?
14        A.    Construction.
15        Q.    When you say construction first
16   started, what is it that you saw?
17        A.    I saw the timbers, the framework
18   bolted to the tree.
19        Q.    When did you see that?
20        A.    Year and a half ago.  I don't
21   remember.
22        Q.    You realize we're here for a
23   federal lawsuit involving the tree house?
24             MR. TOSCA:  Objection.
25        A.    I understand that, but you got to

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

74

                    ANTHONY DAVIDA

1

2    understand --

3              MR. TOSCA:  Objection.

4         Q.    You don't remember when you saw

5    the framework of the tree house?

6         A.    The date no.

7         Q.    Do you remember the month?

8         A.    No.

9         Q.    Do you remember the year?

10        A.    Over a year ago.

11        Q.    Do you remember which year that

12   was?

13        A.    '18.

14        Q.    2018.

15              Where were you when you saw the

16   framework for this tree house?

17        A.    Driving by his house.

18        Q.    In which direction were you

19   traveling?

20        A.    South.

21        Q.    Where were you coming from and

22   where were you going?

23        A.    Coming from, coming home and

24   going to the firehouse.

25        Q.    When you say home, it was 83 --

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

75

1                   ANTHONY DAVIDA

2        A.    Wyandanch Avenue, yes.

3        Q.    What time of day was it?

4        A.    I don't remember.

5        Q.    When you say going to the

6  firehouse, for what reason were you going to

7  the firehouse?

8        A.    To do some work.

9        Q.    What work were you going to do?

10       A.    Clean the trucks.  I don't

11 remember.

12       Q.    What, if anything, did you do

13 when you saw the framework of the tree house?

14       A.    I was surprised.  I was shocked.

15       Q.    When you say surprised and

16 shocked --

17       A.    Yeah.

18       Q.    -- why were you surprised and

19 shocked?

20       A.    I never expected to see it.

21       Q.    Why not?

22       A.    Just it cropped up in the

23 Village, I just saw it.  I was surprised.

24       Q.    Is there something about a tree

25 house that surprises you?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

76

1                  ANTHONY DAVIDA
2          A.     Yeah.
3          Q.     What is that?
4          A.     In such an area, it's -- you
5    don't expect it.
6          Q.     When you say such an area, to
7    what --
8          A.     A residential area.
9          Q.     Why didn't you expect tree houses
10   in residential areas?
11         A.     I just don't expect it.
12         Q.     The location was in your car.  On
13   which side of the road were you on?
14         A.     Center of the road, these are
15   residential narrow roads.
16         Q.     What road were you traveling on?
17         A.     Wampum Road.
18         Q.     With direction were you heading?
19         A.     South.
20         Q.     As you were on Wampum Road
21   heading south, what, if anything, did you do
22   in response to the surprise and shock that you
23   experienced when you saw this framework?
24         A.     I saw it and kept on going.
25         Q.     What, if anything, did you do

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

77

1                    ANTHONY DAVIDA

2    next?

3         A.    Next I called the Village board,

4    the Building Department.

5         Q.    To whom did you speak?

6         A.    I don't remember.  Debbie Longo.

7    I'm not sure who.

8         Q.    What did you say?

9         A.    I told 'em that somebody should

10   take a look, there is a tree house or what

11   appears to be a tree house being built.

12   There's these large timbers framed on the

13   tree.  That's all.  I reported it to the

14   Building Department.

15        Q.    What did you report?

16        A.    What I just said.  I just told

17   them there's timbers being bolted to a tree.

18        Q.    Anything in violation of the

19   Babylon Village code?

20        A.    I don't know.  You would have to

21   check with the Building Department.

22        Q.    What time did you call Deborah

23   Longo?

24        A.    I don't remember.

25        Q.    What phone did you use to call

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

78

1                     ANTHONY DAVIDA

2     her?

3          A.     My cell phone.

4          Q.     When you called Deborah Longo,

5     what, if anything, did she say?

6          A.     She said she would have somebody

7     take a look at it.

8          Q.     Anything else?

9          A.     No, that was it.

10         Q.     What else, if anything, occurred

11    that day?

12         A.     That's it.

13         Q.     Did you ever speak to Mr. Lepper?

14         A.     Nope.

15         Q.     Aside from making that phone

16    call, what, if anything, occurred?

17         A.     That I know of, nothing that I

18    know of, other than the Building Department

19    was handling it now.

20         Q.     So you drove by in your car when

21    you saw this object; is that correct?

22         A.     Yes.

23         Q.     And you don't know what time of

24    day it was?

25         A.     Don't remember.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

79

1                    ANTHONY DAVIDA

2       Q.    Do you remember the weather

3  conditions that day?

4       A.    I don't remember.  I mean, it was

5  nice out, I could see it.  It was clear as

6  day, so I would assume it would be sunny.

7       Q.    Was it a weekday?

8       A.    Don't remember.

9       Q.    A holiday?

10      A.    Don't remember.

11      Q.    Do you remember what car you were

12  driving?

13      A.    Yeah.

14      Q.    What kind of car were you

15  driving?

16      A.    Chevy Impala.

17      Q.    How did you make the phone call?

18      A.    When I got to the firehouse, I

19  went inside and made the phone call.

20      Q.    Using your cellular phone?

21      A.    Yes.

22      Q.    You never stopped?

23      A.    No.

24      Q.    When you said firehouse, where

25  was the firehouse?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

80

1                   ANTHONY DAVIDA

2         A.    Cedar Street.

3         Q.    How far was the firehouse from

4   your house?

5         A.    Let's see, one, two, three, four,

6   five, six, seven, about nine blocks away,

7   nine, ten blocks.

8         Q.    So driving those nine blocks,

9   nothing else happened throughout that time?

10        A.    No.

11        Q.    So it was during the day?

12        A.    Yeah.

13        Q.    Anything else that you remember

14  about that time that you saw timbers in the

15  tree where you are surprised and shocked?

16        A.    Yeah, nothing else.

17        Q.    Just to be clear, you were

18  shocked when you saw timbers in the tree?

19        A.    Yeah, it was a surprise.

20        Q.    Have you never seen timbers in a

21  tree before?

22        A.    Not In the Village.

23        Q.    When you say not in the Village,

24  you have seen them in other places?

25        A.    Yeah, upstate.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

81

1                    ANTHONY DAVIDA

2         Q.     When you say upstate, where?

3         A.     Driving through different

4    villages, towns.  I'm not sure which ones.

5         Q.     So you have seen timbers in trees

6    driving upstate through different towns, but

7    not in the Village of Babylon?

8         A.     Yeah.  Hunting stands, tree

9    stands.

10        Q.     When you say upstate, where

11   upstate?

12        A.     Anywhere upstate, New York, upper

13   New York, Catskills.

14        Q.     Do you recall the township?

15        A.     No.

16        Q.     Do you recall having that sort of

17   shock when you saw it upstate?

18        A.     No.

19        Q.     And you weren't shocked when you

20   saw these sorts of things upstate.  Correct?

21        A.     No.

22        Q.     Why?

23        A.     I would expect it up there.

24        Q.     Why would you expect it up there

25   and not --

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

82

1                    ANTHONY DAVIDA

2          A.    Because that's where you build

3     tree houses and stuff.

4          Q.    But you don't build tree houses

5     in the Village of Babylon, do you?

6          A.    I don't know.

7          Q.    So why were you shocked?

8          A.    Because I didn't expect to see

9     it.

10         Q.    Again, you were shocked because

11    you saw timbers in a tree, correct?

12         A.    Um-hum.

13         Q.    But you're not shocked when you

14    see the same timbers in a tree upstate?

15         A.    No.

16         Q.    What is different about upstate

17    and the Village of Babylon?

18               MR. TOSCA:  Objection.

19               You can answer.

20         A.    Upstate is built on 20, 30

21    acres of property.

22         Q.    Is it the acreage that shocks

23    you?

24         A.    Sure, that's part of it.  I mean,

25    it is what it is.  I mean, upstate, New York

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

114

1                    ANTHONY DAVIDA

2    said you never use?

3         A.    Right.

4         Q.    At any time did you discuss the

5    summons that were issued to Mr. Lepper with

6    any other member of the Village of Babylon

7    board?

8         A.    Sure.

9         Q.    When?

10        A.    Past months, six months, eight

11   months.

12        Q.    Did you discuss it prior to eight

13   months?

14        A.    I really can't remember, you

15   know, exactly when, you know, I'm just saying

16   months back.

17        Q.    Was it before or after you were

18   served notice of this lawsuit?

19        A.    Probably before.

20        Q.    Under what circumstances did you

21   discuss these summonses before?

22        A.    Just by getting information,

23   feedback from the Building Department and the

24   Village attorney.

25        Q.    Is this in public or in private?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

115

1                    ANTHONY DAVIDA

2         A.     Public.

3         Q.     Where in public?

4         A.     Village Hall, the conference room

5    upstairs.

6         Q.     Were these public meetings or

7    private meetings?

8         A.     They were open to the public.

9         Q.     During such meetings that were

10   open to the public, what discussions were had?

11        A.     Again, regarding about the fines

12   and the stop orders and you know, just an

13   ongoing situation where there's fines after

14   fines after fines, stop order on the job and,

15   you know, the conversation is, you know, where

16   are we going, what are we doing, you know, why

17   doesn't he want to comply.  Stuff like that.

18        Q.     Start with before be lawsuit.

19               What was said and by whom?

20        A.     I don't remember.

21        Q.     What did you say in response?

22        A.     I don't remember the

23   conversations, who said what.  You know, I

24   agreed with them, you know.

25        Q.     Who is them?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

                                                        120

1                    ANTHONY DAVIDA

2    had last week, two weeks, three weeks ago?

3    Yeah.

4         Q.    Do you recall that?

5         A.    Yeah.

6         Q.    Anything happen during that

7    storm?

8         A.    Yeah.  A lot of trees came down.

9         Q.    Any trees come down on your

10   house?

11        A.    No.

12        Q.    Did the tree house come down?

13        A.    Nope.

14        Q.    You recall that?

15        A.    Still there.

16        Q.    Because you can see it.

17        A.    Absolutely.

18        Q.    And you can perceive it?

19        A.    Um-hum.

20        Q.    You can recall its occurrence,

21   correct?

22        A.    Yeah.

23              MR. TOSCA:  Objection.

24        Q.    And if I ask you questions about

25   it, you will tell me.  Correct?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

123

```
 1                   ANTHONY DAVIDA
 2         this needs to be finished.
 3                   MR. TOSCA:  I'm going to object
 4         when you're badgering the witness.
 5         Q.    Sir, I'm asking you when you have
 6    been sued in terms of a month.
 7                   Do you recall the month in which
 8    you were sued?
 9         A.    No.
10         Q.    Do you recall the year in which
11    you were sued?
12         A.    I'm going to say 2018.
13         Q.    Do you recall if it was at the
14    beginning of the year or the end of the year?
15         A.    Don't remember.
16         Q.    Do you recall anyone ever asking
17    you for electronic mailings as a result of
18    this lawsuit?
19         A.    No.
20         Q.    Do you recall anyone asking you
21    for your text messages as a result of this
22    lawsuit?
23         A.    No.
24         Q.    As you sit here today, have you
25    given over either electronic mails or text
```

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

135

1                ANTHONY DAVIDA
2        A.    No.
3        Q.    Aside from the Village of Babylon
4   board or its attorney, has anyone ever
5   communicated to in fashion, telephone, e-mail,
6   face-to-face conversation about this Lepper
7   family tree house?
8        A.    Yes.
9        Q.    Who?
10       A.    The one neighbor across the
11  street, I think he lives.
12       Q.    What's the name of that man?
13       A.    Terry McSweeney.
14       Q.    When did that conversation with
15  Terry McSweeney occur?
16       A.    I have no idea.
17       Q.    Do you know what year it
18  occurred?
19       A.    Last year or this year.  I don't
20  remember.
21       Q.    Did it occur in 2017?
22             MR. TOSCA:  Objection.
23       A.    Obviously 2018.
24       Q.    Do you recall the month in which
25  it occurred?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

148

1                    ANTHONY DAVIDA

2        Q.    Do you know recall to whom you

3   spoke three weeks ago?

4        A.    I believe it was Debbie Longo.

5        Q.    Did you speak to anyone else in

6   regards to new timbers -- and you saw no

7   building permit, correct?

8        A.    Yeah, no building permit.

9        Q.    How do you know that there was no

10  building permit?

11       A.    You're supposed to put it in the

12  window in the front.

13       Q.    How did you know there was no

14  permit in the window?

15       A.    When I drove by, I didn't see it.

16       Q.    Did you stop?

17       A.    Slow drive because there was a

18  traffic light four houses up, four buildings

19  up.

20       Q.    What was that house?

21            MR. TOSCA:  Objection.

22            There may be an ongoing

23       investigation, so I'm going to object to

24       the characterization or identification.

25       Q.    What street were you driving?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

149

1                      ANTHONY DAVIDA
2         A.      Willow.
3                 MR. TOSCA:  Objection.
4         Q.      What direction were you driving?
5         A.      North.
6         Q.      Was the house on the left-hand
7    side or right-hand side?
8         A.      Right-hand side.
9                 MR. TOSCA:  Objection.
10        Q.      What was the cross street as you
11   approached the right-hand side of Willow?
12        A.      Montauk Highway.
13        Q.      So it was before Montauk Highway.
14   Correct?
15                MR. TOSCA:  Objection.
16        A.      Yes.
17        Q.      Did you have opportunity to look
18   in the window?
19        A.      I drove by.
20        Q.      Is it possible that you missed
21   the permit?
22        A.      No.
23        Q.      How do you know that?
24        A.      Because later on, the Building
25   Department told me they had no building permit

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

150

1                    ANTHONY DAVIDA

2    and they put a stop order on the job.

3         Q.    And you communicated with the

4    Building Department?

5         A.    Later on, a few days later, four,

6    five days later.

7         Q.    And in doing so, you reported a

8    violation.  Correct?

9              MR. TOSCA:  Objection.

10        A.    Yeah.

11        Q.    You have done that in the past?

12             MR. TOSCA:  Objection.

13        A.    Probably, yeah.  I don't

14   remember.

15        Q.    Probably, is it yes, is it no, do

16   you not know?

17        A.    You know what, I don't know.

18        Q.    Is there anything that prevents

19   you from knowing whether or not you reported

20   something to Village of Babylon?

21        A.    No.

22        Q.    Did you do that as Village of

23   Babylon trustee or something else?

24             MR. TOSCA:  Objection.

25        A.    Trustee.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

151

1                      ANTHONY DAVIDA

2        Q.      So when you make these reports,

3    you do it as the Village of Babylon trustee.

4    Correct?

5                 MR. TOSCA:  Objection.

6                 You can answer.

7        A.      Yes.

8        Q.      That's what you did to John

9    Lepper, right?

10                MR. TOSCA:  Objection.

11                You can answer.

12       A.      Yes.

13       Q.      And Deborah Longo.

14                Who is Deborah Longo?

15       A.      She's in charge of the Building

16   Department.

17       Q.      What does she do for the Building

18   Department of the Village of Babylon?

19       A.      Yep.  I don't know.

20       Q.      When you say you don't know --

21       A.      Her office does not come under

22   me, so I don't know.

23                She handles building permits,

24   zoning, planning, all different stuff

25   pertinent to the buildings and residents in

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

152

1                    ANTHONY DAVIDA

2      the Village.

3          Q.     How long has Deborah Longo worked

4      for the Village of Babylon?

5          A.     Good 12 years, I'd say, if not,

6      longer.

7          Q.     Sir, you were appointed trustee

8      in 2002 in the Village of Babylon?

9          A.     Yes.

10         Q.     And Deborah Longo has been there

11     for 12 years, correct?

12         A.     Yep.

13         Q.     You don't know what she does.

14         A.     I just told you, she handles

15     building permits, planning and zoning and

16     violations.

17                I don't go into depth of what she

18     does.

19         Q.     Do you know what her job title

20     is?

21         A.     No.

22         Q.     Do you know where she physically

23     sits within the Village of Babylon?

24         A.     Yep.

25         Q.     Where?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

153

1                    ANTHONY DAVIDA

2           A.      In the Building Department.

3           Q.      Is the first floor, second floor?

4           A.      Second floor.

5           Q.      Does she have her own office?

6           A.      It's one large office.

7           Q.      Who else is in the office in

8    which Deborah Longo sits?

9           A.      Steve Fellman and one, two --

10   about four other women and the, one of the

11   Village code enforcement that inspects

12   apartments, and the other one is the one he

13   goes out when Debbie gets a report and he goes

14   to see, like this house we were just talking

15   about, he'll go and see if there is a building

16   permit.  Well, they look in the file first and

17   then they'll go out and tell the people they

18   got to stop and get a building permit.

19          Q.      What are the names of the persons

20   you mentioned, aside from Stephen Fellman and

21   Deborah Longo that sit in that large room?

22          A.      Code enforcement does the

23   apartments is Richie Meier, M-E-I-E-R.  The

24   other one that does the inspections on the

25   homes for permits and stuff, his name is Ray,

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

154

                    ANTHONY DAVIDA
1
2    I don't know his last name.  Marietta and
3    Jeannie, I think.
4         Q.    Is Deborah Longo an elected or
5    appointed official?
6         A.    Appointed.
7         Q.    Who appointed Deborah Longo?
8         A.    The Mayor.
9         Q.    Which mayor is that?
10        A.    Ralph Scordino.
11        Q.    How long has Deborah Longo worked
12   for the Village of Babylon?
13        A.    About 12 years.  I don't know
14   exactly when she came onboard.
15        Q.    Is she civil service protected?
16             MR. TOSCA:  Objection.
17             You can answer.
18        A.    I don't know.  I have no idea.
19        Q.    How long has Deborah Longo been
20   an employee of the Village of Babylon?
21        A.    I just told you that.  About 12
22   years ago.  I don't know exactly how long.
23        Q.    Aside from her sitting in the
24   position in which she sits, her being Deborah
25   Longo, do you know if she ever worked in any

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

155

1                    ANTHONY DAVIDA

2    other portion of Village of Babylon?

3         A.    No.

4         Q.    When did you first become

5    aware of Deborah Longo's existence?

6         A.    When she was brought onboard.

7         Q.    When was that?

8         A.    About 12 years ago or so.  I'm

9    not sure.

10        Q.    Under what circumstances did you

11   learn that Deborah Longo was being brought

12   onboard?

13        A.    I was introduced to her as the

14   person in charge of the Building Department.

15        Q.    Who introduced you?

16        A.    Ralph Scordino, the Mayor.

17        Q.    That's to whom she reports to

18   within the Village of Babylon, correct?

19        A.    Yes.

20             MR. MORRIS:  For the sake of our

21        court reporter, I'm going to take a

22        break.

23             It's 12:30 p.m.

24             (Whereupon, a recess was taken

25        from 12:30 p.m. through 1:19 p.m.)

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

156

ANTHONY DAVIDA

1
2          MR. MORRIS:  Time now is 1:19.
3       We're back on the record.
4          Q.    Mr. Davida, are you sure that you
5   were the one who initiated the complaint
6   regarding the Lepper family tree house to
7   Deborah Longo?
8          MR. TOSCA:  Objection.
9             You can answer over objection.
10         A.    I don't know if I'm the first one
11  or only one.  I have no idea.  I saw what I
12  saw and reported it.
13         Q.    As you sit here today, do you
14  know whether anyone made complaints after you
15  did about the Lepper family tree house in the
16  Village of Babylon?
17         A.    No, I don't.
18         Q.    As you sit here today, no one
19  else had made complaints aside from you; is
20  that right?
21         MR. TOSCA:  Objection.
22         A.    I don't know.
23         Q.    Are you aware whether Mayor
24  Scordino received several complaints from the
25  Village of Babylon residents?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

157

1                    ANTHONY DAVIDA

2              MR. TOSCA:  Objection.

3              You can answer over objection.

4         A.    I don't know.

5         Q.    Have you ever heard Mayor

6    Scordino say that this is quote, no ordinary

7    tree house tucked away in someone's backyard

8    end quote?

9         A.    No.

10        Q.    You never heard him say that?

11        A.    No.

12        Q.    You ever see him write that?

13        A.    No.

14        Q.    Have you ever been explained by

15   anyone that the Lepper family tree house was

16   nearly 100 square feet?

17        A.    I saw some paperwork that the

18   Leppers put it that it was under -- what is

19   it -- 86 square feet or something like that?

20        Q.    Can you explain to what you're

21   referring?

22        A.    That he doesn't need a permit, I

23   believe it was.

24        Q.    What forms your basis for that?

25        A.    I didn't say that.  Lepper said

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

158

1              ANTHONY DAVIDA
2    that.
3         Q.    What forms your basis for this
4    explanation as to paperwork?
5         A.    He submitted a drawing and said
6    it was under 86 square feet or something.
7              Apparently, there is a building
8    code that you don't need a permit under a
9    certain size.
10             Again, I'm not familiar with the
11   codes.
12        Q.    When did you first receive or
13   review this paperwork from Mr. Lepper?
14        A.    Oh God, a year ago probably when
15   he was trying to submit it.
16        Q.    When you say trying to submit
17   it --
18        A.    He had -- he was trying to submit
19   papers to the planning board and he didn't
20   have anything stamped, certified by an
21   engineer, so they rejected it.
22        Q.    When was this?
23        A.    I don't know.
24        Q.    What month?
25        A.    Maybe a year ago.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

159

1               ANTHONY DAVIDA

2        Q.     Who rejected it?

3        A.     I would assume the Building

4   Department because that's where it would go

5   to, the Building Department.

6        Q.     When you say Building Department,

7   who was the person who did the review?

8        A.     I would say Steve Fellman, he's

9   the inspector.

10        Q.     To be clear, Mr. Lepper submitted

11   plans to legitimize the tree house --

12        A.     He submitted it --

13               I'm sorry.  Go ahead.

14        Q.     To be clear, Mr. Lepper submitted

15   plans to legitimize the tree house, and

16   Mr. Fellman said those plans were no good?

17               MR. TOSCA:  Objection.

18               You can answer.

19        A.     He submitted drawings, not plans,

20   drawings, handwritten drawings.

21        Q.     What occurred with those

22   handwritten drawings?

23        A.     They went to the Building

24   Department, and I'm assuming at that point,

25   the inspector Steve Fellman rejected it.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

160

1                    ANTHONY DAVIDA

2        Q.      How did Mr. Fellman do that?

3        A.      I don't know.  That's his

4   department.

5        Q.      As you sit here today, do you

6   know whether those papers were rejected?

7        A.      To my knowledge, yes, they were.

8        Q.      How do you know that?

9        A.      They didn't have a certification

10  stamp on it, the seal.

11       Q.      How do you know that?

12       A.      By what we were told.

13       Q.      Who told you?

14       A.      I think Steve Fellman told Gerry

15  Glass, the Mayor.  I'm not sure.

16       Q.      How did you learn of this?

17       A.      By word of mouth.

18       Q.      By whose mouth?

19       A.      Could have been Gerard Glass,

20  could have been the board members, could have

21  been Steve Fellman.  I don't remember.

22       Q.      One of those persons?

23       A.      I would say I think so, yeah.

24       Q.      As you sit here today, you can't

25  recall?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

167

ANTHONY DAVIDA

1

2     Q.    Do you recall what month that

3  occurred?

4     A.    No.

5     Q.    Do you recall any of the

6  circumstances about that conversation?

7     A.    No.

8     Q.    Do you recall whether it was face

9  to face or something else?

10    A.    Probably face to face in

11 conversation.

12    Q.    Do you recall if it was at a

13 board meeting or something else?

14    A.    No, I don't remember.

15    Q.    Do you recall if Mr. Scordino

16 said that just to you or to everybody?

17         MR. TOSCA:  Objection.

18         You can answer.

19    A.    I would say probably with the

20 board members.

21    Q.    Anybody aside from the board

22 members present for that conversation?

23    A.    No.

24    Q.    Do you recall anything else about

25 that conversation?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

168

1                    ANTHONY DAVIDA

2         A.     No.

3         Q.     Do you recall if you were sitting

4    down or standing up when you heard that?

5         A.     I would probably say sitting

6    down.

7         Q.     But you can't recall?

8         A.     No.

9         Q.     There's nothing I can do to

10   refresh your recollection?

11              MR. TOSCA:  Objection.

12              You can answer.

13        A.     No.

14        Q.     Mayor Scordino ever tell you

15   quote, the homeowner chose to build this tree

16   house without getting the proper permit end

17   quote?

18              MR. TOSCA:  Objection.

19              You can answer.

20        A.     I didn't hear him say that.

21        Q.     Has he ever communicated it to

22   you in any fashion?

23        A.     Regarding what?

24        Q.     Regarding the safety of the tree

25   house?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

169

1                    ANTHONY DAVIDA

2        A.      Right.

3        Q.      You said you never had tree house

4   before, right?

5        A.      Safety, we have all discussed

6   safety issues.

7        Q.      Never had a tree house in the

8   Village of Babylon, right?

9                MR. TOSCA:  Objection.

10               You're badgering the witness.

11               You can answer.

12       Q.      Never had a tree house, right?

13       A.      I was waiting for you to finish.

14   I didn't know if you were finished.

15               Not that I know.  I have never

16   seen one.

17       Q.      Fifty years in the Village of

18   Babylon, never seen one?

19       A.      Nope.

20       Q.      Someone's talking about the

21   safety of the tree house, you can't recall

22   anything surrounding that incident.  Correct?

23       A.      What incident?

24       Q.      Fifty year in the Village of

25   Babylon without a tree house and you can't

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

170

1                    ANTHONY DAVIDA

2    recall anything regarding that conversation?

3              MR. TOSCA:  Objection.

4              You can answer.

5         A.    We discussed safety issues, yes.

6         Q.    What, if anything, did you say in

7    response?

8              MR. TOSCA:  Objection.

9         A.    It was no -- a straight ladder up

10   there, you know, concerns, what property, on

11   the property, kid falls out, lands on dirt,

12   break his neck, kill the kid, what else, we

13   don't know.

14        Q.    That's what you said?

15        A.    To those words maybe.  I don't

16   recall.

17        Q.    When did you say that?

18        A.    A year ago, I guess.  You know,

19   again I don't know when these conversations

20   occurred.

21        Q.    So you can't give me any month,

22   date, any recollection, snow on the ground,

23   nothing.

24              You just remember you said it,

25   that's it, right?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

171

```
 1                    ANTHONY DAVIDA
 2         A.     Right.
 3                MR. MORRIS:  Can I ask you to
 4         mark this, please.
 5                  (Whereupon, a letter from the
 6         Mayor about tree houses and other things
 7         was marked as Plaintiff's Exhibit 1 for
 8         identification as of today's date.)
 9         Q.     Review that and please take your
10    time, Mr. Davida.  Make sure you've read
11    everything.
12         A.     (Witness complies.)
13         Q.     Mr. Davida, have you read
14    Plaintiff's Exhibit 1?
15         A.     Just now.
16         Q.     Have you ever seen what's been
17    marked as Plaintiff's Exhibit 1 prior to
18    today?
19         A.     Vaguely on, I believe, it's our
20    newsletter.  It says happy holidays, I'm
21    assuming it's the Christmas, winter letter
22    that goes out.
23         Q.     When did you first see what's
24    been marked as Plaintiff's Exhibit 1?
25         A.     I guess when the newsletter came
```

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

172

1                    ANTHONY DAVIDA

2    out.

3         Q.    How did you receive the

4    newsletter?

5         A.    We get it upstairs in the office.

6         Q.    When you say "we" --

7         A.    The trustees.

8         Q.    When you say "newsletter," is it

9    printed?

10        A.    Yes.

11        Q.    Who prints it?

12        A.    We have a company that, a woman

13   that takes care of it.  She puts letters,

14   updates of what's going on, special events

15   that are coming up.

16        Q.    You said you got this when?

17        A.    I'm saying probably before the

18   holidays of 2018.

19        Q.    Was there anything other than

20   this letter that's been marked as Plaintiff's

21   Exhibit 1 in that newsletter?

22        A.    Regarding the tree house?

23        Q.    Anything.

24        A.    In the newsletter, yes.  Yeah.

25   Yeah.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

173

1            ANTHONY DAVIDA

2        Q.     And the full newsletter is

3   distributed how?

4        A.     By mail.

5        Q.     Do you know who receives the

6   newsletter?

7        A.     The residents.

8        Q.     Do you know which residents?  Is

9   it the entire village?

10       A.     Yes.

11       Q.     So everyone in the Village of

12  Babylon receives the newsletter?

13       A.     Yeah.  If you have a mailing

14  address, you get one.

15       Q.     For that matter, was it signed by

16  Mayor Scordino?

17       A.     I don't know.  I have no idea.

18       Q.     Have you received a copy of this

19  newsletter?

20       A.     Yes.

21       Q.     It was produced by the Village of

22  Babylon Mayor Ralph Scordino, right?

23       A.     Yes.

24       Q.     It was maintained by the Village

25  of Babylon, correct?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

174

1                    ANTHONY DAVIDA

2          A.    Yes.

3          Q.    It was produced by the Village of

4    Babylon.  Correct?

5          A.    Yes.

6          Q.    Sent the letter by the Village of

7    Babylon.  Correct?

8          A.    Yes.

9          Q.    Is this a true and accurate copy

10   of what you saw?

11              MR. TOSCA:  Objection.

12              You can answer.

13         A.    I would have to say reading it,

14   yeah, it's -- it looks pretty accurate.  I

15   don't remember exactly because it's been so

16   long ago.

17         Q.    But this refreshes your

18   recollection?

19         A.    Yes.

20         Q.    And you received this.  Right?

21         A.    Yes.

22         Q.    You read this.  Right?

23         A.    Yep.

24         Q.    Did you receive this at your

25   house as well?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

175

1                     ANTHONY DAVIDA

2          A.    I would probably say yes.

3          Q.    I'm just asking --

4          A.    Yeah.  Yeah.

5          Q.    Do you remember seeing this?

6          A.    I throw it in the garbage.  I

7    don't read it, but yeah, we got it.

8          Q.    You remember receiving it?

9          A.    Yeah.

10         Q.    When you saw it, did you read it?

11         A.    No.  At home, no.

12         Q.    When you saw it as a trustee, did

13   you read it?

14         A.    Yes.

15         Q.    You knew it came from the Mayor

16   correct?

17         A.    Um-hum.

18         Q.    When the Mayor said, from time to

19   time, I have used this page to comment on

20   matters of interest here in the Village, what

21   is he referring to?

22         A.    You have to ask him.  I don't

23   know.

24         Q.    Have to ask the Mayor?

25         A.    I don't know.  I don't know.  He

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

176

```
 1                  ANTHONY DAVIDA
 2   wrote this, not me.
 3         Q.    I'd have to ask the Mayor of the
 4   Village of Babylon, correct?
 5         A.    Yeah.
 6         Q.    When he says I'm writing about
 7   something you may have heard or read about in
 8   the news, to what is the Mayor referring?
 9         A.    Probably newspapers.
10         Q.    Do you know which ones?
11         A.    Whatever did the stories on him.
12         Q.    Do you remember reading those
13   stories?
14         A.    I don't read newspapers.
15         Q.    So you wouldn't know?
16         A.    No.
17         Q.    Who would know?
18         A.    I don't know.
19         Q.    Would the Mayor of the Village of
20   Babylon know?
21         A.    I don't know.  I don't read
22   newspapers.
23         Q.    Reading off Plaintiff's
24   Exhibit 1, the second paragraph, quote, to
25   begin with, this all started with complaints
```

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

177

                    ANTHONY DAVIDA

1

2      to my office from the homeowner's own

3      neighbors.  They complained this was no

4      ordinary tree house tucked away in someone's

5      backyard, end quote.

6                   What complaint is the Mayor

7      referring to?

8           A.     I don't know.

9           Q.     Who would know?

10          A.     You have to -- the Mayor said he

11     received them, I didn't.

12          Q.     So Mayor Scordino --

13          A.     Scordino, yeah.

14          Q.     Mayor Scordino would know,

15     correct?

16          A.     Yes.

17          Q.     And you don't?

18          A.     Yeah.

19          Q.     He continues, quote the tree

20     house had sidewalls a pitched roof and

21     electric and that the homeowner built the tree

22     house nearly on the property line along a

23     residential street end quote.

24                  Are you aware of that?

25          A.     Yes.

Realtime Reporting Inc.  800-373-7172   realtimereporting.com

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

178

1                      ANTHONY DAVIDA

2         Q.      How you know that?

3         A.      Because I saw it.

4         Q.      This is what you observed from

5    your car?

6         A.      Um-hum.

7         Q.      Did you report this?

8         A.      Yes, it was all in one report,

9    two reports because I told him afterwards as

10   he continued to build, he added electric and

11   kept building it.

12        Q.      How many reports did you make to

13   the Village of Babylon regarding John Lepper's

14   tree house?

15        A.      I'm gonna say one, the initial

16   report.  The other ones were in conversation

17   with the Village board members when we would

18   discuss how much further he continued building

19   the structure.

20        Q.      When you say conversations with

21   the board that you're recalling here as you

22   sit here --

23        A.      The Village board.

24        Q.      -- when did those conversations

25   occur?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

179

1                    ANTHONY DAVIDA

2         A.    I don't know.  Month ago, year

3    ago.

4         Q.    What month did it occur?

5         A.    Don't know.

6         Q.    What year did it occur?

7         A.    Don't know.

8         Q.    Who spoke?

9         A.    We all spoke.

10        Q.    What did you say?

11        A.    I brought the fact that somebody

12   had asked about is there lights in there.  I

13   said, yeah, there's lights on it, there's one

14   light outside the door up top.

15        Q.    When did you say that?

16        A.    When we had our conversation.

17        Q.    What day?

18        A.    I don't know.

19        Q.    Who was present?

20        A.    The board members.

21        Q.    Anyone else?

22        A.    Gerard Glass.

23        Q.    Anyone else?

24        A.    Nope.

25        Q.    Do you know what month it was?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

180

1           ANTHONY DAVIDA

2      A.     Nope.

3      Q.     You never stood outside the house

4  and watched the tree house?

5      A.     Never.

6      Q.     How did you learn about this

7  information?

8      A.     What information?

9      Q.     The information mentioned in the

10  letter from the Mayor about tree houses and

11  other things.

12           MR. TOSCA:  Objection.

13           You can answer.

14      A.     I'm confused.

15      Q.     Take your time.

16      A.     Explain to me what you're saying.

17  You mean about the tree house with sidewalls

18  and pitched roof.

19      Q.     Yeah, how did you learn about

20  that?

21      A.     I saw it.

22      Q.     And you reported it?

23      A.     No.

24           I reported the initial -- the

25  initial report was the substructure that I

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

181

ANTHONY DAVIDA

1

2    told you with beams coming out off the tree.

3    The rest fell into place while he was going to

4    court and conversations from updates from

5    Gerard Glass, and there's all these different

6    conversations came up.

7         Q.    Did a conversation ever come up

8    about quote, I referred the neighbor's

9    complaint to our building inspector, end

10   quote?

11        A.    I never heard it.

12        Q.    When you say it, did you come to

13   learn who made those complaints?

14        A.    No, I don't know who made the

15   complaints.

16        Q.    Are you one of those neighbors?

17        A.    I didn't consider myself a

18   neighbor.  I'm a block and a half away.

19        Q.    Do you consider what you said a

20   complaint?

21        A.    No.

22        Q.    Do you know what the Mayor is

23   referring to, that being Mayor Ralph Scordino

24   when he says, quote I referred the neighbor's

25   complaints to our building inspector who comma

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

182

1                    ANTHONY DAVIDA

2       by the way comma is also a licensed architect

3       end quote.

4            A.     Right.

5            Q.     Do you know to what he is

6       referring?

7            A.     He took the complaints and gave

8       it to the building inspector, Steve Fellman.

9            Q.     Who made those complaints?

10           A.     I don't know.

11           Q.     Who would know?

12           A.     I would say Steve Fellman.

13           Q.     Who else?

14           A.     Maybe the Mayor.

15           Q.     Why do you say maybe the Mayor?

16           A.     Did he get the initial complaints

17      or did the Building Department get the

18      complaints?  I don't know.

19           Q.     When you say complaints, are you

20      aware as you sit here under oath whether

21      neighbors made complaints about Mr. Lepper's

22      tree house to the Village of Babylon?

23           A.     I'm not aware of any neighbor

24      that filed a complaint.

25           Q.     Do you have any reason to doubt

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

183

ANTHONY DAVIDA

1
2    the truth of the statement contained in
3    Plaintiff's Exhibit 1?
4         A.    From the Mayor?
5         Q.    Um-hum.
6         A.    I have no doubt.
7         Q.    Who would know, aside from
8    Mr. Fellman, about the neighbor's complaints
9    that were referred to the building inspector?
10        A.    I would have to say the Mayor.
11        Q.    And you don't know, right?
12        A.    Never saw any letters of
13   complaint.
14        Q.    Reading on from Plaintiff's
15   Exhibit 1, do you know to what this letter
16   refers when it says, quote, five paragraphs
17   down, quote the Court told the homeowner he
18   had to follow the same rules as everybody
19   else, end quote?
20        A.    Yeah.
21        Q.    To what is this letter referring?
22        A.    I would expect it to mean that
23   the Court told him we have a set of building
24   codes and policies between planning board,
25   zoning board, and Building Department.  Those

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

184

1              ANTHONY DAVIDA

2    are the rules you got to follow through, go

3    through the steps, there's applications you

4    need to fill out, and go through each step.

5         Q.    Did you ever have the opportunity

6    to discover what it is in terms of quote, the

7    same rules as everybody else, end quote?

8         A.    No.

9         Q.    Did you ever ask Mayor Scordino?

10        A.    No.

11        Q.    As you sit here today, do you

12   know to what he is referring?

13        A.    I just told you.  Going through

14   the proper channels and filling out

15   applications for the planning board, if you

16   have to go to the zoning board, applications

17   for the building permit from the Building

18   Department and file all that in with the

19   Building Department.

20        Q.    He says the Court told the

21   homeowner --

22        A.    I have no idea with the Courts,

23   no idea.

24        Q.    Who would?

25        A.    That would be Jack Rafter, I

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

185

```
 1                  ANTHONY DAVIDA
 2    guess, and the Building Department inspector
 3    Steve Fellman if he was at the Court date.
 4         Q.    You don't even know if he was at
 5    the Court date?
 6         A.    He made the decision, and Steve
 7    Fellman, the building inspector, I would feel
 8    that he would be at court that day, so.  I
 9    don't know, I don't go to court.
10         Q.    As you sit here today, you're not
11    aware of who went to court in regards to this
12    matter?
13         A.    Nope.
14         Q.    Who would be?
15         A.    Steve Fellman, maybe Gerard
16    Glass, you know.  Don't know.
17         Q.    Do you agree with this statement
18    in Plaintiff's Exhibit 1 that followed the one
19    I just made, quote, instead the homeowner went
20    to the media to pressure the Village to change
21    its position, end quote?
22         A.    No.
23               MR. TOSCA:  Objection.
24         Q.    Do you agree with that?
25               MR. TOSCA:  Objection.
```

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

186

1                   ANTHONY DAVIDA

2              You can answer.

3         A.    Yes.

4         Q.    Can you explain why you agree

5    with that?

6         A.    He went to Newsday, he went to

7    social media on Facebook, and everything was

8    on his side, never even intended to follow

9    procedure, so it was his side trying to change

10   and pressure the Village.

11        Q.    How did you come to learn about

12   all those things without reading the news?

13        A.    One is Facebook because there's

14   articles on his name that he posted from

15   Newsday.  Other, I don't know maybe the post

16   maybe, plus his own conversations that he's

17   put on Facebook.

18        Q.    You reviewed this on Facebook?

19        A.    Yes.

20        Q.    What have you reviewed on

21   Facebook in regards to this matter?

22        A.    I have read his comments and

23   there is a lot of comments.  They just go on

24   and on from everybody else, you know people

25   comment all the time on that.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

187

1                   ANTHONY DAVIDA

2          Q.    Anything else?

3          A.    No.

4          Q.    When you say his side, what do

5    you mean his side?

6          A.    John Lepper's position.

7          Q.    Did you ever give your own

8    position?

9          A.    No.

10         Q.    Village of Babylon ever give a

11   position?

12               MR. TOSCA:  Objection.

13               You can answer.

14         Q.    We stand by what was said earlier

15   regarding following the rules and the codes

16   and the procedures, that's our side.

17         A.    And somebody rejected an

18   application that was submitted by John Lepper;

19   is that your side?

20               MR. TOSCA:  Objection.

21               You can answer over objection.

22         A.    I don't know.

23         Q.    You don't know, but that's your

24   side.

25               MR. TOSCA:  Objection.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

188

                        ANTHONY DAVIDA

1

2              You can answer over objection.

3       A.     I don't know if he ever put an

4    application in.

5       Q.     Who would know?

6       A.     Building Department.

7       Q.     Who else?

8       A.     Steve Fellman.

9       Q.     Aside from Stephen Fellman, who

10   else?

11      A.     That's it that I would think of.

12      Q.     Do you agree with quote, someone

13   could get hurt, then you guessed it, the

14   Village could get sued and you, the taxpayers

15   would pay, end quote, reading from the

16   second-to-last paragraph of Plaintiff's

17   Exhibit 1?

18      A.     Um-hum.

19      Q.     What, if anything, did the

20   Village of Babylon do to determine the safety

21   of the tree house?

22              MR. TOSCA:  Objection.

23              You can answer over objection.

24      A.     We had the building inspector go

25   over.

Realtime Reporting Inc.  800-373-7172   realtimereporting.com

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

190

1                    ANTHONY DAVIDA

2     that you might not remember, maybe you

3     remember now after seeing this?

4          A.    No.

5          Q.    You're not a building inspector.

6     Correct?

7          A.    No.

8          Q.    You have no training on the

9     Village of Babylon code.  Correct?

10         A.    No.

11         Q.    You have no training in building

12    safety.  Correct?

13         A.    No.

14         Q.    But you made a determination

15    about the safety of this tree house.  Correct?

16              MR. TOSCA:  Objection.

17              You can answer over objection.

18         A.    Just by my observation of looking

19    at three year old kids, five year old kids.

20         Q.    The answer is yes.  Right?

21              MR. TOSCA:  Objection.

22         A.    Yes.

23         Q.    Just like you're sitting in a

24    chair.  Correct?

25         A.    Yes.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

191

1                     ANTHONY DAVIDA
2          Q.     Just like you drove a car here.
3    Correct?
4          A.     Yes.
5          Q.     The answer to the question is,
6    yes, you made a determination about the safety
7    of John Lepper's tree house?
8                 MR. TOSCA:  Objection.
9                 You can answer.
10         A.     Yes.
11         Q.     When was this newsletter sent?
12         A.     Before the holidays.
13         Q.     Holidays of which year?
14         A.     I'm thinking last year.  There
15   was no date on this, so I would think it was
16   probably this past year.  I don't know how
17   many years this has been going on, it's been
18   going on two years, three years.  This could
19   be two years ago.  I don't know.  There is no
20   date on there.
21                MR. MORRIS:  Counsel, you
22         produced this on September 16, 2019.  It
23         should have been produced months before.
24                Is this the entire letter?
25                MR. TOSCA:  What are you saying,

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

192

1                    ANTHONY DAVIDA

2          sir?

3                    MR. MORRIS:  Is this the entire

4          letter, Plaintiff's Exhibit 1.

5                    MR. TOSCA:  What we produced in

6          discovery we produced.

7                    MR. MORRIS:  Has any portion of

8          this letter been omitted and redacted?

9                    MR. TOSCA:  I'm not going to

10         answer your questions.  I'm not here for

11         your deposition.

12                   MR. MORRIS:  Where is the date?

13                   MR. TOSCA:  You can ask --

14                   MR. MORRIS:  Where is the header?

15                   MR. TOSCA:  Sir, I'm not

16         answering your questions.  I'm not here

17         for a deposition.

18         Q.    Mr. Davida, by whom was this

19    letter distributed?

20         A.    I don't follow your question.

21         Q.    Someone sent the letter, right?

22         A.    It was in a program.

23         Q.    Who sent the program?

24         A.    Came by mail.

25         Q.    Program had more than one page,

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

193

                    ANTHONY DAVIDA
1
2    right?
3         A.    Yes.
4              MR. MORRIS:  Counsel, when are we
5         getting the rest of these pages?
6         A.    The other pages --
7              MR. TOSCA:  Objection.
8              I'm not going to answer
9         questions.  Please do not pose questions
10        to me, Counsel, okay.
11        Q.    Does this letter comport with
12   your understanding of the issuance of the
13   summons and the removal of the tree house?
14        A.    Yes.
15        Q.    Did you ever discuss the
16   circumstances contained in this letter with
17   Mayor Scordino?
18        A.    Yes.
19        Q.    When?
20        A.    I don't remember.
21        Q.    Do you know what year?
22        A.    A year ago.
23        Q.    Do you know what date?
24        A.    No.
25        Q.    Do you know a month?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

194

1                    ANTHONY DAVIDA

2          A.     Nope.

3          Q.     Do you know whether there was

4    snow on the ground?

5          A.     Nope.

6          Q.     Do you know day -- whether it was

7    day or night?

8          A.     Nope.

9          Q.     Was it in the course of your

10   duties as a Village of Babylon trustee?

11         A.     I would say yes.

12         Q.     In the course of your activities

13   as a Village of Babylon elected official, did

14   you direct any employee of the Village of

15   Babylon to prosecute John Lepper with respect

16   to a tree house on 59 Cockenoe, Village of

17   Babylon?

18         A.     No.

19                MR. TOSCA:  Objection.

20         Q.     In the course of your activities

21   as Village of Babylon elected official, did

22   you direct any employee of the Village of

23   Babylon to remove the tree house on

24   59 Cockenoe, Village of Babylon?

25                MR. TOSCA:  Objection.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

195

1                    ANTHONY DAVIDA

2              You can answer.

3         A.    No.

4         Q.    What, if anything, caused you to

5    initiate the investigation of the tree house

6    designed for the Lepper children?

7         A.    Say that once more, please.

8              (Whereupon, the requested portion

9         was read back by the reporter.)

10             MR. TOSCA:  Objection.

11             You can answer over objection.

12        A.    I drove by and saw it.

13        Q.    Drive by sighting?

14        A.    Yeah.

15             MR. MORRIS:  Perhaps this is the

16        time to call the Judge.

17             MR. MORRIS:  Mr. Davida, we are

18        going to call the Judge, I'm going to

19        respectfully request that you step out

20        for a moment, please.

21             THE WITNESS:  Sure.  Absolutely.

22             (A call was placed to Judge

23        Brown's Chambers.)

24             MALE VOICE:  Good afternoon.

25        Judge Brown's chambers.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

                                                      196

                              ANTHONY DAVIDA

1

2              MR. MORRIS:  Good afternoon.

3        This is attorney Cory Morris.  With me

4        is defense counsel on Lepper versus

5        Village of Babylon.

6              MALE VOICE:  Do we have the Court

7        reporter available?

8              MR. MORRIS:  She is taking down

9        every word.

10             MALE VOICE:  Hold on one second.

11       Let me run and see if I can grab the

12       Judge for you.  He may have a quick

13       moment for you on that privilege issue.

14             MR. MORRIS:  Thank you.

15             THE COURT:  This is Judge Brown.

16       Can you hear me okay?

17             MR. TOSCA:  Yes, your Honor.

18             MR. MORRIS:  Yes.

19             THE COURT:  Do you have a court

20       reporter taking this down?

21             MR. MORRIS:  Yes.

22             THE COURT:  Okay.

23             Very briefly, because I have four

24       other matters waiting.

25             What is the problem?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

197

1           ANTHONY DAVIDA

2           MR. MORRIS:  Judge, this is

3       attorney for the plaintiff.

4           There are open work sessions,

5       they're open to the public.  Counsel has

6       put forward attorney-client privilege.

7           The second part of this really is

8       on the 16th of September, we received

9       quote a letter from the Mayor about tree

10      houses and other things where it states

11      that, quote, I referred the neighbor's

12      complaints to our building inspector,

13      end quote.  Not only does this witness

14      not seem to know anything about this

15      letter other than receiving it, and we

16      just received it two weeks ago, this

17      witness here is being precluded from

18      testifying about things in open

19      session on the basis of attorney-client

20      privilege.

21          THE COURT:  I can't say anything

22      about what the witness knows or doesn't

23      know.  You can inquire.

24          Who is precluding whom from

25      testifying about what?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

198

1           ANTHONY DAVIDA

2           MR. TOSCA:  I'm not precluding

3      anyone from testifying, your Honor.  If

4      I may be heard.  I represent the

5      defendants.

6           We have Mr. Davida testifying

7      regarding the tree house.  He was the

8      person who notified the Building

9      Department abut the tree house.  At this

10     point in the testimony that counsel is

11     referring to, the questions were asked

12     about Mr. Davida's conversations during

13     a time when Gerard Glass who is the

14     Village attorney was updating them on

15     the litigation in the lower court, the

16     justice court, this litigation, I guess;

17     and we're asserting attorney-client

18     privilege.

19          While the sessions are in open

20     court, Mr. Davida testified no one was

21     there during these work sessions that

22     Mr. Morris is asking about, and I'm

23     objecting because there were no third

24     parties present.  There was the Village

25     board and their attorney and I'm

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

199

1                    ANTHONY DAVIDA

2          asserting, as to the substance of those

3          discussions, I'm asserting

4          attorney-client privilege, your Honor.

5                    THE COURT:  Let me understand.

6                    You've established on the record

7          that the only people present were the

8          members of the board and the lawyer?

9                    MR. TOSCA:  Yes.

10                    THE COURT:  Mr. Morris, you agree

11          with that?

12                    MR. MORRIS:  Yes, I do.

13                    THE COURT:  Then it does seem

14          like at that point, there is no sort of

15          violation of privilege because at that

16          point, it is a private meeting.

17                    MR. MORRIS:  Judge, it's an open

18          session.  Right before they meet in

19          public, the public is entitled to be

20          there.  It's done in open session in

21          public.

22                    MR. TOSCA:  With the exception of

23          this, your Honor --

24                    THE COURT:  What does that mean,

25          done in public?  Nobody else was there.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

200

1          ANTHONY DAVIDA

2    Correct?

3          MR. MORRIS:  That's what he says

4    as to one incident that he remembers.

5    He can't seem to remember anyone else.

6          THE COURT:  Okay.

7          If nobody else is there, I'm

8    going to find that there is a basis for

9    asserting the privilege.  It was a

10   privileged conversation.  If someone

11   walked in the room, then it changes.

12         MR. MORRIS:  Understood, your

13   Honor.

14         I guess I'll question him as to

15   if anyone walked in the room.

16         Still leads us to the bigger

17   question, not Deborah Longo but the

18   Mayor because, and again, we just got

19   this two weeks ago, otherwise I would

20   have brought it to your Honor's

21   attention when we made several

22   applications to the Court where the

23   Mayor says that he received complaints

24   from the homeowner's own neighbors.  And

25   not only that, this witness here, along

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

201

1           ANTHONY DAVIDA

2      with Mr. Fellman and along with

3      Mr. Glass are saying that the Mayor is

4      intricate in this process here.  He

5      literally sent a letter, it seems like a

6      letter which was part of a larger

7      newsletter, to persons unknown

8      throughout the Village of Babylon

9      about this tree house.

10          THE COURT:  Mr. Morris, what are

11      you asking of me?

12          MR. MORRIS:  I just want to

13      depose the Mayor.  He is a named

14      defendant.

15          THE COURT:  We'll have to deal

16      with that another time.

17          Why don't you finish the

18      deposition that you're doing and then

19      we'll get back to that later.

20          Fair enough?

21          MR. MORRIS:  Understood, your

22      Honor.

23          I make it on the record now

24      because it is the 18,th and I know your

25      Honor is busy, it's we have 12 days,

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

                                                          202

1                 ANTHONY DAVIDA

2          I'll make myself available as soon as

3          possible.

4               THE COURT:  Bear in mind, when we

5          left this, as I recall, with you asking

6          to depose the Mayor, I said conduct the

7          other depositions, see if you need the

8          Mayor.  What you're telling me right now

9          is it sounds like you need the Mayor,

10         but why don't you take it back to your

11         office, review it, and if you think

12         that's appropriate, talk to counsel.  If

13         counsel continues to disagree, then you

14         get back to me.

15              Fair enough?

16              MR. MORRIS:  I can ask counsel

17         right now.  I don't think he's going to

18         agree, your Honor.

19              THE COURT:  I'm not going to do

20         that.  That's a meet and confer you'll

21         have later.

22              All right?

23              MR. MORRIS:  Okay.

24              THE COURT:  Good look.

25              MR. MORRIS:  Thank you, your

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

203

1            ANTHONY DAVIDA

2      Honor.

3            MR. TOSCA:  Thank you.

4            THE COURT:  Bye.

5            MR. MORRIS:  Before we bring him

6      in, I assume you're not going to produce

7      the Mayor.

8            MR. TOSCA:  I assume we'll talk

9      about it later.  Let's get the

10     deposition done.  You want to meet and

11     confer, we'll meet and confer.

12           There's lots of other stuff we

13     have to do, Cory.  And the building --

14     I'm sorry, the building, the tree house

15     has to be looked at, so we still have

16     expert discovery we have to go through,

17     I presume.

18           I don't know, is that discovery

19     done by October 1?

20           MR. MORRIS:  We have scheduling

21     order here.

22           MR. TOSCA:  Yeah, well, number 1,

23     I think we're going to need an extension

24     of that order in any event.

25           MR. MORRIS:  This is

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

204

1          ANTHONY DAVIDA
2     unacceptable.  We are receiving this,
3     there's text messages --
4          MR. TOSCA:  We --
5          MR. MORRIS:  Let me finish
6     because we're on the record.
7          There's text messages.  This
8     newsletters is incomplete, it looks like
9     there might be phone calls, voice mails,
10    other things this client is testifying
11    to that we have not been provided.
12         I'm going to call him back in
13    here.  We can meet and confer, but I
14    just ask you with a simple yes or no
15    whether you will voluntarily produce the
16    Mayor?
17         MR. TOSCA:  I'm not prepared to
18    give you an answer to that at this
19    point.
20         MR. MORRIS:  Understood.
21         We'll bring him back --
22         MR. TOSCA:  We'll bring him back,
23    let him get his deposition.  If you want
24    to do a meet and confer, we'll do that.
25         MR. MORRIS:  Okay.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

205

1                    ANTHONY DAVIDA

2              MR. TOSCA:  It can't be by

3        Friday.  I've got my day booked up for

4        tomorrow, and my day booked up for

5        Friday.  We can do it next week.

6              MR. MORRIS:  Let's do it today.

7        Let's bring him in and --

8              MR. TOSCA:  I can't do it today.

9        There are things I have to consider, and

10       I'm not prepared to do it today, so why

11       don't we let him finish his deposition.

12       We'll talk about this on Monday.

13             But we also need a site

14       inspection.  We can talk about that too.

15       We also need to discuss whether or not

16       you're going to produce your clients,

17       the children as witnesses.  We need to

18       discuss that, because if you are,

19       then --

20             MR. MORRIS:  Counsel, note my

21       objection.

22             Not only that, you have never

23       noticed the children.  That's the first

24       time we have ever heard that you even

25       were considering taking the children.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

206

1                    ANTHONY DAVIDA

2              MR. TOSCA:  No, we spoke --

3              MR. MORRIS:  Let's stop because

4         we're on the record and this is my

5         record.  Unless you're going to pay.

6              MR. TOSCA:  You're not going to

7         tell me when I can talk --

8              MR. MORRIS:  Let's go off the

9         record.

10             MR. TOSCA:  Just put on the

11        record --

12             MR. MORRIS:  No.  Go off the

13        record.

14             MR. TOSCA:  I won't allow counsel

15        to tell me I cannot state --

16             MR. MORRIS:  Counsel, note my

17        objection.

18             Please stop.  Please stop.

19             MR. TOSCA:  If you don't want to

20        discuss this, but we don't discuss

21        something and tell me what I can't --

22             MR. MORRIS:  Counsel, please

23        stop.

24             MR. TOSCA:  No, I'm not going to

25        stop, Mr. Morris.

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

207

1              ANTHONY DAVIDA

2          MR. MORRIS:  Please stop.

3          We're going to bring the witness

4      back in.  Please stop.

5          MR. TOSCA:  Then let's do the

6      deposition.

7          MR. MORRIS:  Let's do that.

8          Do you want to get him or I will.

9          MR. TOSCA:  I will get him.

10     Thank you.

11         (Counsel leaves the room to get

12     the witness.)

13         MR. MORRIS:  Time now is 2:07.

14     Q.    Mr. Davida, did you discuss your

15 testimony with anyone during the break?

16     A.    No.

17     Q.    During those open sessions, did

18 anyone ever show up?

19         MR. TOSCA:  Objection.

20         Asked and answered.

21         You can answer.

22     A.    Show up to what?

23     Q.    An open session?

24     A.    You mean the work sessions that

25 we have?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

208

1                    ANTHONY DAVIDA

2        Q.     Yes.

3        A.     Well, I don't know what you're

4   referring to.

5                We had maybe one or two, couple

6   of times.

7        Q.     At those one or two, who showed

8   up aside from the board members?

9        A.     There's a woman, she came two or

10  three times, her name is Joan Crockett, like

11  Davy Crockett.

12       Q.     Did you ever talk about the

13  Lepper family tree house when Joan Crockett

14  was present?

15       A.     No.

16       Q.     Did you ever talk about the tree

17  house with any other member aside from the

18  Village of Babylon, Mr. Glass, did you ever

19  have any discussion, anyone ever show up aside

20  from them?

21       A.     No.

22       Q.     Mr. Davida, you have had the same

23  phone now for more than two years?

24       A.     Yes.

25       Q.     What kind of phone is this?

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

209

1                    ANTHONY DAVIDA

2        A.     Android.

3        Q.     What is the make and model of

4    that Android?

5        A.     I don't know.  It's a Motorola.

6    I don't know what make and model, Android.

7        Q.     You have had that phone for more

8    than two years?

9        A.     Yes.

10       Q.     You never provided that phone to

11   counsel, correct?

12             MR. TOSCA:  Objection.

13       A.     No.

14   RQ           MR. MORRIS:  I call for the

15           continued preservation of that phone,

16           all voice, text, and electronic mails

17           from the accounts of this witness as

18           referenced.

19                And we're going to reserve the

20           right to recall this witness at this

21           time.

22                Having heard no other objection,

23           the record is closed.

24             MR. TOSCA:  Hold on.  I object.

25                I thought you were going to

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

210

1                    ANTHONY DAVIDA

2        continue with your questioning.

3                Objection.

4                MR. MORRIS:   Time now is 2:09.

5                Thank you very much.

6                (Time noted:   2:09 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

211

1

2              A C K N O W L E D G M E N T

3

STATE OF NEW YORK      )
4                             ) SS:
COUNTY OF              )

5

6          I, ANTHONY DAVIDA, hereby certify

7   that I have read the transcript of my

8   testimony taken under oath in my deposition of

9   September 18, 2019; that the transcript is a

10  true, complete and correct record of my

11  testimony, and that the answers on the record

12  as given by me are true and correct.

13

14

15

16          _____

17                    ANTHONY DAVIDA

18

19  Signed and subscribed to before
    me, this _____day
20  of_____, 20__.

21  _____
    Notary Public, State of New York
22

23

24

25

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

212

1

2          ----------------I N D E X--------------------

3     WITNESS              EXAMINATION BY        PAGE

4     ANTHONY DAVIDA     MR. MORRIS           5

5

6          ------------DOCUMENT REQUESTS-----------------

7     Page   209    Continued preservation of that

8                   phone, all voice, text and

9                   electronic mails from the

10                  accounts of this witness as

11                  referenced

12

13         -------INFORMATION TO BE FURNISHED-----------

14    Page   7    Village of Babylon email address

15         27    Director of Engineering's full name

16         54    Names on literature or written

17                documentation on that campaign that

18                witness handed out

19

20         ----------------EXHIBITS--------------------

21    PLAINTIFF'S                      FOR I.D.

22    1    Letter from the Mayor about

23         tree houses and other things    171

24

25                (Counsel retained exhibits.)

John Lepper v. Village of Babylon
ANTHONY DAVIDA - September 18, 2019

213

1

2                C E R T I F I C A T E

3

4    STATE OF NEW YORK        )
                              ) SS:
5    COUNTY OF SUFFOLK        )

6

7           I, STEPHANIE O'KEEFFE, a Notary

8    Public within and for the State of New York,

9    do hereby certify:

10          That ANTHONY DAVIDA, the witness

11   whose deposition is hereinbefore set forth,

12   was duly sworn by me and that such deposition

13   is a true record of the testimony given by

14   such witness.

15          I further certify that I am not

16   related to any of the parties to this action

17   by blood or marriage; and that I am in no way

18   interested in the outcome of this matter.

19          IN WITNESS WHEREOF, I have hereunto

20   set my hand this 18th day of September, 2019.

21

22

23

24                      _____

25                      STEPHANIE O'KEEFFE








Case 2:16-cv-07011-JMA-ARL   Document 123-2   Filed 07/28/21   Page 351 of 498 PageID #:



*The Honorable John T. Rafter, Village Justice*

# State of New York

## BABYLON JUSTICE COURT

JOHN LEPPER,

*Plaintiff*

−v−

VILLAGE OF BABYLON

RALPH SCORDINO, *Mayor*, KEVIN MULDOWNEY, *Deputy Mayor*, ROBYN SILVESTRI, *Village Trustee*, TONY DAVIDA, *Village Trustee*, MARY ADAMS, *Village Trustee*

*Defendants,*

# NOTICE OF LITIGATION HOLD

*Concerning and Relating to Informations*

## № 494213, 494214, 494215, 494222

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
33 Walt Whitman Rd, *suite* 310
Dix Hills, New York 11746
Phone: (631) 450–2515
FAX: (631) 223–7377
Email: Cory.H.Morris@protonmail.com

VICTOR JOHN YANNACONE, JR., (VY6405) *of counsel*
Phone: (631) 475–0231
Email: barrister@yannalaw.com

To: Deborah Longo, Planning Board, Village of Babylon
153 West Main Street
Babylon, New York 11702

Suzanne Schettino, Department of Public Works
153 West Main Street
Babylon, New York 11702

Gerard Glass, Esq., Village of Babylon Attorney
72 East Main Street, Suite 3
Babylon, New York 11702

Hon. John T. Rafter, Babylon Village Justice
153 West Main Street
Babylon NY 11702

Stephen Fellman, Village of Babylon Building Inspector
153 West Main Street
Babylon, New York 11702

Village of Babylon Mayor Ralph Scordino,
Village of Babylon Deputy Mayor Kevin Muldowney,
Village of Babylon Trustee Robyn Silvestri,
Village of Babylon Trustee Tony Davida,
Village of Babylon Trustee Mary Adams,
153 West Main Street
Babylon, New York 11702

Town of Babylon
Attn: Babylon Town Attorney;
200 Sunrise Hwy
Lindenhurst, NY 11757

Suffolk County District Attorney's Office
200 Central Drive South
Riverhead, New York 11901

2

## LITIGATION HOLD NOTICE

PLEASE TAKE NOTICE, that on behalf of JOHN LEPPER ("Claimant" or "Plaintiff") pursuant to Federal Rules of Civil Procedure and the New York Civil Practice Law and Rules, that each of you and all of you, and each attorney and law firm who represents you or any of you, and each attorney and law firm who has represented you in the past with respect to any matter involving the subject matter of this litigation is directed to immediately implement a "litigation hold" such that any documents, data, or electronically stored information (ESI) is and shall be preserved and maintained in its native format, and in accordance with the following safeguards:

### Electronic data to be preserved

1.   The following types of electronic data and/or the electronic data of the subsidiaries, divisions, agents, employees and relevant third-parties or vendors of each named defendant should be preserved in native format, in accordance with the steps set forth below:

   1.1.   All electronic mail and information about electronic mail (including message contents, header and logs of e-mail system usage) sent or received by any custodian relating to the subject matter of this litigation;

   1.2.   All databases, including field and structural information as well as records, containing any information relating to the subject matter of this litigation;

   1.3.   All logs of activity on any computer systems that have been used to process or store data containing information relating to the subject matter of this litigation;

      1.3.1.   All other electronic data containing information about, or relating to the subject matter of this litigation, including but not limited to: All word processing files and file fragments;

      1.3.2.   Electronic data created by applications which process financial, accounting and billing information;

3

1.3.3.   All electronic calendar and scheduling program files and file fragments;

1.3.4.   All electronic spreadsheet files and file fragments.

### On-Line Data Storage

2.   With regard to online storage and/or direct access storage devices including, but not limited to, any file server or data array (e.g. RAID) physically or remotely attached to the computers of any named Defendant through wired or wireless networking, the Plaintiff demands that you and each of you do not modify or delete any existing electronic data files that meet the criteria set forth above, unless an exact mirror image has been made and will be preserved and kept accessible for purposes of this litigation.

### Off-Line Data Storage, Backups and Archives

3.   With regard to all electronic media used for offline storage, such as magnetic tapes and cartridges, CDs, DVDs, USB devices (e.g. 'thumb drives') and the like, used with any computer, file server or data array (e.g. RAID), whether physically or remotely attached to the computers of any named Defendants through wired or wireless access that contain any electronic information relating to the subject matter of this litigation, the Plaintiff demands that you an each of you stop any activity that may result in the loss of such data. This demand is intended to cover all removable electronic media used for data storage in any device, including those containing backup and/or archive data sets.

### Preservation of Replaced Data Storage Devices

4.   You and each of you to whom this notice is directed shall preserve any electronic data storage devices and/or media that may contain data relating to the subject matter of this litigation and that it replaces for any reason.

### Fixed Drives on Stand-Alone Personal Computers and Network Workstations

5.   You and each of you to whom this notice is directed shall not alter, delete or over-write relevant electronic data that existed on fixed drives attached to stand-alone microcomputers, network workstations and/or data arrays (e.g. RAID) at the time of filing of

4

this action, or perform other procedures such as data compression and disk defragmentation or optimization routines that may impact such data, unless an exact mirror image has been made of such active files and directory listings (including hidden and/or deleted files) for all directories containing such files and that it completely restore any altered, deleted or over-written electronic files and file fragments and arrange to preserve all such data during the pendency of this litigation.

## Applications and Utilities

6. You and each of you to whom this notice is directed shall preserve copies of all applications and utilities that may be used to process electronic data discussed in this letter.

## Log of System Modifications

7. You and each of you to whom this notice is directed shall maintain an activity log of document modifications made to any electronic data processing system that may affect the capability of any system to process any electronic data relating to the subject matter of this litigation.

## Personal computers and all other devices used by employees, independent contractors and others under the control of you and each of you

8. You and each of you to whom this notice is directed shall immediately take the following steps with regard to all fixed drives attached internally, externally, physically and/or remotely by wired or wireless access to any personal computers used by any custodian under the control of you and each of you:

   8.1. An exact mirror image must be made of all electronic data relating to the subject matter of this litigation;

   8.2. Full directory listings (including hidden and deleted files) for all directories and subdirectories must be written;

9. You and each of you to whom this notice is directed shall immediately take the following steps with regard to all removable drives attached internally, externally, physically and/or remotely by wired or wireless access to any personal computers used by any custodian under the control of you and each of you:

5

9.1. All removable electronic media, such as floppy diskettes, magnetic tapes and cartridges, CDs, DVDs, USB devices (e.g. 'thumb drives') and the like that existed before the delivery of this letter and that contain relevant data should collected, maintained intact and kept available during the pendency of this litigation.

10. You and each of you to whom this notice is directed shall immediately take the following steps with regard to all other relevant devices used by any custodian under the control of you and each of you, whether it is internally, externally, physically and/or remotely attached by wired or wireless access to any system used by you and each of you:

10.1. All cellular phones, personal data assistants (e.g. Blackberry, iPhones, iPads), tablets, and/or any other device that stores electronic information (e.g. RAM on printing devices or FAX machines) and the like that existed before the delivery of this letter and that contain relevant data should collected, maintained intact and kept available during the pendency of this litigation, together with voicemail messages, text messages (SMS or otherwise), instant messages, and other communications and notes.

## Evidence Created After Receipt of This Notice

11. Any relevant electronic data created after receipt of this Notice should be preserved in a manner consistent with the directions in this Notice.

## Metadata

12. As it is relevant to all items cited hereinabove, you and each of you is instructed to preserve all metadata and not to alter, delete and/or over-rite any metadata.

## Other materials concerning any of the Plaintiffs

13. You and each of you to whom this notice is directed shall immediately identify, protect, and preserve all other materials in whatsoever form they may exist which relate to the Plaintiffs herein.

**PLEASE TAKE FURTHER NOTICE**, that all counsel must advise their clients of a litigation hold instruction and direct them to preserve all electronically stored information (ESI) contained in, but not limited to, the plaintiff's laptop computer(s), home desktop computer(s), cellular phone(s), personal digital assistant(s), home computer(s), business computer(s), emails, email accounts, home telephones, work telephones, text messages, IM accounts, voicemails, and other electronic storage devices, etc., including all Meta Data including, but not limited to, information embedded in computer files reflecting the file creation date, when it was last accessed or edited, by whom  it was last accessed or edited, and previous versions or editorial changes; System Data including, but not limited to, the computer records of routine transactions, functions, password access requests, the creation or deletion of files and directories, maintenance functions, and access to and from other computers, printers, or communication devices, and Backup Data including, but not limited to, all off-line tapes or disks created and maintained for short term disaster recovery.

**PLEASE TAKE FURTHER NOTICE**, that this demand is a continuing demand and this demanding party will object at the time of trial to the introduction of any testimony or evidence which flows from the existence of such documents or information which has not been properly preserved and made available for production.

**PLEASE TAKE FURTHER NOTICE**, that all records which might be exempt or are claimed to be exempted under the Freedom of Information Law, Public Officers Law, or the Freedom of Information Act must be preserved in accordance with this litigation hold notice.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

DATED AT   Dix Hills, New York
           November 16, 2018

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
33 Walt Whitman Rd, *suite* 310
Dix Hills, New York 11746
Phone: (631) 450–2515
FAX:   (631) 223–7377
Email: Cory.H.Morris@protonmail.com

VICTOR JOHN YANNACONE, JR., (VY6405) *of counsel*
Phone: (631) 475–0231
Email: barrister@yannalaw.com

8

LONG ISLAND / **SUFFOLK**

# Cops: Resident of drug overdose house arrested

**By WILLIAM MURPHY**
william.murphy@newsday.com
*Updated May 4, 2012 4:21 PM*

A house in Babylon Village that had been the scene of drug overdoses was raided by Suffolk County police earlier this week and resulted in the arrest of one person and the seizure of illegal drugs and a handgun, police said Friday.

Christian Repetto, 24, who lived in the house at 63 Wyandanch Ave. that has been the subject of complaints about drug activity, was charged with several counts of criminal possession of a controlled substance and a charge of possessing an illegal .380 handgun, Insp. Gerard Gigante, commanding officer of the First Precinct, said.

The inspector said ambulances went to the house three times in the past six months and each time took someone to the hospital for treatment of a drug overdose, none of which were fatal.



"In response to community complaints, the precinct initiated an investigation into drug activity at 63 Wyandanch Avenue and on May 2nd at about 12:45 a.m. executed a search warrant," Gigante said.

ADVERTISING

He said officers who executed the search warrant found quantities of marijuana, heroin and prescription drugs, including Xanax and Oxycodone.

Repetto pleaded not guilty at his arraignment, the district attorney's office said. He is due back in court May 12.

## Get the Breaking News newsletter!

Get the latest breaking news as it happens.

Email address          Sign up

By clicking Sign up, you agree to our privacy policy.

**By WILLIAM MURPHY**
william.murphy@newsday.com

1
2

2    Kathleen Matty Court Reporting

3

4    Expedited and researched minutes as per John

5    Lepper's request on 1/3/18.

6

7    Minutes from 8/14/18. 7 pages @ 6.00 and

8    $35.00 to research.

9

10   Total:                          $77.00

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                                            1

2   VILLAGE COURT OF THE

3   VILLAGE OF BABYLON

4   -----------------------------------------------X

5   JOHN LEPPER,

6

7

8

9          -against-

10

11

12                     Defendant.

13

14   -----------------------------------------------X

15

16            153 West Main Street

17            Babylon, New York

18

19

20            August 14, 2018

21            2:20 p.m.

22

23   B E F O R E:  John T. Rafter

24                           **ORIGINAL**

25

2

A P P E A R A N C E S:


GERARD GLASS, ESQ.
    Attorney for Village of Babylon
    72 East Main Street
    Babylon, New York 11702

3

THE CLERK:  John Lepper.

MR. LEPPER:  Yes.

MR. GLASS:  For the Village
of Babylon Gerard Glass.

JUDGE RAFTER:  Good
afternoon, Mr. Glass.

MR. GLASS:  Good afternoon,
Judge.

Judge, this matter is on
for an arraignment.

We'd ask for after the
arraignment a conference date of
approximately a month out.

We had an opportunity to
conference this matter with Mr.
Lepper.

He has met with the
building inspector in terms of
the Building Inspector's
requirements in order to move
ahead and make an effort to
legalize the structure.

And that includes that he
has to provide plans that are

4

stamped by an architect or engineer.

He has to submit a site plan showing the setbacks.

Then the matter will be referred to the building inspector.

Mr. Lepper has indicated that he does not agree with the Building Inspector's determination.

I have advised him not only if there are area-related issues that need to go to the Zoning Board, but he can also appeal them -- the Building Inspector's determination itself, if he believes he should not be before the Zoning Board at all.

So I think we have an understanding as to what he needs to move forward.

The building inspector has also served him with a Notice,

5

that is with any structure that

does not have a CO, that the

structure should not be occupied.

The Village is bound to

give that advisement.

He has given it to Mr.

Lepper in writing until such time

as the structure is legalized.

JUDGE RAFTER:  So, we will

arraign Mr Lepper at this time.

Mr. Lepper, then as to

Information 494213 which alleges

that on July 11th, at 3:00 p.m.,

construction was undertaken at

the premises located at 59

Cockonoe Avenue in the Village of

Babylon in violation of Babylon

Village Code 365.26 you wish to

plead not guilty; is that

correct?

MR. LEPPER:  Yes, Your

Honor.

JUDGE RAFTER:  A plea of

not guilty is entered on your

6

behalf as to that charge.

Is September 11th agreeable?

MR. GLASS:  That is fine, Judge --

Why don't we use three weeks as a control date.

And if he needs more time, we can speak about that.

JUDGE RAFTER:  We will adjourn it then to September 4th as opposed to September 11th.

MR. GLASS:  People ready, Judge.

JUDGE RAFTER:  So noted.

7

C E R T I F I C A T E

STATE OF NEW YORK)

                    ss:

COUNTY OF SUFFOLK)


     I, KATHLEEN MATTY, a Notary Public within

and for the State of New York, do hereby certify:

     that I am not related to any of the

parties to this action by blood or marriage;

and that I am in no way interested in the

outcome of this matter.

     IN WITNESS WHEREOF, I have hereunto set my

hand this 7th day of January, 2019.




               _Kathleen Matty_____

               KATHLEEN MATTY.

1    VILLAGE COURT OF THE

2    VILLAGE OF BABYLON
     ------------------------------------------------X

3
     JOHN LEPPER,
4

5

6                                Defendant.

7

8

9    ------------------------------------------------X

10

11
                              153 West Main Street
12                            Babylon, New York

13
                              September 4, 2018
14                            2:39 p.m.

15

16
     B E F O R E:    JOHN T. RAFTER
17

18

19

20

21

22

23

24                                        **COPY**

25

1       A P P E A R A N C E S:

2
                GERARD GLASS
3                   Attorney for VILLAGE OF BABYLON
                    72 East Main Street
4                   Babylon, New York 11702

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              MR. GLASS:  Gerard Glass, 72 E. Main

2       Street, 3B, Babylon, New York 11702.

3              MR. LEPPER:  Good afternoon, Your

4       Honor.

5              MR. GLASS:  Judge, I believe this

6       matter is on for arraignment.

7              JUDGE RAFTER:  Have you had a

8       conference with Mr. Lepper?

9              MR. GLASS:  I have, Judge.  My

10      understanding in speaking with the Building

11      Department is the reason that new summons

12      were issued was that there was additional

13      work done to this treehouse structure.  Mr.

14      Lepper has taken the position that the

15      structure itself is exempt from building

16      code requirements.  The Village takes

17      contrary position.  The building inspector

18      and myself are prepared to move forward with

19      this.

20             We would propose that upon entry of not

21      guilty plea today to the new charges, that

22      this be joined with the existing charges and

23      put over to next week if that's the date

24      that the other charges are on, which I

25      believe it is.

 1              JUDGE RAFTER:  I don't believe Mr.

 2      Lepper was arraigned on the other charges --

 3      we did actually arraign Mr. Lepper back in

 4      August.

 5              Okay, Mr. Lepper, do you wish to plead

 6      not guilty to the other remaining charges?

 7              MR. LEPPER:  Your Honor, is there

 8      anyway we could be heard today?

 9              JUDGE:  RAFTER:  We're not going to

10      have a trial today.

11              MR. LEPPER:  Okay, I thought that was

12      why we agreed on August 14th for today.

13              JUDGE RAFTER:  I believe that there was

14      a discussion at that time.  I think there

15      was a thought process that this could be

16      resolved with regard to the various charges,

17      but that is not the case.

18              Will you be ready next week, Mr. Glass?

19              MR. GLASS:  I will be.

20              JUDGE RAFTER:  And you'll be ready for

21      trial?

22              MR. LEPPER:  I'm here today, Your

23      Honor.

24              I was charged with the same charges

25      from the first violation.

1                      THE RAFTER: Well each day can be a

2     continued violation.

3                      MR. LEPPER: I understand.

4                      JUDGE RAFTER: So then firstly as to

5     Information 494214 on July 12, 2018 at

6     3:00 p.m. construction was undertaken

7     without the requisite permit at the premises

8     located 59 Cockonoe Avenue in violation of

9     Code Section 365.26; do you wish to plead

10     not guilty as to that?

11                     MR. LEPPER: Yes, Your Honor.

12                      JUDGE RAFTER: Plea of not guilty is

13     entered on your behalf as to that

14     Information.

15                   Information 494214 alleges the same

16     offense on July 13th at 3:00; do you wish to

17     plead not guilty as to that as well?

18                     MR. LEPPER: Yes, Your Honor.

19                      JUDGE RAFTER: Plea of not guilty is

20     entered on your behalf as to that charge.

21                   Lastly, as to Information 494222 it is

22     alleged on August 21, 2018 the same offense

23     occurred and you wish to plead not guilty as

24     to that; is that correct?

25                     MR. LEPPER: Yes, Your Honor.

1              JUDGE RAFTER:  A plea of not guilty is

2        entered on your behalf as to that charge as

3        well.

4              We'll set this matter down for trial

5        then for next week, September 11th.

6              MR. GLASS:  Judge, for the record just

7        so it's clear here, I know there was

8        electric at one point that was connected to

9        the treehouse.  The understanding I have is

10       that the electric has been removed.  It's my

11       further understanding that the building

12       inspector has directed that there be no

13       further work, just so we're clear here,

14       concerning the treehouse, that there are to

15       be no persons in the treehouse, that this

16       structure is uncertain as to its ability to

17       sustain weight, railing, etcetera, and the

18       building inspector has direct concerns that

19       he asked that I put on the record that the

20       defence here is to stop work order and stop

21       use order in effect regarding the treehouse.

22             JUDGE RAFTER:  Mr. Lepper, is there any

23       electric?

24             MR. LEPPER:  There is an extension

25       cord.

1          JUDGE RAFTER: I'm going to suggest

2      that no electric be used in the treehouse

3      until the trial.

4          MR. LEPPER: Your Honor, may I say

5      something? I spoke to this gentlemen,

6      Mr. Glass, regarding the electric that's

7      going up there. It illuminates the street

8      because we found some paraphernalia in our

9      bushes over there, so I have users outside

10     in my bushes. I'm illuminating the street

11     with that light, and also a couple of other

12     lights that are hung from the tree.

13         MR. GLASS: The electric to that

14     treehouse needs to be disconnected.

15         JUDGE RAFTER: You can illuminate that

16     area without involving the treehouse.

17         MR. LEPPER: Okay.

18         JUDGE RAFTER: Yes?

19         MR. LEPPER: Actually, the light is on

20     the treehouse. It would be on the north

21     side of the treehouse.

22         JUDGE RAFTER: Can you suspend the

23     lighting from a different location?

24         MR. LEPPER: I can put another light in

25     the tree and suspend it from the tree, but

1          I'm illuminating the street that's unlit.

2              JUDGE RAFTER:  Suspend it from a tree

3          then if that's your desire but not from the

4          treehouse.

5              The other condition is that no one can

6          go into the treehouse.

7              MR. LEPPER:  I understand.  No body has

8          been in the treehouse, but I never received

9          the stop work order.  I was told that nobody

10         is to occupy the last time we met here until

11         such time that the inspector deems that it's

12         a safe structure, so nobody has occupied it.

13         When the kids go out a play, they don't go

14         up there, but I never received a stop work

15         order so I continued just to finish it.  I

16         put a door on it one day and that was pretty

17         much it.

18             JUDGE RAFTER:  Understanding the

19         charges that no permit was obtained, you

20         shouldn't undertake work.

21             MR. LEPPER:  I understand, Your Honor.

22         I was told on May 10th that I was putting up

23         a structure that might require a permit, so

24         I came down and spoke to Mr. Fellman, and on

25         May 19th I submitted, which they said they

1        would accept, a survey of my house cause we

2        did extensive work on the house since 2012,

3        but I submitted a survey with a drawing.  I

4        went to drafting school so it was like a

5        hand drawing, and also a drawing of the

6        treehouse and the location.  I submitted

7        that on May 19th and then I waited until the

8        end of June, the week before my sons

9        birthday, I started erecting it cause I

10       never heard anything back from the Village.

11               JUDGE RAFTER:  Did you submit a final

12       application for the permit?

13               MR. LEPPER:  I did.

14               JUDGE RAFTER:  And was there a decision

15       with regard to the application?

16               MR. LEPPER:  No, sir.

17               JUDGE RAFTER:  Have you inquired as to

18       what the status of the application is?

19               MR. LEPPER:  No, sir.  I started

20       putting up the walls.  As I told Mr. Fellman

21       I was putting up a treehouse for my son's

22       birthday on July 7th, so I put it up just

23       the outside walls, and I never received -- I

24       assumed that if it wasn't going to be

25       approved that I would receive a stop work

1      order somewhere right after that, which I
2      never received, so I just worked and then I
3      received the first violations.

4      JUDGE RAFTER:  You do understand that
5      obviously typically you have to apply for a
6      permit and the permit has to be issued
7      before the work begins, as opposed to the
8      work being undertaken and then possibly the
9      permit in issue being denied.

10      MR. LEPPER:  I understand that, sir.

11      JUDGE RAFTER:  With that being said,
12      don't do anything further with regard to the
13      structure or alteration of the treehouse,
14      and make sure no one goes in the treehouse.

15      MR. LEPPER:  Absolutely.

16      JUDGE RAFTER:  Is there anything else
17      you to address?

18      MR. GLASS:  No, Judge.

19      JUDGE RAFTER:  Is there anything else
20      you want to go over?

21      MR LEPPER:  Just the fact that the
22      building code states in there that a
23      structure of 90 square feet is not a
24      violation, so I don't really -- I ask --

25      JUDGE RAFTER:  I will listen to the

1        evidence, I will review the law and make a

2        decision, that's my rule.

3            MR. LEPPER:  Yes, sir.

4            JUDGE RAFTER:  We'll see you back next

5        week.

6            MR. LEPPER:  Just one more question,

7        sir.  I'm a city fireman so really September

8        11th is a tough day for me to come down.

9            JUDGE RAFTER:  So one more week with

10       the understand obviously that the conditions

11       which we've talked about have to be complied

12       with.

13           MR. LEPPER:  Absolutely.

14           JUDGE:  We'll accommodate you, Mr.

15       Lepper, and we'll adjourn it then to

16       September 18th.

17           MR. GLASS:  People are ready.

18           JUDGE RAFTER:  So noted.

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3           I, Lisa Y. Ramirez, hereby certify that the

4    Statement on the Record was held before me on the

5    4th day of September, 2018.

6        That the within statement is a true and accurate

7    record of the stenographic notes taken by me.  I

8    further certify that I am not related to any of the

9    parties to this action by blood or marriage, and

10    that I am in no way interested in the outcome of

11    this matter.

12

13

14                  LISA Y. RAMIREZ

15

16

17

18

19

20

21

22

23

24

25



**Your Name**
Kathy montalbano

**Email Address**
mont102@optonline.net

**Case Number**
12547474

**Home Address**
102 wyandanch ave
babylon New York 11702

**Home Phone Number**
6316695644

**Preferred Contact Method**
Email

**Comments/Inquiries**
Unfortunately I cannot attend todays meeting regarding the treehouse on Cockenoe Ave.
I am in full support of this tree house and have enjoyed watching it progress and am
looking forward to the finished product. Looks great and adds to the charm of the village.

Privacy
Village of Babylon is committed to protecting your privacy. You have received this email because you are a
registered user of the Village of Babylon web site solution. If you wish to stop receiving this email please contact
your system administrator.

© Village of Babylon 2011, All Rights Reserved



ZONING BOARD OF APPEALS
Bruce E. Humenik, *Chairman*
John J. Conroy, *Secretary*
Christopher Resch
Rachel A. Scelfo
Frank Seibert
Jeffrey C. Weber

INCORPORATED 1893

153 West Main Street
Babylon Village
New York 11702
(631) 669-1500

November 18, 2016

Mr. Mark Anthony Munisteri
Mark Anthony Architects
1563 Bellmore Avenue
Bellmore, NY 11710

RE:    Baldauf, 50 Thompson Avenue, Babylon, NY

Dear Mr. Munisteri,

After due consideration of the testimony given and evidence submitted, it was voted by the Board to **GRANT** this amended application for permission to maintain a garage requiring a variance to reduce the minimum side yard setback of 15 feet required for the garage to 5.27 feet proposed and to reduce the minimum side yard setback for the accessory building from 15 feet required to 3.67 feet proposed; and to **DENY** the minimum side yard setback of 15 feet required for the tree house to 7.2 feet proposed; the increase of the height limits of the accessory building from 15 feet permitted to 21.1 feet proposed and the increase of the square feet permitted for the tree house/playground from 90 square feet permitted to 192 square feet proposed. Property located in Residence A-11 District. Suffolk County Real Property Tax Map District 0102, Section 13, Block 2, Lot 6. Application made in accordance with Section 365-13.

The variance relief requested by the Applicant to maintain the tree house and build an accessory building requiring a height variances are in the nature of Area Variances and the standards of Village Law Article 7, Section 712b[3], are applicable. Accordingly, in making its determination, the Zoning Board of Appeals is required to take into consideration the benefit to the Applicant, if the Variances are granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant. In short, the legislature has dictated that a balance test be applied. The statute further requires that in making such determination, the Board shall also consider the following:

    1.    Whether an undesirable change will be produced in the character of the neighborhood, or a detriment to nearby properties will be created by the granting of the Area Variances.

NOV 21 2016

No copy provided
to parent @ 8.75

2. Whether the benefits sought by the Applicants can be achieved by some method feasible for the applicant to pursue other than Area Variances.

3. Whether the requested Area Variances are substantial.

4. Whether the proposed Variances will have an adverse effect or impact on the physical or environmental conditions of the neighborhood or community, and

5. Whether the alleged difficulty was self-created.

The consideration as to whether or not an alleged difficulty is self-created is by virtue of the statute to be considered as relevant, "but shall not necessarily preclude the granting of an Area Variance."

Pursuant to the Village Code Section 248-32, the Board of Appeals is required to consider prior to granting an approval, the criteria set forth in Section 248-32 B.1[a] through [d] and 2[a] through [1].

The Board feels that the request for the variances for the tree house (height, side yard, and area) the proposed accessory building would not be in keeping with area zoning or with the character of the neighborhood. Furthermore, there are alternative means of gaining the benefits sought under this request without the need for these variances. In particular the Board finds that:

1. The variances to reduce the minimum side yard setback of 15 feet required for the tree house to 7.2 feet proposed, the increased height from 15 ft. allowed to 21ft. proposed and to increase the square footage permitted for the tree house/playground from 90 square feet permitted to 192 square feet proposed would all be undesirable changes having an adverse impact. The limitations as to height size and setback for the accessory structure are intended to preserve open space and limit intensity of use, especially within close proximity to adjoining properties. To grant these variances, especially in the aggregate for a single accessory structure is contrary to the purposes of the ordinance.

2. The benefits can otherwise be achieved by the Applicant. In particular the applicant can reduce the size and height of the accessory structure and relocate same.

3. The requested variances are each substantial and in the aggregate the variances are even more significant because they all relocate to the same structure.

4.    The variances if granted would adversely affect the
      aesthetic characteristics having a negative impact on the
      surrounding properties.

5.    The difficulty is self-created, arising only by reason of the
      Applicant's desire to construct a tree house and an
      accessory building which exceeds the height and area limits
      and to locate the structure closer to the side yard than
      permitted.

This constitutes the decision of the Board.

Very truly yours,

JOHN J. CONROY, SECRETARY
ZONING BOARD OF APPEALS

JJC/ke

Enclosure

cc:    Ralph A. Scordino, Mayor
       Steve Fellman, Bldg. Inspector
       James Slack, Planning Board Chairman
       Patricia C. Carley, Village Clerk
       David Roth, Esq.

# VILLAGE OF BABYLON

## APPLICATION TO THE BOARD OF APPEALS
(page 2 of 4)

Description of relief sought, attach separate sheet if necessary:

We are asking for a minimum side yard setback of 7.2' for the treehouse, 5.27' for the garage and 3.67' for the shed. We are also requesting a shed height of 21.1' and a treehouse/playground of 192 s.f.)

## \*\*\* PLEASE NOTE \*\*\*

Variances required will be included whether or not listed above, as deemed necessary, and as determined by the Site Plans Examiner and the Zoning Board of Appeals, after review of the plans submitted with this application. The legal notice for this application will be derived based on the plans submitted.

1. Has a building permit been refused by Building Inspector? . $No$ . . . .

2. Is there a school, house of worship, or hospital within 500 ft. of this premises? $No$ .

3. Approximate cost of work this application is made for?$ . $45,000$ . . . .

4. Is this premises with 500 feet of (Answer Yes or No):

   $No$ . . . Boundary of any Village or Town

   $No$ . . . Boundary of any existing or proposed County, State, or Federal park.

   $No$ . . . The right of way of any existing or proposed County or State parkway, thruway, expressway, road or highway.

   $No$ . . The existing or proposed right of way of any stream or drainage Channel owned by the County or for which the County has established Channel lines.

   $No$ . . The existing or proposed boundary of any other County, State or Federal owned land.

   $Yes$ . . The Atlantic Ocean, Long Island Sound, any bay in Suffolk County, Or estuary of any of the foregoing bodies of water.

4                                                                    (Revised 7/7/2015)

# *Office of the Village Clerk*

Date received ⁣_11|10|16___  **REQUIRED RESPONSE DATE** _11/17/16_

DEPARTMENT to compile documents requested and to receive FOIL
request:
(circle)
Village Clerk
Joel
Mayor
Treasurer
Building
BA
architechural Review

(circle who to get copies) other than Village Clerk and above:

Joel

Mayor
Treasurer
Building

Total pages_____ Fee due @ .25 per page_____

Date documents will be available if not on response date_____

Letter sent_____

03/27/2013 12:45 FAX                                                                    ☒019

Case 2:18-cv-07011-JMA-AYS   Document 127-3   Filed 07/26/21   Page 389 of 498 PageID #:
5745.

11/15/16
- Ms. Parenti
  called and if
  decision ltr. is
  ready after ZBA
  mtg. notified
  for FOIL                ON

APPLIC.                           C RECORDS     RECEIVED
                                               N NOV 1 0 2016

TO: RECORDS ACCESS OFFICER
    VILLAGE OF BABYLON              12/6/16     VILLAGE CLERK'S OFFICE
    153 W MAIN ST                  - called to see if
    BABYLON, NEW YORK 11702          ck. still wanted         11 30 am
                                     FOIL - LM
I hereby apply to (check one) _____

            Or        · ✓                        cord:

  ①  Architectural revis _____  ┈┈┈┈ ⊤ 5, in regards to 50 Thompson Ave
      March 31, 2016                                    Babylon, NY

Print name  Jeanette Parenti
                                           ②  6-15-16
Mailing address  7 Troy Place              zoning Board meeting minutes
                 Merrick, NY 11566          in relation to 50 Thompson Ave
                                                          Babylon, NY
Daytime Phone #  516 510 7134

Signature  [signature]                     ③  7-20-16
                                           zoning Board meeting minutes
Representing  Harold Baldauf                 in relation to 50 Thompson Ave
                                                          Babylon, NY

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

APPROVED_____  OR
DENIED_____  (FOR THE REASON CHECKED BELOW):

_____ CONFIDENTIAL DISCLOSURE____PART OF INVESTIGATORY FILES
_____ UNWARRANTED INVASION OF PERSONAL PRIVACY
_____ RECORD OF WHICH THIS AGENCY AS LEGAL CUSTODIAN CANNOT BE FOUND
_____ EXEMPTED BY STATUTE OTHER THAN THE FREEDOM OF INFORMATION ACT
_____ OTHER_____

SIGNATURE_____          TITLE_____     DATE_____

Notice: You have the right to appeal a denial of this application to the Board of Trustees, Village of Babylon, 153
West Main Street, Babylon, New York 11702, who must fully explain the reasons for such denial in writing seven
days after receipt of an appeal.

I hereby appeal:

Signature_____          Date_____

November 21, 2016

To:    Village of Babylon, Town Clerks Office
       153 West Main Street
       Babylon, NY 11702

Attention: Kristina Everitt

Dear Kristina,

Please accept this letter of authorization for my "owners representative", and on my behalf, Jeanette Prymas Parenti (516-510-7134), to submit or retrieve any materials pertaining to my property at 50 Thompson Avenue in the Village of Babylon. Thank you very much.

50 Thompson Ave.

Sincerely,

Harold Baldauf
(516) 351-2487

ZBA decision letter to be picked up by Jeanette Parenti w/ an authorization letter from owner Harold Baldauf

Copy: Nick Feihel, *Mark Anthony Architects*

Verbatim for Harold Baldauf, 50 Thompson Avenue

Hearing date: June 15, 2016

19:05

Mr. Munisteri : Good evening members of the Board, Mr. Chairman, my name is Mark Anthony Munisteri, architect. I'm appearing with my client Harold Baldauf of 50 Thompson Avenue in the Village of Babylon. This evening, as you've heard, we are requesting several variances, one to maintain a garage addition which requires a side yard setback variance, a proposed accessory structure which requires a side yard setback as well as a height variance, and to allow a structure over the allowable square footage. I'd like to briefly discuss each one. First, I'd like to apologize, I had this written out nicely on paper and forgot to print it so I'm reading it off my phone and it looks a little weird. Uh, the first one I'd like to discuss is the garage. The existing garage is located 4.6 feet off the south side, uh south side property line. My client added a roof over on the west of the rear of the garage to allow for shaded area around the existing pool. This roof over is 5.27 feet from the property line where 15 is required. In addition, he added a pergola to the north side of the garage for aesthetics and subtle shaded area, which meets all the side yard setbacks.

Next is the two story accessory structure. This structure will be mostly used for storage of their lawn tractor and jet skis. The proposed location of the accessory structure is located exactly in the location of the original shed, which is 3.67 feet from the south property line where 15 feet is required. Also we are requesting to increase the height limits from 15 to 21.1 feet. The existing location of the front wall of the shed, which would be east, will be retained in the new shed because the electric for the pool and the bulkhead are ran there, as is the pool equipment. I'd like to submit a couple of pictures in color. You have most of the pictures, but these pictures specific if that would be okay? Which both are contained within this new shed. The accessory structure in not out of character or proportions to the immediate neighborhood.

Lastly, the structure in question is a treehouse. The high point of the treehouse is a total square footage of 105 square feet, and the lower platform is another 87 square feet for a total of 192 square feet from 90 is permitted. I'll answer any questions the Board may have.

Mr. Conroy: You finished now?

Mr. Munisteri: Yeah.

Mr. Conroy: No I really...alright.

Mr. Munisteri: Yeah.

Mr. Conroy: I have a few questions.

Mr. Munisteri: Fire away.

Mr. Conroy: What's the, alright, what is the square feet of the treehouse ?

Mr. Munisteri: 192 square feet, well it's actually the upper half of it if you look at the picture you will actually see it. The lower part they are counting which is a deck area. Which is two or three steps up. But the unit above is 105 square feet so it's roughly 8x12. Which is the upper end of the tree. I also submitted a pretty good picture of it.

Mr. Conroy: Does the homeowner have a CO for it.

Mr. Munisteri: No sir, this is maintain-- we are asking to legalize the structure.

Mr. Conroy: When was the tree house built?

Mr. Munisteri: We reused the old deck from the house to build the treehouse. So it was built when we built the house. In stead of throwing it away, we built the treehouse.

Mr. Conroy: Can you give me the year, please?

Mr. Munisteri: 2015.

Mr. Conroy: 2015.

Mr. Munisteri: 2015, yeah.

Mr. Conroy: 2015. So also, do you have a CO for the garage?

Mr. Munisteri: The garage is been updated on the exterior. It was part of the original CofO

Mr. Conroy: Roof and siding, is that correct.

Mr. Munisteri: Yes that's correct. But it's the existing structure itself.

Mr. Conroy: I haven't asked you when that was built, because it could be a very very old house with a very very old garage.

Mr. Munisteri: So the original house was quite an old, so I'm going to guess in the late twenty's early thirties, the garage was originally constructed.

Mr. Conroy: And the total square feet? For the accessory building 23:49

Mr. Munisteri:

Mr. Conroy:



site plan - 3/7/16



*Baldauf Treehouse*

*Complaint Masters Harris Ave*

**June 5th, 2016**



Dear Babylon Village Board of Appeals,

**Re:** 50 Thompson Ave, Babylon, NY 11702 request for variances 6-15-16:

We have great concern that allowing all variances requested would impinge upon our privacy we now enjoy and decrease the value of our property.

We are very grateful that Building Zone Ordinance of Babylon Village sets the minimum side yard setback of 15 ft. in place and it should always adhere to it. Especially when there is ample yard width existing. It does not permit a resident to invade a neighbor's privacy. Any requests of buildings to be allowed closer will create very close walls of buildings and change our grounds to that of living in Queens. This will certainly decrease our property value. There is plenty of land, 80 ft. between15 ft. setbacks to build on if they so wish and allowed. Limited space is not the issue on this 1 acre lot.

We are not clear what does *maintain* a garage and accessory building mean? The resident just completed restoring the existing garage by adding a new roof, exterior paneling and building an extension to back of garage. Did these buildings ever have the required variances to start with? If not, please kindly mandate that the existing accessory building (shed) be moved to the proper 15 ft. side setback requirement. This will be a reminder of any future building to start at the proper 15 ft. from side of property line. Presently there are **also** two large framed canvas storage sheds within three ft. of the shared property line.

In regards to the construction of *accessory building*... why does it have to be over 2 stories high? Does an *accessory building* include living space? Again we are grateful that Building Zone Ordinance of Babylon Village sets the maximum height limits of *accessory building* of 15 ft. in place. Adding more height will invade our privacy and lose the spacious feeling of Thompson Ave. There is plenty of land to change the *accessory building* plans to sprawl across their yard starting 15ft from side property line. On Carlls River an osprey tower was taken down because it was over the permitted height limit and the tower was to add beauty of nature to the area. An accessory building should never be more than 15 ft. in height.

In regards to the, *90 ft.* tree house: The existence of this stated tree house has definitely decreased our privacy by allowing direct elevated views of our once private yard. A 6 ft. fence no longer provides us privacy. By doubling the tree house size by *192 sq. ft.*, will only decrease our privacy that much more with no solution. We were totally unaware that the existing tree house was *permitted*.

We have validated concerns. Mr. Baldauf has previously widened the driveway with blacktop and pavers to within 6 to 8 inches of our shared property line. Then continued to stone gravel the entire length of driveway from the pavers to the property line. He uses this area to park within one foot of the property line. This violates the "Greenway zone" of 2-3

ft. buffer. This encroachment has damaged and continues to damage by vehicle contacts the
existing 40 plus years old privet hedge. This hedge is our only existing privacy barrier.
We would like to maintain a civil relationship with our neighbors... these proposed changes
would definitely jeopardize that. In short, 50 Thompson Ave. property has more than
sufficient acreage to place structures adhering to the 15 ft. side setbacks and keeping
within height requirement without changing the *park like* character of Thompson Ave
properties.

Respectfully submitted,

Mark & Keely Harris
58 Thompson Ave
Babylon, NY 11702

PLANNING BOARD
James M. Slack, *Chairman*

Edward J. McCarthy
Judy R. Skilen
George W Smith
Frank Seibert
Robert Waters

**Village of Babylon**

INCORPORATED 1893

153 West Main Street
Babylon Village
New York 11702-3414
(631) 669-1300

March 31, 2016

Mr. Harold Baldauf
50 Thompson Avenue
Babylon, NY 11702

Re: SCTM: 0102-013-02-006
    Zone: Residence A-11

Dear Mr. Baldauf:

At the regular meeting of March 31, 2016, the Planning Board reviewed your application to construct a second story deck, measuring 20' X 9.5', on a **proposed** accessory building.

This proposed accessory building will require Zoning Board Approval for side yard setbacks, height, as well as variances for existing structures located on the subject property. The Board found the deck to be compatible with the area. There will be no external stairways to the ground, nor will the deck be enclosed, as outlined in the Code of the Village of Babylon. Additionally, all exterior lighting shall be maintained and shielded, as not to shine into adjacent or nearby properties.

The Planning Board **Conditionally Approves** this second story deck subject to the **Approval** by the Zoning Board Appeals for any and all required variances, that would permit this accessory building to be built, as designed.

All construction will be subject to final approval by the Village Building Inspector.

Very truly yours,

*James M. Slack*

James M. Slack
Chairman

Cc: Ralph Scordino, Mayor
    Robert Brink, Planning Board Attorney
    Stephen Fellman, Building Inspector
    Bruce Humenik, Zoning Board of Appeals
    Pat Carley, Village Clerk

13-2-b
A-11
AE-5
AE-7



OFFICE OF THE
BUILDING INSPECTOR

Stephen Fellman
Building Inspector

155 West Main Street
Babylon Village
New York 11702-3411
(631) 669-1301

*Village of Babylon*

INCORPORATED 1893

## Zoning Board of Appeals

**Address:** 50 THOMPSON

**Zone:** A-11

| **Permitted Setback** | **Proposed Setback** | **Variance** |
|---|---|---|

SH&D
- ☐ Front Yard_____  TREE HOUSE GARAGE  |ℱ| 15
- ☒ Min. Side Yard $15

Front Yard_____  5.27
Min. Side Yard 3.67

7.8'
9,-73'
11.33

- ☐ Tot. Side Yard_____

Tot. Side Yard_____

_____

- ☐ Rear Yard _____

Rear Yard_____

_____

SH&D
- ☒ Height Limits 15

Height Limits 21.1

6.1'

- ☐ Lot Coverage %_____

Lot Coverage%_____

_____

- ☐ Lot Width _____

- ☐ Two Family _____

- • **Enforcement Action:**_____

_____ TREEHOUSE / PLAYGROUND - 90 S.F MAX - 192 S.F PROP.

- • **Other:**_____

_____

- • **Renewal:**_____

ZONING BOARD OF APPEALS
Bruce E. Humenik, *Chairman*
John J. Conroy, *Secretary*
Christopher Resch
Rich -f A. Scelfo
Frank Seibert
Jeffrey C. Weber

*Village of Babylon*

INCORPORATED 1893

153 West Main Street
Babylon Village
New York 11702
(631) 669-1567

May 25, 2016

Mr. Theodore Klein, Sr. Planner
Suffolk County Dept. of Planning
H. Lee Dennison Building
100 Veterans Memorial Hwy., 11th Floor
P.O. Box 6100
Hauppauge, NY 11788-0099

Dear Mr. Klein,

Enclosed please find the legal notice for the June 15, 2016 hearing of the Zoning Board of Appeals. There are four (4) applications with Notices of Referral.

Sincerely,

Kristina Everitt
Secretary to the Zoning Board of Appeals

Enclosures

PUBLIC NOTICE
BOARD OF APPEALS
VILLAGE OF BABYLON

PURSUANT to the provisions of Article VII of the Building Zone Ordinance of the Village of Babylon, NOTICE IS HEREBY GIVEN that the Board of Appeals of the Village of Babylon will hold a public hearing at 7:30 P.M. on Wednesday, June 15, 2016 in the Municipal Building, at 153 West Main Street, Babylon, New York to consider the following applications:

1. Application of John E. Damianos of 400 West Main Street LLC c/o Damianos Realty Group, 222 Middle Country Road, Suite 300 Smithtown, NY 11787 for permission to maintain a parking lot on the southwest corner of Montauk Highway and Little East Neck Road, Babylon New York for parking associated with 400 West Main Street Office Building, Babylon, NY. Property located in Residence O District. Suffolk County Real Property Tax Map District 0102, Section 12, Block 2 Lot 27.2. Application made in accordance with Sections 365-17 and 365-35.

2. Application of Dr. Douglas Keller 420 West Montauk Highway, Suite 3, Babylon, NY, owner of Village Professional Building, 420 West Main Street, Babylon, NY, for permission to continue a professional use as a three unit professional building for the practice of medicine at the premises located at 420 West Main Street, Babylon, NY. Property located in Residence O District. Suffolk County Real Property Tax Map District 0102, Section 12, Block 2 Lots 33 and 34. Application made in accordance with Sections 365-17 and 365-35.

3. Application of John Scharf, 83 Sumpwams Avenue, Babylon, NY, for permission to construct additions to the dwelling on the premises located at 83 Sumpwams Avenue, Babylon, NY requiring variances to reduce the front yard setback from 35 feet required to 31.5 feet proposed; to reduce the minimum side yard setback from 15 feet required to 4 feet proposed; to reduce the total side yard setback from 30 feet required to 14.23 feet proposed and to maintain a shed east of the property line. Property located in Residence A-11 District. Suffolk County Real Property Tax Map District 0102, Section 16, Block 2, Lot 69. Application made in accordance with Sections, 365-13 and 365-3.

4. Application of Mark Anthony Munisteri, Mark Anthony Architects, 1563 Bellmore Avenue, Bellmore, NY 11710, agent of owner Harold Baldauf, 50 Thompson Avenue, Babylon, NY, for permission to maintain a garage, accessory building and a structure requiring variances to reduce the minimum side yard setback of 15 feet required for the garage to 5.27 feet proposed; reduce the minimum side yard setback of 15 feet required for

Real Property Tax Map District 0102, Section 20, Block 1, Lot 71.
Application made in accordance with Sections 365-13, 365-7.


# APPLICANTS OR THEIR DULY APPOINTED REPRESENTATIVES MUST APPEAR IN PERSON AT THE ABOVE HEARING.

BRUCE HUMENIK, CHAIRMAN
JOHN J. CONROY, SECRETARY

```
1    SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF SUFFOLK ::::: PART 34
2    -----------------------------------------X
     In the Matter of the Freedom of Information
3    Law Request of John Lepper,

4                        Petitioner,

5         -against-                              INDEX NO.
                                                 000379-2019
6                                                CONFERENCE
     Village of Babylon; Jean Marie Parker,
7    Village Clerk, Records Access Officer;
     Ralph Scordino, Mayor; Kevin Muldowney,
8    Deputy Mayor; Robyn Silvestri, Village Trustee;
     Tony Davida, Village Trustee; Mary Adams,
9    Village Trustee; Stephen Fellman,
     Village of Babylon Building Inspector;
10   Suzanne Schettino, Department of Public Works;
     Gerard Glass, Esq., Village of Babylon Attorney,
11   Records Access Officer; Deborah Longo, Planning
     Board, Village of Babylon; Each Individually and
12   in the Official Capacity,

13                       Respondents.
     -----------------------------------------X
14
                              June 30, 2021
15                            Riverhead, New York

16   B E F O R E:

17         Hon. Joseph C. Pastoressa
                Supreme Court Justice
18
     A P P E A R A N C E S:
19
           CORY H. MORRIS, ESQ.
20         Attorney for Petitioner
                135 Pinelawn Road, Suite 250s
21              Melville, New York 11747
           BY:  CORY H. MORRIS, ESQ.
22
           VILLAGE OF BABYLON
23         Attorney for Petitioners
                153 West Main Street
24              Babylon, New York 11702
           BY:  MATTHEW T. MCDONOUGH, ESQ.
25
```

*Theresa E. McKibbin, RPR, Senior Court Reporter*

CONFERENCE                                    2

1               COURT CLERK:  This is the *Matter of*

2       *John Lepper against the Village of Babylon,*

3       *Jean Marie Parker, Village Clerk, et al.*

4               Counselors, please put your

5       appearances on the record.

6               MR. MORRIS:  Attorney Cory Morris

7       for petitioner John Lepper, 135 Pinelawn Road

8       Suite 250s, Melville, New York 11747.

9               Good morning, your Honor.

10              THE COURT:  Good morning, Counsel.

11              MR. MCDONOUGH:  Good morning, your

12      Honor.

13              Matthew McDonough for the respondent

14      Village of Babylon, 153 West Main Street,

15      Babylon, New York 11702.

16              THE COURT:  Good morning, Counsel.

17              Okay.  So the record should reflect

18      the Appellate Division sent this case to me

19      to conduct an in camera review of requested

20      documents pursuant to FOIL, requested by

21      Mr. Morris, and counsel for the Village has

22      provided the documents, copies of the

23      documents that were provided to Mr. Morris, I

24      believe, correct, right?  Weren't there some

25      redacted that were provided?

CONFERENCE                    3

1                    MR. MCDONOUGH:  Correct.

2                    THE COURT:  Right.  You look

3         inquisitively, Mr. Morris.

4                    MR. MORRIS:  Your Honor, may I

5         remove my mask?

6                    THE COURT:  You may.

7                    MR. MORRIS:  Your Honor, this Court

8         was reversed on the fact that the

9         administrative remedies were not provided.

10        The petition sought, among other things,

11        attorneys fees, the records to be produced.

12        We later argued on appeal, again, narrowing

13        the record that we have here.

14                   I just want to state for the Court,

15        just so we're clear:  In your Honor's

16        decision, two times it stated that all the

17        records were produced, but they were not.  So

18        I'd like to know what records were not

19        produced, on the record, so we know what

20        we're talking about.

21                   THE COURT:  All right, Counsel.

22                   And for the record:  I vehemently

23        disagree with the decision of the Appellate

24        Division.  I, frankly, don't even understand

25        it, and to my mind it's contrary to well

CONFERENCE                    4

1    existing law where the administrative

2    remedies were not exhausted before you got

3    here.  But be that as it may, I don't sit in

4    45 Monroe Place, and unless and until I do, I

5    have to live with the decisions of that

6    court, so be it.

7              I don't even know what you're

8    talking about, Counsel, quite frankly.  What

9    I have in front of me now is counsel for the

10   Village, pursuant for the Appellate Division

11   order, has provided me with, for in camera

12   review, everything in their mind that you

13   requested pursuant to the FOIL, for me to

14   review to determine whether or not they fit

15   within any of the exceptions under the FOIL

16   law which would prevent me from disclosing

17   those documents to you.

18             Now, what are you saying?

19             MR. MORRIS:  Judge, may I inquire

20   how many documents were produced?  Is there

21   an index?  I mean, again, I'm saying, your

22   Honor, in your decision it stated that they

23   provided all records responsive.

24             THE COURT:  Hand me my decision.

25             MR. MORRIS:  Last page.  It's

CONFERENCE                    5

1    three pages, your Honor.  And at the bottom

2    you'll note as part of the record on appeal,

3    your Honor.

4              THE COURT:  Right.

5              MR. MORRIS:  (Handing.)

6              Again, what we sought, your Honor,

7    was a declaration for a violation of the

8    Public Officers Law, we sought retraining and

9    attorney's fees.  Because the respondents

10   handed over a phone book that might have

11   contained the name responsive doesn't mean

12   they complied with the law.  And that's what

13   we're seeking here.

14             THE COURT:  Who said that they did,

15   Counsel?  What I said is, we are here this

16   morning for my rulings on in camera review of

17   the documents that were provided subsequent

18   to the Appellate Division decision.  I don't

19   know why I'm having trouble communicating

20   that to you.

21             MR. MORRIS:  No, I understand, your

22   Honor.  But in addition to that, we sought

23   declarations, we sought attorney's fees and

24   retraining.

25             THE COURT:  Why don't we take one

CONFERENCE                                  6

1      thing at a time.

2                  MR. MORRIS:  Understood.

3                  THE COURT:  Okay.  Mr. McDonough, do

4      you wish to say anything for the record?

5                  MR. MCDONOUGH:  I think, your Honor,

6      for the two narrow issues, one is the e-mail

7      that was redacted under Public Officers Law

8      87(2)(b) and 89(2)(b), and then the

9      electronic mailings which were not turned

10     over because they were intra-agency.  On the

11     first ones --

12                 THE COURT:  Which, by the way, is

13     referenced in my decision.  So contrary to

14     what Mr. Morris just put on the record, I

15     didn't indicate everything was turned over.

16     I didn't indicate that.  It specifically

17     referenced that they weren't turned over

18     because the Village believed them to be

19     exempt from disclosure pursuant to the

20     inter-office, intra-office e-mails.

21                 MR. MORRIS:  Understood.  And what

22     I'm quoting is part of record on appeal 181,

23     quote, The respondents have asserted that all

24     responsive documents have been provided, end

25     quote.

tem

CONFERENCE                        7

1           THE COURT:  Responsive documents
2      means documents that are required to be
3      disclosed under FOIL.
4           MR. MORRIS:  Your Honor, just so the
5      Court is aware, and we argued this
6      extensively, what wasn't provided, although
7      it existed, was a letter from the mayor about
8      treehouses, among other things.  I know it
9      might seem rudimentary in this case over a
10      treehouse.  That was withheld.
11           THE COURT:  Mr. McDonough, is that
12      one of the documents that you provided for
13      me?
14           MR. MCDONOUGH:  I don't believe it
15      is.
16           THE COURT:  Is there such a
17      document?
18           MR. MCDONOUGH:  I'm not entirely
19      sure.
20           THE COURT:  You're not entirely
21      sure?
22           How do you know it exists?
23           MR. MORRIS:  Because I had it.
24      Because it's in the federal court record.
25      Because a letter from the mayor about

tem

CONFERENCE                           8

1    treehouses, among -- I mean, you can't make

2    this up.

3              THE COURT:  No, no, I understand.

4    But, Mr. Morris, maybe I didn't have enough

5    coffee this morning.  You have what you're

6    asking the Court to provide?

7              MR. MORRIS:  I have one of the

8    documents that should have been produced.

9    And this is the problem, your Honor.  I don't

10   know what they have -- litigation.  But when

11   I say "they," the respondents.  I don't know

12   what they hold.

13             THE COURT:  Of course.  That's the

14   reason for the application.  But let's stick

15   with the stuff you don't have, not what you

16   already have.

17             MR. MORRIS:  No, no, no.  But to

18   look at me and say, what is it that you don't

19   have?  I don't know that.  I have a

20   litigation hold that says --

21             THE COURT:  I didn't ask you to tell

22   us what you don't have, I asked you to tell

23   me what you have.  You're sitting here

24   arguing to me, Judge, I need a letter from

25   the mayor.  And I say, okay, great.  And I

CONFERENCE                    9

1      ask your adversary, where's the letter?  And

2      you say, I have it.

3              MR. MORRIS:  Judge, perhaps an

4      inquiry as to whether the documents at issue

5      were segregated is an easy question to be

6      answered by the Village attorney.  Were the

7      e-mails that were requested segregated?

8      That's what I would ask this attorney.

9              THE COURT:  Look, Mr. McDonough, why

10     don't you speak for the record.  You have

11     this FOIL request.  What have you provided in

12     response to this FOIL request?  What have you

13     withheld in response to this FOIL?  And is

14     there anything you withheld in response to

15     this FOIL request that was not provided to

16     the Court for this morning's rulings on the

17     in camera review?

18             MR. MCDONOUGH:  No.  Everything was

19     provided here for the in camera review.  On

20     the first thing, it was a redacted e-mail.

21     That was provided to Mr. Morris.  That

22     redaction was to preserve personal

23     information.  It's inappropriate to include

24     identification of confidential sources.  And

25     the third parties were written letters

CONFERENCE                    10

1    according to the *Church of Scientology New*

2    *York versus State*, 61 AD2d 942.  When a

3    person's identity can still be ascertained

4    despite the release of his or her name from

5    the record, other aspects of the record in

6    their entirety may be withheld.  That's from

7    a committee on open governments --

8              THE COURT:  I didn't want you to

9    argue the be merits.  We'll get to that.  I

10   mean, for some reason we're having trouble

11   getting this thing queued up.

12              As I said when I first took the

13   bench, the Village, in response to the

14   Appellate Division decision, provided for my

15   in camera review documents.  Some documents

16   were provided to counsel in redacted form.

17   The Village, consistent with the Appellate

18   Division requirement, provided me now

19   unredacted versions of those forms so that I

20   could put them side by side and decide

21   whether or not, under the statute, your

22   client is entitled to see the part that was

23   redacted, right?  You got it so far?

24              MR. MORRIS:  Among others things,

25   yes, your Honor.

tem

CONFERENCE                    11

1           THE COURT:  What other things?

2           MR. MORRIS:  Again --

3           THE COURT:  Let's do things one at a

4     time.  You got it so far?

5           MR. MORRIS:  I agree with what

6     you're saying.

7           THE COURT:  Excellent.

8           MR. MORRIS:  But --

9           THE COURT:  That's a very good

10    start.

11          MR. MORRIS:  But with a very strong

12    caveat, right?  There's only 20 documents and

13    they're only e-mails; is that correct?

14    That's what I'm looking for.  Because I could

15    then explain to you why I believe there's

16    additional documentation.

17          THE COURT:  We'll get to that,

18    Counsel.  Let's not put the cart before the

19    horse.  Why don't we cover what we have,

20    okay?  I'm not going anywhere.  You're my

21    only case today.  And you can tell me, Judge,

22    you know I have information that leads me to

23    believe there's additional documents -- we

24    can get to that.  But let's get with what we

25    have already.

CONFERENCE                    12

1          MR. MORRIS:  So --

2          THE COURT:  Hold on a minute.

3     Counsel, really, you're trying my patience

4     and I'm a patient man.

5          The second -- the second response

6     was a ream of documents that were not

7     provided at all, so I reviewed those as well.

8     So you with me so far?

9          So, so far the Village has provided

10    e-mails where they redacted information and

11    then gave me the unredacted version so I

12    could check it, and then they gave me a whole

13    ream of information that wasn't provided at

14    all -- maybe that's what you're referring to,

15    I don't know, we'll see -- that I had to

16    review to see if it fits within FOIL.

17         So now this morning I'm going to

18    hear argument from you and from Mr. McDonough

19    as to why this should or should not be

20    disclosed under FOIL.  And then when we're

21    done with all of that, you can then make an

22    application, I mean, if you believe you've

23    got evidence or proof or anything you want to

24    bring to the Court's attention that, hey,

25    Judge, there's more stuff out there, you

CONFERENCE                    13

1    know, I have a good faith basis for saying

2    that, you tell me what it is, we'll address

3    it.  But let's cover what was presented to me

4    first.  Fair enough?

5              MR. MORRIS:  Fair enough.

6              THE COURT:  Good.  All right.

7              You bear the burden, Mr. McDonough.

8    Why is it, and I know you started but I'll

9    ask you to repeat it for the record, why is

10   it that these records should be redacted, the

11   e-mails that were sent, and why is it that

12   that entire, I'm referring to it as the

13   "second package," but you're familiar with it

14   and we'll deal with it for public purposes

15   what was presented when the proceeding is

16   over, why is it that none of those documents

17   were presented to Mr. Morris for his client's

18   benefit, okay?

19             MR. MCDONOUGH:  Okay.

20             THE COURT:  Go ahead.

21             MR. MCDONOUGH:  On the first one,

22   your Honor, that is the redacted and

23   unredacted e-mails, the redacted material, as

24   you said, we have the burden to prove that

25   there is the exemption to the FOIL law.  It's

CONFERENCE                    14

1     inappropriate to identify the confidential

2     source.  These are third parties who had

3     written to the Village in *Church of*

4     *Scientology of New York versus State*, 61 AD2d

5     942, affirmed by the Court of Appeals, 46

6     NY2d 906.  And if a person's identity can

7     still be ascertained despite the deletion of

8     his or her name from the record, other

9     aspects of the records in their entirety may

10    be withheld.  That's a Committee on Open

11    Government's Opinion, AO-10637.

12              THE COURT:  Okay.  That's your

13    argument on e-mails.

14              MR. MCDONOUGH:  Correct.

15              THE COURT:  Okay.  Now, what about

16    this other stuff?

17              You know what, why don't we do this.

18    Mr. Morris, would you like to -- what we

19    could do here is, since they're separate, you

20    can address the arguments seriatim.  In other

21    words, you can respond to Mr. McDonough on

22    this and then I'll let him move on.

23              So what, if anything, do you have to

24    say?  He cited for me a Court of Appeals case

25    that indicates that the identity of a person

tem

CONFERENCE                    15

1       complaining to a municipality about something

2       doesn't get disclosed under FOIL.  What do

3       you say?

4              MR. MORRIS:  First, presumably that

5       applies to all records; otherwise, it would

6       be a blanket exemption, which *Data Tree* is

7       the Court of Appeals case, D-A-T-A Tree.

8       I'll be glad to provide your Honor with any

9       of these citations, if it pleases the Court.

10             THE COURT:  Yes, please.

11             MR. MORRIS:  Which would be -- a

12      blanket exemption would be against the

13      Freedom of Information Law and the Public

14      Officers Law.  The response can't just say

15      complainant, and therefore you don't get it.

16      In fact, I argued this matter in front of the

17      Matter of versus -- in front of the First

18      Department.  We submitted a case; we didn't

19      argue it.  But it was the *Matter of Dioso*

20      *Faustino*, D-I-O-S-O, F-A-U-S-T-I-N-O.

21             THE COURT:  Is there an Appellate

22      Division, handed a decision down on it?

23             MR. MORRIS:  First Department.  They

24      handed the decision down.  They said, Either

25      you produce records afterwards, you can't

CONFERENCE                              16

1        just say investigation and then turn over

2        records.

3                THE COURT:  But that specifically

4        spoke to identity of a person reaching out to

5        a municipality?

6                MR. MORRIS:  No, it didn't, your

7        Honor.  But --

8                THE COURT:  But that's what we have

9        in front of us.

10               MR. MORRIS:  For that matter, if

11       we're going to address that, again, I don't

12       have the records so I'm going to do this sort

13       of from the hip --

14               THE COURT:  No, you're not.  You're

15       going to get full apprisal.

16               And for the record just so it's

17       clear:  The Court has reviewed the e-mails,

18       everything that was redacted in the e-mail.

19       And what I'm going to do so you have a record

20       on appeal, is I will provide, I'm going to

21       put it under seal, the unredacted version and

22       the redacted version and make it a court

23       exhibit, under seal, only to be opened by the

24       Appellate Division if there's an appeal of my

25       rulings here this morning.

tem

CONFERENCE                    17

1            So for the record:  I've reviewed

2       those e-mails.  The only thing that was

3       redacted from those e-mails, you were given

4       everything except the name of the person who

5       registered the complaints and certain

6       identifying information that would, it seems

7       clear, would make who that person is, who he

8       or she is.  So that was redacted.

9            In other words, only items that

10      obscured the identity of the person

11      registering complaints with the municipality,

12      with the Village, but none of the substance

13      of the complaints.  None of anything that was

14      said by the person to the Village was

15      redacted.  All of that was provided to

16      counsel.  The only thing that wasn't provided

17      was the name of the person.

18            Okay.  So now, speak to that issue.

19      What under FOIL entitles you to that, and how

20      is that not under the *Church* case cited by

21      counsel and the Court of Appeals?

22            MR. MORRIS:  Your Honor, I'd like to

23      address that.  First, there was a full

24      prosecution against Mr. Lepper.  We'll return

25      that.  But first, I'll answer your Honor's

CONFERENCE                    18

1    question.

2                THE COURT:  Good.

3                MR. MORRIS:  Public Officers Law

4    Section 87(2)(e), subsection Roman numeral

5    iii, lower case Roman numeral iii --

6                THE COURT:  Hold on.  Give me a sec.

7                (2)(e)(iii):  Identify confidential

8    source or disclose confidential information

9    relating to a criminal investigation.

10   (Reading.)

11               Has nothing to do with this.  Why

12   were you citing that to the Court?

13               MR. MORRIS:  Because in the absence

14   of any evidence of any person received an

15   expressed or implied promise of

16   confidentiality -- again, it can mean in the

17   prosecution against Mr. Lepper -- that's

18   inapplicable. (Reading.)

19               THE COURT:  What were you citing to

20   me?

21               MR. MORRIS:  I'm citing to you The

22   Matter of *Exoneration Initiative versus New*

23   *York City Police Department*.

24               THE COURT:  What case is that?

25               MR. MORRIS:  114 AD3d 436, 440

CONFERENCE                    19

1    [First Department].

2              Even more so, your Honor --

3              THE COURT:  And you're saying that

4    case stands for the proposition that in the

5    absence of a confidentiality agreement in a

6    criminal prosecution and the identity of any

7    communiques to a Village gets disclosed under

8    FOIL.

9              MR. MORRIS:  No, your Honor.  I'm

10   saying these cases don't exist squarely.

11   Like the case of *Church of Scientology*, that

12   case is not squarely on point in the Village

13   prosecution, but that's what we have here.

14             THE COURT:  No, no.  How is it not?

15             MR. MORRIS:  How is it not, your

16   Honor?  I think more applicable is *Friedman*

17   *versus Rice*, which was heard by the Court of

18   Appeals.

19             THE COURT:  Why you tell me why

20   *Church* is not applicable first.

21             MR. MORRIS:  Your Honor, may I ask

22   for the citation one more time because --

23             THE COURT:  46 NY2d 906.

24             MR. MORRIS:  Your Honor, I'm going

25   to read the entire case on the record.

CONFERENCE                              20

1             THE COURT:  No, you're not.

2             MR. MORRIS:  It's a small case.

3             THE COURT:  No, you're not.  Read to

4      me the parts that you feel are applicable or

5      how that makes inapposite.

6             MR. MORRIS:  46 NY2d 906 is a Court

7      of Appeals case.  It's 1979; so about

8      41 years ago, your Honor.

9             THE COURT:  *Brown v. Board of Ed* was

10     handed down in 1951, does that make it a bad

11     case, Counsel?

12            MR. MORRIS:  No, no.  I'm just

13     saying, the law has developed quite a bit

14     since.

15            THE COURT:  If you got a later, more

16     recent case that overrules *Church* or what it

17     stands for, I'm all ears.

18            MR. MORRIS:  I'm looking at the

19     record.  It says:  The record on the appeal

20     is wholly insufficient to sustain the refusal

21     to disclose materials sought by petitioner

22     under the provisions of the Freedom of

23     Information Act. (Reading.)

24            It goes on to state:  In support of

25     the denial of access, the State officials

CONFERENCE                           21

1       have tendered only references to sections,

2       subdivisions and subparagraphs of the

3       applicable statute and conclusory

4       characterizations of the records sought to be

5       withheld, period.  (Reading.)

6               There is no tender of any factual

7       basis of which to determine whether the

8       materials sought either fell outside the

9       scope of mandated disclosure under former

10      section 88 -- I'm going to omit the

11      citation -- or come within the exceptions

12      specified in subdivision 2 of present

13      section 87 of the Public Officers Law.

14      Again, I'm going to omit the citations.

15      Period.  Nor is there any justification for

16      remittal for in camera inspection, period,

17      end quote.  (Reading.)

18              Judge, should I continue reading

19      this decision?

20              THE COURT:  Well, Mr. McDonough,

21      what he's reading to me sounds like it

22      supports his position.

23              So why do you cite that to me?

24              MR. MCDONOUGH:  I cited it because

25      it was the inappropriate identification of

CONFERENCE                         22

1    confidential information.  But to be clear:

2    We're seeking it under Exception No.

3    87(2)(b), 89(2)(b), which is the denied

4    disclosure would lead to invasion of privacy.

5              THE COURT:  No, no.  I understand.

6    Hold on.  One at a time.

7              I'm familiar with the statute and I

8    know 87 refers to 89.  But case law has to

9    define what constitutes an invasion of

10   privacy such that it warrants withholding.

11             Now, you cited the case for the

12   Court; I haven't read the case yet.  Counsel

13   just read to me provisions that seem to

14   support his side.  So I'm asking you:  Why

15   did you cite that case?

16             MR. MCDONOUGH:  In the decision it

17   waives the right of privacy, and I thought

18   that reasoning was important for the Court.

19             THE COURT:  All right.  It does.

20   But that's certainly not precedent for the

21   withholding.  Is that all you got is that

22   case?

23             MR. MCDONOUGH:  Yes, your Honor.

24             THE COURT:  All right.

25             So why don't you tell me what you

CONFERENCE                    23

1      have.

2                    MR. MORRIS:  First, old isn't bad.

3                    THE COURT:  Now you like it.  Now

4      you like it.  You didn't like it five minutes

5      ago.

6                    MR. MORRIS:  But the reason I didn't

7      like it, Judge, is because the law changed.

8                    THE COURT:  Counsel, give me cites,

9      okay?  I don't mean to rush you.  Like I

10     said, you're my only case today.  What I like

11     is precedent from Appellate cases.  So far

12     you've given me 114 AD3d 463, First

13     Department case.  Does that support what

14     you're saying?

15                   MR. MORRIS:  Yes.  Together with *The*

16     *Matter of Friedman versus*, F-R-I-E-D-M-A-N

17     *versus Rice*, 30 NY3d 461 [2017].  That's a

18     New York Court of Appeals decision where

19     Ronald Kuby, who was then Captain Rice,

20     argued that just because complaints are made

21     doesn't mean there's an automatic entitlement

22     of privacy.  And just, if your Honor is not

23     familiar with the *Chasing the Friedmans*

24     documentary and the case of *Friedman,* I know

25     your Honor was a former prosecutor and might

1      be familiar with that high profile

2      prosecution, it was an allegation over sexual

3      offenses occurring to minor children, your

4      Honor, in the Village of Great Neck, or the

5      Municipality of Great Neck, which is also

6      quite a closed knit community.  And yet the

7      Court of Appeals, and the case went all the

8      way up there, said that's not enough.  And,

9      your Honor, just to be clear --

10             THE COURT:  Just for my edification:

11     What's an example of what the Court of

12     Appeals felt was enough?  What constituted

13     privacy worth protecting?

14             MR. MORRIS:  Someone who sought to

15     remain private.  In other words, you know,

16     I'm giving this under the confidentiality of

17     privacy.  Or for instance, your Honor, and I

18     discussed this extensively in certain --

19             THE COURT:  So if the Village

20     provides me with an affidavit from this

21     individual, and I'm not saying they would or

22     could, saying I seek to have my privacy

23     protected and my anonymity maintained, that's

24     it?

25             MR. MORRIS:  That seems like someone

1      who wants to remain private, your Honor,

2      right?

3              THE COURT:  So but for purposes,

4      it's hypothetical because I don't have that,

5      but if the Village were provide that and they

6      could, then you agree --

7              MR. MORRIS:  -- three years.

8              THE COURT:  Well, well, I'm asking

9      you that.  Is there some kind of latches

10     that's --

11             MR. MORRIS:  Well --

12             THE COURT:  -- to that, or can a

13     person say, hey, I just found out today from

14     the Village attorney that Mr. Morris wants to

15     undercover who I am and I would like my

16     privacy protected?

17             MR. MORRIS:  Well, yes, your Honor.

18     I wouldn't call it latches.  Look, there was

19     a prosecution here, which is why I start

20     where I am.  There was a prosecution.  This

21     man not only had a constitutional right, but

22     Public Officers Law Section 89(a) is what we

23     should discuss, because when there's a

24     willful withholding of information, there's a

25     violation that's occurred before your Honor.

tem

CONFERENCE                          26

1          THE COURT:  What does the

2     prosecution have to do with someone

3     registering a complaint to the Town as to the

4     Village and their anonymity being protected?

5     What does one have to do with the other?

6          MR. MORRIS:  Well, Judge, when

7     there's a prosecution, you have a right to

8     confront your accuser.

9          THE COURT:  No, no.  I understand

10     that.  I'm not sitting here trying your

11     criminal case with your --

12          MR. MORRIS:  No, no.  Of course not.

13          THE COURT:  -- Sixth Amendment right

14     of confrontation.  I'm sitting here in a

15     civil matter where your client says, hey, I

16     want to know who this person is.

17          MR. MORRIS:  Yeah.

18          THE COURT:  And I'm asking you, what

19     authority do I have to uncover?  Look, I'll

20     read the cases you gave me.  Are there any

21     others you have?

22          MR. MORRIS:  Judge, just to be

23     clear:  It seems like that I don't bear the

24     burden, they do.  And, Judge, to be clear

25     again:  The administrative record is what

1    binds this Court, it's what binds the

2    Appellate Division.

3              THE COURT:  When I ask you for

4    cases, it's not a suggestion that you bear

5    the burden.  What happens with cases and the

6    way I decide them is, I decide them according

7    to the law and I follow the law.  So the

8    party that provides me with the correct law,

9    that's the party that wins their case.  If

10   you provide me with law that says that Mr.

11   McDonough hasn't met his burden for the

12   following reasons, then you'll win.  That's

13   the reason why I'm asking you the cases, not

14   because I'm asking you to carry any burden.

15   The burden is on McDonough.

16             So far right now, Mr. McDonough,

17   quite frankly, you haven't given the Court

18   anything to hang its hat on to withhold this

19   information.

20             Now, what I'm going to do when this

21   hearing is done this morning, if you want,

22   I'll give both of you an opportunity to brief

23   the issues.  This way I'm not, you know, so

24   you're not shooting from the hip.  In

25   fairness to you, you can read the cases, you

1      can give me more cases.  Happy to read them.

2      But right now, that case you gave me

3      certainly doesn't stand for that proposition.

4      You know, I haven't read Mr. Morris' cases

5      yet, but he's an officer of the court, he's

6      telling me they say otherwise.  So again,

7      that's where we are on that.

8              All right.  So let's put that aside,

9      unless there's anything else you want to -- I

10     think I understand your arguments, Mr.

11     Morris.  There's nothing that withholds this.

12     This is not a criminal case where there was

13     some kind of confidentiality agreement.

14             Is there any allegation,

15     Mr. McDonough, do you have any proof that the

16     safety or welfare of this person is in

17     jeopardy in any way, shape or form?

18             MR. MCDONOUGH:  No, your Honor.

19             THE COURT:  So okay, there's not

20     that.

21             All right.  So again, I'll read

22     whatever cases you have.  But I have to tell

23     you, in the absence of you providing me any

24     cases, it looks to me like he would get that

25     information, okay?  But that's the reason why

CONFERENCE                    29

1    we are here this morning, to hear the

2    arguments on that.  So that's on that one.

3              Anything else anybody wants to add

4    on the record as to that, as to those

5    e-mails?  And if not, we can move on to the

6    rest.

7              MR. MORRIS:  Yes, your Honor.  Just

8    for the Court, the *Matter of Madiros*,

9    M-A-D-I-R-O-S, versus *New York State*

10   *Education [Department*, 30 NY3d 67 [2017].

11   It's a New York Court of Appeals decision

12   that says this Court is bound by the

13   administrative record.

14             I just want to state one thing for

15   this Court just there's no ambiguity.

16             THE COURT:  When you say "bound by

17   the administrative record," are you

18   suggesting then that they can't provide an

19   affidavit?

20             MR. MORRIS:  That's right, your

21   Honor.

22             THE COURT:  That's fine.  Again,

23   Counsel, that's fine.  That's why I asked

24   you.

25             MR. MORRIS:  Any question this Court

CONFERENCE                           30

1   has, I'm going to address to the fullest

2   extent --

3                   THE COURT:  That's fine.  But you

4   got to just recognize, of course, that you're

5   flip-flopping.  Two minutes ago you said they

6   could and that would resolve it against your

7   client, and now you're telling me they can't

8   record cause I'm bound by this administrative

9   record, which is fine, I don't care.  But I'm

10  getting dizzy.

11                  MR. MORRIS:  Well, physically they

12  could.  But --

13                  THE COURT:  Of course.  They can do

14  anything.  But I meant legally.

15                  MR. MORRIS:  Legally, I don't

16  believe so because *Madiros* and a number of

17  cases.

18                  THE COURT:  And you know what?  You

19  might be right.  So that's why I'm asking

20  you.  That's the reason why we're here this

21  morning.

22                  Also, let's not forget, are you guys

23  going to take me up on the offer, are you

24  going to brief it?  You don't have to.

25                  MR. MORRIS:  I feel we've briefed

CONFERENCE                               31

1          this extensively through the appeals.  I

2          mean, certainly, if it assists this Court.

3          But the problem I have, your Honor, and

4          again, I don't know what they have, but the

5          blanket exception is contrary to longstanding

6          law --

7                    THE COURT:  No, no, no, Counsel.

8          I'm asking a very specific question.  Not to

9          argue the case.  I'm asking:  Are you guys

10          going to brief it?  In other words, are you

11          going to give me a memo of law on these

12          issues that you're raising here this morning?

13          To refer me to what you said to the Appellate

14          Division is useless because I don't have

15          that.

16                    Look, if you want to make your

17          brief, if you want to reincorporate what you

18          said to the Appellate Division, I don't care

19          what your brief constitutes.  I'm just

20          asking:  Are guys are going to brief?

21                    MR. MORRIS:  My apologies.  I

22          assumed the Court had the brief.  In that

23          case, if it assists the Court, absolutely,

24          I'll be sure --

25                    THE COURT:  No, no.  I don't require

CONFERENCE                    32

1   it.  What it assists is your client and your
2   client.  But I don't require it.  We do our
3   own work here.  I'm offering you the
4   opportunity to provide me with cases if you
5   want to.  If you don't want to, you don't
6   have to.  If you want to.  That's all I'm
7   asking.  A simple question.  Do you want
8   that?
9           MR. MORRIS:  Yeah.  And to do that
10  appropriately and fully, may I just
11  respectfully request -- again, I understand
12  that there's an in camera inspection, 20
13  e-mails.  We have what I've asserted is
14  blanket exceptions.  And I've given your
15  Honor some law and I can cite the *Data Tree*
16  case.  I understand there is another set of
17  documents that were not provided.
18          THE COURT:  Yeah.  That's what we're
19  covering next.
20          MR. MORRIS:  Okay.  That's the only
21  thing that I have in that regard.
22          THE COURT:  You keep saying 20
23  e-mails.
24          I mean I have -- Mr. McDonough, am I
25  missing e-mails here?

CONFERENCE                    33

1          MR. MCDONOUGH:  No.

2          THE COURT:  I have two in front of

3    me.

4          MR. MCDONOUGH:  Your Honor, just on

5    these because of the specificity and going

6    through each one, I think the briefing would

7    be appropriate and helpful.

8          THE COURT:  Right.

9          MR. MCDONOUGH:  You know, obviously,

10   we're looking for the

11   inter-agency/intra-agency exception here.

12         THE COURT:  Correct.

13         MR. MCDONOUGH:  These are not

14   statistical.  They're not instructions.

15   These were used.  And they're predecisional.

16   They're from advisors to help make it.  But

17   rather than that, I think can speak in a

18   brief more appropriately to each one.

19         THE COURT:  Yeah.  I thought in

20   fairness to both of you, as in reference I

21   think both of you said "shooting from the

22   hip."  Again, what that's telling me is, hey,

23   Judge, give me an opportunity to read what he

24   gave me and give me an opportunity to respond

25   to it.  So that's all I'm doing.  All right.

tem

CONFERENCE                              34

1          Let's move on the to the second package.

2                    So before you even argue anything on

3          this one, Mr. McDonough --

4                    And you can sit, Mr. Morris.

5                    MR. MORRIS:  Thank you.

6                    THE COURT:  I mean, there's certain

7          things that jump off the page that I'm going

8          to ask you, why weren't they disclosed?

9          Because the statute specifically provides for

10         the disclosure, in my mind, but I'm going to

11         listen to you why it doesn't.  I'm

12         assuming -- well, let me put, for the record:

13         I, having reviewed this, they are, with the

14         following exceptions, intra-office/

15         inter-office e-mails back and forth.  And

16         that's clearly covered under Section 87

17         subdivision (2), subdivision (g).  And it

18         doesn't fit under any of the exceptions under

19         that statute.  Those are clearly not

20         disclosable.  And I'll hear argument from you

21         in a moment.

22                    However, the statute talks about

23         exceptions to that, where you have to provide

24         the information even though it's inter-office

25         e-mails and things of that nature, and they

CONFERENCE                        35

1    include statistical or factual tabulations of

2    data.  And, you know, in here, without

3    disclosing what they are, I've got photos.

4    Why aren't those being disclosed?  Photos

5    should be disclosed under the statute.  But

6    I'll listen to you and you know, I'll take a

7    brief.

8              But why isn't -- you know, again, I

9    don't know if it's going to be of any use to

10   Mr. Morris, but the statute doesn't say you

11   don't give it over.  I've got a bunch of

12   photos, I've got, hold on, I've got copies of

13   applicable zoning ordinances and statutes.

14   That's clearly discoverable, but that wasn't

15   handed over.

16             So if you're going to tell the

17   Court, Judge, you know what, we agree with

18   you and that we'll hand over, but if not,

19   explain to me why you didn't hand it over.

20             MR. MCDONOUGH:  I think generally

21   all those documents are used by the advisor

22   in a predecisional memos to, you know,

23   advise, and that they're expressing opinions

24   and those opinions should be expressed

25   freely.  And that's in the Matter of *Seacrest*

1    *Construction Corp.*, 82 AD2d 546.  And

2    87(2)(g) exempts from FOIL these documents

3    intra-agency/inter-agency, except those that

4    meet the statistical instruction and final.

5    But all these e-mails are predecisional.

6            THE COURT:  Yeah, but even still,

7    predecisional or post decisional, if it's

8    factual, if it's things like the code that

9    was exchanged, or a Village ordinance that

10   was exchanged, or in my mind photos, subject

11   photos of the area, that statute in my mind

12   clearly says, no, no, no, counsel gets that.

13   It's in your records; they get it.

14           So again, you're going to provide a

15   brief, you're going to have to give me case

16   law that says otherwise.  Again, if I were

17   deciding it this morning -- if I were

18   deciding it this morning, he would get the

19   identity of the person and he would get these

20   photos and he would get these Village

21   ordinance and these code statutes that were

22   referenced because they're clearly outside

23   the protection afforded your Village under

24   FOIL.  He would not get the inter-office

25   communications because that's clearly within

CONFERENCE                    37

1    the protections afforded by FOIL.  So but

2    again, you'll brief the issues.

3              MR. MORRIS:  Yes.

4              THE COURT:  Do you want to add

5    anything, Mr. Morris, or argue?

6              MR. MORRIS:  Yes, your Honor.  So

7    look, what counsel is arguing, this is right

8    back to matter of *Dioso Faustino versus City*

9    *of New York*.  In the interim, I pulled up.

10   It's 142 N.Y.S.3d 502 [2021 First Appellate]

11   decision, also 2021 New York Slip Opinion

12   00907.

13             Your Honor, like Mr. Lepper,

14   Mr. Faustino was the subject of State

15   enforcement.  Unfortunately, when the law

16   enforcement came after Mr. Diostino -- Mr.

17   Faustino, he was killed.  He was shot dead.

18   And maybe it's more serious than a treehouse

19   prosecution, but that body camera footage was

20   reviewed by the New York City Police

21   Department.  And after we sued, they turned

22   it over.

23             And where we appealed in this case

24   was not only that blanket exemption, which

25   you had there, you don't even have an

1      exemption here.  They didn't mention these

2      e-mails, so they don't now get to reinvent

3      the exemption.  The body camera footage that

4      showed not only the shooting death of my

5      client, also another officer being shot, not

6      only was released after the fact but we had

7      to sue to get our attorney fees because

8      that's the remedy that the law provides.

9              The Public Officers Law basically

10     provides two remedies.  We ask for

11     retraining.  If the Village wants to contest

12     retraining, we want either our attorney fees

13     or under Public Officers Law Section 89

14     subsection 8, there's a willful violation

15     here.  Especially when you prosecute, you

16     have certain obligations beyond FOIL.  But

17     FOIL provides for a remedy.  Whether it's

18     Mayor Bill Deblasio's e-mails or the amount

19     of nursing home deaths because of a policy

20     from the governor, you have to produce it.

21             THE COURT:  So you're saying you

22     have to produce intra-office e-mails under

23     FOIL?

24             MR. MORRIS:  If you don't assert the

25     exemption, it's waived.  You're bound by the

1    administrative record, your Honor.  The

2    exception of the administrative record,

3    excuse me.

4            THE COURT:  You're saying, again, I

5    don't have the record in front of me, you're

6    saying that they failed to raise this

7    exemption and therefore it's waived.

8            MR. MORRIS:  Your Honor, they --

9            THE COURT:  I got it.

10           MR. MORRIS:  And they didn't

11   identify it --

12           THE COURT:  I got it.  I got it.

13           MR. MORRIS:  Understood, your Honor.

14           THE COURT:  So you're going to brief

15   it for me.  You guys are going to give me

16   cases on this.

17           And obviously, you're going to have

18   to address that, Mr. McDonough.

19           MR. MCDONOUGH:  Your Honor, just

20   briefly.  Page 3 of the Appellate Division,

21   it says in a separate letter also dated

22   January 22, 2019, the Village Clerk wrote:

23   The petitioner's attorney, with respect to

24   his demand for electronic mailings, that all

25   discoverable electronic mailings were

CONFERENCE                    40

1    provided excluding intra-agency electronic

2    mail, which is not discoverable under the

3    Public Officers Law.  (Reading.)

4              MR. MORRIS:  Judge, I'm glad my

5    adversary raised that.  May I respond?

6              THE COURT:  Sure.

7              MR. MORRIS:  Judge, when we told

8    Gerard Glass, an attorney, that we were

9    filing an order to show cause, and the docket

10   shows it, he sent that e-mail.  He sent that

11   e-mail and this Court should admonish, not

12   approve that practice.  He sent an e-mail at

13   the very last minute when they didn't send

14   e-mails, when my client had to show up with a

15   cart and a printer because they don't do

16   e-mails.

17             THE COURT:  But the Appellate

18   Division acknowledged that the Village

19   asserted that as a claim, no?

20             MR. MORRIS:  After litigation.  And

21   that's what this Court needs to see, that

22   after they were served with litigation, they

23   responded with that e-mail.  It wasted this

24   Court's time and they lied to this Court.

25   They told this Court that there were no

1     administrative remedies.  Look, here's an

2     e-mail, Judge.  When in reality, yet this

3     attorney, not another attorney, filed an

4     order to show cause by providing a notice of

5     that filing through fax, through electronic

6     means.  This Court was dissuaded to act upon

7     a ripe petition, a petition that was properly

8     before the Court with administrative remedies

9     that were not available.  But furthermore,

10    your Honor, asserting exemptions, blanket

11    exemptions to unknown sets of documents,

12    which is why I continue to inquire, how many

13    records were withheld?  Or better yet, what

14    did the Village do in response to the notice

15    of litigation hold?

16             THE COURT:  All right.  Well,

17    you're, obviously, now you're alleging

18    untoward practices, which you may or may not

19    have proof of, but again, you're going to

20    have to brief that before me.  And, you know,

21    that's possibly something different.

22             All right.  Do you want to set up a

23    briefing schedule?

24             And for the record:  I understand

25    your other case involved loss of life and all

1          that, but I take very seriously citizens'

2          rights to do what they want on their

3          properties and municipalities' rights, to the

4          extent they're allowed, to regulate same.

5          These are very important issues on Long

6          Island, and in this country, so I don't take

7          it --

8                    MR. MORRIS:  Thank you.

9                    THE COURT:  -- so I don't take it --

10         you know, obviously, your client paid good

11         money for his property and he has the rights

12         under the law to do with it as he's seeking

13         to do, then that's why he's here.

14                    MR. MORRIS:  That's right, your

15         Honor.  And, your Honor --

16                    (Crosstalk.)

17                    THE COURT:  So let's not minimize

18         that.

19                    MR. MORRIS:  Your Honor, if you're

20         ready to decide, I mean, we don't need to

21         brief.  I can brief to the extent there's

22         other issues.  It sounds like these records

23         should have been produced.  It sounds like

24         there's no -- I mean, this is a very simple

25         inquiry.  It sounds like there's no

CONFERENCE                    43

1      administrative remedy to bind otherwise an

2      unknown amount of records.  How many records

3      did they withhold?

4              THE COURT:  Again, I'm not an

5      investigative agency.  I have an attorney

6      representing the Village.  He's an officer of

7      the court.  He's standing up here in court

8      telling me, Judge, we get everything we have.

9      I'm bound by that.  Obviously, I'm not

10     suggesting you're lying, Mr. McDonough, but

11     any attorney, Attorney X, could be lying to

12     me.  I have no way of knowing.  That's not my

13     role.

14             MR. MORRIS:  A simple inquiry.  And

15     we can put this in the Appellate record.

16     Document Entry 65-1 and the underlying

17     federal case, we can look it up on PACER.  I

18     can show it to you.

19             THE COURT:  Counselor, that's your

20     role.  That's my point.  In other words, I'm

21     not going out into the Village office and

22     looking through their files.  I can't do

23     that.  That's stepping outside of the role of

24     a judge.  What a judge does is ask an

25     attorney representing a Village, have you

CONFERENCE                    44

1    provided everything required by law?  He now

2    gets up and says, yes, I have.

3            And no one is suggesting that, Mr.

4    McDonough.

5            If he's mistaken or lying, that's

6    your job.

7            MR. MORRIS:  And, Judge, we're --

8            THE COURT:  And believe me, if you

9    come to me with evidence of that, I'll take

10   the appropriate action.

11           MR. MORRIS:  Understood.  And,

12   Judge, we're going to proceed accordingly.

13   Judge, just to be clear, and I just had the

14   pleasure of meeting Mr. Mr. McDonough in

15   court, and I'm not saying Mr. McDonough, I'm

16   saying there was another attorney.  There was

17   another attorney --

18           THE COURT:  No, no.  I heard what

19   you said.  I heard what you said.

20           MR. MORRIS:  Understood.  And he was

21   the prosecuting attorney in that matter.

22           THE COURT:  Right.  I understand.

23           All right.  Off the record.

24           (Whereupon, a discussion was held

25   off the record.)

CONFERENCE                                45

```
 1                  THE COURT:  On the record.
 2                  All right.  Anything further for the
 3       record?
 4                  MR. MORRIS:  Just to be clear:
 5       Judge, we're going to file on July 30, 2021,
 6       briefing --
 7                  THE COURT:  Correct.
 8                  MR. MORRIS:  -- as to the ultimate
 9       request for relief in this matter.
10                  THE COURT:  Yes.  What I did off the
11       record is, I confirmed with counsel for both
12       sides as to scheduling.  And what counsel has
13       asked for, and the Court agreed, is I'm
14       giving both sides till July 30th.  On or
15       about that date you'll submit to the Court
16       memos of law addressing the issues that were
17       raised here this morning with regard to what,
18       if anything, should be disclosed in
19       connection with Mr. Morris' application under
20       FOIL.
21                  MR. MORRIS:  Judge, would you like
22       for us to brief, essentially, the attorney
23       fees provision of our relief?
24                  THE COURT:  Off the record.
25                  (Whereupon, a discussion was held
```

tem

CONFERENCE                    46

 1      off the record.)

 2                  THE COURT:  Okay.  Back on the

 3      record.

 4                  Additionally, which is part and

 5      parcel of this application, Mr. Morris has

 6      asked for attorney fees, correct?

 7                  MR. MORRIS:  Yes, your Honor.

 8                  THE COURT:  So I believe both

 9      counsel have agreed that since you're

10      submitting memos of law, you will also

11      address the question of whether or not

12      attorney fees are appropriate.  And I would

13      also suggest, since you're briefing it

14      anyway, whether or not the amounts being

15      sought are appropriate, and if not, why not.

16      Okay?

17                  MR. MCDONOUGH:  Okay.

18                  MR. MORRIS:  Your Honor, just

19      briefly, as you said, it will just be a

20      matter if attorney fees, not the amount

21      necessarily, is that all right?

22                  THE COURT:  Well, I would suggest,

23      since you're briefing it, that you put in the

24      amount you're requesting and you can include

25      separately, again, I don't want to tell you

```
1       how to try this case, but you know what's
2       required in connection with attorney fees
3       application, you know, hourly and also
4       explanations about your background, your
5       experience, the going rate in the
6       jurisdiction, all of that stuff for Mr.
7       McDonough to review and speak to.
8               And this way, again, we'll just do
9       away with a delay because I'll be able to
10      handle everything at once.  But again, that's
11      up to you.  And more than likely if it's
12      challenged, we may have to have a hearing on
13      attorney fees.  But at least I'll have all
14      the paperwork and arguments ahead of time.
15      Okay?
16              MR. MORRIS:  Yes, sir.
17              THE COURT:  And just one more thing.
18      Look, there might be a third thing, or no?
19              MR. MORRIS:  There is, your Honor.
20              THE COURT:  Which is?
21              MR. MORRIS:  Essentially, the
22      willful violation of the Freedom of
23      Information Law as provided --
24              THE COURT:  Are you --
25              MR. MORRIS:  -- Public Officers Law.
```

CONFERENCE                    48

1            THE COURT:  -- seeking punitive

2      damages on it?  What are you seeking?

3            MR. MORRIS:  Judge, the only relief

4      we're really afforded, it looks like the

5      former counsel of the Village of Babylon has

6      contested the retraining.  So the only relief

7      that the Public Officers Law, the Freedom of

8      Information Law provides is either the

9      attorney's fees, which is a shall provision

10     in this case, or the violation of Public

11     Officers Law 89 in a willful violation, such

12     as withholding a letter from the mayor about

13     treehouses, among others things.  Which

14     again, if your Honor doesn't have it, it

15     seems clear here where we're going here.  So

16     unless the Court says otherwise, we'll

17     include that relief.

18            And I will further include the

19     relief that this attorney provided to the

20     Court of the filing of the order to show

21     cause electronically and the subsequent

22     e-mail for which the Village of Babylon, the

23     respondents, now wish to rely upon.

24            THE COURT:  Absolutely.  Absolutely.

25     I would include all those arguments and

CONFERENCE                        49

1     you'll be able to refer to them, this way we

2     don't have any straggler issues.

3              Okay.  That's it, though, right?

4              MR. MORRIS:  I believe so.  Just so

5     we're clear, your Honor:  When, if the

6     documents are to be produced, because as you

7     know it's been a number of years here, when

8     can we anticipate, I guess, the release of

9     those documents?

10             THE COURT:  Mr. McDonough, that's

11    you.

12             MR. MCDONOUGH:  On?

13             THE COURT:  No.  You said you're

14    going to reconsider whether or not you would

15    provide --

16             MR. MCDONOUGH:  That will be done

17    before the brief.  As soon as possible.

18             THE COURT:  So before the 30th.

19             MR. MCDONOUGH:  Yes, before the

20    30th.

21             THE COURT:  Okay.  All right?

22             Okay, Counsel.  I'll wait for your

23    brief on the 30th.

24             MR. MORRIS:  We thank the Court.

25             THE COURT:  And we'll put a control

CONFERENCE                                50

1        date on it.  So we need a control date.

2                   COURT CLERK:  Here?

3                   THE COURT:  No, no.  We need a

4        control date.  So make it September.

5                   COURT CLERK:  9-1.

6                   THE COURT:  9-1.  We're going to

7        have a control date.

8                   Off the record.

9                   (Whereupon, a discussion was held

10       off the record.)

11                        *  *  *  *  *  *

12       C E R T I F I C A T I O N

13

14            I, THERESA E. MCKIBBIN, RPR, hereby

15       certify the above and foregoing is a true and

16       accurate transcript of my stenographic notes

17       taken by me in the above matter.

18

19

                        _____
                        Theresa E. McKibbin, RPR
                        Official Court Reporter

21

22

23

24

25

**2:18-cv-07011–JMA-AYS | 2:21-cv-00014-JMA-AYS**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
### *for the*
## Eastern District of New York

JOHN LEPPER and NOELLE LEPPER, individually and as parents and natural guardians of their infant children, B.J.L. AND B.I.,,

*Plaintiffs*

–v–

VILLAGE OF BABYLON; and ESTATE OF RALPH SCORDINO, Mayor-decedent, KEVIN MULDOWNEY, current/former Deputy Mayor, ROBYN SILVESTRI, current/former Village Trustee, TONY DAVIDA, current/former Village Trustee, MARY ADAMS, current/former Village Trustee and acting Mayor; STEPHEN FELLMAN, Village of Babylon Building Inspector; SUZANNE SCHETTINO, Department of Public Works; GERARD GLASS, Esq., current/former Village of Babylon Attorney; DEBORAH LONGO, Planning Board, Village of Babylon, each individually and in their official capacity, and John and/or Jane Doe, unnamed, unidentified complainants,

*Defendants*

## AFFIDAVIT OF CHARLIE LEPPER

### LAW OFFICE OF CORY H. MORRIS
*Attorney for Plaintiffs*
Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR., *of counsel*
barrister@yannalaw.com

# AFFIDAVIT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR SUMMARY JUDGMENT

State of New York
County of Suffolk } *ss:*

I, Charlie Lepper, being duly sworn, depose and say that the following statements are true and correct, to the best of my knowledge:

1.   On February 4th, 2020, at approximately 2:30pm Suffolk County Police Department Det. Brian Grenz and his partner from Suffolk County Police Department criminal investigations Headquarters Yapank came to my house at 186 Cockonoe Avenue, Village of Babylon, Suffolk County, New York looking for my brother John Lepper.

2.   I have come to learn that my brother John Lepper was the subject of massive retaliation by the Defendants in the above caption federal court action(s) because of his political views in opposition to the named Defendants' political party and in the exposure of drug use, drug sale and drug paraphernalia in our neighborhood.

3.   On February 4th, 2020, I notified the Suffolk County Police Department Detectives that John Lepper was not home or at my house.

4.   At that time, John Lepper was visiting our mother's home in Amityville, Suffolk County, New York.

2

5.    I explained to Suffolk County Police Department Detective Grenz's and his partner that my brother had come from court earlier that day.

6.    I asked Suffolk County Police Department Detective Grenz why he was here and looking for John Lepper.

7.    I was informed that Suffolk County Police Department Detective Grenz received a request to arrest and charge my brother with a crime/violation of the law.

8.    When John Lepper arrived at my home, I heard Suffolk County Police Department Detective Grenz tell my brother that the Defendant-decedent Mayor of Village of Babylon at the time, Ralph Scordino and a Town of Babylon councilman, Terry McSweeny, called the Suffolk County Police Department Detective Grenz's supervisor and told them that John Lepper threatened them.

9.    I heard Suffolk County Police Department Detective Grenz tell my brother that Ralph Scordino and Terry McSweeny, called the Suffolk County Police Department and requested that John Lepper be arrested.

10.   John Lepper immediately protested his innocence of any crime to the Suffolk County Police Department Detectives.

11.   I heard both Suffolk County Police Department Detectives question my brother and, in response to John Lepper's answers, said to John Lepper that it was not a coincidence that both Suffolk County Police Department Detectives knew where John Lepper was earlier that day, meaning a court proceeding.

12.   I heard both Suffolk County Police Department Detectives explain that they were informed of his whereabouts by, among others, the Defendant decedent-Mayor Scordino.

3

13.   John Lepper, denied wrongdoing and told he Suffolk County Police Department Detecetives that his family, the Plaintiffs, sued The Village of Babylon and the decedent Defendant Mayor Scordino and that this was in retaliation for, among other things, the lawsuit that John Lepper and his family filed against the Village of Babylon.

14.   Suffolk County Police Department Detective Grenz concluded his questioning of John Lepper by telling my brother, John Lepper, and I, in sum and substance, that you guys have been more than gentleman and my report will reflect that your brother, John Lepper, poses no threat to himself or anyone else in this community.

15.   I observed my brother, John Lepper, look as if he was in despair, pain and anguish due to the questioning of the Suffolk County Police Department, his seizure and the threat of criminal process being lodged against him.

CHARLIE LEPPER

Sworn to before me on
July 14th, 2021

Notary Public

Notary Public State of Florida
Maria Ann Cordero
My Commission GG 232652
Expires 06/17/2022

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------x
JOHN LEPPER and NOELLE LEPPER, individually

and as parents and natural guardians of

their infant children, B.J.L and B.I.,

                         Plaintiffs,

           - against -

VILLAGE OF BABYLON; and RALPH SCORDINO,

Mayor, KEVIN MULDOWNEY, Deputy Mayor, ROBYN

SILVESTRI, Village Trustee, TONY DAVIDA,

Village Trustee, MARY ADAMS, Village Trustee;

STEPHEN FELLMAN, Village of Babylon Building

Inspector; SUZANNE SCHETTINO, Department of

Public Works; GERARD GLASS, Esq., Village of

Babylon Attorney; DEBORAH LONGO, Planning

Board, Village of Babylon, each individually

and in their official capacity, and John

and/or Jane Doe, unnamed, unidentified

complainants,

                         Defendants.

Index No.:  2:18-cv-07011 JFB-GRB
-----------------------------------------x
                         135 Pinelawn Road
                         Melville, New York
DEBORAH LONGO
                         October 7, 2019
                         9:55 a.m.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

23

1                           Longo

2        Q.     Throughout your tenure of employ

3   for the Village of Babylon, has the building

4   inspector changed?

5        A.     No.

6        Q.     Do you answer to anyone other

7   than the building inspector for the Village of

8   Babylon?

9        A.     We all answer to the mayor.

10       Q.     Who is the mayor?

11       A.     Mayor Ralph Scordino.

12       Q.     Explain when you say "we all

13  answer."

14       A.     Ultimately, he is, I guess, in

15  charge of the office, so I would think

16  ultimately he would be who we would answer to.

17       Q.     Have you answered to the mayor

18  previously?

19       A.     Previous to my employment?

20       Q.     Previous to today?

21       A.     If he asks me a question about

22  something, certainly I would answer him.

23       Q.     Aside from asking you a question,

24  does he send you correspondence?

25       A.     Not usually directly.  It's

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

62

                              Longo

1

2          A.     Yes.

3          Q.     Did you read the litigation hold

4    notice that was served in this lawsuit?

5          A.     I don't remember.

6          Q.     Have you complied with the

7    litigation hold notice that was served upon

8    you in this case?

9          A.     I don't remember.

10         Q.     Had anyone told you to protect or

11   preserve documents or e-mails, anything

12   related to John Lepper?

13         A.     I don't remember.

14         Q.     Has Mr. Glass instructed you with

15   reference to protecting and preserving e-mails

16   pertaining to this case?

17              MR. TOSCA:  Objection.

18              Please don't answer.

19              MR. MORRIS:  Counsel, are you

20         asserting privilege?

21              MR. TOSCA:  I am.

22         Q.     Anyone tell you to preserve and

23   not destroy evidence in this case?

24              MR. TOSCA:  Other than an

25         attorney.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

77

1                    Longo

2          Q.     Did the previous Village attorney

3    send you electronic mail?

4          A.     Never.

5          Q.     This was a new thing, correct.

6          A.     Um-hum.

7          Q.     When you started receiving these

8    electronic mailings, what, if anything, did

9    you do with them?

10         A.     What, if anything, did I do with

11   them?

12         Q.     Um-hum.

13         A.     I would answer them.

14         Q.     Have you deleted any of them?

15         A.     I don't remember.

16         Q.     You maintained all the electronic

17   mails since you first received it from

18   Mr. Glass?

19         A.     I don't know. I don't know.

20         Q.     Does anyone else have access to

21   your electronic mail account?

22         A.     We don't have -- we do not have

23   passwords, so I would assume anybody could.

24         Q.     You would assume anyone has

25   access to your e-mail account; is that your

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

87

                          Longo
1
2     e-mails regarding the tree house?
3          A.     No.
4          Q.     Have you ever communicated about
5     any other tree house ever?
6          A.     No.
7          Q.     It's the only tree house, right?
8          A.     There was one a couple years ago
9     across the street from me actually, funny
10    enough, the Baldorf's at 50 Thomson, but that
11    would be it.  I don't even know if I sent an
12    e-mail about it.  That's the only other tree
13    house in the Village that has been brought to
14    my attention.
15         Q.     It is it fair to say you have not
16    corresponded by e-mail about any other tree
17    house?
18         A.     I never corresponded about any
19    other tree house.
20         Q.     And you received correspondence
21    about a tree house?
22         A.     From the Baldorfs? Probably not.
23    If anything, from the architect.
24         Q.     In terms of e-mail correspondence
25    and tree houses, I'm going to ask you a

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

88

Longo

1

2    question, okay.  Please let me know if you

3    don't understand my question.

4              Have you communicated --

5              Withdrawn.

6              Who have you communicated with

7    regarding a tree house by electronic mail?

8         A.    I would say the only two people

9    would Gerard, Mr. Glass or Mr. Fellman.

10        Q.    You mentioned your husband

11   before?

12        A.    Yeah, and one time.

13        Q.    Anyone else?

14        A.    No.

15        Q.    Let's start with Mr. Fellman.

16              When did you communicate with

17   him?

18        A.    I don't remember a date.

19        Q.    Have you deleted or destroyed any

20   of those e-mails with Mr. Fellman concerning

21   the tree house?

22        A.    Not that I recollect, no.

23        Q.    You don't know if you destroyed

24   those e-mails?

25        A.    No, I don't know.  I produced a

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

89

```
 1                     Longo
 2  lot of e-mails.  I don't remember.
 3        Q.     When did you produce those
 4  e-mail?
 5        A.     In the last couple of weeks,
 6  couple months.
 7        Q.     Did you produce any in 2018?
 8        A.     I don't remember.
 9        Q.     Anything that would refresh your
10  recollection?
11        A.     No.
12        Q.     How did you produce those
13  e-mails?
14        A.     By making copies of them.
15        Q.     How did you do it?
16        A.     Hit print.
17        Q.     Then what?
18        A.     I gave them in to, I would assume
19  the clerk's office.
20        Q.     You can't recall?
21        A.     The clerk's office.
22        Q.     When you say the clerk's office,
23  who?
24        A.     Jean Parker.
25        Q.     That's what you did a couple
```

John Lepper v. Village of Babylon
Deborah Longo - October 7, 2019

90

1                       Longo
2    weeks ago?
3         A.    Couple weeks ago and couple
4    months ago, I believe.
5         Q.    Any other time besides those two
6    times?
7         A.    No.
8         Q.    Have you deleted or destroyed any
9    electronic mail with Mr. Fellman since this
10   litigation was commenced?
11        A.    Regarding the tree house or
12   regarding anything?
13        Q.    Do you understand my question,
14   ma'am?
15        A.    I'm asking you because I don't
16   understand.
17             MR. TOSCA:  She asking you to
18        clarify.
19             MR. MORRIS:  Sounds like an echo.
20        I get it.
21        Q.    Ma'am, electronic mail you
22   received from Mr. Fellman, have you or have
23   you not deleted it since this litigation; yes
24   or no?
25        A.    I can't answer a question that I

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

91

                         Longo
1
2     don't understand.
3               Are you asking me --
4          Q.    Ma'am, you receive electronic
5     mail, correct?
6          A.    Um-hum.
7          Q.    You understand you can delete
8     that mail, correct?
9          A.    Um-hum.
10         Q.    Have you deleted mail in the
11    past?
12         A.    Yes.
13         Q.    You deleted e-mail, right?
14         A.    Yes.
15         Q.    You've received e-mail, correct?
16         A.    Yes.
17         Q.    You received e-mail from
18    Mr. Fellman, correct?
19         A.    Yes.
20         Q.    Those e-mails that you received
21    from Mr. Fellman, they're maintained in your
22    in box until you do something with them?
23         A.    Um-hum.
24         Q.    Have you or have you not deleted
25    e-mails with Mr. Fellman since this litigation

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

92

                         Longo

1
2    commenced?

3         A.    I probably deleted some.

4               I don't know exactly what you're

5    question is.  Are you referring to any and all

6    emails?  That's my question.

7         Q.    Ma'am, I'm referring to any and

8    all e-mails.

9         A.    Any and all e-mails, I have

10   deleted some from Mr. Fellman.

11              MR. MORRIS:  We'll take a break.

12              It's 11:22.

13              (Whereupon, a recess was taken

14        from 11:22 a.m. through 11:31 am.)

15              MR. MORRIS:  Time now is 11:31.

16              (A call was placed to the court

17        and an answering service picked up.)

18              MR. MORRIS:  Good morning.  This

19        is Cory Morris calling on Lepper versus

20        the Village of Babylon 18CV07011.

21              I'm calling following up for a

22        ruling.  Please call me back at your

23        convenience, (516)507-2843,

24        (516)507-2843 Cory Morris on Lepper

25        versus Village of Babylon 18CV07011.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

93

```
 1                    Longo
 2             Thank you.
 3             Let's continue.
 4             MR. TOSCA:  All right I will get
 5       her.
 6             (Mr. Tosca leaves the room and
 7       returns with Ms. Longo.)
 8        Q.    Mrs. Longo, have you discussed
 9  your testimony during the break?
10        A.    Yes.
11        Q.    With whom?
12        A.    Eric.
13        Q.    Anyone else?
14        A.    No.
15        Q.    Before, you stated you received
16  electronic mail from your husband regarding
17  the tree house?
18        A.    Um-hum.
19        Q.    Which tree house?
20        A.    No particular tree house.
21        Q.    I'm sorry?
22        A.    No particular tree house.
23        Q.    You testimony is that your
24  husband e-mailed you about no particular tree
25  house; is that right?
```

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

94

```
 1                    Longo
 2         A.    Yes.
 3         Q.    He just sent an e-mail with a
 4  Reggae song.  That was -- the title of the
 5  album was Tree House.
 6         Q.    Who is the artist?
 7         A.    I don't know.  It was a Reggae
 8  song.  I think it was Tree House.  I'm not
 9  sure.
10         Q.    Do you listen the Reggae music?
11         A.    Occasionally.
12         Q.    Was this a Reggae artist of which
13  you are familiar?
14         A.    No.
15         Q.    Is this a subject matter of which
16  you are familiar?
17         A.    No.
18         Q.    He just sent you tree house
19  e-mail, you have no idea of which tree house
20  he was --
21         A.    It was ironic.
22         Q.    What is the irony?
23         A.    There is a tree house issue going
24  on in the Village of Babylon.
25                I think the name of the song was
```

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

95

                         Longo

1

2    like Babylon Phoenix or something that, I

3    don't really remember.

4         Q.    Fair to say you and your husband

5    discussed the Babylon tree house issue?

6         A.    Yes.

7         Q.    You said you received electronic

8    mail from possibly Mr. Glass; is that right?

9         A.    Yes.

10        Q.    How many electric mailings did

11   you receive possibly from Mr. Glass regarding

12   a tree house?

13        A.    I don't know exactly.  It

14   wouldn't have been -- I think just in -- I

15   don't really know, 10, 15.  I'm not sure.  I

16   don't know.

17        Q.    Have you deleted those electronic

18   mailings from Mr. Glass?

19        A.    No.

20        Q.    Have you provided those

21   electronic mailings from Mr. Glass to anyone?

22        A.    Yes, to the FOIL request.

23        Q.    Any other request?

24        A.    No.

25        Q.    Have you provided them as a

John Lepper v. Village of Babylon
Deborah Longo   - October 7, 2019

96

```
 1                        Longo
 2    result of this Federal litigation?
 3         A.     I would assume that's what it was
 4    in response to.
 5         Q.     To whom did you provide them?
 6         A.     Jean Parker.
 7         Q.     Anyone --
 8         A.     Village Clark.
 9         Q.     Anyone else?
10         A.     No.
11         Q.     How about that e-mail from your
12    husband, you said there was only one, right?
13         A.     Um-hum.
14         Q.     When did you provide that to
15    someone and whom did you provide it to?
16         A.     I think it was just last week or
17    two weeks ago.  I'm not sure.  I don't
18    remember, couple weeks ago.
19         Q.     When you say, couple weeks ago,
20    you don't remember what happened a couple
21    weeks ago?
22         A.     Not with reference to this, no.
23         Q.     Can you tell me the circumstances
24    under which you provided that e-mail?
25         A.     I don't remember.  I really don't
```

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

97

                        Longo

1

2      remember.  I don't remember.

3            Q.     Any reason you're having such

4      difficulty remembering electronic mail that's

5      the subject of a Federal litigation that you

6      say you provided a couple weeks ago?

7            A.     I live a very busy life.  This is

8      a blip to me to be honest with you.

9            Q.     Tell us what keeps you so busy

10     that prevents you from remembering these

11     e-mails from a couple weeks ago?

12           A.     I work full time. I have a very

13     young grandson that I help my daughter with a

14     lot, so I'm busy.

15           Q.     Anything else?

16           A.     No.

17           Q.     Regarding this Federal lawsuit,

18     you don't recall the circumstances under which

19     you produced that e-mail?

20           A.     I don't remember, sir.  I don't

21     remember.

22           Q.     Do you know to whom you spoke?

23           A.     Spoke about what?

24           Q.     The electronic mail concerning

25     your husband and the Village of Babylon tree

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

129

|    | Longo |
|----|-------|
| 1  |       |
| 2  | objection. |
| 3  | MR. MORRIS:  You're asserting |
| 4  | spousal privilege, Counsel? |
| 5  | MR. TOSCA:  Yes, I am. |
| 6  | Q.    What about Mr. Fellman?  What |
| 7  | conversation did you have with Mr. Fellman |
| 8  | upon being sued? |
| 9  | A.    Similar to the mayor, that I was |
| 10 | just upset about it and not happy. |
| 11 | Q.    Why were you upset? |
| 12 | A.    Because I don't believe I belong |
| 13 | here. |
| 14 | Q.    Why not? |
| 15 | A.    Because I took in paperwork and |
| 16 | spoke to be Lepper for all of three minutes, |
| 17 | somehow I find myself here. |
| 18 | Q.    Who else did you say you were |
| 19 | upset to? |
| 20 | A.    No one else. |
| 21 | Q.    Now that you recall that |
| 22 | conversation with the mayor, what, if any, |
| 23 | other conversation did you have regarding a |
| 24 | tree house with Mayor Scordino? |
| 25 | A.    I don't recall. |

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

130

1                        Longo

2          Q.     Has anyone told you to say you

3     that you don't recall?

4                 MR. TOSCA:  Objection.

5                 Don't answer the question.

6          Q.     Ma'am, in the course of your

7     duties as secretary to the building inspector

8     for the Village of Babylon, do you communicate

9     with Stephen Fellman?

10         A.     Yes.

11         Q.     How do you communicate with

12    Stephen Fellman?

13         A.     E-mail.

14         Q.     How often do you communicate with

15    Stephen Fellman?

16         A.     Usually Tuesdays, Wednesdays, and

17    Fridays.

18         Q.     When Mr. Fellman works, you

19    communicate with him by e-mail?

20         A.     E-mail.

21         Q.     How does Mr. Fellman communicate

22    back with you?

23         A.     E-mail.

24         Q.     Does he maintain a computer in

25    the Village of Babylon?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

131

1                    Longo

2        A.    No.

3        Q.    How do you know that he has

4   access to e-mail?

5        A.    Because he is a building

6   inspector in other places and he'll e-mail me

7   back.

8        Q.    What e-mail does he use?

9        A.    Crazytwodays@hotmail.

10       Q.    Any other e-mail?

11       A.    No, and I text him from my

12  computer through Vtext.

13       Q.    When you say you text through

14  your computer through Vtext, to what are you

15  referring?

16       A.    I can text him to his phone from

17  my computer.

18       Q.    Have you texted Mr. Fellman

19  concerning Mr. Lepper?

20       A.    I don't remember.  It would have

21  been text or e-mail if I had to discuss

22  something with him.  I don't remember which

23  one.

24       Q.    You understand the question,

25  right?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

132

1                    Longo

2          Did you text Mr. Fellman

3    concerning a tree house, yes or no?

4              MR. TOSCA:  Objection.

5              You can answer.

6       A.     It would have been text or

7    e-mail.  I don't remember exactly.  It could

8    have been both.  I don't know.

9       Q.     Anything that would refresh your

10   recollection?

11      A.     Obviously reading my e-mails, it

12   was one or the other.

13      Q.     When you say text message, is

14   that what you're referring to as e-mail as

15   well?

16      A.     Yes.  You can text from your

17   computer through Vtext.

18      Q.     Is that what you did with

19   Mr. Fellman?

20      A.     That or e-mail.

21      Q.     You can't recall whether or not

22   you texted Mr. Fellman regarding --

23      A.     Because I use both.

24      Q.     Because you use both?

25      A.     Um-hum.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

133

1                       Longo

2          Q.    As secretary to the building

3    inspector for the Village of Babylon, do you

4    receive complaints?

5          A.    I do.

6          Q.    How?

7          A.    By phone.

8          Q.    Any other form?

9          A.    Sometimes we get a complaint

10   through, it's called a work flow notification,

11   it comes via the Village of Babylon website.

12         Q.    Anything else?

13         A.    No.

14         Q.    How do you maintain these

15   complaints?

16         A.    We get a call on something.  We

17   would send out a code enforcer to take a

18   picture of whatever it might be, and depending

19   on what it is, go to who would take care of

20   it.

21         Q.    How --

22               I'm sorry.

23         A.    It could be code enforcement, it

24   be a complaint.  Everything comes through my

25   office regarding complaints for some reason,

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

134

Longo

1
2      so it could be a car on a street to grass
3      that's too high.  It would depend.
4            Q.     As secretary to the building
5      inspector of the Village of Babylon, is it
6      your testimony that you receive all complaints
7      to Village of Babylon?
8            A.     We get a lot of complaints, but
9      not all.  Obviously the mayor's office and the
10     work flow notification.
11           Q.     The mayor's office receives
12     complaints directly?
13           A.     They receive complaints directly,
14     yes.
15           Q.     How do you maintain the
16     complaints that you receive?
17           A.     If they came in on a phone, we
18     would have a message pad that we keep.
19           Q.     Is the message pad the item to
20     which you referred earlier?
21           A.     For what?
22           Q.     You indicated there was a marble
23     notebook.
24           A.     No, that's an appointment book
25     for Steve so I can keep track of what

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

135

```
 1                      Longo
 2      inspections have been called in from
 3      contractors.
 4           Q.     In other words, there is
 5      another --
 6           A.     Regular message, phone message
 7      pad.
 8           Q.     Do you maintain that phone
 9      message pad in the regular course of business?
10           A.     Yes.  Everybody has one.
11           Q.     Did you ever utilize that phone
12      message pad for a tree house within the
13      Village of Babylon?
14           A.     I don't believe any complaints
15      came directly into my office regarding the
16      tree house.
17           Q.     When you say you don't believe,
18      do you know.
19           A.     I don't remember.  I just don't
20      know.  My recollection is, it came from Tony
21      Davida.
22           Q.     You don't know, you don't
23      remember, or is it both?
24           A.     Both.  I don't remember, but I do
25      know Tony Davida complained about it.
```

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

136

1                      Longo

2        Q.     Who would know?

3        A.     Whoever took a message, if

4    somebody else took a message.  I did not.

5        Q.     Ma'am, as secretary to the

6    building inspector for the Village of Babylon,

7    are you responsible for the maintenance of the

8    office?

9        A.     Yes, but I don't monitor people's

10   phone message pads.  If it has nothing to do

11   with us, if somebody gets a message, they act

12   on it.  I don't believe my office took any

13   complaints regarding the tree house by phone.

14       Q.     But you don't know?

15       A.     I don't know exactly, no; but I

16   don't believe we did.

17       Q.     And you don't know what

18   complaints the mayor received, correct?

19       A.     I don't know.

20       Q.     What's the procedure for handling

21   complaint received in the course of duties as

22   secretary to building inspector for the

23   Village of Babylon?

24       A.     There would be a couple of

25   different ways.  Like I said, depending on

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

137

Longo

1                        Longo

2       what it was.  If it's a construction

3       complaint, we would alert Steve and he would,

4       in the course of his time with the Village, go

5       past it, determine if there's an issue or not.

6       If it's another issue, parking issue or

7       something, I would say refer it to whoever

8       might have that, like code enforcement.

9            Q.    What happens if it's not the two

10      scenarios of which you testified?

11           A.    I would determine if it's

12      something of building, then we would address

13      it.  If it wasn't, I would refer it to the

14      office who would be responsible for it,

15      highway department, the court, the clerk's

16      office.

17           Q.    And you would make that

18      determination?

19           A.    Myself or one of the other women

20      in the office.

21           Q.    You're responsible for the other

22      women in the office, correct?

23           A.    Yes, to a degree.

24           Q.    When you say to a degree, what do

25      you mean?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

138

                              Longo
1
2          A.      I would say sign off on their

3    time sheets, you know, that kind of thing,

4    monitoring who is in the office, who is not,

5    lunch hours, that kind of thing, making sure

6    the office is staffed.

7          Q.      You're not responsible for what

8    they do; is that right?

9                  MR. TOSCA:  Objection.

10                 You can answer over objection.

11         A.      They would defer to me if they

12   didn't know what to do with something.

13         Q.      As secretary to the building

14   inspector for Village of Babylon, do you know

15   who can make a complaint?

16         A.      Do I know who can make a

17   complaint?

18         Q.      Who can make a complaint within

19   the Village of Babylon?

20         A.      Anybody.

21         Q.      Have you ever received a

22   complaint from an elected Village of Babylon

23   official?

24         A.      Yes.

25         Q.      Who?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

139

1                        Longo

2         A.    Tony Davida.  I received

3    complaints from Mary Adams.

4         Q.    Who else?

5         A.    Kevin.

6         Q.    Who else?

7         A.    The mayor.

8         Q.    Who else?

9         A.    That would be it.

10        Q.    What complaint have received from

11   the mayor?

12        A.    I mean, it could be, he might

13   drive around and whatever property, does this

14   property have a building permit, does that

15   property have a building permit.  It could be

16   a host of things.

17        Q.    Ma'am, you understand I'm not

18   asking for could be's correct?

19        A.    You're asking me something I

20   can't answer definitively.

21        Q.    Has the mayor brought so many

22   complaints to you that you can't answer

23   definitively?

24              MR. TOSCA:  Objection.

25        A.    On occasion, yeah.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

140

1                     Longo

2          Q.    The mayor's brought you multiple

3   complaints?

4          A.    Absolutely.

5          Q.    Can you tell us the circumstances

6   under which you first met Stephen Fellman?

7          A.    My first day of work.

8          Q.    How long have you known

9   Mr. Fellman for?

10         A.    Since my first day of work in

11  2008.

12         Q.    To whom do you report?

13         A.    Stephen Fellman.

14         Q.    Do you know to whom Stephen

15  Fellman reports?

16         A.    I would assume the mayor.

17         Q.    When you say, you would assume,

18  do you not know?

19         A.    I don't know definitively, that

20  would my -- that's what I would say, the

21  mayor.

22         Q.    What about in-definitively?

23         A.    No one else.

24         Q.    The mayor?

25         A.    The mayor.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

141

1              Longo

2        Q.    What is the day-to-day

3    interaction with Stephen Fellman?

4        A.    Very limited.  I only see him on

5    Tuesday afternoons for court and to go over,

6    for him to come in and sign paperwork.

7        Q.    Can you explain what you mean by

8    Tuesday afternoon for court?

9        A.    Any -- court is at 2 o'clock on

10   Tuesday afternoon, so if there's any tickets

11   written, he would have to come in to appear.

12   Other than that, it would be whatever permits

13   he would be signing off on, anything else, the

14   administrative end in the office.

15       Q.    Can you tell us in that

16   interaction before, what is it that you do and

17   what is it that he does?

18       A.    He usually just shows up at court

19   downstairs.  I would let him know in the

20   morning what was on the court calendar, and if

21   he needed any support documentation for it, he

22   would ask me for it then.

23       Q.    How would you learn what is on

24   the court calendar?

25       A.    I usually get it on Friday

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

142

```
 1                    Longo
 2   afternoons or Monday.
 3        Q.    How do you get it?
 4        A.    From Irene, the court clerk.
 5        Q.    What else do you receive from
 6   Irene, the court clerk?
 7        A.    That's it.
 8        Q.    How do your receive it from
 9   Irene, the court clerk?
10        A.    Paper copy.
11        Q.    Do you know how you receive that
12   paper copy?
13        A.    She hands it to me.
14        Q.    In the course of your duties as
15   secretary to the building inspector for the
16   Village of Babylon, what communications did
17   you have to with Irene, the Village of Babylon
18   court clerk?
19        A.    Just in that, what might be
20   coming up, what might be in court that week.
21   It could be from Steve, it could be Richie
22   Meyer who might have written a summons out of
23   my office.
24             MR. MORRIS:  Time is 12:21.
25             (Mr. Morris changed battery in
```

John Lepper v. Village of Babylon
Deborah Longo   - October 7, 2019

143

1                     Longo

2         camera.)

3              MR. MORRIS:  Time now is 12:21.

4         Q.    When you say Irene would tell you

5    what's coming up, can you explain what you

6    mean by that?

7         A.    She would give me the court

8    calendar and highlight anything that was

9    written out of my office, so I can let them

10   know.

11        Q.    Who is them?

12        A.    Steve or Richie Meyer.

13        Q.    Who is Richie Meyer?

14        A.    He's the rental housing

15   inspector.

16        Q.    When you say you would get a

17   court calendar from Irene with highlights, who

18   made the highlights?

19        A.    Irene.

20        Q.    So the court clerk would hand you

21   a calendar that was already highlighted?

22        A.    Um-hum.

23        Q.    Did the court clerk have

24   opportunity to hand you anything else

25   throughout your tenure as secretary to the

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

144

1                       Longo

2    building inspector for the Village of Babylon?

3         A.    No.  Just to let me know what was

4    in court for either of them.

5         Q.    How would she do this?

6         A.    She would walk up the stairs to

7    my office.  She's downstairs, I'm upstairs.

8         Q.    Have you had conversations with

9    her?

10        A.    Have I had conversations with

11   her?  Yes, she is a friend.

12        Q.    How long have you known her?

13        A.    The time I'm at the Village since

14   2008.

15        Q.    Have you had opportunity to

16   discuss the tree house with her?

17        A.    I'm sure I have.  I don't

18   remember when, but I'm sure I have.

19        Q.    When you say you don't remember

20   when, do you remember the substance of the

21   conversation?

22        A.    Just my upsetment [sic].

23        Q.    I'm sorry, what was that word?

24        A.    My upsetment.

25        Q.    You told him you were upset?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

145

1                        Longo

2          A.     Yes.

3          Q.     What did she say in response?

4          A.     I don't remember verbatim.  I'm

5     sure she felt bad.

6          Q.     When you say you don't remember

7     verbatim, can you tell without verbatim, what

8     she said?

9          A.     I'm sure she expressed her

10    feelings that she felt badly for me.

11         Q.     When you say felt badly, what did

12    she say?

13         A.     I don't remember.  Just that I'm

14    sure she said she felt badly.

15         Q.     In sum and substance, what were

16    you told about a tree house from Irene the

17    court clerk for the Village of Babylon?

18         A.     I wasn't told anything about a

19    tree house from Irene.  I would just be told

20    that Mr. Lepper was going to be in court, so

21    he would know and if I needed to get anything

22    for him, copies of the summons or anything

23    like that.

24         Q.     When you told Irene you were

25    upset, what, if anything, did she say in

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

146

1                    Longo

2    response?

3         A.     I don't remember exactly.  I'm

4    sure she said she felt badly.

5         Q.     Have you had any other

6    communications in the course of your duties as

7    secretary to the building inspector for the

8    Village of Babylon with the Village of Babylon

9    court?

10        A.     No.

11        Q.     To be clear, when you had the

12   conversation the Irene from the Village of

13   Babylon court, where were you?

14        A.     Probably at my desk when she

15   brought maybe brought an agenda up or I could

16   have been downstairs seeing her walking up or

17   something.  I don't remember.

18        Q.     You don't recall?

19        A.     No.

20        Q.     But it was after this lawsuit

21   that you recall being upset?

22        A.     Yes.

23        Q.     Were you upset prior to being

24   sued?

25        A.     No, it had nothing to do with me.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

147

1                    Longo

2        Q.    Did you have conversation with

3    Irene prior to being sued?

4        A.    Maybe in the context of the

5    summons coming up, that's all.

6        Q.    Anything else?

7        A.    No.

8        Q.    What do you recall?

9        A.    I don't recall.  I don't recall

10   having a conversation with her about the

11   summons.  It just wouldn't come up in

12   conversation.

13       Q.    Who makes up the Village of

14   Babylon Zoning Board of Appeals?

15       A.    I don't know all the names.

16   Bruce Humenik is the chair, I don't know all

17   of them, they've changed in the last couple of

18   years.

19       Q.    Can you say the names of these

20   persons?

21       A.    Could I say all of them, no.  I

22   know Greg, Jeff Weber, and Bruce Humenik.

23       Q.    Who are the persons of who you do

24   speak?

25       A.    On the board?

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

148

1                    Longo

2        Q.      Um-hum.

3        A.      I do see Jeff Weber on occasion.

4        Q.      When do you see Jeff Weber?

5        A.      He works part time, I believe

6    he's part time in the treasurer's office.

7        Q.      When you say treasurer, treasurer

8    of what?

9        A.      In the Village of Babylon.

10        Q.      And he also acts as a person on

11    the Zoning Board of Appeals?

12        A.      Yes.

13        Q.      What is his position on the

14    Zoning Board of Appeals?

15        A.      I just think he's a member.  I

16    don't know, if he has some other -- I think

17    he's just a member.

18        Q.      Under what circumstances do you

19    communicate with Mr. Weber?

20        A.      Just basically getting a cup of

21    coffee, hello and goodbye.  I don't refer to

22    him at all.  I'm not very friendly with him.

23        Q.      In your capacity of secretary to

24    the building inspector for the Village of

25    Babylon, have you ever communicated with the

John Lepper v. Village of Babylon
Deborah Longo   - October 7, 2019

149

                          Longo

1

2     Village of Babylon Zoning Board of Appeals or

3     any of its members?

4          A.     With Mr. Humenik.

5          Q.     Under what circumstances do you

6     have occasion to communicate with Mr. Humenik?

7          A.     He might come in and ask to make

8     an appointment, when is Steve gonna be in, I'd

9     like to talk to him about something.

10         Q.     Can you give an example of when

11    that occurs?

12         A.     Usually when he comes in to go

13    over what might be coming up on the Zoning

14    Board of Appeals calendar and he might have a

15    question, he'll stop in and ask when Steve

16    will be around or can I have him give him a

17    call.

18         Q.     Does he communicate via

19    electronic mail with Mr. Fellman?

20         A.     I don't -- honestly, I don't know

21    whether he communicates with him by e-mail.

22         Q.     Has he asked you to relay a

23    message to Mr. Fellman?

24         A.     Just in the sense of, can you

25    have him give me a call or when is he going to

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

150

1                    Longo

2    be in.

3         Q.    Has Mr. Humenik spoke to you in

4    regards to a tree house and Mr. Fellman?

5         A.    I know Mr. Fellman spoke with

6    him.  He did not speak with me directly.

7         Q.    How do you know that?

8         A.    I just remember it.  I remember

9    him talking to him about it.

10        Q.    When did this occur?

11        A.    I would assume sometime last

12   year.

13        Q.    Do you know which month?

14        A.    I don't.

15        Q.    Do you know under the

16   circumstance to which you observed such

17   conversation?

18        A.    I think he wanted to talk to him

19   about a Zoning Board of Appeals hearing.

20        Q.    When did this occur?

21        A.    Sometime last year.

22        Q.    Was it one communication or

23   multiple communications?

24        A.    I don't remember exactly.  I

25   don't remember at all.

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

163

```
1                      Longo
2          Q.      Have you ever seen a child's tree
3    house?
4          A.      I've seen pictures, yes.
5          Q.      So you're aware that children
6    play in tree houses, right?
7                  MR. TOSCA:  Objection.
8          A.      Not mine.
9          Q.      Are you aware of any children
10   playing in the village of Babylon in a tree
11   house?
12         A.      No.
13         Q.      In the course of your regular
14   professional activities as Village of Babylon
15   secretary to the building inspector, have you
16   ever issued a Certificate of Occupancy for a
17   garage?
18         A.      Yes.
19         Q.      In the course of your regular
20   professional activities as the secretary to
21   the building inspector for the Village of
22   Babylon, have you ever issued a Certificate of
23   Occupancy for a structure less than 90-square
24   feet?
25         A.      For a structure less than
```

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

164

                              Longo

1

2      90-square feet, no.  I don't think so.

3              Q.    In the course of your regular

4      professional activities as the secretary to

5      the building inspector for the Village of

6      Babylon, do you investigate circumstances

7      under which there is a violation of the

8      Village of Babylon Building Department based

9      on a complaint?

10             A.    That would be up to the building

11     inspector.

12             Q.    Have you ever investigated

13     circumstances under which there is a violation

14     of the Village of Babylon code?

15             A.    That would be the building

16     inspector.

17             Q.    To be clear, you would not do

18     that, correct?

19             A.    Not unless I was instructed by

20     the building inspector.

21             Q.    Have you been instructed by the

22     building inspector?

23             A.    On occasion, yes.

24             Q.    In the course of your

25     professional activities as secretary to the

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

165

                          Longo
1
2     building inspector for the Village of Babylon,
3     please tell us the circumstances under which
4     you have investigated whether there is a
5     violation of the Village of Babylon code based
6     on a complaint.
7          A.     Trying to think of something in
8     particular.  We have had people building
9     garages without permits.  We have had to send
10    somebody.  We have had complaints about a
11    property on Sumpwams Avenue, S-U-M-P-W-A-M-S.
12    I'm trying to think.  I can't think of an
13    exact address or something to give you.  I've
14    sent him down to Salt Meadow when somebody was
15    gutting a kitchen, that was only a couple
16    months ago, we sent Mr. Fellman down there and
17    I had to send them a notice of violation.
18         Q.     In the course of your activities
19    as the secretary to the building inspector for
20    the Village of Babylon, do you investigate
21    circumstances under which there is a violation
22    of the Village of Babylon code based upon a
23    complaint from Kevin Muldowney?
24         A.     The only thing that he complained
25    about is this property on Sumpwams to me

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

166

                    Longo
1
2  directly.
3       Q.     Explain your involvement in that
4  investigation?
5       A.     They're a New York Rising house,
6  so it's been -- they're involved in a lawsuit,
7  their contractor stole hundreds of thousands
8  of dollars from them, so we have been on top
9  of them, I would say, for property maintenance
10 and trying to work with them to rectify this
11 situation, and by we, I don't mean me, I mean
12 the board.
13      Q.     To be clear, the board is
14 involved in that investigation?
15      A.     The board of trustees along with
16 the building inspector.
17      Q.     In the course of your regular
18 professional activities as the Village of
19 Babylon secretary to the building inspector,
20 do you investigate circumstances under which
21 there is a violation of the Village of Babylon
22 code based upon a complaint by Robyn
23 Silvestri?
24      A.     No.
25      Q.     In the course of your regular

John Lepper v. Village of Babylon
Deborah Longo  - October 7, 2019

167

```
 1                    Longo
 2   professional activities as the secretary to
 3   the building inspector for the Village of
 4   Babylon, do you investigate circumstances
 5   under which there is a violation of the
 6   Village of Babylon code based on a complaint
 7   from Tony Davida?
 8        A.    Yes.
 9        Q.    Can you explain the circumstances
10   of that investigation?
11        A.    Mr. Lepper's tree house.
12        Q.    Tell us what occurred.
13             MR. TOSCA:  Objection.
14             You can answer.
15        A.    He came in the office one day
16   last year and said there was a platform being
17   built very close to the street in a tree.
18        Q.    Are there any other circumstances
19   under you have had opportunity to investigate
20   a complaint brought by Mr. Davida?
21        A.    I don't recall.
22        Q.    When you say you investigated a
23   complaint about Mr. Lepper's tree house, can
24   you explain on behalf of who you investigated
25   such complaint?
```